1  C. P. Bartholomew (State Bar No. 211425)
   Mark Punzalan (State Bar No. 247599)
2  FINKELSTEIN, THOMPSON LLP
   100 Bush Street, Suite 1450
3  San Francisco, California 94104
   Telephone:  (415) 398-8700
4  Facsimile:  (415) 398-8704

5  [Additional Counsel Listed on Signature Page]

6  Attorneys for *Plaintiff*

7

8

9

10            UNITED STATES DISTRICT COURT

11           NORTHERN DISTRICT OF CALIFORNIA

12  PETER RUDOLPH, individually and on        )  Case No.  C 07 4578 SI
13  behalf of all others similarly situated,  )
                                              )
14              Plaintiff,                     )  CLASS ACTION COMPLAINT FOR
                                              )  VIOLATIONS OF THE FEDERAL
15        vs.                                  )  SECURITIES LAW
                                              )
16  UT STARCOM, HONG LIANG LU,                )  DEMAND FOR JURY TRIAL
17  MICHAEL SOPHIE, THOMAS TOY, and           )
    FRANCIS BARTON,                           )
18                                            )
              Defendants.                      )
19  _____ )

20

21        Plaintiff, by his attorney, brings this action on behalf of himself and all others similarly

22  situated, and alleges the following upon personal knowledge as to himself and his own activity,

23  and based on investigation conducted by counsel for all other matters.  That investigation has

24  included the thorough review and analysis of public documents, announcements made by

25  Defendants, wire and press releases, news articles concerning UT Starcom ("UT Starcom" or "the

26  Company"), securities analysts' reports and advisories about the Company, information readily

27  available on the Internet, and other facts as set forth herein.

28

## NATURE OF THE ACTION

1.      This is a class action brought on behalf of a Class consisting of all persons who purchased the publicly traded securities of UT Starcom between July 24, 2002 through September 4, 2007 inclusive (the "Class Period"), seeking to pursue remedies under the Securities Exchange Act of 1934 (the "Exchange Act"). These claims arise out of Defendants' false and misleading statements and omissions concerning UT Starcom's backdating of stock option grants.

## JURISDICTION AND VENUE

2.      This action arises under Sections 10(b), 14(a), and 20(a) of the Exchange Act, as amended, 15 U.S.C. §§78j(b), 78n(a) and 78t(a), and Rules 10b-5 and 14a-9 promulgated thereunder by the Securities and Exchange Commission ("SEC"), 17 C.F.R. §§240.10b-5 and 240.14a-9.

3.      This Court has jurisdiction over this subject matter pursuant to 28 U.S.C. §§ 1331 and 1337, and Section 27 of the Exchange Act, 15 U.S.C. § 78aa.

4.      Venue is proper in this district pursuant to Section 27 of the Exchange Act and 28 U.S.C. § 1391(b). UT Starcom's corporate headquarters are located in Alameda, California, which is in this District. Furthermore, Defendants transact business in this District, and many of the acts and transactions constituting the violations of law alleged herein, including the preparation, issuance and dissemination of materially false and misleading statements to the investing public, occurred in this District.

5.      In connection with the acts alleged in this complaint, Defendants, directly or indirectly, used means and instrumentalities of interstate commerce, including but not limited to the mails, interstate telephone, and communications.

## PARTIES

### The Plaintiff

6.      Plaintiff, Peter Rudolph, purchased UT Starcom's securities during the Class Period and suffered damages as a result of the wrongful acts of Defendants as alleged herein. Plaintiff resides at 1500 East Hillsboro Blvd #206, Deerfield Beach, Florida 33441, and

1    purchased 9,100 shares of UT Starcom's common stock during the Class Period, as detailed on the

2    Certification filed herewith.

### The Defendants

4    7.    Defendant UT Starcom, at the time of the wrongs complained of herein, maintained

5    its corporate headquarters in the United States at 1275 Harbor Bay Parkway, Alameda, CA 94502.

6    UT Starcom manufactures, integrates and supports IP-based, end-to-end networking and

7    telecommunications solutions. The Company sells converged broadband wireless and wireline

8    products, an integrated IPTV solution, and a comprehensive line of handset and customer premise

9    equipment to operators in both emerging and established telecommunications markets worldwide.

10    UT Starcom common stock trades on the NASDAQ under the symbol "UTSI."

11    8.    Hong Liang Lu ("Lu") served as the President, Chief Executive Officer, as a

12    director of the Company since June 1991, and as Chairman of the Board since March 2003. In

13    June 1991, Mr. Lu co-founded the Company under its prior name, Unitech Telecom, Inc., which

14    subsequently acquired StarCom Network Stems, Inc. in September 1995. Mr. Lu resigned as

15    President, Chief Executive Officer and Chairman of the Board on December 31, 2006.

16    9.    Michael Sophie ("Sophie") served as Vice President of Finance and Chief Financial

17    Officer of the company from August of 1999 until August of 2005.

18    10.    Thomas Toy ("Toy") currently has served as the Chairman of the Board since

19    January 1, 2007. Prior to this, he served as an independent director, beginning in 1995.

20    11.    Francis Barton ("Barton") has served as the Executive Vice President and Chief

21    Financial Officer of the Company since August of 2005.

22    12.    Lu, Sophie, Toy and Barton are collectively referred to herein as the "Individual

23    Defendants." Because of the Individual Defendants' positions within the Company, they had

24    access to adverse undisclosed material information about its business, operations, financial

25    statements and stock option grants. They were privy to such undisclosed information from

26    internal corporate documents, communications with other officers and employees of the Company,

27    and attendance at and documents received during management and Board of Directors meetings.

28

13.     The Individual Defendants, as officers and/or directors of the Company, had a duty to disseminate complete, accurate, and truthful information about UT Starcom's financial condition, business operations and executive compensation.  The Individual Defendants had a duty to correct promptly any public statements issued by UT Starcom that had become false or misleading.  Because of their positions, their ability to exercise power and influence with respect to UT Starcom's course of conduct and their access to material inside information about UT Starcom's, the Individual Defendants were, at the time of the wrongs alleged herein, controlling persons within the meaning of Section 20(a) of the Exchange Act.

14.     It is appropriate to treat the Individual Defendants as a group for pleadings purposes and to presume that the false, misleading and/or incomplete information conveyed in the Company's public filings, press releases and other publications as alleged herein are based on the collective actions of the Individual Defendants identified above.

## CLASS ACTION ALLEGATIONS

15.     Plaintiff brings this action as a class action under Rules 23(a) and 23(b)(3) of the Federal Rules of Civil Procedure, on behalf of a class of persons and entities who purchased UT Starcom securities during the Class Period and were damaged thereby (the "Class").  Excluded from the class are Defendants herein, officers and directors of UT Starcom, members of their immediate families, and the heirs, successors or assigns of any of the foregoing.

16.     The Class is so numerous that joinder of all members is impracticable.  As of August 1, 2006, the date of the Company's last quarterly filing, UT Starcom had 120,859,532 shares of common stock issued and outstanding.  This number was memorialized in UT Starcom's August 9, 2006 Form 10-Q filed with the SEC.

17.     Plaintiff will fairly and adequately protect the interests of the members of the Class, and Plaintiff has no interests which are contrary to, or in conflict with, the interests of the Class members that they seek to represent.  Plaintiff has retained competent counsel, experienced in class action litigation under the federal securities laws to ensure such protection, and intends to prosecute this action vigorously.

18.     A class action is superior to all other available methods for the fair and efficient adjudication of this controversy since joinder of all members is impracticable. Furthermore, as the damages suffered by individual members of the Class may be relatively small, the expense and burden of individual litigation make it impossible for the members of the Class to individually seek redress for the wrongs done to them.  There will be no difficulty in the management of this action as a class action.

19.     Questions of law and fact common to the members of the Class predominate over any questions that may affect only individual members in that Defendants have acted on grounds generally applicable to the entire Class.  Among the questions of law and fact common to the Class are:

a.     whether the federal securities laws were violated by Defendants' acts as alleged herein;

b.     whether Defendants' publicly disseminated releases and statements during the Class Period, omitted and/or misrepresented material facts, and whether Defendants breached any duty to convey material facts or to correct material facts previously disseminated;

c.     whether Defendant participated in and pursued the common course of conduct complained of herein;

d.     whether Defendants acted with scienter in omitting and/or misrepresenting material facts;

e.     whether Defendants improperly manipulated the terms of the stock option grants;

f.     whether Defendants engaged in a scheme to defraud by manipulating the terms of stock options granted to them and others;

g.     whether the market prices of UT Starcom securities during the Class Period were artificially inflated because of Defendants' conduct complained of herein; and

h.      whether the members of the Class have sustained damages and, if so, what is the proper measure of damages.

20.     Plaintiff's claims are typical of the claims of the members of the Class as Plaintiff and members of the Class sustained damages arising out of Defendants' wrongful conduct in violation of federal law as complained of herein.

## SUBSTANTIVE ALLEGATIONS

### Background

21.     A stock option granted to an employee of a corporation allows the employee to purchase company stock at a specific price (referred to as the "exercise price") for a specified period of time.  Stock options are granted as part of employee compensation packages, as a means to create incentives to boost profitability and stock value.

22.     When the employee exercises the option, he or she purchases the stock from the company at the exercise price, regardless of the stock's price at the time the option is exercised.  If the exercise price is lower than it should be, the employee pays less and the company gets less when the stock option is exercised.

23.     Prior to and during the Class Period, UT Starcom embarked on a fraudulent scheme whereby the Company backdated stock option grants to the Individual Defendants and/or other directors or executives in order to provide the recipients with a more profitable exercise price.

24.     Prior to and during the Class Period, UT Starcom issued stock options to its officers, employees and consultants pursuant to its "1995 Stock Plan."  The Company's Prospectus, filed on March 3, 2000, memorialized the terms of the 1995 Stock Plan.

25.     Accordingly, the options grants ensured that the grantees were able to profit off the fluctuations in the Company stock price with the benefit of hindsight.

26.     In public filings with the SEC, including, but not limited to the Company's Prospectus, the Company represented that the exercise price of incentive stock options ("ISO's") would be no less than 100% of the fair market value of UT Starcom's common stock, measure by the publicly traded closing price for UT Starcom company stock *on the day of the grant*.

27.     Despite this representation, the stock option grants to the Individual Defendants in fiscal year 2002 were consistently correlated to days with yearly-low closing prices, quarterly-low prices or directly in advance of sharp increases in the price of UT Starcom stock.  For example:

a.      In the fiscal year ending on December 31, 2002, UT Starcom made two option grants to Lu: first, a grant of 150,000 options purportedly on February 28, 2002.  On February 28, 2002, UT Starcom stock closed at its lowest price of the year to date, $ 20.25.  On March 1, 2002, the Company's stock price took a turn and began to rise steadily.  Second, UT Starcom granted 75,000 options to Lu purportedly on July 25, 2002.  On July 25, 2002, UT Starcom stock closed at $ 15.72, the lowest closing price for the year to date.  July 25, 2002 immediately preceded a rise in UT Starcom stock.

b.      In the fiscal year ending on December 31, 2002, UT Starcom made two option grants to Sophie: first, a grant of 100,000 options purportedly on February 28, 2002.  On February 28, 2002, UT Starcom stock closed at its lowest price of the year to date, $ 20.25.  On March 1, 2002, the Company's stock price took a turn and began to rise steadily.  Second, UT Starcom granted 50,000 options to Lu purportedly on July 25, 2002.  On July 25, 2002, UT Starcom stock closed at $ 15.72, the lowest closing price for the year to date.  July 25, 2002 immediately preceded a rise in UT Starcom stock.

28.     The only possible explanation for the strong correlation between the grant date of the options and the low share prices of UT Starcom stock is that the exercise prices for the options granted to the Individual Defendants were determined after the fact and keyed to a day on or near the day when UT Starcom stock hit a low price for the fiscal year, or directly in advance of sharp increases in the price of UT Starcom stock.

CLASS ACTION COMPLAINT

29.    As such, the date upon which the options were granted was determined in a fashion designed to ensure that the Individual Defendants were able to profit off the fluctuation in UT Starcom stock, with the benefit of hindsight.

30.    Named Officer and Company Employee, Michael Sophie has personally benefited through the exercise and subsequent sale of his stock options at backdated prices.  His profits total approximately $ 418,000.  These transactions are detailed below.

| Defendant | Trans. Date | Action | Shares | Dollar Price | Market Value | Profit |
|---|---|---|---|---|---|---|
| Sophie | 10/29/2003 | Option Exercise | 4,587 | $ 20.25 | $ 92,886.75 | |
| | 10/29/2003 | Sale | 4,597 | $ 32.46 | $ 149,218.62 | $ 56,331.87 |
| | 10/29/2003 | Option Exercise | 1,921 | $ 15.72 | $ 30,198.12 | |
| | 10/29/2003 | Sale | 1,921 | $ 32.46 | $ 62,355.66 | $ 32,157.54 |
| | 11/03/2003 | Option Exercise | 4,587 | $ 20.25 | $ 92,886.75 | |
| | 11/03/2003 | Sale | 4,587 | $ 31.40 | $ 144,031.80 | $ 51,145.05 |
| | 11/03/2003 | Option Exercise | 1,921 | $ 15.72 | $ 30,198.12 | |
| | 11/03/2003 | Sale | 1,921 | $ 31.40 | $ 60,319.40 | $ 30,121.28 |
| | 12/01/2003 | Option Exercise | 4,587 | $ 20.25 | $ 92,886.75 | |
| | 12/01/2003 | Sale | 4,587 | $ 37.52 | $ 172,104.24 | $ 79,217.49 |

| | 12/01/2003 | Option Exercise | 1,921 | $ 15.72 | $ 30,198.12 | |
| | 12/01/2003 | Sale | 1,921 | $ 37.52 | $ 72,075.92 | $ 41,877.80 |
| | 01/02/2004 | Option Exercise | 4,587 | $ 20.25 | $ 92,886.75 | |
| | 01/02/2004 | Sale | 4,587 | $ 38.36 | $ 175,957.32 | $ 83,070.57 |
| | 01/02/2004 | Option Exercise | 1,921 | $ 15.72 | $ 30,198.12 | |
| | 01/02/2004 | Sale | 1,921 | $ 38.36 | $ 73,689.56 | $ 43,491.44 |

31.     The practice of backdating stock options not only enriched this Individual Defendant, but also resulted in the overstatement of UT Starcom's profits during the Class Period. This is because options priced below the stock's fair market value when they are awarded bring the recipient an instant paper gain. Under accounting rules, that is the equivalent of additional compensation and must be treated as a cost to the company.

32.     Moreover, UT Starcom may owe large amounts in back taxes to the Internal Revenue Service. Tax rules allow companies to deduct from their corporate filings executives' gains from exercised stocks because the IRS views the option profit as comparable to extra compensation paid to employees. However, that only applies to options granted at the price on the day it was issued, or the day before. Options backdated to a day with a lower market price do not qualify for a deduction of gains from the CEO or the next four highest compensated executives.

33.     UT Starcom did not account for the amount by which the market price of UT Starcom stock exceeded the exercise price of the options. Thus, the practice of backdating caused UT Starcom to overstate its profits or in some years, understate its losses.

### Defendants' Misrepresentations During the Class Period

34.    During the Class Period, the market operated on false and misleading information with regards to UT Starcom. UT Starcom's practice during the Class Period was to backdate option grants to the Individual Defendants to the day UT Starcom stock hit its low price for the year, or directly in advance of sharp increases in the price of UT Starcom stock.

35.    Defendants had a duty to promptly disseminate accurate and truthful information with respect to UT Starcom's financial and operation conditions or to cause and direct that such information be disseminated and to promptly correct any previously disseminated information that was misleading to the market. As a result of their failure to do so, the price of UT Starcom's common stock was artificially inflated during the Class Period, damaging Plaintiff and the Class.

36.    UT Starcom issued materially false and misleading statements during the Class Period in the following SEC filings:

37.    UT Starcom materially misrepresented the Company's earnings in its Form 10-K for the fiscal year ending on December 31, 2002, filed with the SEC on February 21, 2003. In the Form 10-K, UT Starcom stated a net income of $ 107,862,000. However, by backdating stock options and thereby not accounting for the amount by which the market price of UT Starcom stock exceeded the exercise price of the option, UT Starcom overstated its profits. The Form 10-K was signed by Lu and Sophie.

38.    These statements were false and misleading when made because, as detailed above, UT Starcom's practice was to backdate option grants to the Individual Defendants to the day UT Starcom stock hit its low price for the year, or directly in advance of a sharp increase in the price of UT Starcom stock.

39.    On May 12, 2003, the Company filed with the SEC its quarterly report on Form 10-Q for the period ending March 31, 2003. For the three month period ending March 31, 2003, the Company reported net income of $ 41,168,000 ($0.37 per diluted share). The Form 10-Q was signed by Lu and Sophie.

40.    This statement was false and misleading when made because, as detailed above, UT Starcom's practice was to backdate option grants to the Individual Defendants to the day UT

-10-

1  Starcom stock hit its low price for the year, or directly in advance of a sharp increase in the price

2  of UT Starcom stock. UT Starcom's failure to account for these back-dated options properly

3  resulted in the Company understating its compensation expenses, and thereby overstating its

4  profits.

5      41.    On August 4, 2003, the Company filed with the SEC its quarterly report on Form

6  10-Q for the period ending June 30, 2003. For the three month period ending June 30, 2003, the

7  Company reported net income of $ 43,450,000 ($0.36 per diluted share). For the six month period

8  ending June 30, 2003, the Company reported a net income of $ 84,168,000 ($0.72 per diluted

9  share). The Form 10-Q was signed by Lu and Sophie.

10      42.    These statements were false and misleading when made because, as detailed above,

11 UT Starcom's practice was to backdate option grants to the Individual Defendants to the day UT

12 Starcom stock hit its low price for the year, or directly in advance of a sharp increase in the price

13 of UT Starcom stock. UT Starcom's failure to account for these back-dated options resulted in the

14 Company understating its compensation expenses, and thereby overstating its profits.

15      43.    On November 12, 2003, the Company filed with the SEC its quarterly report on

16 Form 10-Q for the period ending September 30, 2003. For the three month period ending

17 September 30, 2003, the Company reported a net income of $ 65,204,000 ($0.50 per diluted

18 share). For the nine month period ending September 30, 2003, the Company reported a net

19 income of $ 149,822,000 ($1.23 per diluted share). The Form 10-Q was signed by Lu and Sophie.

20      44.    These statements were false and misleading when made because, as detailed above,

21 UT Starcom's practice was to backdate option grants to the Individual Defendants to the day UT

22 Starcom stock hit its low price for the year, or directly in advance of a sharp increase in the price

23 of UT Starcom stock. UT Starcom's failure to account for these back-dated options resulted in the

24 Company understating its compensation expenses, and thereby overstating its profits.

25      45.    UT Starcom materially misrepresented the Company's earnings in its Form 10-K

26 for the fiscal year ending on December 31, 2003, filed with the SEC on March 9, 2004 and

27 restated on April 13, 2004 and in the Company's 2006 Form 10-K. In the restated Form 10-K, UT

28 Starcom stated a net income of $ 209,856,000 ($1.70 per diluted share). However, by backdating

1    stock options and thereby not accounting for the amount by which the market price of UT Starcom

2    stock exceeded the exercise price of the option, UT Starcom overstated its profits. This Form 10-

3    K was signed by Lu and Sophie.

4        46.    On May 10, 2004, the Company filed with the SEC its quarterly report on Form 10-

5    Q for the period ending March 31, 2004. For the three month period ending March 31, 2004, the

6    Company reported net income of $ 54,766,000 ($0.40 per diluted share). By signing the Form 10-

7    Q and certifications, pursuant to the Sarbannes-Oxley Act, Sophie certified that the information

8    contained in the quarterly report fairly presented in all material respects UT Starcom's financial

9    condition and results. Sophie further certified that they had disclosed all instances of fraud

10   involving management or other employees who had a significant role in the Company's internal

11   control financial reporting.

12       47.    These statements were false and misleading when made because, as detailed above,

13   UT Starcom's practice was to backdate option grants to the Individual Defendants to the day UT

14   Starcom stock hit its low price for the year, or directly in advance of a sharp increase in the price

15   of UT Starcom stock. UT Starcom's failure to account for these back-dated options resulted in the

16   Company understating its compensation expenses, and thereby overstating its profits.

17       48.    On August 16, 2004, the Company filed with the SEC its quarterly report on Form

18   10-Q for the period ending June 30, 2004. For the three month period ending June 30, 2004, the

19   Company reported net income of $ 43,863,000 ($0.33 per diluted share). For the six month period

20   ending June 30, 2004, the Company reported net income of $ 98,629,999 ($0.73 per diluted share).

21   By signing the Form 10-Q and certifications, pursuant to the Sarbannes-Oxley Act, Sophie

22   certified that the information contained in the quarterly report fairly presented in all material

23   respects UT Starcom's financial condition and results. Sophie further certified that they had

24   disclosed all instances of fraud involving management or other employees who had a significant

25   role in the Company's internal control financial reporting.

26       49.    These statements were false and misleading when made because, as detailed above,

27   UT Starcom's practice was to backdate option grants to the Individual Defendants to the day UT

28

1 | Starcom stock hit its low price for the year, or directly in advance of a sharp increase in the price

2 | of UT Starcom stock.

3 |     50.    On November 9, 2004, the Company filed with the SEC its quarterly report on

4 | Form 10-Q for the period ending September 30, 2004. For the three month period ending

5 | September 30, 2004, the Company reported a net income of $ 4,897,000 ($0.04 per diluted share).

6 | For the nine month period ending September 30, 2004, the Company reported a net income of $

7 | 103,616,000 ($0.78 per diluted share). By signing the Form 10-Q and certifications, pursuant to

8 | the Sarbannes-Oxley Act, Sophie certified that the information contained in the quarterly report

9 | fairly represented in all material respects UT Starcom's financial condition and results. Sophie

10 | further certified that they had disclosed all instances of fraud involving management or other

11 | employees who had a significant role in the Company's internal control financial reporting.

12 |     51.    These statements were false and misleading when made because, as detailed above,

13 | UT Starcom's practice was to backdate option grants to the Individual Defendants to the day UT

14 | Starcom stock hit its low price for the year, or directly in advance of a sharp increase in the price

15 | of UT Starcom stock. UT Starcom's failure to account for these back-dated options resulted in the

16 | Company understating its compensation expenses, and thereby overstating its profits.

17 |     52.    UT Starcom materially misrepresented the Company's earnings in its Form 10-K

18 | for the fiscal year ending on December 31, 2004, filed with the SEC on April 15, 2005 and

19 | restated in its 2006 Form 10-K. In the restated Form 10-K, UT Starcom stated a net income of $

20 | 69,824,000 ($0.54 per diluted share). However, by backdating stock options and thereby not

21 | accounting for the amount by which the market price of UT Starcom stock exceeded the exercise

22 | price of the option, UT Starcom overstated its profits. The Form 10-K was signed by Lu and

23 | Sophie.

24 |     53.    On May 10, 2005, the Company filed with the SEC its quarterly report on Form 10-

25 | Q for the quarter ending on March 31, 2005. For the three month period ending March 31, 2005,

26 | the Company reported net income of $ 37,044,000 ($0.29 per diluted share). By signing the Form

27 | 10-Q and certifications, pursuant to the Sarbanes-Oxley Act, Sophie certified that the information

28 | contained in the quarterly report fairly presented in all material respects UT Starcom's financial

-13-

condition and results. Sophie further certified that they had disclosed all instances of fraud

involving management or other employees who had a significant role in the Company's internal

control financial reporting.

54.    These statements were false and misleading when made because, as detailed above,

UT Starcom's practice was to backdate option grants to the Individual Defendants to the day UT

Starcom stock hit its low price for the year, or directly in advance of a sharp increase in the price

of UT Starcom stock.

55.    On August 9, 2005, the Company filed with the SEC its quarterly report on Form

10-Q for the period ending June 30, 2005. For the three month period ending June 30, 2005, the

Company reported net loss of $ 73,948,000 ($0.64 per diluted share). For the six month period

ending June 30, 2005, the Company reported net loss of $ 36,904,000 ($0.32 per diluted share).

By signing the Form 10-Q and certifications, pursuant to the Sarbannes-Oxley Act, Sophie

certified that the information contained in the quarterly report fairly presented in all material

respects UT Starcom's financial condition and results. Sophie further certified that they had

disclosed all instances of fraud involving management or other employees who had a significant

role in the Company's internal control financial reporting.

56.    These statements were false and misleading when made because, as detailed above,

UT Starcom's practice was to backdate option grants to the Individual Defendants to the day UT

Starcom stock hit its low price for the year, or directly in advance of a sharp increase in the price

of UT Starcom stock. UT Starcom's failure to account for these back-dated options properly had

the effect of causing the Company to understate its compensation expenses, and thereby understate

its losses.

57.    On November 9, 2005, the Company filed with the SEC its quarterly report on

Form 10-Q for the period ending September 30, 2005. For the three month period ending

September 30, 2005, the Company reported net loss of $ 402,661,000 ($3.40 per diluted share).

For the nine month period ending September 30, 2005, the Company reported net loss of $

439,367,000 ($3.79 per diluted share). By signing the Form 10-Q and certifications, pursuant to

the Sarbannes-Oxley Act, Sophie certified that the information contained in the quarterly report

-14-

1   fairly presented in all material respects UT Starcom's financial condition and results. Sophie

2   further certified that they had disclosed all instances of fraud involving management or other

3   employees who had a significant role in the Company's internal control financial reporting.

4         58.    These statements were false and misleading when made because, as detailed above,

5   UT Starcom's practice was to backdate option grants to the Individual Defendants to the day UT

6   Starcom stock hit its low price for the year, or directly in advance of a sharp increase in the price

7   of UT Starcom stock. UT Starcom's failure to account for these back-dated options properly had

8   the effect of causing the Company to understate its compensation expenses, and thereby understate

9   its losses.

10         59.    UT Starcom materially misrepresented the Company's earnings in its Form 10-K

11   for the fiscal year ending on December 31, 2005, filed with the SEC on June 1, 2006. In the Form

12   10-K, UT Starcom stated a net loss of $ 487,359,000 ($4.16 per diluted share). However, by

13   backdating stock options and thereby not accounting for the amount by which the market price of

14   UT Starcom stock exceeded the exercise price of the option, UT Starcom understated its losses.

15   The Form 10-K was signed by Lu and Barton.

16         60.    On June 22, 2006, the Company filed with the SEC its quarterly reports on Form

17   10-Q for the period ending April 30, 2006. For the three month period ending March 31, 2006,

18   the Company reported net loss of $ 10,635,000 ($0.09 per diluted share). By signing the Form 10-

19   Q and certifications, pursuant to the Sarbannes-Oxley Act, Barton certified that the information

20   contained in the quarterly report fairly presented in all material respects UT Starcom's financial

21   condition and results. Barton further certified that they had disclosed all instances of fraud

22   involving management or other employees who had a significant role in the Company's internal

23   control financial reporting.

24         61.    These statements were false and misleading when made because, as detailed above,

25   UT Starcom's practice was to backdate option grants to the Individual Defendants to the day UT

26   Starcom stock hit its low price for the year, or directly in advance of a sharp increase in the price

27   of UT Starcom stock. UT Starcom's failure to account for these back-dated options properly had

28

1    the effect of causing the Company to understate its compensation expenses, and thereby understate

2    its losses.

3        62.    On August 9, 2006, the Company filed with the SEC its quarterly reports on Form

4    10-Q for the period ending June 30, 2006. For the three month period ending June 30, 2006, the

5    Company reported net loss of $ 21,443,000 ($0.18 per diluted share). For the six month period

6    ending June 30, 2006, the Company reported net loss of $ 32,078,000 ($0.27 per diluted share).

7    By signing the Form 10-Q and certifications, pursuant to the Sarbannes-Oxley Act, Barton

8    certified that the information contained in the quarterly report fairly presented in all material

9    respects UT Starcom's financial condition and results. Barton further certified that they had

10    disclosed all instance of fraud involving management or other employees who had a significant

11    role in the Company's internal control financial reporting.

12        63.    These statements were false and misleading when made because, as detailed above,

13    UT Starcom's practice was to backdate option grants to the Individual Defendants to the day UT

14    Starcom stock hit its low price for the year, or directly in advance of a sharp increase in the price

15    of UT Starcom stock. UT Starcom's failure to account for these back-dated options properly had

16    the effect of causing the Company to understate its compensation expenses, and thereby understate

17    its losses.

18        64.    UT Starcom's 10-Ks, 10-Qs, and proxy statements during the Class Period were

19    false and misleading as a result of Defendants having either knowingly, or with deliberate

20    recklessness, manipulated the grant dates on stock options in order to enrich the Individual

21    Defendants by receiving favorable backdated exercise prices on the options. Defendants thereby

22    under-reported the Company's compensation expenses while inflating the Company's net income

23    during the Class Period. Furthermore, the Company's financial statements did not comply with

24    Generally Accepted Accounting Principles on account of the understatement of expenses and the

25    overstatement of net income. Each dollar diverted to the Individual Defendants via the backdating

26    of options has come at the expense of the Company. This was the result of deficient and defective

27    controls.

28

65.     Thus, throughout the Class Period, Defendants have been omitting material facts and putting forth false and misleading information regarding their stock option practices. Failing to disclose truthful financial information, and failing to correct material misrepresentations that they have previously put forth regarding their stock options, Defendants artificially inflated the price of UT Starcom's common stock during the Class Period. UT Starcom had a duty to correct these misrepresentations in its reportings to the SEC, and has not yet done so.

### THE TRUTH IS REVEALED

66.     On November 7, 2006, UT Starcom announced in a press release that it had commenced a voluntary review of its historical equity award grant practices. The Nominating and Corporate Governance committee of the board directed the review. They were assisted by independent legal counsel and independent accounting counsel. In reaction to this news, the Company's share price fell 9% from a closing price of $ 10.23 on November 7, 2007 to a closing price of $ 9.32 on November 9, 2006 after the market had absorbed the information.

67.     After this announcement, Forbes.com noted that UT Starcom's stock had been rising since early October, but after the November 7th announcement that the Company was investigating grants of stock option grants, the share price tumbled.

68.     On February 1, 2007, the Company provided an update on the equity grant review in a press release. Although the review was ongoing at that point, the Company indicated that incorrect measurement dates for certain stock option grants were used for financial accounting and disclosure purposes. The Company determined that its financial statements for each of the three fiscal years in the period ended December 31, 2005 and financial statements for fiscal years prior to fiscal 2003 should no longer be relied upon. At this time, the Company expected to record additional compensation charges of approximately $ 50 million.

69.     On July 24, 2007, UT Starcom announced the preliminary results of its review of historical equity award practices. The press release stated, in relevant part:

> As previously communicated on February 1, 2007, the independent review by the Nominating and Corporate Governance Committee of the Company's Board of Directors (the "Governance Committee") found that in certain instances all actions that establish a measurement date under the requirements of Accounting Principles

-17-

Board No. 25, Accounting for Stock Issued to Employees, had not occurred at the grant date, which had been used as the measurement date in accounting for Company stock option grants. A later date, when all such actions had taken place, should have been used as the measurement date for these stock options. The Audit Committee of the Company's Board of Directors (the "Audit Committee") then determined, in consultation with and on the recommendation of the Company's management, the effect of using incorrect measurement dates would require the Company to record material additional stock-based compensation charges in its previously issued financial statements.

The Company therefore announced its previously issued financial statements for the years 2000 through 2006, including interim periods within these fiscal years, should no longer be relied upon.

The Company has now determined that *the amount of the non-cash restatement will be approximately $28 million over the years 2000 through 2006*. (emphasis added)

70.   Based in substantial part on these revelations, the market responded sharply to this announcement and UT Starcom stock plummeted by 22% from a closing price of $ 4.73 on July 22, 2007 to a closing price of $ 3.70 on July 25, 2007, when the market had fully absorbed the news. The stock price continued to fall in the subsequent days.

## CAUSATION ALLEGATIONS

71.   UT Starcom common stock was publicly traded in an efficient market at all relevant times. As described, *supra.*, Defendants' material misrepresentations and omissions had the effect of creating and maintaining artificially inflated prices for UT Starcom securities. Those misrepresentations and omissions that were not immediately followed by an upward movement in the Company's stock served to maintain the share price at artificially inflated levels by concealing the liability UT Starcom faces as a result of the actions detailed herein, by overstating UT Starcom's profits during the relevant time, and by understating the taxes owed by UT Starcom during the Class Period.

72.   Defendants had a duty to promptly disseminate accurate and truthful information with respect to UT Starcom's financial and operational conditions or to cause and direct that such information be disseminated and to promptly correct any previously disseminated information that was misleading to the market. As a result of their failure to do so, the price of UT Starcom's common stock was artificially inflated during the Class Period, damaging Plaintiff and the Class.

73.     In fact, the Individual Defendants signed and/or reviewed the Company's SEC filings containing the financial results, as alleged herein.  The Individual Defendants are thereby responsible for the under-reporting of compensation expenses and over-reporting of net income.  Additionally, since the departures related to the Company's stock option program, which the Individual Defendants themselves manipulated, they knew or were deliberately reckless in approving the financial statements and issuing the false and misleading statements set forth herein.

74.     Until shortly before Plaintiff filed this Complaint, he was unaware of all of the facts, as described herein, and could not have reasonably discovered Defendants' fraudulent scheme by the exercise of reasonable diligence.

75.     Defendants' false and misleading statements and omissions in their press releases and other public statements directly caused losses to the Class.  On the strength of these false statements, misrepresentations, and material omissions in its press releases, announcements, and other public statements concerning its financial condition, the Company's stock was artificially inflated during the Class Period.  When the truth was revealed on November 6, 2006 and July 24, 2007, each revelation spurred a significant drop in the Company's share price, as detailed *supra*.

76.     The timing and magnitude of the decline in the value of UT Starcom's stock price negates any inference that the loss suffered by Plaintiff and the Class was the result of factors unrelated to Defendants' fraudulent conduct.

## DEFENDANTS ACTED WITH SCIENTER

77.     Each misrepresentation and/or omission of material fact alleged herein was made with reckless disregard for, or knowledge of its falsity and misleading nature.  At all relevant times, each Defendant knew or recklessly disregarded the liability UT Starcom faces as a result of the actions detailed herein, knew or recklessly disregarded that UT Starcom's profits were overstated during the relevant time, and knew or recklessly disregarded that the taxes owed by UT Starcom were understated during the Class Period.  Thus, the misrepresentations detailed herein were made with Defendants' knowledge, or with deliberate recklessness.

78.   Since the Stock Incentive Plan represented to the public that options were not backdated, the misrepresentations detailed herein must have been made with Defendants' knowledge or with deliberate recklessness.

79.   The Individual Defendants knowingly stood to profit by backdating their option grants. By backdating the option grants to a date when UT Starcom stock reached a low point or a date prior to UT Starcom stock increasing in price, the Individual Defendants ensured an increase in their profits for future dispositions.

80.   As detailed herein, the Individual Defendants not only knew of and condoned the options backdating practice, they also stood to profit substantially from the practice. Options priced below the stock's fair market value when they are awarded bring the recipient an instant paper gain. Under accounting rules, that is the equivalent of additional compensation and must be treated as a cost to the company.

81.   Indeed, the actions detailed herein could not have been done without scienter. As described above, backdating the options in question necessitated an affirmative act by the Individual Defendants -- an act the Individual Defendants were plainly aware of. By signing the SEC filings, the Individual Defendants became aware of the representations made to the public.

### FRAUD ON THE MARKET ALLEGATIONS

82.   At all relevant times, the market for UT Starcom securities was an efficient market for the following reasons, among others:

    a.   At all relevant times during the Class Period, UT Starcom's common stock was listed and actively traded either over the counter or on the NASDAQ GS, a highly efficient National Market.

    b.   As a registered and regulated issuer of securities, UT Starcom filed periodic reports with the SEC, in addition to the frequent voluntary dissemination of information described in this Complaint.

    c.   The Company's stock was followed by numerous financial analysts. Thus, the Company's stock reflected the effect of information disseminated in the market.

83.    As a result of the above, the market for UT Starcom securities promptly digested current information with respect to the Company from all publicly available sources and reflected such information in the securities' prices.  Under these circumstances, all purchasers of UT Starcom securities during the Class Period suffered similar injury through their purchase of securities at prices which were artificially inflated by Defendants' misrepresentations and omissions.  Thus, a presumption of reliance applies.

## INAPPLICABILITY OF STATUTORY SAFE HARBOR

84.    The statutory safe harbor for certain forward-looking statements does not apply to the misrepresentations and omissions alleged in this complaint.  Many of the statements were not specifically identified as "forward-looking statements" when made.  To the extent that there were any properly identified forward-looking statements, there were no meaningful cautionary statements identifying the important, then-present factors that could and did cause actual results to differ materially form those in the purportedly forward-looking statements.  Alternatively, to the extent that the statutory safe harbor does apply to any forward-looking statements pleaded herein, Defendants are nonetheless liable because at the time each of the misrepresentations was made, the particular speakers knew that the statement was false or misleading at that time.

85.    Any warnings or other cautionary language contained in the press releases and other public statements described herein were generic, "boilerplate" statements of risk that would affect any similar company, and misleadingly contained no factual disclosure of any of the problems with the Company which placed the ability of the Company to accurately depict its own financial situations into serious question.  As such, any forward-looking statements complained of herein were not accompanied by meaningful cautionary language.

86.    Any relevant purported risk disclosures were, in fact, false and misleading in and of themselves, by virtue of the fact that the events which the risk disclosures purported to warn against as contingencies had frequently already become a reality or a certainty.

# CLAIMS FOR RELIEF

## COUNT I
### (Violations of Section 10(b) of the Exchange Act and Rule 10b-5 Promulgated Thereunder Against All Defendants)

87.     Plaintiff incorporates by reference and realleges all preceding paragraphs though fully set forth herein.

88.     During the Class Period, Defendants engaged in a plan, scheme, and course of business which operated as a fraud upon Plaintiff and Class Members, and made various untrue statements of material fact and omitted to state material facts necessary to make the statements made, in light of the circumstances under which they were made, not misleading to Plaintiff and other Class Members as set forth above.  The purpose and effect of this scheme was to induce Plaintiffs and members of the Class to purchase the Company's securities during the Class Period at artificially inflated prices.

89.     By reason of the foregoing, Defendants knowingly or recklessly violated § 10(b) of the Exchange Act and Rule 10b-5 promulgated thereunder in that they themselves or a person whom they controlled: (a) employed devices, schemes and artifices to defraud; (b) made untrue statements of material facts or omitted to state material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading; or (c) engaged in acts, practices and a course of business that operated as a fraud or deceit upon Plaintiff and other members of the Class in connection with their purchases of the Company's common stock during the Class Period.

90.     As a result of the foregoing, the market price of the Company's securities was artificially inflated during the Class Period.  In ignorance of the false and misleading nature of the representations described above, Plaintiff and other members of the Class relied, to their detriment, directly on the misstatements or the integrity of the market both as to price and as to whether to purchase these securities.  Plaintiff and other members of the Class would not have purchased UT Starcom stock at the prices they paid, or at all, if they had been aware that the market prices had been artificially and falsely inflated by Defendants' false and misleading

statements and omissions.  At the time of the purchase of UT Starcom securities by Plaintiff and the other members of the Class, the fair market value of said securities was substantially less than the prices paid.  Plaintiff and the other members of the Class have suffered substantial damages as a result.

## COUNT II
### (Violations of Section 20(a) of the Exchange Act Against the Individual Defendants)

91.    Plaintiff incorporates by reference and realleges all preceding paragraphs as though fully set forth herein.

92.    The Individual Defendants are liable for the material misrepresentations and omissions complained of herein under § 20(a) of the Exchange Act in that they functioned as control persons of UT Starcom by virtue of their executive and directorial positions with UT Starcom, their knowledge and involvement in the business of the Company, their daily access to confidential information regarding the operations and finances of the Company, and their power and ability to make public statements on behalf of UT Starcom to shareholders, potential investors, and the media.  As such, they had the power and ability to control the Company's actions.

## COUNT III
### (Violations of Section 14(a) of the Exchange Act and Rule 14a-9 Promulgated Thereunder Against All Defendants)

93.    Plaintiff incorporates by reference and realleges all preceding paragraphs as though fully set forth herein.

94.    UT Starcom's proxy statements were required to disclose the Company's executive officers' and directors' direct and indirect compensation, including a description of stock options granted to these individuals by the Company.

95.    The proxy statements during the Class Period misrepresented that the stock options' exercise prices would be the Company's market price on the date of grant, when in fact the options were backdated to a time when the Company's market price was lower than that on the actual grant date.  Thus, by backdating options, the Company received less for the stock when

exercised. The Company should have disclosed the difference between the Company's stock price on the actual date of the option grant, and the lower, backdated price should have been disclosed as additional compensation to the Individual Defendants. Therefore, the amounts of compensation to the Individual Defendants were materially understated.

96. Defendants solicited proxies from shareholders for the election of directors each year during the Class Period. Since the proxy statements failed to set forth the material information that the option grants were being and had been backdated, the proxy statements misrepresented material information about the exercise price of the stock options granted to the Company's executive officer and directors and their executive compensation.

97. Defendants negligently omitted the material facts about option grant backdating and negligently misrepresented the terms of the Individual Defendants' compensation and management integrity. These facts would have been material to a reasonable investor or shareholder in considering how to vote.

98. In reliance on the false and misleading proxy statements, Plaintiff and other members of the Class voted for the Individual Defendants as directors, which allowed the Individual Defendants to cash in their backdated options, to the detriment of the Company and its shareholders.

99. At the time of the materially false and misleading proxy statements regarding stock options and executive compensation, Plaintiff and other members of the Class were ignorant of the true facts. Had Plaintiff and the other members of the Class known the facts that were not disclosed by Defendants, Plaintiff and other members of the Class would not have voted for the Individual Defendants as directors.

100. By virtue of the foregoing, Defendants have violated Section 14(a) of the Exchange Act and Rule 14a-9 promulgated thereunder.

101. As a direct and proximate result of Defendants' wrongful conduct, Plaintiff and the other members of the Class suffered injury in correlation with their proxy voting during the Class Period.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, on behalf of himself and on behalf of the Class, prays for judgment as follows:

1.  Declaring this action to be a class action pursuant to Rules 23(a) and 23(b)(3) of the Federal Rules of Civil Procedure on behalf of the Class defined herein;

2.  Awarding Plaintiff and members of the Class recissory or compensatory damages in an amount which may be proven at trial, together with interest thereon;

3.  Awarding Plaintiff and the members of the Class pre-judgment and post-judgment interest, as well as their reasonable attorneys' fees and expert witness fees and other costs; and

4.  Awarding such other and further relief as this Court may deem just and proper including any extraordinary equitable relief and/or injunctive relief as permitted by law or equity to attach, impound or otherwise restrict the Defendants' assets to assure Plaintiff and the members of the Class have an effective remedy.

## JURY DEMAND

Plaintiff hereby demands a jury trial.

DATED: September 4, 2007               Respectfully submitted,

*C.P. Bartholomew / MP*

CHRISTINE PEDIGO BARTHOLOMEW

Mark Punzalan
FINKELSTEIN THOMPSON LLP
100 Bush Street
Suite 1450
San Francisco, California 94104
Telephone: 415.398.8700
Facsimile: 415.398.8704

- and -

-25-

CLASS ACTION COMPLAINT

Donald J. Enright, Esq.
Elizabeth K. Tripodi
FINKELSTEIN THOMPSON LLP
1050 30th Street, NW
Washington, D.C. 20007
Telephone: 202.337.8000
Facsimile: 202.337.8090

*Counsel for Plaintiffs*

CLASS ACTION COMPLAINT

## PLAINTIFF CERTIFICATION

I, Peter Rudolph, hereby declare that:

1.      I have reviewed a draft Complaint in this class action and have authorized the filing thereof.

2.      I did not purchase (or otherwise acquire) or sell securities of UTSTARcom, Inc. the subject of the Complaint, at the direction of my counsel or in the hope to participate in any private action arising under the Securities Act of 1933 or the Securities Exchange Act of 1934.

3.      I am willing to serve as a representative plaintiff on behalf of the class defined in the Complaint, including providing testimony at deposition and trial, if necessary.

4.      I have engaged in the following transactions involving the securities of UTSTARcom, Inc.:

| Purchases | Trade Date | Price Per Security | Total |
|-----------|-----------|--------------------|-------|
| See spreadsheet | | | |

| Sales | Date | Price Per Security | Total |
|-------|------|--------------------|-------|
| | | | |

5.      During the last three years preceding the date of this Certification, I have sought to serve as a representative plaintiff on behalf of a class in the following actions brought under the Securities Act of 1933 or the Securities Exchange Act of 1934:

6.      I will not accept any payment for serving as a representative plaintiff on behalf of the class beyond my pro rata share of any recovery, except as ordered by the Court.

7.      Nothing herein shall be construed to be or constitute a waiver of my attorney-client privilege.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on the _30_ day of August, 2007.

Peter Rudolph