Mark Punzalan (State Bar No. 247599)
mpunzalan@finkelsteinthompson.com
**FINKELSTEIN THOMPSON LLP**
100 Bush Street, Suite 1450
San Francisco, California 94104
Telephone: (415) 398-8700
Facsimile: (415) 398-8704

[Additional Counsel Listed on Signature Page]

[Proposed] Lead Counsel

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

**SAN FRANCISCO DIVISION**

| | |
|---|---|
| PETER RUDOLPH, individually and on behalf of all others similarly situated, <br><br> Plaintiff, <br><br> vs. <br><br> UT STARCOM, HONG LIANG LU, MICHAEL SOPHIE, THOMAS TOY, and FRANCIS BARTON, <br><br> Defendants. | Case No. 3:07-CV-04578-SI <br><br> **MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO APPOINT JAMES R. BARTHOLOMEW AS LEAD PLAINTIFF AND FOR APPROVAL OF LEAD PLAINTIFF'S SELECTION OF LEAD COUNSEL** <br><br> **DATE:** December 14, 2007 <br> **TIME:** 9:00 a.m. <br> **COURTROOM:** 10 <br> **JUDGE:** Hon. Susan Illston |

# PRELIMINARY STATEMENT

UTStarcom Inc. ("UTStarcom" or the "Company") investor James R. Bartholomew ("Mr. Bartholomew" or "Movant") hereby moves to be appointed as Lead Plaintiff of a proposed class of persons or entities who purchased or otherwise acquired UTStarcom securities between September 4, 2002 and July 24, 2007, inclusive (the "Class Period"). 15 U.S.C. § 78u-4(a)(3)(B). Mr. Bartholomew further moves for approval of his selection of the law firm of Finkelstein Thompson LLP to serve as Lead Counsel for the Class. Pursuant to the Private Securities Litigation Reform Act of 1995 ("PSLRA"), the Court shall appoint as Lead Plaintiff the movant or group of movants that has demonstrated the "largest financial interest in the litigation" and has satisfied the typicality and adequacy prongs of Rule 23 of the Federal Rules of Civil Procedure ("Rule 23"). *See* 15 U.S.C. § 78u-4(a)(3)(B)(iii). Mr. Bartholomew has losses totaling $2,106,513[1] as a result of his investments in UTStarcom during the Class Period.[2] In addition to his large financial stake in this litigation, Movant preliminarily satisfies each of the requirements of the PSLRA and Rule 23 and, therefore, is qualified for appointment as Lead Plaintiff in these actions. *See* Punzalan Decl. at Exhibit A.[3] As demonstrated herein, Mr. Bartholomew is presumptively the most adequate plaintiff and should be appointed Lead Plaintiff.

---

[1] Mr. Bartholomew has losses of $2,106,513 using the Last-In, First-Out ("LIFO") methodology. *See* Declaration of Mark Punzalan In Support of Motion to Appoint James R. Bartholomew As Lead Plaintiff and For Approval of Lead Plaintiff's Selection Of Lead Counsel ("Punzalan Declaration" or "Punzalan Decl.") at Exhibit C. LIFO is the most broadly accepted methodology for calculating losses in circumstances such as these. *Johnson v. Dana Corp.*, 236 F.R.D. 349, 351-52 (N.D.Ohio 2006); *In re eSpeed, Inc., Sec. Litig.*, 232 F.R.D. 95, 100-01 (S.D.N.Y.2005).

[2] The losses suffered by Movant are not the same as his legally compensable damages, the measurement of which is often a complex legal question which cannot be determined at this stage of the litigation. The approximate losses may, however, be determined from the certifications required under Section 21D of the Exchange Act, 15 U.S.C. § 78u(a)(2)(A), and based upon reference to information concerning the current market for the Company's securities.

[3] Mr. Bartholomew's sworn certification detailing relevant transactions and demonstrating his qualification pursuant to the federal securities laws are attached as Exhibit A to the Punzalan Declaration.

## PROCEDURAL BACKGROUND

The above action is a securities purchaser class action lawsuit that has been brought against certain officers and/or directors of the Company alleging violations of Sections 10(b) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act"), and Rule 10b-5 promulgated thereunder. Currently pending in this jurisdiction are two actions filed against UTStarcom, Inc. ("UTStarcom" or the "Company"): *In re UTStarcom Sec. Litig.*, Master File No. C-04-4908-JW(PVT) ("*UTStarcom*"), and *Peter Rudolph v. UTStarcom, Hong Liang Lu, Michael Sophie, Thomas Toy and Francis Barton*, Case No. C-07-4578-SI ("*Rudolph*"). On September 20, 2007, Lead Plaintiffs in the *UTStarcom* action submitted an administrative motion to the Court requesting that the *Rudolph* case be related to their action, and thereby automatically consolidated therewith. Plaintiff Rudolph submitted a memorandum in opposition to the administrative motion to relate the cases pursuant to Local Rules 3-12 and 7-11. The parties are still awaiting a decision by the Court on this administrative motion. Mr. Bartholomew is a class member (*see* Punzalan Decl. at Exhibit A) and is timely filing this motion within the 60 day period following publication of the September 4, 2007 notice pursuant to Section 21D of the PSLRA.

## THE CLAIMS ASSERTED

UTStarcom manufactures, integrates and supports IP-based, end-to-end networking and telecommunications solutions. The Company sells converged broadband wireless and wireline products, an integrated IPTV solution, and a comprehensive line of handset and customer premise equipment to operators in both emerging and established telecommunications markets worldwide. UTStarcom common stock trades on the NASDAQ under the symbol "UTSI". Prior to and during the Class Period, UTStarcom embarked on a fraudulent scheme whereby the Company backdated stock option grants to the Individual Defendants and/or other directors or executives in order to provide the recipients with a more profitable exercise price. In public filings with the SEC, including, but not limited to the Company's Prospectus, the Company

represented that the exercise price of incentive stock options ("ISO's") would be no less than 100% of the fair market value of UT Starcom's common stock, measured by the publicly traded closing price for UT Starcom company stock *on the day of the grant*. Despite this representation, the stock option grants to the Individual Defendants in fiscal year 2002 were consistently correlated to days with yearly-low closing prices, quarterly-low prices or directly in advance of sharp increases in the price of UTStarcom stock.

On November 7, 2006, UTStarcom announced in a press release that it had commenced a voluntary review of its historical equity award grant practices. The Nominating and Corporate Governance committee of the board directed the review. They were assisted by independent legal counsel and independent accounting counsel. In reaction to this news, the Company's share price fell 9% from a closing price of $10.23 on November 7, 2007 to a closing price of $9.32 on November 9, 2006 after the market had absorbed the information. On February 1, 2007, the Company provided an update on the equity grant review in a press release. Although the review was ongoing at that point, the Company indicated that incorrect measurement dates for certain stock option grants were used for financial accounting and disclosure purposes. The Company determined that its financial statements for each of the three fiscal years in the period ended December 31, 2005 and financial statements for fiscal years prior to fiscal 2003 should no longer be relied upon. At this time, the Company expected to record additional compensation charges of approximately $50 million.

On July 24, 2007, UT Starcom announced the preliminary results of its review of historical equity award practices. The press release stated, in relevant part:

> As previously communicated on February 1, 2007, the independent review by the Nominating and Corporate Governance Committee of the Company's Board of Directors (the "Governance Committee") found that in certain instances all actions that establish a measurement date under the requirements of Accounting Principles Board No. 25, Accounting for Stock Issued to Employees, had not occurred at the grant date, which had been used as the measurement date in accounting for Company stock option grants. A later date, when all such actions had taken place, should have been used as the measurement date for these stock options. The Audit Committee of the Company's Board of Directors (the "Audit Committee") then determined, in consultation with and on the recommendation of the Company's management, the effect of using incorrect measurement dates would require the Company to record material additional stock-based

compensation charges in its previously issued financial statements. The Company therefore announced its previously issued financial statements for the years 2000 through 2006, including interim periods within these fiscal years, should no longer be relied upon. The Company has now determined that *the amount of the non-cash restatement will be approximately $28 million over the years 2000 through 2006.* (emphasis added).

Based in substantial part on these revelations, the market responded sharply to this announcement and UTStarcom stock plummeted by 22% from a closing price of $ 4.73 on July 22, 2007 to a closing price of $ 3.70 on July 25, 2007, when the market had fully absorbed the news. The stock price continued to fall in the subsequent days.

## ARGUMENT

### I. MR. BARTHOLOMEW SHOULD BE APPOINTED LEAD PLAINTIFF

#### A. Mr. Bartholomew Has Complied with the Procedural Requirements of the PSLRA

The PSLRA sets forth a detailed procedure for the selection of a Lead Plaintiff to oversee securities class actions brought pursuant to the Federal Rules of Civil Procedure. *See* 15 U.S.C. § 78u-4(a)(3). First, the plaintiff who files the initial action must, within 20 days of filing the action, publish a notice to the class informing class members of their right to file a motion for appointment as Lead Plaintiff. 15 U.S.C. § 78u-4(a)(3)(A)(i). Plaintiff in the first-filed action published a notice on *PR Newswire* on September 5, 2007.[4] *See* Punzalan Decl. at Exhibit B. This notice indicated that applications for appointment as Lead Plaintiff were to be made no later than November 5, 2007. Within 60 days after publication of the required notice, any member or members of the proposed class may apply to the Court to be appointed as Lead Plaintiff, whether or not they have previously filed a complaint in this action. 15 U.S.C. § 78u-4(a)(3)(A), (B). Next, according to the PSLRA, the Court shall appoint as Lead Plaintiff the movant that the Court determines to be most capable of adequately representing the interests of the class members within 90 days after publication of the initial notice of pendency. 15 U.S.C. § 78u-

---

[4] *PR Newswire* is a suitable vehicle for meeting the statutory requirement in 15 U.S.C. § 78u-4(a)(3)(A) that notice be published "in a widely circulated national business-oriented publication or wire service." *Tanne v. Autobytel, Inc.*, 226 F.R.D. 659, 665 (C.D. Cal. 2005).

4(a)(3)(B)(i). In determining who is the "most adequate plaintiff," the Exchange Act provides that:

> [T]he court shall adopt a presumption that the most adequate plaintiff in any private action arising under this title is the person or group of persons that-
> (aa) has either filed the complaint or made a motion in response to the notice...
> (bb) in the determination of the court, has the largest financial interest in the relief sought by the class; and
> (cc) otherwise satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure     [pertaining to class actions]

15 U.S.C. § 78u-4(a)(3)(B)(ii); *In re Cavanaugh*, 306 F.3d 726, 729-30 (9th Cir. 2002); *In re Silicon Storage Tech., Inc. Sec. Litig.*, No. C-05-0295 PJH, 2005 U.S. Dist. LEXIS 45246, at *4 (N.D. Cal. May 3, 2005) (Hamilton, J.).

### B.   Mr. Bartholomew Is "The Most Adequate Plaintiff"

#### 1.   Mr. Bartholomew Has Made a Motion For His Appointment As Lead Plaintiff

Pursuant to the provisions of the PSLRA and within the requisite time frame after publication of notice, Mr. Bartholomew timely moves this Court to be appointed Lead Plaintiff on behalf of all plaintiffs and class members.

#### 2.   Mr. Bartholomew Has the Largest Financial Interest

According to 15 U.S.C. § 78u-4(a)(3)(B)(iii), the court shall appoint as Lead Plaintiff the class member who represents the largest financial interest in the relief sought by the action. *See In re Cavanaugh*, 306 F.3d at 730. As demonstrated herein, Mr. Bartholomew (with losses of $2,106,513) has the largest known financial interest in the relief sought by the Class. *See* Punzalan Decl. at Exhibit C.

#### 3.   Mr. Bartholomew Otherwise Satisfies Rule 23

Under 15 U.S.C. § 78u-4(a)(3)(B), in addition to possessing the largest financial interest in the outcome of the litigation, the Lead Plaintiff must also "otherwise satisfy[] the requirements of Rule 23 of the Federal Rules of Civil Procedure." *In re Cavanaugh*, 306 F.3d at 730. Rule 23(a) provides that a party may serve as a class representative if the following four requirements are satisfied:

> (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class.

Fed. R. Civ. P. 23(a).

Of the four prerequisites to class certification, only two – typicality and adequacy – directly address the personal characteristics of the class representative. Consequently, in deciding a motion to serve as Lead Plaintiff, the Court should limit its inquiry to the typicality and adequacy prongs of Rule 23(a), and defer examination of the remaining requirements until the Lead Plaintiff moves for class certification. *See In re Cavanaugh*, 306 F.3d at 730. As detailed below, Movant satisfies both the typicality and adequacy requirements of Rule 23, thereby justifying his appointment as Lead Plaintiff.

### a. Mr. Bartholomew Fulfills The Typicality Requirement

Under Rule 23(a)(3), the claims or defenses of the representative party must be typical of those of the class. Typicality exists if claims "arise from the same event or course of conduct that gave rise to the claims of the other class members and are premised upon the same legal theory." *See Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1020 (9th Cir. 1998). However, the claims of the Lead Plaintiff need not be identical to the claims of the class to satisfy typicality. *Id.*

Movant seeks to represent a class of purchasers of UTStarcom securities who have identical, non-competing and non-conflicting interests. Mr. Bartholomew satisfies the typicality requirement because, just like all other class members, he: (1) purchased or acquired UTStarcom securities during the Class Period; (2) at prices allegedly artificially inflated by defendants' materially false and misleading statements and/or omissions; and (3) suffered damages thereby. *See Tanne v. Autobytel*, 226 F.R.D. 659, 667 (C.D. Cal. 2005). Thus, Movant's claims are typical of those of other class members since his claims and the claims of other class members arise out of the same course of events.

### b. Mr. Bartholomew Fulfills The Adequacy Requirement

Under Rule 23(a)(4), the representative party must "fairly and adequately protect the interests of the class." The PSLRA directs the Court to limit its inquiry regarding the adequacy of the Movant to:

> (1) whether there are any conflicts between the interests of the Movant and the members of the class; (2) whether the Movant is an adequate representative of the Class; (3) whether the interests of the Movant are clearly aligned with the members of the putative Class; and (4) whether there is evidence of any antagonism between their respective interests.

15 U.S.C. § 78u-4(a)(3)(B).

As detailed above, Mr. Bartholomew shares common questions of law and fact with the members of the Class and his claims are typical of the claims of other class members. Furthermore, Mr. Bartholomew has already taken significant steps demonstrating that he has and will protect the interests of the Class: he has executed a sworn certification detailing his Class Period transactions and expressing his willingness to serve as Lead Plaintiff; he has timely moved this Court to be appointed Lead Plaintiff in this action; and he has retained competent and experienced counsel who, as shown below, will be able to conduct this complex litigation in a professional manner. Furthermore, Mr. Bartholomew has the largest known financial interest, and his "financial stake in the litigation provides an adequate incentive for the [Movant] to vigorously prosecute the action." *In re Milstone Sci. Sec. Litig.*, 183 F.R.D. 404, 416 (D.N.J. 1998). Thus, Mr. Bartholomew, in addition to having the largest financial interest, also *prima facie* satisfies the typicality Rule 23(a)(3) and adequacy Rule 23(a)(4) requirements of Rule 23 of the Federal Rules of Civil Procedure and, therefore, satisfies all elements of the Exchange Act's prerequisites for appointment as Lead Plaintiff.

## II. THE COURT SHOULD APPROVE MR. BARTHOLOMEW'S CHOICE OF COUNSEL

Pursuant to Section 21D(a)(3)(B)(v) of the Exchange Act, codified as 15 U.S.C. § 78u-4(a)(3)(B)(v), the Lead Plaintiff is to select and retain lead counsel to represent the Class, subject to Court approval. *See In re Cavanaugh*, 306 F.3d at 734 (stating that "[w]hile the appointment is made subject to the approval of the court, the Reform Act clearly leaves the choice of class

counsel in the hands of the Lead Plaintiff"); *see also Autobytel*, 226 F.R.D. at 673 (noting that the Court should not reject Plaintiff's choice of counsel unless it is necessary to "protect the interests of the class") (quoting 15 U.S.C. § 78u-4(a)(3)(B)(iii)(II)(aa)).

In that regard, Movant has selected and retained Finkelstein Thompson LLP to serve as Lead Counsel for the Class. Finkelstein Thompson LLP regularly litigates substantive federal issues under the Securities Act of 1933, the Exchange Act, the PSLRA, and derivative suits under State and Federal law. Its clients include institutional investors, pension funds, high-net worth individuals, and retail investors. The firm enjoys a national reputation for high-quality and successful recoveries for its clients. *See* Punzalan Decl. at Exhibit D. Accordingly, this Court should approve Movant's selection of Lead Counsel.

## CONCLUSION

There is nothing to suggest that Movant or his counsel will not fairly and adequately represent the Class. Nor is there anything to suggest that Movant is subject to unique defenses, which is the only evidence that can rebut the presumption of adequacy under the Exchange Act. For the foregoing reasons, Movant respectfully requests that this Court: (i) appoint James R. Bartholomew as Lead Plaintiff in this Action; and (ii) approve Movant's selection of Finkelstein Thompson LLP as Lead Counsel for the Class.

Dated: November 5, 2007

Respectfully submitted,

/s/ Mark Punzalan
Mark Punzalan

**FINKELSTEIN THOMPSON LLP**
100 Bush Street
Suite 1450
San Francisco, California 94104
Telephone: 415.398.8700
Facsimile: 415.398.8704

- and -

Donald J. Enright
Elizabeth K. Tripodi
**FINKELSTEIN THOMPSON LLP**
1050 30th Street, NW
Washington, D.C. 20007
Telephone: 202.337.8000
Facsimile: 202.337.8090

*[Proposed] Lead Counsel*