Mark Punzalan (State Bar No. 247599)
mpunzalan@finkelsteinthompson.com
**FINKELSTEIN THOMPSON LLP**
100 Bush Street, Suite 1450
San Francisco, California 94104
Telephone: (415) 398-8700
Facsimile: (415) 398-8704

[Additional Counsel Listed on Signature Page]

[Proposed] Lead Counsel

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### SAN FRANCISCO DIVISION

| | |
|---|---|
| PETER RUDOLPH, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>vs.<br><br>UT STARCOM, HONG LIANG LU, MICHAEL SOPHIE, THOMAS TOY, and FRANCIS BARTON,<br><br>Defendants. | Case No. 3:07-CV-04578-SI<br><br>**JAMES R. BARTHOLOMEW'S REPLY TO THE DETECTIVES' ENDOWMENT ASSOCIATION ANNUITY FUNDS' OPPOSITION TO THE MOTION OF JAMES R. BARTHOLOMEW FOR APPOINTMENT AS LEAD PLAINTIFF**<br><br>**DATE:** December 14, 2007<br>**TIME:** 9:00 a.m.<br>**COURTROOM:** 10<br>**JUDGE:** Hon. Susan Illston |

## INTRODUCTION

Movant, James R. Bartholomew ("Mr. Bartholomew" or "Movant") respectfully submits this Reply to the Detectives' Endowment Association Annuity Fund's (the "Fund") Memorandum of Law in Opposition to James R. Batholomew's Motion for Appointment of Lead Plaintiff and Approval of Lead Counsel.

The Fund tacitly acknowledges that Mr. Bartholomew – who suffered losses 14 times greater than those allegedly suffered by the Fund – has the largest financial interest of any movant. Yet, in arguing against Mr. Bartholomew's appointment, the Fund fails to affirmatively demonstrate (1) that Mr. Bartholomew is somehow inadequate to represent the Class; or (2) that Mr. Bartholomew is subject to unique defenses rendering him incapable of representing the class. *See* 15 U.S.C. § 78u-4(a)(3)(B)(iii)(II). The Fund's arguments against Mr. Bartholomew's appointment therefore fail, as described more fully below.

First, the Fund's challenges to the validity of Mr. Bartholomew's certification have no basis whatsoever in the PSLRA nor in the relevant case law. Indeed, the Fund's own certification suffers from some of the same purported infirmities they identify.

Second, the Fund liquidated all of its shares prior to any corrective disclosure and, accordingly, suffered no compensable losses based on UTStarcom's alleged options backdating fraud. *See Dura Pharm., Inc. v. Broudo*, 544 U.S. 336, 338-346 (2005). As such, the Fund is ***not even a class member***, let alone the most adequate movant.[1] This deficiency means the Fund is neither typical nor capable of adequately representing the Class.

Third, the Funds' assertion that their status as an institutional investor renders them somehow more adequate than an individual investor having substantially greater losses is

---

[1] The Class Action Allegations of the complaint clearly state that "Plaintiff brings this action as a class action under Rules 23(a) and 23(b)(3) of the Federal Rules of Civil Procedure, on behalf of a class of persons and entities who purchased UT Starcom securities during the Class Period and ***were damaged thereby*** (the "Class")" (emphasis added). *See* Compl. at ¶ 15. Because it was not damaged by the corrective disclosures alleged in this case, the Fund does not even qualify as a member of the class.

-2-

unsupportable. In reality, courts should – and do – appoint individual investors as lead plaintiffs over competing institutional investors when (as here) the individual investor has the greatest financial interest in the litigation.

Mr. Bartholomew is clearly the most adequate plaintiff, possessing the largest financial interest in the litigation and being both typical and adequate. Thus, Mr. Bartholomew's Motion for Appointment as Lead Plaintiff and For Approval of Lead Plaintiff's Selection of Counsel should be granted and the Fund's motion should be denied.

## ARGUMENT

### I. THE SPECIOUS ARGUMENTS CHALLENGING THE VALIDITY OF MR. BARTHOLOMEW'S CERTIFICATION SHOULD BE DISCARDED.

None of the Fund's challenges to Mr. Bartholomew's certification have any basis in fact or law, and each should be discarded. Counter to the Fund's assertions, nothing in the PSLRA requires Mr. Bartholomew to disclose his age, occupation, or other personal information. Nor is it in any way significant that the date on his certification form was edited to accurately reflect the date he signed that form – particularly in light of the fact that the Fund did *precisely the same thing*.[2] Finally, the Fund's argument that Mr. Bartholomew is somehow inadequate because he held his UTStarcom shares through the end of the class period holds no water – indeed, it is the fact that Mr. Bartholmew did so that makes him an adequate lead plaintiff, just as the fact that the Fund did not do so renders it inadequate to represent the Class. *See* Section II.A, *infra*. For these reasons, as further discussed below, the Court should disregard these arguments entirely.

First, the PLSRA-mandated requirements for a plaintiff certification are clear: (1) plaintiff has reviewed the complaint and authorized its filing; (2) plaintiff did not purchase the securities at the direction of counsel or solely to participate in the litigation; (3) plaintiff is willing to serve as a representative; (4) plaintiff sets forth all transactions in the security; (5) plaintiff identifies any

---

[2] The Fund also crossed out the date of its certification form, inserted the correct date and signed the form. The certification originally stated "September 2007", and the Fund crossed out

other action in which plaintiff sought to serve as representative; and (5) plaintiff will not accept payment for serving as a representative, unless ordered or approved by the court. 15 U.S.C. §§ 78u-4(a)(2)(A)(i)-(vi). Plainly, the PSLRA does not require the self-identifying information called for by the Fund. Indeed, while the Fund spends an entire page listing the requirements of a PSLRA certification, nothing requires a movant's age, occupation or address. Thus, this argument has no merit.

The Fund's second argument regarding the certification's date is equally meritless. Plainly, the hand-written date reflects the day he signed the form, whereas the crossed-out July date references the date on which counsel sent the document to Mr. Bartholomew. Indeed, the "draft" complaint referenced in the certification is wholly consistent with the crossed-out July date, as no actual filed complaint existed in July. There is simply nothing amiss with this certification, and the Court should not countenance the Fund's sophistry, particularly since, again, the Fund did the same thing. Of course, one important difference remains: Mr. Bartholomew has a financial interest fourteen (14) times that of the Fund.

The Fund's final arguments are even more puzzling. Characterizing Mr. Bartholomew's lack of UTStarcom stock sales or prior securities class action lead plaintiff appointments as problematic, the Fund again questions the validity of Mr. Bartholomew's certification. Rather than red flags, these points are red herrings. Simply stated, Mr. Bartholomew's certification lists no sales and no lead plaintiff appointments because none exist. He never sold any UTStarcom stock, and has never served as a lead plaintiff before. His certification accurately reflects this reality. Obviously, this in no way invalidates his certification.

Indeed, the Fund perversely argues against Mr. Bartholomew's application on the basis that he bought more shares than the Fund and held those shares through both corrective disclosures, entitling him to a valid claim (unlike the Fund). In other words, the Fund turns the PSLRA and *Dura* on their heads and argues that the facts that Mr. Barthomew has the largest financial interest in this litigation and can actually properly plead the element of loss causation

---

that date and wrote "October 2007" above.

-4-

somehow renders him inadequate. Obviously, the Court should reject these efforts at obfuscation and appoint Mr. Bartholomew as lead plaintiff in this litigation.

## II. THE FUND IS NOT AN ADEQUATE PLAINTIFF, LET ALONE THE MOST ADEQUATE MOVANT BEFORE THIS COURT

The Fund cannot meet the requirements set forth by the Private Securities Litigation Reform Act ("PSLRA") for appointment of lead plaintiff.[3] The Fund's lack of compensable losses means it could not possibly have the largest financial interest in the litigation. This also renders the Fund inadequate and atypical, meaning the Fund cannot satisfy the requirements of Rule 23.

### A.    The Fund Has No Financial Interest in the Litigation.

It is black letter law that securities fraud plaintiffs who sell their shares and liquidate their position entirely prior to the dissemination of corrective disclosures[4] cannot satisfy the essential element of loss causation and therefore cannot maintain a viable claim. *See Dura*, 544 U.S. at, 338-346. The Fund sold ***all of its shares prior to any corrective disclosure*** of UTStarcom's options backdating, and therefore cannot in good faith claim that their losses were "caused" by those disclosures.

Two corrective disclosures gave rise to this case. The first occurred on November 7, 2006. On this date, in reaction to news that UTStarcom had commenced a voluntary review of its historical equity award grant practices, the Company's share price fell 9%. Compl. at ¶ 66. The second occurred on July 24, 2007, when UTStarcom announced that the preliminary results of this review revealed the need to restate their financial reports by approximately $28 million for the

---

[3]     In appointing a lead plaintiff, the Court must consider which movant has the largest financial interests in the relief sought by the class; and whether the movant otherwise satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure. *See* 15 U.S.C. § 78u-4(3)B)(iii)(I)

[4]     *Dura* defines corrective disclosures as: "when facts…become generally known" and "as a result" share value "depreciate[s]." 544 U.S. at 344. Some courts require that a corrective disclosure correct a specific misrepresentation. Others hold that corrective disclosure can be a more general statement that reveals the true condition of the company.

years 2000 through 2006.  In response to this revelation, the Company's share price plummeted by 22%.  Compl. at ¶¶ 69-70.

Significantly, the Fund had entirely liquidated its UTStarcom holdings *over a year before these disclosures were made*.  According to its certification, the Fund held a total of 16,600 shares as of September 15, 2004.  It sold all of these shares in two separate transactions: (1) 5,700 shares on March 8, 2005; and (2) 10,900 shares on April 4, 2005.  Thus, any loss suffered by the Fund cannot be attributed to the revelations of the Company's options backdating fraud, and the Fund cannot maintain a case based on those revelations.  *See Dura*, 544 U.S. at 347.  As such, the Fund has suffered *no* compensable losses, and, accordingly, cannot be said to have the "largest financial interest" in this litigation.  15 U.S.C. § 78u-4(3)B)(iii)(I).  Indeed, not only is the Fund not the most adequate movant, *it is not even a class member*. *See* Note 1, *supra*.

### B. The Fund is Neither Typical Nor Adequate

The PSLRA also requires that lead plaintiff movants satisfy the requirements of Rule 23.  15 U.S.C. § 78u-4(a)(3)(B)(iii)(I)(cc).  In the Ninth Circuit, a lead plaintiff movant must not only have the largest financial stake, but must also satisfy the typicality or adequacy requirements.  *See In re Cavanaugh*, 306 F.3d 726, 732 (9th Cir. 2002).  Since the Fund did not hold a single UTStarcom share at the time of any corrective disclosure, as illustrated above, the Fund suffered no loss attributable to UTStarcom's options backdating fraud and therefore cannot be a typical or adequate representative of the class.[5]  If appointed as lead plaintiff, the Fund would face a motion to dismiss on loss causation grounds and the Court would dismiss the case before even reaching discovery.  The Court simply cannot appoint a lead plaintiff whose own infirmities would so jeopardize the claims of the entire class.

---

[5] *See Cornerstone Propane Partners, L.P. Sec. Litig.*, No. C-03-2522, 2006 WL 1180267, *9 (N.D. Cal. May 3, 2006)(holding that shareholders who sold their stock prior to the first corrective disclosure did not suffer any loss and could not be part of the class); *see also Kops v. NVE Corp.*, No. Civ. 06-574 et al., 2006 WL 2035508, *4-5 (D. Minn. July 19, 2006) (finding that a plaintiff who had sold all of his shares prior to the corrective disclosure had not suffered any loss as a result of defendants' actions).

### III. THE FUND'S STATUS AS AN INSTITUTIONAL INVESTOR DOES NOT MAKE IT THE MOST ADEQUATE LEAD PLAINTIFF

Even if the Fund was a class member – which, with no compensable loss, it is not -- Mr. Bartholomew's financial interest in the litigation dwarfs that of the Fund. Mr. Bartholomew's losses total $2,106,513.00, while the Fund's alleged losses total a $154,752.30 – a mere **7%** of Mr. Bartholomew's figure. It is no doubt the Fund's recognition of this minimal financial interest that led the Fund to argue it is somehow the most adequate lead plaintiff (despite its minimal losses) solely because it is an institutional investor. However, the plain language of the PSLRA makes no special provision for finding institutional investors as most adequate plaintiffs when an individual movant has a significantly larger financial interest in the matter.[6] Rather, the PSLRA provides "in categorical terms that the *only* basis on which a court may compare plaintiffs competing to serve as lead is the size of their financial stake in the controversy." *In re Cavanaugh*, 306 F.3d 726, 732 (9th Cir. 2002) (emphasis in original).

Further, the cases cited by the Fund appointing an institutional investor as lead plaintiff over other movants with larger losses do little to bolster the Fund's argument. In these cases, the other movants, disfavored by the courts, were groups of unrelated investors joined together for the sole purpose of aggregating their losses in an effort solely to obtain lead plaintiff status.[7] Although law makers may have enacted the PSLRA to encourage institutional investors to take a more active role in securities litigation, the Ninth Circuit has held that it does not "require[ ] the

---

[6] 15 U.S.C. §78u-4(a)(3)(b)(iii)(I)(bb) states that the court shall adopt a presumption that the most adequate plaintiff in any private action arising under this chapter is the person or group of persons that-- "in the determination of the court, has the largest financial interest in the relief sought by the Class."

[7] *See Xianglin Shi v. Sina Corp.*, No. O5 Civ 2154, 2005 U.S. Dist. LEXIS 13176, at 10-11 (S.D.N.Y. 2005) (finding an institutional investor to be a more suitable lead plaintiff than an investor group composed of two sets of family relations and five, "wholly-distinct, unrelated sub-groups"); see also *Bowman v. Legato Sys., Inc.*, 195 F.R.D. 655, 658 (N.D. Cal. 2000) (finding that an institutional investor was better suited for appointment as lead plaintiff over a group of individuals with no relationship prior to the litigation, joined for the sole purpose of obtaining lead plaintiff status).

district court to select the plaintiff it believes is 'the most sophisticated investor available.' " *Tanne v. Autobytel*, 226 F.R.D. 659, 670 (C.D. Cal. 2005) (*quoting Cavanaugh*, 306 F.3d at 737). Consequently, there is no *per se* rule requiring that an institutional investor be appointed lead plaintiff in lieu of an individual who has a larger stake in the litigation. *See Tanne*, 226 F.R.D. at 670; *see also Cavanaugh*, 306 F.3d at 737, n. 20. Rather, the plain terms of the PSLRA make it clear that it is the movant with the largest financial interest who is the presumptive most adequate movant – regardless of whether that movant is a person or a institution. Here, that movant is obviously Mr. Bartholomew.

## CONCLUSION

For the reasons stated herein, Mr. Bartholomew's Motion for Appointment as Lead Plaintiff and For Approval of Lead Plaintiff's Selection of Counsel should be granted and the Fund's motion should be denied.

Dated: November 30, 2007             Respectfully submitted,

/s/ Mark Punzalan
    Mark Punzalan

**FINKELSTEIN THOMPSON LLP**
100 Bush Street
Suite 1450
San Francisco, California 94104
Telephone: 415.398.8700
Facsimile: 415.398.8704

- and -

Donald J. Enright
Elizabeth K. Tripodi
**FINKELSTEIN THOMPSON LLP**
1050 30th Street, NW
Washington, D.C. 20007
Telephone: 202.337.8000
Facsimile: 202.337.8090

*[Proposed] Lead Counsel*

# CERTIFICATE OF SERVICE

I, Mark Punzalan, declare:

I am employed in San Francisco County, State of California. I am over the age of 18 years and not a party to the within action. My business address is Finkelstein Thompson LLP, 100 Bush Street, Suite 1450, San Francisco, California 94104.

On November 30, 2007, I served the following document**:**

**JAMES R. BARTHOLOMEW'S REPLY TO THE DETECTIVES' ENDOWMENT ASSOCIATION ANNUITY FUNDS' OPPOSITION TO THE MOTION OF JAMES R. BARTHOLOMEW FOR APPOINTMENT AS LEAD PLAINTIFF**

☒ By electronically filing the foregoing with the Clerk of the Court using the CM/ECF system which sent notification of such filing to the e-mail address listed below:

| | |
|---|---|
| Bahram Seyedin-Noor bnoor@wsgr.com<br>Boris Feldman boris.feldman@wsgr.com<br>Cheryl Weisbard Foung cfoung@wsgr.com<br>Terry T. Johnson tjohnson@wsgr.com<br>**Wilson Sonsini Goodrich & Rosati**<br>650 Page Mill Road<br>Palo Alto, CA 94304 | Bryan Jacob Ketroser bketroser@wsgr.com<br>**Wilson Sonsini Goodrich & Rosati**<br>One Market Street, Spear Tower, Suite 3300<br>San Francisco, CA 94105 |

Lionel Z. Glancy
Michael M. Goldberg
info@glancylaw.com
**Glancy Binkow & Goldberg LLP**
1801 Avenue of the Stars, Suite 311
Los Angeles, CA 90067

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct. Executed at San Francisco, California on November 30, 2007.

/s/ Mark Punzalan
Mark Punzalan