GLANCY BINKOW & GOLDBERG LLP
Lionel Z. Glancy (#134180)
1801 Avenue of the Stars, Suite 311
Los Angeles, CA 90067
Telephone: (310) 201-9150
Facsimile: (310) 201-9160
E-mail: info@glancylaw.com

Attorneys for Plaintiff Detectives' Endowment
Association Annuity Fund and Proposed Liaison Counsel
*[Additional Counsel Appear on Signature Page]*

**UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| PETER RUDOLPH, Individually and on Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br><br>vs.<br><br>UTSTARCOM, HONG LIANG LU, MICHAEL SOPHIE, THOMAS TOY, and FRANCIS BARTON,<br><br>Defendants. | Civil Action No. 07-CV-4578 (SI)<br><br>**DETECTIVES' ENDOWMENT ASSOCIATION ANNUITY FUND'S MEMORANDUM OF LAW IN REPLY TO JAMES R. BARTHOLOMEW'S OPPOSITION TO ITS MOTION FOR APPOINTMENT AS LEAD PLAINTIFF AND APPROVAL OF LEAD COUNSEL AND IN FURTHER SUPPORT OF ITS APPLICATION FOR APPOINTMENT AS LEAD PLAINTIFF**<br><br>DATE: December 14, 2007<br>TIME: 9:00 a.m.<br>Courtroom: 10 |

The Detectives' Endowment Association Annuity Fund (the "DEA Fund") respectfully submits this memorandum of law in reply to the opposition of James R. Bartholomew ("Bartholomew") to the DEA Fund's motion for appointment as Lead Plaintiff and approval of Lead Counsel and in further support of the DEA Fund's motion.

## I. INTRODUCTION

The Private Securities Litigation Reform Act of 1995 ("PSLRA") clearly provides that the most adequate plaintiff is preferably a large institution. Section 21D(a)(3)(B)(iii)(I) of the Securities Exchange Act of 1934. The DEA Fund, administers a $112 million retirement plan on behalf of New York City's police detectives, has incurred a substantial financial loss, and is the only institutional investor, as envisioned by Congress, among the competing movants. As such, the DEA Fund is the preferred plaintiff even where an individual investor's financial interest is larger. *See Xianglin Shi v. Sina Corp.*, No. 05-CV-2154, 2005 U.S. Dist. LEXIS 13176, at *15-16 (S.D.N.Y. July 1, 2005) (Buchwald, J.) (appointing institutional group lead plaintiff, "where it has complied with the notice requirement and has a *substantial financial interest in the litigation, though admittedly not the largest*" because "size and experience of institutional investors can be of significant assistance to the prosecution of the action") (emphasis added).

Mr. Bartholomew is an individual investor, without the expertise of a large institution in managing a complex securities litigation. Recognizing that he cannot oppose Congress' mandate preferring institutions as lead plaintiff, Mr. Bartholomew makes one unfounded argument: the DEA Fund is *automatically* disqualified from serving as a lead plaintiff simply because it sold all of its UTStarcom, Inc. ("UTStarcom" or the "Company")) securities. Contrary to Mr. Bartholomew's overly broad and unsubstantiated argument, the DEA Fund has unequivocally suffered a financial loss on all of its UTStarcom purchases; in fact, a more than *43% loss.* Hence the DEA Fund has a great financial interest and motivation in vigorously pursuing and prosecuting this action.

In addition to alleging actual economic loss from artificially inflated purchase price, the DEA Fund can amply and easily demonstrate loss causation

because it sold its UTStarcom securities *after* partial disclosures began to reach the market. UTStarcom's securities price dropped throughout the putative class period (July 24, 2002 – September 4, 2007) (the "Class Period") in response to the gradual revelations of UTStarcom's negative financial condition. For example, the Company's March 31, 2005 announcement revealing that UTStarcom will delay its annual reports for 2003 and 2004 as it continues to review its internal reporting controls after finding material weaknesses in its controls resulted in a stock drop to $10.95 on March 31, 2005 (compared to $22.20 on January 3, 2005) on unusually high volume.

While defendants may raise this argument in an attempt to mitigate damages, the case law makes clear that the fact that a plaintiff has sold prior to the end of the *putative* class period should not and does not automatically defeat a lead plaintiff application.[1] *See Montoya v. Mamma.com*, 2005 U.S. Dist. LEXIS 10224, at*6-7 (S.D.N.Y. May 31, 2005) (appointing "in-and-out" purchaser lead plaintiff because it does not make plaintiff unique or render plaintiff incapable of adequately representing the class).

The DEA Fund reiterates its arguments from its Memorandum of Law in Opposition submitted on November 21, 2007 concerning Mr. Bartholomew's ineligibility to serve as lead plaintiff, including that his sworn certification lacks the basic information necessary for the Court to accurately assess Mr. Bartholomew's qualifications. Indeed, at a minimum, Mr. Bartholomew's certification raises doubts as to its accuracy since, contrary to his cryptic reference to "Reliant Resources (RRI)" as one of the cases in which he has served or sought

---

[1] What is more, damages questions are premature at the lead plaintiff or the certification stage. *See e.g., In re NTL, Inc. Sec. Litig.*, No. 02-CV-3013, 2006 U.S. Dist. LEXIS 5346, at *37 (S.D.N.Y. Feb. 14, 2006).

to serve as a representative plaintiff, no record of him is on file with any of the securities fraud cases against Reliant Resources.

Accordingly, the DEA Fund meets all the criteria of Rule 23 and is the most suitable movant to be selected as lead plaintiff.

## II.   ARGUMENT

### A.   Mr. Bartholomew Has Failed to Rebut the Presumption that the DEA Fund is the Most Adequate Lead Plaintiff and Has Selected Experienced and Competent Counsel to Represent the Class

#### 1.   The DEA Fund – an Institutional Investor – is the Preferred Lead Plaintiff

In enacting the PSLRA, Congress expressed a preference for institutional investors to act as lead plaintiffs in securities class actions. *See* Conference Report on Securities Litigation Reform, H.R. No. 104-369 (1995), Act Sec. 101, & 302.[2]

In fact, the recognition by courts that the size and experience of an institution would be an asset in managing complex securities litigation such as the one before the Court is further demonstrated in cases where an institutional investor was appointed over individuals with an arguably a larger financial loss. *See, e.g.*, *Xianglin,* 2005 U.S. Dist. LEXIS 13176, at *15-16 (appointing institutional group lead plaintiff, "where it has complied with the notice requirement and has a *substantial financial interest in the litigation, though admittedly not the largest*" because "the size and experience of institutional

---

[2]   *See also Sakhrani v. Brightpoint*, 78 F. Supp.2d 845, 850 (S.D. Ind. 1999) ("The PSLRA was enacted with the explicit hope that institutional investors . . . would step forward to represent the class and exercise effective management and supervision of the class lawyers"); *In re Network Assocs., Inc. Sec. Litig.*, 76 F. Supp. 2d 1017, 1021, 1025 (N.D. Ca. 1999) (appointing a single institutional investor as lead plaintiff and noting that the PSLRA seeks to "encourage the selection of an institutional investor as the lead [plaintiff]").

investors can be of significant assistance to the prosecution of the action") (emphasis added) (quoting *Pirelli Armstrong Tire Corp. v. LaBranche & Co.*, No. 03 Civ. 8264, 2004 U.S. Dist. LEXIS 9571, at *20 (S.D.N.Y. May 27, 2004) ("a number of courts 'have understood [the PSLRA] to favor large institutional investors' as lead plaintiff"). The only other competing movant, Mr. Bartholomew, is an individual investor who has not shown that the overall quality of the action will be improved by having an individual investor as lead plaintiff and whose certification, at a minimum, raises questions as to its accuracy. On the other hand, by appointing the DEA Fund as lead plaintiff in this case, the Court would be fulfilling one of Congress's major goals in passing the PSLRA, namely giving institutional investors an increased role in securities class actions.

### 2. The DEA Fund Has Suffered Actual Loss and Thus Is Not Subject to Any Unique Defenses

Recognizing the preference for a large institutional investor by Congress and the courts, Mr. Bartholomew instead argues that the DEA Fund has sold all of its UTStarcom securities and thus *may* not be able to prove loss causation under *Dura Pharmaceuticals, Inc. v. Broudo*, 544 U.S. 336 (2005). However, selling all of one's shares before the end of the Class Period does not warrant automatic disqualification of the DEA Fund as a lead plaintiff.

Contrary to Mr. Bartholomew's unsubstantiated assumption that shareholders who sold their stock during the Class Period cannot prove loss causation, the DEA Fund has unequivocally suffered a financial loss on all of its UTStarcom purchases. During the putative class period, the DEA Fund purchased 16,600 shares for $358,357.82 and sold them for $154,752.30 (more than a 43% loss). With a simple and quick mathematical exercise, it is clear that the DEA Fund did not realize a profit or windfall.

There is ample post-*Dura* case law that holds that a shareholder who sold all of its shares during the class period can prove loss causation.[3] *See Montoya v. Mamma.com*, 2005 U.S. Dist. LEXIS 10224, at *6-7 (S.D.N.Y. May 31, 2005) (appointing "in-and-out" purchaser lead plaintiff because they were not unique or rendered incapable of adequately representing the class and, "in accordance with the PSLRA . . . and *Dura*['] "loss causation does not require full disclosure and can be established by partial disclosure during the class period") (quoting 15 U.S.C. § 78u-4(a)(3)(B)(iii)(II)(bb)); *Weiss v. Friedman, Billings, Ramsey Group, Inc.*, No. 05-cv-04617, 2006 U.S. Dist. LEXIS 3028, at *14-15 (S.D.N.Y. January 24, 2006) (appointing shareholder that sold before class period ended lead plaintiff over net purchasers with greater financial interest because "one would not necessarily have to conclude that . . . losses are unattributable to the alleged fraudulent inflation" where "partial corrective disclosures were reaching investors on a period basis"); *In re Flag Telecom Holdings, Ltd. Sec. Litig.*, 02 Civ. 3400, 2007 U.S. Dist. LEXIS 67173, at *68 (S.D.N.Y. September 4, 2007) (refusing to exclude in-and-out purchasers from the proposed class at the class certification stage, particularly where "discovery is still incomplete and plaintiffs intend to

---

[3] This is especially true where, as here, there are multiple disclosures that trickle into the market throughout the class period. *Id. See also See Stumpf v. Garvey (In re TyCom Ltd. Sec. Litig.)* No. 03-CV-1352, 2005 U.S. Dist. LEXIS 19154, *at 44-5 (D. N.H. Sept. 2, 2005) (loss causation properly alleged where plaintiffs claimed losses when value of company's stock declined over time as result of series of partial disclosures concerning company); *Swack v. Credit Suisse First Boston*, 383 F. Supp. 2d 223, 244 (D. Mass. 2004) (plaintiff sufficiently plead loss causation where she alleged price fell as truth slowly emerged to the market); *Danis v. USN Communs.*, Inc., 73 F. Supp. 2d 923, 943 (N.D. Ill. 1999) (loss causation sufficiently pled where "the market responded to and 'corrected' the price of USN stock over the better part of a year as bits and pieces of negative information became available and it became apparent that USN was not capable of performing as originally represented").

further develop their leakage theory"). *See also*, *In re Bearingpoint, Inc. Sec. Litig.*, No. 05CV454, 2006 U.S. Dist. LEXIS 1718, at *34 (E.D.Va. Jan. 17, 2006) (finding that it is "conceivable that the inflationary effect of a misrepresentation might well diminish over time, even without a corrective disclosure, and thus in-and-out traders in this circumstance would be able to prove loss causation"); *In re NTL, Inc. Sec. Litig.*, 2006 U.S. Dist. LEXIS 5346, at *32-33 (S.D.N.Y. Feb. 14, 2006) (holding that loss causation has been adequately pled where there was "some showing" that the "gradual disclosing events" were linked to a "slow dissipation in the value of NTL's stock").

In addition to alleging actual economic loss due to artificially inflated purchase price, the DEA Fund can easily demonstrate loss causation because it has sold its UTStarcom securities *after* the partial disclosures to the public during the putative class period concerning its true financial condition. For example, UTStarcom's securities price dropped throughout the Class Period in response to partial disclosures: from $19.94 on January 6, 2005, to $15.97 on January 7, 2005 (the January 6, 2005 press release reveals "lower than expected financial results" in the last quarter of 2004 and revenues down from the estimated $885 million to $745 million, due in part to "disruptions associated with changes in senior management at the main carriers in China"); to $14.60 on February 9, 2005 (February 8, 2005 announcement reports restatement of Company's 2003 financial statements to correct overstatement of income tax expenses); and to $10.95 on March 31, 2005 (March 31, 2005 announcement reveals UTStarcom will delay its annual reports for 2003 and 2004 as it continues to review its internal reporting controls after finding material weaknesses in its controls). These were some of those gradual revelations of UTStarcom's negative financial condition linked to

the slow dissipation in the value of UTStarcom's securities and relevant to stock options backdating.[4]

### 3.  Mr. Bartholomew is Ineligible to Serve as Lead Plaintiff

The DEA Fund repeats by reference its arguments from its Memorandum of Law in Opposition submitted on November 21, 2007 concerning Mr. Bartholomew's ineligibility to serve as lead plaintiff.  For example, while Mr. Bartholomew makes a cryptic reference to "Reliant Resources (RRI)" as one of the cases in which he has served or sought to serve as a representative plaintiff, his name does not appear in connection with any of the securities fraud cases filed against Reliant Resources, including in the docket entries.  Perhaps most significantly, Mr. Bartholomew's certification, which only lists alleged purchases in UTStarcom and no sales, raises an even bigger question: how did an individual investor come to purchase almost $3 million worth of UTStarcom stock, then sit back and watch that stock plummet more than 70% to about $3.00 per share *without ever selling a single share*?  At a minimum, Mr. Bartholomew's sworn certification raises doubts as to its accuracy.  Mr. Bartholomew would surely be attacked by defendants in the securities *class action* subject to "unique defenses."

---

[4]   In contrast, the cases cited by Mr. Bartholomew to erroneously argue that the DEA Fund cannot prove loss causation actually dealt with pre-corrective disclosure sellers, and, in fact, found that loss causation can be adequately pled even for sellers who sold *after* partial disclosure. *See Cornerstone Propane Partners, L.P. Sec. Litig.*, No. C. 03-2522, 2006 U.S. Dist LEXIS 25819, at *27-28 (N.D. Cal. May 3, 2006) (loss causation has been adequately pled for those "who sold their stock after the relevant truth began to reach the market"); *Kops v. NVE Corp.*, Civ. No. 06-574 et al., 2006 U.S. Dist. LEXIS 49713, at *14 (D. Minn. July 19, 2006) (finding that a seller has not suffered any loss attributable to defendants' fraud where seller sold all shares before, "[u]nder *Dura* principles," any "partial disclosure . . . before [,] the end of the Class Period").

This issue would surely cause the case to become mired down at a cost in time and expense to the litigants and to the Court.

Mr. Bartholomew presents no support that he can the expertise of a large institution like the DEA Fund in managing a complex securities litigation. On the other hand, the DEA Fund, which administers the retirement benefits for New York City's police detectives, as an institution and as a fiduciary, has the background, expertise and professional assistance to be the most adequate class representative.

## III.  CONCLUSION

For all the foregoing reasons, the DEA Fund respectfully requests that the Court approve the DEA Fund's application and deny Mr. Bartholomew's competing motion and instead:

1. Appoint the DEA Fund as Lead Plaintiff in the above-captioned action pursuant to Section 21D(a)(3)(B) of the Exchange Act;

2. Approve the DEA Fund's choice of counsel and appoint the law firm of Schoengold Sporn Laitman & Lometti, P.C. as Lead Counsel and Glancy Binkow & Goldberg LLP as Liaison Counsel pursuant to Section 21D(a)(3)(B)(v) of the Exchange Act; and

3. Grant such other and further relief as the Court may deem just and proper.

Dated: November 30, 2007         **GLANCY BINKOW & GOLDBERG LLP**

By: *s/Lionel Z. Glancy*
Lionel Z. Glancy (#134180)
1801 Avenue of the Stars, Suite 311
Los Angeles, CA  90067
Telephone: (310) 201-9150

*Proposed Liaison Counsel*

Christopher Lometti
Jay P. Saltzman
Ashley Kim
**SCHOENGOLD SPORN LAITMAN & LOMETTI, P.C.**
19 Fulton Street, Suite 406
New York, NY 10038
Telephone: (212) 964-0046

*Proposed Lead Counsel for the Class
and Attorneys for the Detectives'
Endowment Association Annuity Fund*