1

## NOTICE OF MOTION AND MOTION

2      PLEASE TAKE NOTICE, that on April 4, 2008, at 9:00 a.m., before the Honorable

3   Susan Illston, United States District Court, San Francisco, California, Defendant UTStarcom,

4   Inc. ("UTSI" or the "Company") and Defendants Hong Liang Lu, Ying Wu, Michael Sophie,

5   Thomas Toy, and Francis Barton (the "Individual Defendants"), will, and hereby do, move the

6   Court pursuant to the Private Securities Litigation Reform Act of 1995 (the "Reform Act"), 15

7   U.S.C. § 78u-4 et seq., and Rule 12(b)(6) of the Federal Rules of Civil Procedure, for an order

8   dismissing the Amended Class Action Complaint (the "Amended Complaint" or "AC").

9      This Motion is based on this Notice of Motion and Motion; the attached Memorandum of

10  Points and Authorities; the Request for Judicial Notice; the Declaration of Bryan J. Ketroser

11  together with accompanying exhibits; all pleadings and papers filed herein; oral argument of

12  counsel; and any other matter that may be submitted at the hearing.

13

## ISSUES TO BE DECIDED (LOCAL RULE 7-4(a)(3))

14      1.     Has Plaintiff stated with particularity all facts forming the basis of his allegations

15  as required by the Reform Act?

16      2.     Has Plaintiff alleged with particularity facts giving rise to a strong inference that

17  the Defendants acted with scienter?

18      3.     Has Plaintiff adequately alleged loss causation where the facts alleged do not

19  show that any corrective disclosure resulted in a decline in the Company's stock price?

20      4.     Is any part of Plaintiff's § 14(a) claim barred by the applicable statute of

21  limitations?

22      5.     Has Plaintiff adequately alleged an "essential link" between an alleged injury to

23  plaintiff and false or misleading statements in a proxy statement?

24      6.     Has Plaintiff alleged with particularity facts giving rise to a strong inference that

25  the Defendants acted negligently?

26      7.     Has Plaintiff pleaded a cause of action under § 20(a) where he has failed to allege

27  that any Defendant committed a primary violation under the Exchange Act?

28

1  **MEMORANDUM OF POINTS AND AUTHORITIES**

2  **INTRODUCTION**

3       This lawsuit stems from the investigation of historical stock option granting practices at

4  UTStarcom, Inc. Following an internal investigation by the Company's Nominating and

5  Corporate Governance Committee, the Company restated financial results for fiscal year 2000

6  through the first half of 2006. Importantly, the Company's internal investigation *"found no*

7  *evidence of intent to manipulate the Company's operating results or financial statements.*"

8  Ignoring this finding, Plaintiff presses this lawsuit accusing several of the Company's current

9  and former officers and directors of violating Sections 10(b), 14(a), and 20(a) of the Securities

10 Exchange Act. Paradoxically, although Plaintiff rejects the investigation's findings, he relies on

11 little more than the facts the investigation uncovered—mainly the need to restate prior financial

12 results—to support his claims. Plaintiff, however, fails to transform the fact of the restatement

13 into claims supporting negligence or fraud. Plaintiff's three causes of action must therefore be

14 dismissed under Rule 12(b)(6) and the Private Securities Litigation Reform Act ("Reform Act").

15      Plaintiff's § 10(b) claim is deficient because Plaintiff fails to adequately plead two of the

16 required elements: loss causation and scienter. Plaintiff fails to plead loss causation because he

17 attempts to link investors' losses to Company disclosures that did not provide any new

18 information about the accuracy of past financials and thus could not have caused the alleged loss.

19 Meanwhile, Plaintiff's garden-variety scienter allegations, based on the Defendants' executive

20 positions, their routine stock sales, and the mere existence of the restatement, run afoul of the

21 Reform Act's demand for "great detail." Plaintiff's new allegations regarding two supposed

22 "confidential witnesses" add nothing since these allegations do not come remotely close to

23 satisfying the Reform Act's pleading requirements. Plaintiff's failure to plead loss causation and

24 scienter are independently-fatal defects, each of which requires dismissal of the § 10(b) claim.

25      Plaintiff's § 14(a) claim fails for four reasons. First, Plaintiff fails to identify *any*

26 statement in *any* proxy statement that was supposedly false or misleading. Second, Plaintiff fails

27 to allege facts giving rise to a "strong inference of negligence" to support his § 14(a) claim.

28 Third, Plaintiff fails to allege facts showing an "essential link" between any alleged misstatement

1    or omission in any of the proxy statements and any alleged harm.  All three pleading failures

2    require dismissal.  Finally, and in any event, most of Plaintiff's § 14(a) claim is time-barred.

3         Since "control person" liability turns on the existence of a primary violation, Plaintiff's

4    inability to establish a § 10(b) or § 14(a) violation is fatal to his § 20(a) claim as well.

5         For all of these reasons, as more fully explained below, Defendants respectfully request

6    that the Court dismiss Plaintiff's Amended Complaint ("AC") in its entirety.

**BACKGROUND FACTS**

8    **A.    The Company and the Individual Defendants**

9         Headquartered in Alameda, California, UTStarcom, Inc. manufactures, integrates and

10   supports IP-based, end-to-end networking and telecommunications solutions.  AC ¶ 32.  The

11   Company's stock trades on the NASDAQ under the symbol "UTSI."  *Id.*  The Individual

12   Defendants are current and/or former officers and/or directors of the Company.  *Id.* ¶¶ 33-37.

13   Hong Liang Lu has served as President and CEO of the Company, as well as a director, since

14   June 1991, and served as the Company's Chairman from March 2003 through December 2006.

15   *Id.* ¶ 33.  Ying Wu served as Executive VP and Vice Chairman of the Company from October

16   1995 through July 2007.  *Id.* ¶ 34.  Michael Sophie served as the Company's VP of Finance and

17   CFO, as well as a director, from August 1999 to August 2005.  *Id.* ¶ 35.  Francis Barton has

18   served as Executive VP and CFO of the Company since August 2005.  *Id.* ¶ 36.  Thomas Toy has

19   served as an independent director of the Company since 1995, and as Chairman of the Company

20   since January 2007.  *Id.* ¶ 37.

21   **B.    The Options Investigation**

22        Like many other companies, UTSI periodically issues stock options to its officers,

23   directors, and non-officer employees.  A stock option is the right to purchase a share of a

24   company's stock at a particular price—often referred to as the "exercise price" or "strike

25   price"—for a particular period of time.  *Id.* ¶ 5.  The exercise price typically is set at the current

26   market price at the time the option is granted.  "Backdating" refers to the act of issuing options

27   that are dated as of an earlier date than the actual date the options were granted and using the

28   stock price on the earlier date as the exercise price of the options.  *Id.* ¶ 5.  If the stock price on

1  the earlier date was lower than the stock price at the time the options are granted, the result is

2  options that are already "in the money" at the time they are issued. "Backdating" can result from

3  a deliberate decision to pick an earlier date in order to get a lower exercise price, but it also can

4  result from delays in finalizing option paperwork, delays in documenting board decisions, or a

5  lack of understanding of the option grant process. Fraudulent backdating connotes intentional

6  misrepresentation of the actual grant date in order to give the grantee a lower exercise price, and

7  a failure to recognize the intrinsic value of the grant as compensation expense in a company's

8  financial statements. Thus, fraudulent backdating is intentionally wrongful accounting.

9  On November 7, 2006, the Company announced the commencement of a voluntary

10  review of its historical equity award grant practices. *Id.* ¶ 113. The ensuing review was

11  conducted under the leadership of the Company's Governance Committee with the assistance of

12  independent legal counsel, which in turn hired independent forensic accountants. *Id.* ¶ 119.

13  Altogether, this "Stock Option Review Team" spent over 11,000 hours on investigatory matters,

14  including the review of more than 250,000 electronic documents; the interview of current and

15  former management, directors, and employees; and the performance of statistical and judgmental

16  pattern analyses. *Id.* The Review Team considered all option grant awards made from before

17  the Company's 2000 IPO through August 2006 for compliance with various stock-based

18  compensation accounting standards. *Id.* ¶¶ 118-19. The Company's November 7, 2006

19  announcement of the review noted that "no conclusions have been reached" about whether the

20  Company would have to restate any of its previous financials due to this issue. Ex. A.[1] On

21  November 8, 2006—the day after the internal review was announced—*Forbes.com* published an

22  article which referred extensively to a Bear Stearns analyst who was downgrading the

23  Company's stock. AC ¶ 114; Ex. B. The analyst was quoted as stating his belief that

24  "UTStarcom will [not] turn a profit any time soon." Ex. B. Following the *Forbes.com* article,

25  the Company's stock price dropped from $10.23 to $9.37. Ex. C.

26

27  _____

[1] All references to "Ex. __" are to the exhibits attached to the Declaration of Bryan J.
28  Ketroser, filed herewith.

1    On February 1, 2007, the Company announced that "the Governance Committee ha[s]

2    reached a determination that 'incorrect measurement dates for certain stock option grants were

3    used,'" and announced an estimated $50 million compensation charge. AC ¶ 16.  On May 16,

4    2007, the Company revised its estimate downward to $35 million. *Id.* ¶ 17.

5    On the morning of July 24, 2007, the Company announced the "preliminary results" of its

6    options investigation, lowering the estimate of the additional compensation expenses to $28

7    million. *Id.* ¶ 116; Ex. D.  In the same press release, the Company announced that "we continue

8    to see declines in the PAS business in China." Ex. D.

9    On October 10, 2007, the Company filed its Form 10-Q for the quarter ending September

10    30, 2006, in which it restated financial results for fiscal years 2000 through 2005, as well as the

11    first two quarters of fiscal year 2006. AC ¶ 118; Ex. E at 3, 11.  The Company noted that the

12    Governance Committee "*found no evidence of intent to manipulate the Company's operating*

13    *results or financial statements*." Ex. E at 10 (emphasis added).  The Company added:  "The

14    Governance Committee's review also concluded that *none of the current or former employees*

15    *or directors of the Company engaged in intentional wrongdoing*." *Id.* (emphasis added).

16    **C.    Procedural History**

17    More than a month before the Governance Committee issued its final findings, on

18    September 4, 2007, Peter Rudolph filed his Class Action Complaint alleging violations of

19    Sections 10(b), 14(a), and 20(a) of the Exchange Act and Rules 10b-5 and 14a-9 promulgated

20    thereunder by the Securities and Exchange Commission ("SEC").  On September 20, 2007, lead

21    plaintiffs in the action entitled *In re UTStarcom, Inc. Securities Litigation*, No. C-04-4908 (N.D.

22    Cal.) ("*In re UTStarcom*") filed with that court an Administrative Motion to Consider Whether

23    Cases Should Be Related Pursuant to Local Rules 3-12 and 7-11, requesting that the *In re*

24    *UTStarcom* court relate the instant action to *In re UTStarcom*.  On November 30, 2007, the

25    motion was denied.  On December 14, 2007, this Court appointed James R. Bartholomew Lead

26    Plaintiff.  Mr. Bartholomew filed his Amended Class Action Complaint on January 25, 2008.

27

28

MOTION TO DISMISS AMENDED                    -4-
COMPLAINT
CASE NO. C-07-4578 SI

**ARGUMENT**

I.   **TO SURVIVE DISMISSAL, THE AMENDED COMPLAINT MUST COMPLY WITH THE HEIGHTENED PLEADING REQUIREMENTS OF THE REFORM ACT**

"As a check against abusive litigation by private parties, Congress enacted the Private Securities Litigation Reform Act of 1995 (PSLRA)[.]" *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 127 S. Ct. 2499, 2504 (2007); *see also In re Vantive Corp. Sec. Litig.*, 283 F.3d 1079, 1084-85 (9th Cir. 2002) (Reform Act "significantly altered pleading requirements in private securities fraud litigation" in order to "eliminate abusive securities litigation" and "the practice of pleading 'fraud by hindsight'") (citations omitted).  The Reform Act "erect[s] procedural barriers to prevent plaintiffs from asserting baseless securities fraud claims." *In re Silicon Graphics Inc. Sec. Litig.*, 183 F.3d 970, 977 (9th Cir. 1999).  These barriers include the requirement that a complaint "specify each statement alleged to have been misleading [and] the reason or reasons why the statement is misleading." 15 U.S.C. § 78u-4(b)(1)(B).  For allegations pled on information and belief, the complaint must "state with particularity all facts on which [the plaintiff's] belief is formed." *Id.*  The Reform Act also establishes a stringent standard for pleading a defendant's state of mind.  The complaint must "state with particularity facts giving rise to a strong inference that the defendant acted with the required state of mind." 15 U.S.C. § 78u-4(b)(2).  Section 14(a) claims, like § 10(b) claims, are subject to this heightened standard, because they too require the showing of a particular state of mind: negligence.[2]

II.   **PLAINTIFF FAILS TO PLEAD A CLAIM UNDER SECTION 10(b)**

A plaintiff asserting a § 10(b) violation must plead six elements: i) "a material misrepresentation (or omission)"; ii) "scienter, i.e., a wrongful state of mind"; iii) "a connection with the purchase or sale of a security"; iv) "reliance, often referred to in cases involving public securities markets (fraud-on-the-market cases) as 'transaction causation'"; v) "economic loss";

---

[2] *See, e.g., In re VeriSign, Inc., Derivative Litig.*, – F. Supp. 2d –, 2007 WL 2705221, at *34 (N.D. Cal. Sept. 14, 2007) ("Under the PSLRA, a § 14(a) claim must be pled with particularity."); *In re McKesson HBOC, Inc. Sec. Litig.*, 126 F. Supp. 2d 1248, 1267 (N.D. Cal. 2000) ("The court accordingly holds that a Section 14(a) plaintiff must plead with particularity facts that give rise to a strong inference of negligence.").

1  and vi) "'loss causation,' i.e., a causal connection between the material misrepresentation and the

2  loss." *Dura Pharms., Inc. v. Broudo*, 544 U.S. 336, 341-42 (2005) (emphasis omitted).

3  Plaintiff's § 10(b) claim must be dismissed for two independent reasons: failure to adequately

4  plead loss causation and failure to plead particularized facts raising a strong inference of scienter.

5      **A.**    **Plaintiff Fails to Adequately Plead Loss Causation**

6        Plaintiff's failure to plead loss causation is dispositive and requires dismissal of his §

7  10(b) claim. In *Dura*, the Supreme Court held that it is insufficient for a plaintiff to simply claim

8  that he or she purchased stock at an inflated price due to a material misstatement or omission,

9  because "at the moment the transaction takes place, the plaintiff has suffered no loss." *Id.* at 342.

10  "Instead, the Court concluded that to properly plead loss causation in a fraud claim, a plaintiff

11  must allege that the price fell after the truth came to light about a misrepresentation, and that the

12  plaintiff suffered damages as a result." *Weiss v. Amkor Tech., Inc.*, 527 F. Supp. 2d 938, 2007

13  WL 2808224, at *5 (D. Ariz. Sept. 25, 2007) (citing *Dura*).

14        The Amended Complaint alleges that Defendants "artificially inflated UTStarcom's

15  securities prices" by "misrepresenting the Company's financial results and compensation

16  practices." AC ¶ 142. Plaintiff asserts that "investors began to learn the truth" about UTSI's

17  finances as a result of "two specific pronouncements from the Company" on November 7, 2006

18  and July 24, 2007. *Id.* ¶¶ 146-48. As the Amended Complaint itself illustrates, however, neither

19  of these constitutes a disclosure of fraud that caused a loss to Plaintiff, as required by *Dura*.

20      **1.**    **The November 7, 2006 Announcement of a Voluntary Review of**
21            **Historical Equity Award Grant Practices Was Not a Corrective**
          **Disclosure**

22        Plaintiff first alleges that the "truth" about the Company's finances was "revealed" on

23  November 7, 2006, when the Company announced "that it had commenced a voluntary review of

24  its historical equity award grant practices." *Id.* ¶ 147. Plaintiff, however, does not (and cannot)

25  explain why the mere announcement of an internal investigation is a "corrective disclosure," that

26  is, a revelation to the market that one or more previous statements were untrue.

27

28

1    In fact, courts in this circuit have repeatedly rejected Plaintiff's theory that the mere

2 announcement of an investigation can support an allegation of loss causation.[3]  For example, the

3 court in *Weiss v. Amkor* found that a stock drop following a press release disclosing an

4 investigation into historical stock option practices "cannot be the proximate result of the stock

5 option misrepresentations and omissions" alleged in the complaint at issue.  *Weiss*, 2007 WL

6 2808224, at *7.  "[T]his press release does not signal, much less state, that any prior option

7 grants were incorrect . . . or that prior financial statements were incorrect in any way."  *Id.*

8 Accordingly, Plaintiff's allegations regarding the November 7 announcement fail to plead loss

9 causation under *Dura*.[4]

10    **2.    The July 24, 2007 Announcement of a Reduced Restatement Does Not Support Loss Causation**

11

12    Plaintiff's only remaining allegation of loss causation hinges on the Company's

13 disclosure on July 24, 2007.  On that date, the Company announced additional "preliminary

14 results of its review of historical equity award practices, requiring the Company to restate

15 approximately $28 million of non-cash compensation expenses over the years 2000 through

16

---

17  [3] *See, e.g., In re Hansen Natural Corp. Sec. Litig.*, 527 F. Supp. 2d 1142, 2007 WL 3244646,
18 at *16 (C.D. Cal. Oct. 16, 2007) ("[N]one of the three public disclosures referenced in Plaintiff's
Complaint contain a disclosure of wrongdoing.  For example, the October 31, 2006, 8-K simply
19 stated that Hansen had received a letter from the SEC asking it to voluntarily produce documents
related to Hansen's filing of Form 4s and its stock option grant practices. . . .  In addition, the
20 November 6, 2006, press release simply stated that Hansen had formed a Special Committee to
conduct an investigation into the same matters the SEC was investigating[.]"); *In re Avista Corp.*
21 *Sec. Litig.*, 415 F. Supp. 2d 1214, 1221 (E.D. Wash. 2005) ("[T]he announcement by a
regulatory agency that it intends to investigate is insufficient, on its own, to plead loss
22 causation."); *Morgan v. AXT, Inc.*, No. C 04-4362, 2005 WL 2347125, at *16 (N.D. Cal. Sept.
23, 2005) ("Here, the Complaint simply states that because AXT's stock prices dropped
23 significantly after the Company disclosed its internal investigation, Plaintiff, and other AXT
shareholders who purchased stock during the Class Period, lost money.  However, Plaintiff has
24 not alleged a proximate, causal connection between the alleged misrepresentations contained in
AXT's press releases and financial statements and the consequent decline in AXT stock.").

25  [4] The Amended Complaint itself offers a more likely explanation for the stock drop on
26 November 8.  Plaintiff references a *Forbes.com* article published on that day in which it was
reported that Bear Stearns analyst Evan Erlanson had concluded that "[t]he company's
27 fundamentals . . . remain weak and he does not think UTStarcom will turn a profit any time
soon."  Ex. B.  The *Forbes.com* article further noted that Erlanson had "downgraded the
28 company's shares to 'underperform' from 'neutral.'"  *Id.*

1    2006." AC ¶ 148.  However, Plaintiff can hardly characterize this announcement as a corrective

2    disclosure of adverse non-public information since it was *positive* news.  The Company had

3    already disclosed on February 1, 2007 that the Governance Committee had determined "that

4    incorrect measurement dates for certain option grants were used."  And the Company had

5    previously estimated on February 1 and May 16 that the amount of the restatement would be $50

6    million or $35 million, respectively.[5]  Thus, the Company's July 24 announcement of a $28

7    million restatement disclosed a *reduction* in the estimated amount of a previously announced

8    compensation expense.  Clearly, Plaintiff cannot claim loss causation based on *good* news.  *See,*

9    *e.g., Oscar Private Equity Invs. v. Allegiance Telecom, Inc.,* 487 F.3d 261, 266 (5th Cir. 2007)

10   (plaintiff seeking to establish loss causation must show "that the *negative* 'truthful' information

11   causing the decrease in price is related to an allegedly false, non-confirmatory positive statement

12   made earlier") (emphasis added) (internal quotation marks omitted).[6]

13          Tellingly, Plaintiff fails to acknowledge key information in the July 24, 2007 press

14   release that *does* explain the subsequent stock decline:  the announcement that the Company

15   "continue[d] to see declines in the PAS business in China."  Ex. D.  Plaintiff conveniently

16   excises this portion of the Company's July 24, 2007 press release, thereby ignoring the obvious

17   connection between this negative disclosure—which has ***nothing to do with the stock option***

18   ***review***—and the drop in the stock price.  Such artful pleading must be rejected.  *See, e.g., Weiss,*

19   2007 WL 2808224, at *7 ("Clearly, the primary focus of the July 26 Release was a discussion of

20

21          [5] Although the February 1, 2007 announcement was the first time that either the existence of
22   the impending compensation charge or its approximate amount was disclosed, Plaintiff has not
     alleged that this announcement caused investors' losses, for the obvious reason that the
23   Company's stock price hardly reacted to it.  *See* Ex. E.

24          [6] It is equally clear that Plaintiff cannot plead loss causation based on the Company's
     repetition of information regarding the restatement since that was already publicly disclosed.
25   *See, e.g., Teachers' Ret. Sys. of Louisiana v. Hunter,* 477 F.3d 162, 187 (4th Cir. 2007) ("The
     problem with plaintiffs' theory on the C & C transactions is that these facts had already been
26   disclosed in public filings, so their revelation in Hunter's 2003 complaint could not have caused
     Cree's stock price to decline."); *see also Hansen,* 2007 WL 3244646, at *16 (citing with
27   approval the loss causation discussion in *Teachers' Ret. Sys.*); *In re Omnicom Group, Inc. Sec.*
     *Litig.,* No. 02 Civ. 4483, 2008 WL 243788, at *5 (S.D.N.Y. Jan. 29, 2008) ("A recharacterization
28   of previously disclosed facts cannot qualify as a corrective disclosure.").

MOTION TO DISMISS AMENDED            -8-
COMPLAINT
CASE NO. C-07-4578 SI

1    the company's second quarter results, recent financing transactions, a new wafer bumping and

2    test facility, capital expenditures, financial liquidity and a forecast for a weak third quarter.  The

3    stock price drop following the July 26 Release cannot be the proximate result of the stock option

4    misrepresentations and omissions alleged in the SAC.").[7]  In sum, Plaintiff's allegations

5    regarding the July 24 disclosure fails to support loss causation.

### B.    Plaintiff Fails to Adequately Plead Scienter

7          Plaintiff's failure to plead particularized facts giving rise to a strong inference of scienter

8    likewise necessitates dismissal of his § 10(b) claim.  Courts routinely hold, in both backdating

9    and non-backdating cases, that the mere pleading of a restatement does not satisfy a § 10(b)

10   plaintiff's burden to show scienter.  Incorrect dates on stock option grants are not enough to

11   support an inference of intent to defraud.  Perhaps recognizing this, and recognizing that he has

12   pleaded absolutely no specific facts regarding the supposed role of the Individual Defendants in

13   the Company's option granting process, Plaintiff resorts to the usual assortment of tired scienter

14   allegations including, for example, the fact that certain defendants sold stock or signed quarterly

15   certifications of the financials.  Like Plaintiff's restatement allegations, such allegations fail,

16   alone or together, to raise the required strong inference of intent to defraud.

### 1.    Plaintiff Must Plead Particularized Facts Establishing a Strong Inference of Intent or Deliberate Recklessness

19         The Reform Act requires Plaintiff to plead, in "great detail, facts that constitute strong

20   circumstantial evidence of deliberately reckless or conscious misconduct."  *Silicon Graphics*,

21   183 F.3d at 974.  As the Ninth Circuit has explained, "deliberate recklessness" is a form of

22   intentional conduct, not merely an extreme form of negligence.  *See, e.g.*, *id.* at 976-77; *DSAM*

23   *Global Value Fund v. Altris Software, Inc.*, 288 F.3d 385, 391 (9th Cir. 2002) (same).  Plaintiff

24   must make "allegations of specific contemporaneous statements or conditions [known to the

25   defendants] that demonstrate the intentional or the deliberately reckless false or misleading

_____

27   [7] *See also In re Intelligroup Sec. Litig.*, 468 F. Supp. 2d 670, 692 (D.N.J. 2006) (rejecting loss causation allegations "where the stock price decline might be attributable to other forces, events or announcements that took place prior to or contemporaneously with the public airing of the alleged fraud but had nothing to do with the challenged conduct by the defendant").

MOTION TO DISMISS AMENDED                    -9-
COMPLAINT
CASE NO. C-07-4578 SI