nature of the statements when made." *In re Read-Rite Corp. Sec. Litig.*, 335 F.3d 843, 846 (9th Cir. 2003) (internal quotation marks omitted). The Supreme Court recently held that such allegations must raise an inference of scienter that is ***"more than merely plausible or reasonable*** – it must be cogent and at least as compelling as any opposing inference of nonfraudulent intent." *Tellabs*, 127 S. Ct. at 2504-05 (emphasis added).

Further, a plaintiff cannot allege scienter against defendants as an undifferentiated group. Instead, a plaintiff must allege specific facts showing that *each* of the individuals against whom he asserts a claim either actually intended to deceive investors or was deliberately reckless in not knowing that investors would be deceived. *See, e.g., Southland Sec. Corp. v. INSpire Ins. Solutions, Inc.*, 365 F.3d 353, 364-65 (5th Cir. 2004) (Reform Act's references to "'the defendant' may only reasonably be understood to mean 'each defendant' in multiple defendant cases, as it is inconceivable that Congress intended liability of any defendants to depend on whether they were all sued in a single action or were each sued alone[.]").[8]

### 2. The Restatement Does Not Establish Scienter

The fact that the Company restated its financials does not imply, let alone strongly imply, that any of the Defendants acted with scienter. Plaintiff claims that the October 10, 2007 restatement constituted a "tacit admission" that backdating occurred at the Company during the class period. AC ¶ 129. Plaintiff is wrong. The Ninth Circuit has explained that a restatement, by itself, indicates only that a company's financials were incorrect, not the existence of an intent to defraud. *See, e.g., DSAM*, 288 F.3d at 390 ("[P]ublication of inaccurate accounting figures, or a failure to follow GAAP, without more, does not establish scienter.") (internal quotation marks omitted).[9]

---

[8] *See also In re Silicon Storage Tech., Inc., Sec. Litig.*, No. C 05-0295, 2006 WL 648683, at *22 (N.D. Cal. Mar. 10, 2006) (Reform Act requires "that plaintiffs plead facts showing scienter as to each defendant individually"); *In re Metricom Sec. Litig.*, No. C 01-4085, 2004 WL 966291, at *34-35 (N.D. Cal. Apr. 29, 2004) (scienter must be alleged as to each defendant), *aff'd sub nom. Young v. Dreisbach*, 182 Fed. Appx. 714 (9th Cir. 2006) (unpublished).

[9] *See also In re U.S. Aggregates, Inc. Sec. Litig.*, 235 F. Supp. 2d 1063, 1073 (N.D. Cal. 2002) ("[E]ven an obvious failure to follow GAAP does not give rise to an inference of scienter."); *In re Network Assocs., Inc. II Sec. Litig.*, No. C 00-cv-4849, 2003 WL 24051280, at

(continued...)

Indeed, courts—including this Court—confronting allegations of option backdating have held that the mere fact a company investigates its stock option practices and later restates its financials does not mean that any intentional misconduct occurred. *See, e.g., Nach v. Baldwin*, No. C 07-0740, 2008 WL 410261, at *7, 9 (N.D. Cal. Feb. 12, 2008) (Illston, J.) (noting the "clear difference between incorrectly applying a stock option measurement date and fraudulent backdating," and finding Court "cannot infer that backdating actually occurred").[10] This is particularly true in light of the finding by UTSI's Governance Committee that "none of the current or former employees or directors of the Company engaged in intentional wrongdoing." Ex. E at 10; *see also In re CNET Networks, Inc. S'holder Derivative Litig.*, 483 F. Supp. 2d 947, 963 (N.D. Cal. 2007) (holding, in view of special committee's conclusion "that there was no wrongdoing by any current or recently resigned directors or officers," that an inference of fraud "is improper absent other facts indicating fraud"); *PMC-Sierra*, 2007 WL 2427980, at *5 ("Thus, plaintiffs contend, PMC has effectively *admitted* backdating, and plaintiffs need not rely on mere inferences. The problem, as defendants point out, is that the internal investigation expressly concluded that there had been *no* intentional wrongdoing.").[11]

---

(...continued from previous page)
*14 (N.D. Cal. Mar. 25, 2003) ("[T]he mere fact that [the company] restated its financials for these years is not enough to create the necessary strong inference of scienter.").

[10] *See also In re Openwave Sys., Inc., S'holder Derivative Litig.*, No. C 06-03468, 2008 WL 410259, at *7 (N.D. Cal. Feb. 12, 2008) (Illston, J.) (finding plaintiffs' allegations, which included a $182 million restatement covering fiscal years 2000 through 2005, "simply insufficient to allow a reasonable inference of backdating"); *In re PMC-Sierra, Inc. Derivative Litig.*, No. C 06-05330, 2007 WL 2427980, at *5 (N.D. Cal. Aug. 22, 2007) ("[T]he fact that PMC has admitted it erroneously recorded some option grant dates does not create an inference that the challenged options were intentionally and fraudulently backdated.").

[11] Plaintiff refers repeatedly to the allegedly "enormous" amount of options issued by the Company and their allegedly "enormous" significance to the Company's financials. AC ¶¶ 140-41. Yet courts routinely hold that the magnitude of a restatement does not establish scienter. *See, e.g., In re Van Wagoner Funds, Inc. Sec. Litig.*, 382 F. Supp. 2d 1173, 1187 (N.D. Cal. 2004) ("Magnitude of fraud only supports an inference of scienter when the plaintiff alleges specific and detailed facts showing that the magnitude either enhanced the suspiciousness of specifically identified transactions or made the overall fraud glaringly conspicuous."); *Reiger v. Price Waterhouse Coopers LLP*, 117 F. Supp. 2d 1003, 1013 (S.D. Cal. 2000) ("To travel from magnitude of fraud to evidence of scienter, the court must blend hindsight, speculation and conjecture to forge a tenuous chain of inferences[.]"); *Fidel v. Farley*, 392 F.3d 220, 231 (6th Cir. 2004) ("Allowing an inference of scienter based on the magnitude of fraud would eviscerate

(continued...)

### 3. Sarbanes-Oxley Certifications Do Not Establish Scienter

Plaintiff's attempts to establish scienter via allegations that certain defendants signed quarterly certifications of the financial statements are similarly futile. Plaintiff includes a two-page chart listing the Forms 10-K and 10-Q certified by Messrs. Lu, Sophie, and Barton during the class period. AC ¶ 123. Of course, all financial statements for any public company are certified. The Sarbanes-Oxley Act requires it. If the existence of a certification were enough to support an inference of scienter, then there always would be an inference of scienter for every public company with respect to every certified financial statement that was later restated. That would be an absurd result, and is not the law. Courts routinely hold that Sarbanes-Oxley certifications, absent "facts concerning actual knowledge on the part of the Individual Defendants," are insufficient to support an inference of scienter. *In re InVision Techs., Inc. Sec. Litig.*, No. C04-03181, 2006 WL 538752, at *7 n.3 (N.D. Cal. Jan. 24, 2006); *see also In re Hypercom Corp. Sec. Litig.*, No. CV-05-0455, 2006 WL 1836181, at *11 (D. Ariz. July 5, 2006) ("[A]n incorrect Sarbanes-Oxley certification does not, by itself, create a strong inference of scienter.").[12] A Sarbanes-Oxley certification is simply a statement that, "based on the officer's knowledge," the certified financial information is accurate. 15 U.S.C. § 7241(a)(2)-(3). As such, "where there is no evidence that defendants knew of or recklessly disregarded inadequate internal controls" at the time they signed the certification, courts find that scienter is not adequately pleaded. *Commc'ns Workers*, 2007 WL 951968, at *8; *see also Hypercom*, 2006 WL 1836181, at *11 ("Plaintiffs have failed to establish that [the certifying officer] knowingly or

---

(...continued from previous page)
the principle that accounting errors alone cannot justify a finding of scienter.") (internal quotation marks omitted).

[12] *See also Morgan*, 2005 WL 2347125, at *15 ("Plaintiff also contends that the Sarbanes-Oxley certifications signed by Defendant Young and filed with the SEC were false when made. Again, the court finds that Plaintiff has not alleged particularized facts to support his claim that Defendant Young's averments that he had examined the Company's internal disclosure controls and believed they were adequate, were false."); *Zucco Partners, LLC v. Digimarc Corp.*, 445 F. Supp. 2d 1201, 1209 (D. Or. 2006) (certification, absent other specific facts, insufficient to plead scienter); *Commc'ns Workers of Am. Plan for Employees' Pensions & Death Benefits v. CSK Auto Corp.*, No. CV06-1503, 2007 WL 951968, at *8 (D. Ariz. Mar. 28, 2007) ("Sarbanes-Oxley certifications, by themselves, do not support a strong inference of scienter.")

with deliberate recklessness misrepresented that Hypercom had effective internal controls."). As one court in this circuit remarked, the passage of Sarbanes-Oxley "does not transform the PSLRA's requirement of falsity-plus-scienter into a requirement of falsity-plus-a-Sarbanes-Oxley-certification." *In re Watchguard Sec. Litig.*, No. C05-678, 2006 WL 2038656, at *11 (W.D. Wash. Apr. 21, 2006).

### 4. Plaintiff Utterly Fails to Plead Facts Establishing the Individual Defendants' Involvement in the Stock Option Granting Process

Plaintiff's scienter allegations further fail because of an utter lack of specific allegations concerning the role that the Individual Defendants allegedly played in the purported backdating conspiracy. The Ninth Circuit requires Plaintiff to plead "specific contemporaneous conditions known to the defendants that would strongly suggest that the defendants understood" their statements to be false. *Vantive*, 283 F.3d at 1090-91; *see also Watchguard*, 2006 WL 2038656, at *4 (requiring "allegations that link a particular Defendant with particular knowledge").

Instead of explaining what role Messrs. Lu, Wu, Sophie, Toy and Barton played in the Company's stock option granting process during the class period, Plaintiff simply alleges that the Individual Defendants are current and/or former officers and/or directors of the Company (AC ¶¶ 33-37), and concludes: "Because of the Individual Defendants' positions within the Company, they had access to adverse undisclosed material information about its business, operations, financial statements and stock option grants." *Id.* ¶ 38. Plaintiff adds that the Defendants "were privy to such undisclosed information from internal corporate documents, communications with other officers and employees of the Company, and attendance at and documents received during management and Board of Directors meetings," without actually pleading the contents of any of these supposed documents or communications, or how they show that Defendants had the intent to defraud. *Id.* For flourish, Plaintiff throws in a few boilerplate suggestions that the Individual Defendants "approved," "directed and/or participated in" the alleged backdating scheme. *Id.* ¶¶ 127, 130, 132.

One court, recently faced with a very similar case, succinctly summed up the fatal defect in such allegations:

> These allegations do not satisfy the pleading requirements of the PSLRA because plaintiffs neither specify the roles that [the defendants] played in the alleged backdating scheme or in the alleged scheme to issue false financial reports, nor allege facts giving rise to a strong inference of scienter as to *each* defendant.

*VeriSign*, 2007 WL 2705221, at *29-30.[13] Courts in this circuit have held, time and again, that a plaintiff cannot plead scienter simply by alleging a defendant's position or access to information. *See, e.g., In re Autodesk, Inc. Sec. Litig.*, 132 F. Supp. 2d 833, 843-44 (N.D. Cal. 2000) ("[P]laintiffs must do more than allege that these key officers had the requisite knowledge by virtue of their 'hands on' positions, because that would eliminate the necessity for specifically pleading scienter, as any corporate officer could be said to possess the requisite knowledge by virtue of his or her position.").[14] This is particularly true in the case of Mr. Toy, whom even Plaintiff admits (AC ¶ 37) was merely an outside director of the Company during the class period. *See, e.g., Weiss*, 2007 WL 2808224, at *10 ("What is missing from the SAC regarding the outside directors' scienter are factual allegations setting forth what information was presented

---

[13] *See also Hansen*, 2007 WL 3244646, at *11 ("Plaintiff's failure to plead any facts related to the role or knowledge of any of the Individual Defendants or any Individual Defendant's involvement in the alleged backdating scheme is fatal to Plaintiff's showing of scienter both with respect to the Individual Defendants and with respect to Hansen."); *Weiss*, 2007 WL 2808224, at *12 ("[T]he SAC does not allege that this high-level position had anything to do with stock option granting practices."); *In re Stac Elecs. Sec. Litig.*, 89 F.3d 1399, 1410 (9th Cir. 1996) (dismissing § 10(b) claim for failure to comply with Rule 9 where plaintiff "provides no specific facts – no names, no meetings, no internal memoranda or documents, no specific conduct or statement – in support of its theory"); *In re TIBCO Software, Inc. Sec. Litig.*, No. C 05-2146, 2006 WL 1469654, at *18 (N.D. Cal. May 25, 2006) (finding CW allegations deficient where "[p]laintiffs utterly fail to provide information showing who specifically knew the information, how they knew it, what information was known, and when it was known").

[14] *See also Vantive*, 283 F.3d at 1087 ("These allegations are insufficient in light of our decision in *Silicon Graphics*, 183 F.3d at 985. There, we rejected a plaintiff's attempt to establish that defendant insiders had knowledge of alleged production and sales problems through general allegations that the defendants had received internal reports[.]"); *In re Read-Rite Corp. Sec. Litig.*, 115 F. Supp. 2d 1181, 1183 (N.D. Cal. 2000) ("At bottom, the allegations seemingly intended to imply Defendants' knowledge rest on the assumption that persons with job titles or duties of the individual defendants *would surely have known* the facts in question. Such assumptions . . . do not amount to the sort of strong implication of scienter required by the Reform Act[.]"), *aff'd*, 335 F.3d 843 (9th Cir. 2003); *In re Peerless Sys., Corp. Sec. Litig.*, 182 F. Supp. 2d 982, 992-93 (S.D. Cal. 2002) (rejecting scienter allegations that defendants knew of misstatements "because of their positions in the Company and because they had access to internal Company documents").

to the outside directors about any of the alleged misrepresentations, omissions, GAAP violations, etc. that put them on actual or constructive notice of fraudulent activity.").

Plaintiff's failure to plead *any* facts, much less the required *particularized facts*, establishing a strong inference of scienter is entirely consistent with the finding by the Company's Governance Committee that "none of the current or former employees or directors of the Company engaged in intentional wrongdoing." Ex. E at 10.[15]

### 5. Plaintiff's Motive and Opportunity Allegations Do Not Evidence Scienter

It is black letter law in this circuit that allegations which merely show that a defendant had the "motive and opportunity" to commit fraud are never enough to raise a strong inference of scienter. *See, e.g., Silicon Graphics*, 183 F.3d at 974. This is because "plaintiffs proceeding under the PSLRA can no longer aver intent in general terms . . . but rather, must state specific facts indicating no less than a degree of recklessness that strongly suggests actual intent." *Id.* at 979. Moreover, the motive and opportunity allegations at issue in this case—concerning certain stock transactions during the class period—are insufficiently particular to add anything at all to Plaintiff's attempt to plead scienter.

First, the Amended Complaint simply alleges that some unnamed subset of Defendants exercised options during the class period, stopping short of actually providing particularized facts showing that *specific* Defendants exercised *backdated* options, let alone such necessary details as the dates and amounts of such exercises. *See, e.g.*, AC ¶ 71 ("Defendants . . . exercised options during the Class Period that were granted between 2000 and 2006, the period during

---

[15] Plaintiff also suggests that Mr. Wu's resignation somehow supports an inference of scienter. AC ¶ 129. Yet "[t]he resignation of a high level executive, by itself, surely cannot be taken to strongly imply the requisite scienter." *Read-Rite*, 115 F. Supp. 2d at 1184; *see also In re Cornerstone Propane Partners, L.P. Sec. Litig.*, 355 F. Supp. 2d 1069, 1093 (N.D. Cal. 2005) ("The court finds that whether they were terminated or resigned, these notable departures are not in and of themselves evidence of scienter."). Absent particularized facts linking Mr. Wu's departure and the options issue, Plaintiff's "allegations" concerning the matter fail to provide any evidence of scienter. *See, e.g., In re Cyberonics Inc. Sec. Litig.*, 523 F. Supp. 2d 547, 553 (S.D. Tex. 2007) ("The resignation agreements with the CEO and CFO contain no particularized details that would support a strong inference of scienter.").

which the options were backdated.").[16] As one court recently observed in a similar case: "[M]issing from the SAC are any allegations that any individual defendant realized any direct economic gain from Amkor stock options. An option is the right to purchase the underlying security, and there are no allegations that any named defendant exercised his Amkor options and sold the stock for gain." *Weiss*, 2007 WL 2808224, at *11.

      Second, and more fundamentally, even if Plaintiff had pleaded specific facts showing that particular Defendants exercised backdated stock options, he still fails to explain how the mere receipt and exercise of an option, without a showing of contemporaneous knowledge that it was backdated, establishes scienter.[17, 18]

---

[16] *See also* AC ¶ 54 ("Defendants each knowingly or with deliberate recklessness . . . engaged in acts, practices and a course of business which operated a fraud and deceit upon Class members including . . . (ii) exercising backdated options and selling the shares obtained therefrom . . . *and/or* (vi) taking steps to ensure that the Company lacked sound internal controls and contained deficiencies and material weaknesses.") (emphasis added); *id.* ¶ 136 ("[T]he Officer Defendants actually exercised backdated options, thereby cashing in on their fraudulent scheme. In total, the Individual Defendants received proceeds totaling $36,865603 [sic] *from selling shares of stock* during the Class Period.") (emphasis added).

[17] *See, e.g., In re Ditech Networks, Inc. Derivative Litig.*, No. C 06-5157, 2007 WL 2070300, at *6 (N.D. Cal. July 16, 2007) ("The Complaint alleges no *facts* that give rise to a strong inference that the non-director defendants knew that the options they received were backdated[.]"); *Cyberonics*, 523 F. Supp. 2d at 553 ("As proof of scienter, the plaintiffs argue that the individual defendants must have known about the back-dating because their compensation was dramatically increased as a result. . . . [T]hese allegations cannot support an inference that is at least as likely as the plausible non-culpable opposing inferences."). Simply put, it is not enough to plead knowledge of a transaction absent knowledge of the *impropriety* of that transaction. *See, e.g., S.E.C. v. Todd*, No. 03CV2230, 2006 WL 1564892, at *7 (S.D. Cal. May 30, 2006) ("[K]nowledge of the existence of the transactions does not allow a reasonable fact-finder to draw an inference that Weitzen had knowledge of their impropriety, or was reckless in not knowing."); *Jones v. Deutsche Bank AG*, No. C 04-05357, 2005 WL 1683614, at *6 (N.D. Cal. July 19, 2005) (rejecting allegations of bank's participation in transaction as "insufficient to show that Deutsche Bank knew of the [transaction]'s illegality at the time of the transaction, and consciously disregarded that knowledge for the sake of large fees").

[18] Plaintiff also appears to contend that scienter is demonstrated by the fact that, while the Company's internal investigation was ongoing, several of the Individual Defendants "elected to amend any of their previously granted stock options that might in the future be determined to be discounted stock options under Section 409A of the Internal Revenue Code." AC ¶ 129. A *promise to forego any benefit* in the event accounting error is found, however, *negates* Plaintiff's claim that the Individual Defendants sought to "cash in" (*id.* ¶¶ 136, 165) on knowingly-backdated stock options. *Cf. CNET*, 483 F. Supp. 2d at 962-63 (refusing to infer fraud despite existence of restatement and agreement by certain defendants to reprice options).

Third, Plaintiff's stock sale allegations are so vague as to merit little discussion. These allegations are a non-starter because Plaintiff does not even bother pleading specific stock sales for each defendant, but simply asserts the total proceeds that Messrs. Lu, Wu, Sophie and Toy supposedly received from unidentified stock sales during the class period.[19] AC ¶¶ 33-35, 37, 136. Of course, "[i]nsider stock sales are not inherently suspicious." *Vantive*, 283 F.3d at 1092. Rather, as the Ninth Circuit has repeatedly noted, "insider trading is suspicious only when it is dramatically out of line with prior trading practices at times calculated to maximize the personal benefit from undisclosed inside information." *Silicon Graphics*, 183 F.3d at 986 (internal quotation marks omitted).[20] Accordingly, in analyzing allegations of insider stock sales, courts in this circuit consider: "(1) the amount and percentage of shares sold by insiders; (2) the timing of the sales; and (3) whether the sales were consistent with the insider's prior trading history." *Silicon Graphics*, 183 F.3d at 986. However, the utter lack of information provided by the Amended Complaint makes it impossible to evaluate Plaintiff's allegations under *any* of these three factors. What proportion of the Individual Defendants' total stock holdings did their class period stock sales represent? When did they sell stock? What about their prior trading history? Plaintiff addresses none of these issues. Plaintiff's allegation that the Defendants collectively sold stock worth more than $36 million means nothing, particularly given that the class period spans *nearly five years*.[21]

### 6. Plaintiff's Confidential Witness Allegations Fail to Establish Scienter

Where a plaintiff relies on the allegations of "confidential witnesses," courts require the pleading of facts establishing that the "witnesses" actually have personal knowledge of the events in question, and require that the allegations attributed to the witnesses be sufficiently

---

[19] Mr. Barton is not alleged to have sold any stock during the class period.

[20] *See also Ronconi v. Larkin*, 253 F.3d 423, 435 (9th Cir. 2001) (same); *Vantive*, 283 F.3d at 1092 (same).

[21] *See, e.g., Vantive*, 283 F.3d at 1092 (taking into account "unusually long class period" of sixty-three weeks in analyzing class period stock sales); *In re Splash Tech. Holdings Inc. Sec. Litig.*, 160 F. Supp. 2d 1059, 1083 (N.D. Cal. 2001) (class period of approximately 90 weeks is a "major mitigating factor" in analyzing suspiciousness of stock sales).