particular to raise a strong inference of scienter. The Amended Complaint refers to two confidential witnesses. CW1, described simply as "a former Human Resources Coordinator at the Company from 2005 through 2007," is said to make three allegations: i) that backdating was "commonly discussed and acknowledged as a general practice within the company"; ii) that CW1 was "directed, at various times, to purposefully and intentionally alter documents" for the purpose of backdating options; and iii) that CW1 "witnessed the fabrication of documents for the purpose of backdating of options by Defendant Barton and Defendant Sophie." AC ¶¶ 57-58, 60, 62, 131. CW2, described as "an Administrative Support Representative from October 2006 through September 2007," is mentioned in only a single sentence, and even then only to "confirm" that backdating was "commonly discussed" at the Company. *Id.* ¶ 57. Such sparse allegations neither satisfy Plaintiff's burden to demonstrate personal knowledge on the part of the confidential witnesses, nor provide particularized facts raising a strong inference of scienter on the part of the Defendants.

Courts have held that a plaintiff may not merely plead witnesses' job titles and dates of employment because such allegations "fail[] to offer any *specific* information about the nature of the confidential witnesses' employment with the Company or the basis of these witnesses' knowledge." *Network Assocs*, 2003 WL 24051280, at *9 (emphasis added).[22] For instance, Plaintiff fails to explain, with respect to each confidential witness at issue here, "(2) what did his/her position entail; (3) in which division of the Company did he/she work; (4) to whom did he/she report?" *Id.* at *9.[23]

---

[22] *See also In re Siebel Sys., Inc. Sec. Litig.*, No. C 04-0983, 2005 WL 3555718, at *8-9 (N.D. Cal. Dec. 28, 2005) (allegations attributed to a confidential witness "must be accompanied by enough particularized detail to support a reasonable conviction in the informant's basis of knowledge") (internal quotation marks omitted); *Coble v. Broadvision Inc.*, No. C 01-01969, 2002 WL 31093589, at *6 (N.D. Cal. Sept. 11, 2002) ("Again, plaintiffs fail to provide detail sufficient to support an inference that the unnamed source would actually know if [Defendant] was told in a marketing meeting about additional, unaccounted for expenses.").

[23] *See also In re Northpoint Commc'ns Group, Inc. Sec. Litig.*, 184 F. Supp. 2d 991, 1000 (N.D. Cal. 2001) ("Significantly, the complaint does not discuss what the specific duties of these individuals were, or how they came to learn of the information they provide in the complaint."); *Weiss*, 2007 WL 2808224, at *11 (rejecting confidential witness allegations in option backdating case for failure to allege "with substantial specificity" how the witness "came to learn of the information they provide in the complaint").

MOTION TO DISMISS AMENDED COMPLAINT
CASE NO. C-07-4578 SI
-18-

Nor do the statements attributed to the confidential witnesses themselves pass Reform Act muster. CW1 and CW2's general allegation that backdating was "commonly discussed," absent supporting factual details, constitutes nothing more than a rumor that is entitled to absolutely no weight in this Court's analysis. *See, e.g.*, *Siebel*, 2005 WL 3555718, at *8 (mere "gossip and innuendo" from a confidential witness is an insufficient basis for a claim of fraud).[24]

CW1's allegation that she was "directed, at various times, to purposefully and intentionally alter documents" is also inadequate. Besides a single incident in which CW1 was purportedly directed to backdate employment paperwork and option grants by three months— and even then we are not told, *inter alia*, the name of the employee, the name of the person who so directed CW1, or the approximate dates of either the incident or option grant—Defendants are given none of the details required to prepare their defense. *See, e.g.*, *Berger v. Ludwick*, No. C-97-0728, 2000 WL 1262646, at *5 (N.D. Cal. Aug. 17, 2000) ("The TAC does not state who these employees were. . . . By whom were they instructed? On what specific occasions were they so instructed? What was said? When? Did each one receive the same instructions? Without those particulars, the TAC is still speculative as to the basis for the allegations[.]"), *aff'd*, 15 Fed. Appx. 528 (9th Cir. 2001).

Furthermore, while CW1 says nothing of Messrs. Lu, Wu, or Toy, the allegation that she witnessed the "fabrication of documents" by Messrs. Barton and Sophie is equally empty. The provocative verb "fabrication" is virtually meaningless in the abstract. Missing is any description of the "documents" at issue, the date of their creation, or even precisely what was supposedly "fabricat[ed]." CW1 may, for instance, be describing the creation of board minutes or option agreements, either of which could have been properly ascribed a date other than the one on which the document itself was created. Absent particularized facts concerning what she

---

[24] *See also In re Intelligroup Sec. Litig.*, No. 04-4980, 527 F. Supp. 2d 262, 2007 WL 3376743, at *76 (D.N.J. Nov. 13, 2007) ("[T]his allegation lacks any imprimatur of reliability, since UW-2 did not explain what statements or events made these conclusions 'common knowledge,' how such knowledge was disseminated and by whom, as well as the exact means through which UW-2 acquired such 'common knowledge.' In sum, the statement made by UW-2 [is] nothing but rumor that cannot amount to either direct or supplemental evidence and, therefore, is of no value for the purposes of the Court's inquiry.").

supposedly witnessed, the allegation regarding "fabrication of documents" fails to satisfy the Reform Act's pleading requirements for confidential witness allegations.[25]

### 7. Because Plaintiff Fails to Adequately Plead Scienter as to Any Individual Defendant, He Fails to Plead Scienter as to the Company

Plaintiff's failure to plead facts demonstrating a strong inference of scienter as to any Individual Defendant is equally fatal to his claim against the Company. A corporate defendant's scienter must be shown, but cannot be predicated on the "collective scienter" of the corporation's employees. *See, e.g., Nordstrom, Inc. v. Chubb & Son, Inc.*, 54 F.3d 1424, 1435-36 (9th Cir. 1995). Rather, a corporation's scienter is adequately pleaded only where an "individual corporate officer making [a] statement ha[d] the requisite level of scienter . . . at the time that he [made] the statement." *In re Apple Computer, Inc., Sec. Litig.*, 243 F. Supp. 2d 1012, 1023 (N.D. Cal. 2002) (dismissing fraud claim against company). Thus, because Plaintiff has failed to establish a strong inference of scienter as to Messrs. Lu, Wu, Sophie, Toy or Barton, he has also failed to establish such an inference against the Company. *See, e.g., In re Infineon Techs. AG Sec. Litig.*, No. C 04-04156, 2006 WL 2925680, at *2 (N.D. Cal. Sept. 11, 2006) (dismissing § 10(b) claims against corporate defendant for failure to allege scienter of officer defendants).

### III. PLAINTIFF'S SECTION 14(a) CLAIM IS TIME-BARRED AND FAILS TO SATISFY THE PLEADING REQUIREMENTS OF THE REFORM ACT

A plaintiff seeking to establish a § 14(a) violation must plead three elements: i) "the solicitation of a proxy by a statement that contains either (1) a false or misleading declaration of material fact, or (2) an omission of material fact that makes any portion of the statement misleading"; ii) "that the misstatement was made with the requisite level of culpability"; and iii)

---

[25] Furthermore, courts have recognized that there are a number of non-fraudulent explanations why a company may use an incorrect measurement date, such that if, for instance, CW1 believed she witnessed the misdating of a uniform written consent, the misdating could have resulted from an honest misunderstanding as to how the document should be dated. *See, e.g., CNET*, 483 F. Supp. 2d 955-56 ("[D]etermining the correct measurement date depends on the facts. This dependence can admit the possibility of innocent error – using an incorrect measurement date to price the options with no intent to find an advantageously low price."); *Nach*, 2008 WL 410261, at *4 n.5 ("There are several ways in which a company might have used an incorrect measurement date in the absence of wrongdoing[.]").

that the misstatement or omission "was an essential link in the accomplishment of the proposed transaction." *Desaigoudar v. Meyercord*, 223 F.3d 1020, 1022 (9th Cir. 2000); *see also VeriSign*, 2007 WL 2705221, at *34 ("[P]laintiffs must plead particularized facts that give rise to a *strong inference of negligence*.") (emphasis added).

Plaintiff fails to adequately plead *any* of these essential elements. First, the § 14(a) claim fails to get off the ground because Plaintiff fails to identify a *single* misleading statement in any proxy statement. Second, Plaintiff fails to establish an "essential link" between any alleged misstatement and any injury to investors. Third, Plaintiff fails to plead facts raising a "strong inference of negligence" on the part of the Defendants. Finally, and in any event, most of the § 14(a) claim is barred by the applicable statute of limitations.

### A.   Plaintiff Fails to Adequately Identify any False or Misleading Statements

The Reform Act requires Plaintiff to "specify each statement alleged to have been misleading." 15 U.S.C. § 78u-4(b)(1)(B).[26] Plaintiff, however, does not come close to meeting this burden with respect to his § 14(a) claim. Plaintiff's complaint does not quote a single statement from any of the Company's proxies that are alleged to be misleading. His allegations that defendants "omitted" facts about "option grant backdating" and misrepresented "the terms of the Individual Defendants' compensation and management integrity" are unmoored from any specific statements and thus meaningless. AC ¶ 164.[27] What facts, exactly, were omitted? And which statements were rendered misleading by such omissions? What statements about "management integrity" were misrepresentations? Plaintiff's pleading failure is even more profound than at first glance. Apart from failing to identify "each statement" in the proxies that

---

[26] *See also Desaigoudar*, 223 F.3d at 1023 ("The PSLRA modifies Rule 9(b), providing that a securities fraud plaintiff shall identify: (1) each statement alleged to have been misleading[.]"); *In re Textainer P'ship Sec. Litig.*, No. C-05-0969, 2007 WL 108320, at *3 & n.4 (N.D. Cal. Jan. 10, 2007) (Reform Act requires § 14(a) plaintiff to "specify each statement alleged to have been misleading"); *In re Marsh & McLennan Cos. Sec. Litig.*, – F. Supp. 2d –, 2007 WL 3407064, at *5 (S.D.N.Y. Nov. 14, 2007) ("[T]he PSLRA provides that a complaint alleging violations of section 14(a) of the Exchange Act 'shall specify each statement alleged to have been misleading[.]'").

[27] *See also* AC ¶¶ 66, 162 (alleging proxy statements failed to disclose that "the stock options" were backdated, without alleging who received "the stock options," or when).

is alleged to be false or misleading, he does not even give the dates of the proxies which supposedly contain such statements, leaving these elementary facts to the Court's imagination. This defect is fatal under the Reform Act and requires dismissal of Plaintiff's § 14(a) claim. *See, e.g., Desaigoudar*, 223 F.3d at 1023.[28]

### B. Plaintiff Fails to Adequately Plead that the Alleged Misstatements Were an "Essential Link" in the Accomplishment of Any Proposed Transaction

Plaintiffs seeking to plead a § 14(a) violation must also show that the alleged misstatement or omission was an "essential link in the accomplishment of the proposed transaction" in the proxy at issue. *Desaigoudar*, 223 F.3d at 1022.[29] Plaintiff alleges that, in reliance on the (unspecified) misleading statements, he "voted for the Individual Defendants as directors, which allowed the Individual Defendants to cash in their backdated options, to the detriment of the Company and its shareholders." AC ¶ 165. This allegation is both nonsensical and legally deficient.

Plaintiff's claim that the election of the directors allowed them to "cash in," or exercise, "their backdated options" makes no sense. The directors neither sought nor required permission from the shareholders to *exercise* the options that they had been granted previously. Nor would a

---

[28] *See also In re Pac. Gateway Exch., Inc. Sec. Litig.*, 169 F. Supp. 2d 1160, 1166-67 (N.D. Cal. 2001) ("To the extent that plaintiffs are alleging false statements in press releases or in reports filed with the SEC, the complaint fails to identify the exact statements that are alleged to have been false or misleading at the time they were made."); *Autodesk*, 132 F. Supp. 2d at 841 ("The PSLRA requires plaintiffs to identify 'each statement alleged to have been misleading.' In this case, however, it is difficult to tell from the complaint exactly which statements are alleged to be misleading.") (citation omitted); *Cent. Laborers Pension Fund v. Merix Corp.*, No. CV04-826, 2005 WL 2244072, at *4 (D. Or. Sept. 15, 2005) ("Despite a voluminous 110-page complaint, Plaintiff fails to identify with particularity each allegedly misleading statement upon which Plaintiff's claims rest."); *Nicholson v. N-Viro Int'l Corp.*, No. 3:06CV01669, 2007 WL 2994452, at *7-8 (N.D. Ohio Oct. 12, 2007) ("[A] plaintiff must identify the exact statements within each public filing that the plaintiff contends are false and misleading, the identity of the maker of such statement, the date on which the statement was made, and the reasons the statement was false. . . . [Plaintiffs'] complaint fails to comply with the PSLRA, which requires plaintiffs to plead fraud on a statement-by-statement basis and to identify specifically each fraudulent statement that forms the basis of their action.").

[29] *See also Grace v. Rosenstock*, 228 F.3d 40, 47 (2d Cir. 2000) ("We have also noted that both loss causation and transaction causation must be proven in the context of a private action under § 14(a) of the 1934 Act and SEC Rule 14a-9 promulgated thereunder.").

failure to obtain re-election have prevented them from exercising their vested stock options. *See* Ex. F § 8(b) (non-expired options granted under 2001 Director Stock Option Plan may be exercised within three months following termination). Accordingly, the Court should dismiss the § 14(a) claim in its entirety for failure to adequately plead an "essential link." *See, e.g., In re Ariba, Inc. Sec. Litig.*, No. C 03-00277, 2005 WL 608278, at *9 (N.D. Cal. Mar. 16, 2005) ("Plaintiff has failed to allege that the omission was an 'essential link' in the accomplishment of the transactions proposed by the 2002 proxy. . . . Without such an allegation, Plaintiff has failed to state a viable claim pursuant to Section 14(a) and Rule 14a-9.").[30]

### C. Plaintiff Fails to Adequately Plead a Strong Inference of Negligence

The Amended Complaint also suffers from Plaintiff's failure to adequately plead that the Defendants acted negligently. Plaintiffs seeking to establish a § 14(a) violation "must plead particularized facts that give rise to a strong inference of negligence." *VeriSign*, 2007 WL 2705221, at *34.[31]

Because the Reform Act's heightened pleading standard applies to § 14(a) claims just as it does to § 10(b) claims, Plaintiff's inability to plead particularized facts in connection with his scienter allegations is equally fatal to his proxy statement claim. Thus, for instance, Plaintiff's failure to allege the specific roles of the Individual Defendants in the Company's stock option granting process necessitates dismissal because: "Plaintiffs may not impute knowledge to the individual Defendants solely on the basis of the positions they held. Moreover, where plaintiffs

---

[30] *See also In re Digital Island Sec. Litig.*, 223 F. Supp. 2d 546, 560 (D. Del. 2002) ("Clearly, the Proxy Statement was not an 'essential link' in effectuating the merger, and the plaintiffs' Section 14(a) [claim] must fail as a matter of law."), *aff'd*, 357 F.3d 322 (3d Cir. 2004).

[31] *See also McKesson*, 126 F. Supp. 2d at 1267 ("The court accordingly holds that a Section 14(a) plaintiff must plead with particularity facts that give rise to a strong inference of negligence."); *Bond Opportunity Fund v. Unilab Corp.*, No. 99 Civ. 11074, 2003 WL 21058251, at *4 (S.D.N.Y. May 9, 2003) ("[U]nder the standards imposed by the PSLRA, Plaintiffs must plead with particularity facts that give rise to a strong inference of negligence on the part of all Defendants."); *Beck ex rel. Equity Office Props. Trust v. Dobrowski*, No. 06 C 6411, 2007 WL 3407132, at *4 (N.D. Ill. Nov. 14, 2007) ("Section (b)(2) applies to actions for money damages requiring proof of only 'a particular state of mind.' Since negligence is a state of mind, Section (b)(2) by its terms encompasses negligence-based securities actions. . . . In applying the PSLRA to this Section 14(a) action, the Court joins the majority of courts that have addressed the question.").

MOTION TO DISMISS AMENDED COMPLAINT
CASE NO. C-07-4578 SI                                -23-

contend that the defendants had access to facts contrary to those stated in the proxy materials, they must specifically identify the reports or statements containing this information." *Bond Opportunity*, 2003 WL 21058251, at *4. Similarly, Plaintiff runs afoul of the Reform Act's requirement that § 14(a) plaintiffs plead "particularized facts 'giving rise to a strong inference' that *each defendant* acted with the required state of mind" when he fails to plead *who*, among the Individual Defendants, supposedly backdated options. *VeriSign*, 2007 WL 2705221, at *36 (emphasis added). And, CW1's generalized allegation concerning the "fabrication of documents" notwithstanding, the confidential witness allegations provide "no *specific* facts that would tend to show culpable conduct of any sort." *McKesson*, 126 F. Supp. 2d at 1267 (emphasis added).[32]

Plaintiff's inability to plead facts giving rise to a strong inference of negligence provides an independent reason for dismissal of his entire § 14(a) claim.

### D. The Applicable Statute of Limitations Bars Plaintiff's Claim as to All But the 2005 and 2006 Proxies

In any event, apart from the dispositive pleading defects discussed above, most of Plaintiff's § 14(a) claim is time-barred. "A claim pursuant to § 14(a) must be brought no later than three years after each proxy was issued – regardless of when a plaintiff actually discovers the harm suffered." *Stoll v. Ardizzone*, No. 07 Civ. 00608, 2007 WL 2982250, at *2 (S.D.N.Y. Oct. 9, 2007).[33] Plaintiff declines to specify the dates of the allegedly false or misleading proxies, stating only that they were issued "each year during the Class Period." AC ¶ 163. A

---

[32] Of note, the United States Supreme Court has since overruled the "touches upon" a loss language test utilized by the *McKesson* court (126 F. Supp. 2d at 1268-69) in determining the existence of loss causation. *See Dura*, 544 U.S. at 343 ("To 'touch upon' a loss is not to *cause* a loss, and it is the latter that the law requires.").

[33] *See also VeriSign*, 2007 WL 2705221, at *35 ("The complaint in the present action was filed on July 5, 2006, which was more than three years after the proxy statements were filed. Thus, the claim under § 14(a) and Rule 14a-9 is barred by § 14(a)'s three-year statute of repose."); *In re iBasis, Inc. Derivative Litig.*, – F. Supp. 2d –, 2007 WL 4287591, at *5 (D. Mass. Dec. 4, 2007) ("The courts have recognized for Section 14(a) claims that related and similar causes of action under the Exchange Act have effectively supplied a limitations period of one year after the plaintiff discovers the fact constituting the violation, and in no event more than three years after such violation.") (internal quotation marks omitted).

review of the Company's public filings reveals that original or amended proxy statements were issued on the following dates during the class period: April 2, 2003; August 22, 2003; April 7, 2004; April 18, 2005; June 16, 2006; and June 21, 2006. Ex. G. The original Complaint in this case was filed on September 4, 2007. Thus, Plaintiff's § 14(a) claim is time barred as to the Company's proxies issued on April 2, 2003, August 22, 2003, and April 7, 2004. *See, e.g., VeriSign*, 2007 WL 2705221, at *35.[34]

## IV.   PLAINTIFF'S SECTION 20(a) CLAIM MUST BE DISMISSED FOR FAILURE TO PLEAD A PRIMARY VIOLATION

"To state a claim under Section 20(a), a plaintiff must allege (1) a primary violation of federal securities laws; and (2) that the defendant exercised actual power or control over the primary violator." *Ditech*, 2007 WL 2070300, at *9. Thus, because Plaintiff has failed to adequately plead a primary violation on the part of any Defendant, his claim of secondary liability must be dismissed as well.[35]

## CONCLUSION

For the foregoing reasons, Defendants respectfully request that the Court dismiss the Amended Class Action Complaint.

Dated: February 29, 2007

WILSON SONSINI GOODRICH & ROSATI
Professional Corporation


By: /s/Bahram Seyedin-Noor
Bahram Seyedin-Noor

Attorneys for Defendants

---

[34] *See also Winters v. Stemberg*, – F. Supp. 2d –, 2008 WL 62465, at *6 (D. Mass. Jan. 4, 2008) ("Because Winters filed her complaint on February 1, 2007, any alleged section 14(a) violations that were discovered before February 2, 2006, or that occurred before February 2, 2004, are time-barred."); *iBasis*, 2007 WL 4287591, at *6 ("The statute of repose bars the Plaintiffs from raising a Section 14(a) claim based on proxy statements issued prior to December 21, 2003 . . . . Consequently, claims based on the January 31, 2001 proxy are time barred.").

[35] *See, e.g., Lipton v. Pathogenesis Corp.*, 284 F.3d 1027, 1035 n.15 (9th Cir. 2002) ("[T]o prevail on their claims for violations of § 20(a) and § 20A, plaintiffs must first allege a violation of § 10(b) or Rule 10b-5."); *Textainer*, 2007 WL 108320, at *11 (dismissing § 20(a) claim for failure to state a § 14(a) claim); *Ditech*, 2007 WL 2070300, at *9 (dismissing § 20(a) claim for failure to state a § 10(b) or § 14(a) claim).