TERRY T. JOHNSON, State Bar No. 121569 (tjohnson@wsgr.com)
BORIS FELDMAN, State Bar No. 128838 (boris.feldman@wsgr.com)
BAHRAM SEYEDIN-NOOR, State Bar No. 203224 (bnoor@wsgr.com)
CHERYL W. FOUNG, State Bar No. 108868 (cfoung@wsgr.com)
BRYAN J. KETROSER, State Bar No 239105 (bketroser@wsgr.com)
WILSON SONSINI GOODRICH & ROSATI
650 Page Mill Road
Palo Alto, CA 94304-1050
Telephone:  (650) 493-9300
Facsimile:   (650) 565-5100

Attorneys for Defendants
UTSTARCOM, INC., HONG LIANG LU,
YING WU, MICHAEL SOPHIE, THOMAS TOY,
and FRANCIS BARTON

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| PETER RUDOLPH, individually and on behalf of all others similarly situated,<br><br>　　　　Plaintiff,<br><br>　　v.<br><br>UTSTARCOM, HONG LIANG LU, YING WU, MICHAEL SOPHIE, THOMAS TOY, and FRANCIS BARTON,<br><br>　　　　Defendants. | CASE NO.:  C-07-4578 SI<br><br>**REPLY IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS PLAINTIFF'S AMENDED CLASS ACTION COMPLAINT**<br><br>Date:　April 18, 2008<br>Time:　 9:00 a.m.<br><br>Before:  Hon. Susan Illston |

# TABLE OF CONTENTS

**Page**

INTRODUCTION ........................................................................................................................... 1

ARGUMENT ................................................................................................................................... 2

I. PLAINTIFF FAILS TO PLEAD A CLAIM FOR RELIEF UNDER SECTION 10(b) ............................................................................................................................... 2

    A. Plaintiff Fails to Adequately Plead Loss Causation ................................................ 2

        1. The November 7, 2006 Announcement of a Voluntary Review of Historical Equity Award Grant Practices Was Not a Corrective Disclosure ................................................................................................... 3

        2. The July 24, 2007 Announcement of a Reduced Restatement Does Not Support Loss Causation ................................................................... 3

    B. Plaintiff Fails to Adequately Plead A Strong Inference of Scienter ........................ 4

        1. The Restatement Does Not Establish Scienter ............................................. 5

        2. Sarbanes-Oxley Certifications Do Not Establish Scienter .......................... 8

        3. Plaintiff Utterly Fails to Plead Facts Establishing the Individual Defendants' Involvement in the Stock Option Granting Process ............... 9

        4. Plaintiff's Motive and Opportunity Allegations Are Deficient ................. 10

        5. Plaintiff's Confidential Witness Allegations Fail to Establish Scienter ...................................................................................................... 10

II. PLAINTIFF'S SECTION 14(a) CLAIM IS TIME-BARRED AND FAILS TO SATISFY THE PLEADING REQUIREMENTS OF THE REFORM ACT .................... 12

    A. Plaintiff Fails to Adequately Identify any False or Misleading Statements .......... 12

    B. Plaintiff Fails to Adequately Plead that the Alleged Misstatements Were an "Essential Link" in the Accomplishment of Any Proposed Transaction .............. 12

    C. Plaintiff Still Fails to Adequately Plead a Strong Inference of Negligence .......... 14

    D. The Statute of Limitations Bars Plaintiff's Claim as to All But the 2005 and 2006 Proxies ........................................................................................................ 15

CONCLUSION .............................................................................................................................. 15

# TABLE OF AUTHORITIES

**Page**

**CASES**

*Broam v. Bogan*, 320 F.3d 1023 (9th Cir. 2003) .............................................................................. 13

*Desaigoudar v. Meyercord*, 223 F.3d 1020 (9th Cir. 2000) ...................................................... 12, 14

*Dura Pharms., Inc. v. Broudo*, 544 U.S. 336 (2005) ..................................................................... 3, 4

*Fradkin v. Ernst*, 571 F. Supp. 829 (N.D. Ohio 1983) ..................................................................... 14

*In re Adaptive Broadband Sec. Litig.*, No. C 01-1092, 2002 WL 989478
    (N.D. Cal. Apr. 2, 2002) .............................................................................................................. 7

*In re Autodesk, Inc. Sec. Litig.*, 132 F. Supp. 2d 833 (N.D. Cal. 2000) ........................................... 9

*In re CNET Networks, Inc. S'holder Derivative Litig.*, 483 F. Supp. 2d 947
    (N.D. Cal. 2007) ...................................................................................................................... 6, 7

*In re Career Educ. Corp. Sec. Litig.*, No. 03 C 8884, 2006 WL 999988
    (N.D. Ill. Mar. 28, 2006) ............................................................................................................. 5

*In re Cornerstone Propane Partners, L.P. Sec. Litig.*, 355 F. Supp. 2d 1069
    (N.D. Cal. 2005) ......................................................................................................................... 7

*In re Cylink Sec. Litig.*, 178 F. Supp. 2d 1077 (N.D. Cal. 2001) ..................................................... 7

*In re Daou Sys., Inc. Sec. Litig.*, 411 F.3d 1006 (9th Cir. 2005) .................................................. 7, 8

*In re Exxon Mobile Corp. Sec. Litig.*, 500 F.3d 189 (3d Cir. 2007) .............................................. 15

*In re F5 Networks, Inc. Derivative Litig.*, No. C06-794, 2007 WL 2476278
    (W.D. Wash. Aug. 6, 2007) .................................................................................................. 6, 10

*In re Hansen Natural Corp. Sec. Litig.*, 527 F. Supp. 2d 1142 (C.D. Cal. 2007) ........................... 9

*In re Immune Response Sec. Litig.*, 375 F. Supp. 2d 983 (S.D. Cal. 2005) .................................... 2

*In re InVision Techs., Inc. Sec. Litig.*, No. C04-03181, 2006 WL 538752
    (N.D. Cal. Jan. 24, 2006) ............................................................................................................ 8

*In re Intelligroup Sec. Litig.*, 468 F. Supp. 2d 670 (D.N.J. 2006) ................................................. 11

*In re Lattice Semiconductor Corp. Sec. Litig.*, No. CV04-1255, 2006 WL 538756
    (D. Or. Jan. 3, 2006) ............................................................................................................... 8, 9

*In re McKesson HBOC, Inc. Sec. Litig.*, 126 F. Supp. 2d 1248 (N.D. Cal. 2000) .......................... 7

*In re Network Assocs., Inc. II Sec. Litig.*, No. C 00-CV-4849, 2003 WL 24051280
    (N.D. Cal. Mar. 25, 2003) ......................................................................................................... 11

*In re Omnivision Techs., Inc.*, No. 04-2297, 2005 WL 1867717
    (N.D. Cal. July 29, 2005) ........................................................................................................... 2

*In re PMC-Sierra, Inc. Derivative Litig.*, No. C 06-05330, 2007 WL 2427980
 (N.D. Cal. Aug. 22, 2007) .............................................................................................. 6

*In re Pac. Gateway Exchange, Inc. Sec. Litig.*, 169 F. Supp. 2d 1160 (N.D. Cal.
 2001) ............................................................................................................................ 12

*In re Read-Rite Corp. Sec. Litig.*, 115 F. Supp. 2d 1181 (N.D. Cal. 2000) ..................... 9

*In re Silicon Graphics Inc. Sec. Litig.*, 183 F.3d 970 (9th Cir. 1999) ........................... 10

*In re Splash Tech. Holdings, Inc. Sec. Litig.*, 160 F. Supp. 2d 1059
 (N.D. Cal. 2001) .......................................................................................................... 10

*In re Textainer P'ship Sec. Litig.*, No. C-05-0969, 2007 WL 108320
 (N.D. Cal. Jan. 10, 2007) ............................................................................................. 12

*In re Vantive Corp. Sec. Litig.*, 283 F.3d 1079 (9th Cir. 2002) ................................. 9, 10

*In re VeriSign, Inc., Derivative Litig.*, 531 F. Supp. 2d 1173 (N.D. Cal. 2007) ......... 9, 13, 15

*In re Watchguard Sec. Litig.*, No. C05-678, 2006 WL 2038656
 (W.D. Wash. Apr. 21, 2006) ......................................................................................... 9

*In re Zoran Corp. Derivative Litig.*, 511 F. Supp. 2d 986 (N.D. Cal. 2007) ................ 14

*Mills v. Elec. Auto-Lite Co.*, 396 U.S. 375 (1970) ........................................................ 13

*Nach v. Baldwin*, No. C 07-0740, 2008 WL 410261 (N.D. Cal. Feb. 12, 2008) ........ 7, 8

*Oscar Private Equity Invs. v. Allegiance Telecom, Inc.*, 487 F.3d 261
 (5th Cir. 2007) ........................................................................................................... 2, 3

*Parsons v. Jefferson-Pilot Corp.*, 789 F. Supp. 697 (M.D.N.C. 1992) .......................... 14

*Plumbers & Pipefitters Local 572 Pension Fund v. Cisco Sys., Inc.*,
 411 F. Supp. 2d 1172 (N.D. Cal. 2005) ........................................................................ 2

*Schneider v. Cal. Dep't of Corrs.*, 151 F.3d 1194 (9th Cir. 1998) ................................ 13

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 127 S. Ct. 2499 (2007) ............................ 5

*Weiss v. Amkor Tech., Inc.*, 527 F. Supp. 2d 938 (D. Ariz. 2007) ..................... 2, 3, 8, 10

**STATUTES**

15 U.S.C. § 78u-4(b)(1)(B) ............................................................................................ 12

# INTRODUCTION

Defendants' opening brief ("MTD") explained why the § 10(b) and § 14(a) claims asserted in Plaintiff's Amended Class Action Complaint (the "Amended Complaint" or "AC") each suffer from multiple fatal flaws. Plaintiff's opposition brief ("Opp.") changes nothing.

As explained previously, Plaintiff's § 10(b) claim is deficient because Plaintiff fails to adequately plead either loss causation or scienter. Regarding loss causation, Plaintiff admits that he must show "the disclosure of previously concealed negative facts relat[ing] to the backdating scheme" (Opp. at 19), yet neither of the events Plaintiff identifies was a corrective disclosure that caused the losses of the plaintiff class. Regarding scienter, Plaintiff protests that his allegations must be analyzed "in their entirety" (*id.* at 11), but is unable to plead with particularity any facts that so much as contribute to the requisite "strong inference" of scienter. Furthermore, Plaintiff fails to explain away several key facts which clearly *negate* an inference of fraudulent intent, such as the finding by the Governance Committee that "none of the current or former employees or directors of the Company engaged in intentional wrongdoing." Ex. E at 10.[1]

Plaintiff's § 14(a) claim is insufficiently pleaded for three reasons. First, Plaintiff still fails to identify any false statement in any of the Company's proxies, electing to quote from his own Amended Complaint instead. Second, though Plaintiff conjures up two entirely new injuries associated with the challenged proxy statements, these injuries, like the one actually pleaded in the Amended Complaint, fail to satisfy the "essential link" requirement. Third, Plaintiff continues to rely on his non-particularized—and thus insufficient—scienter allegations in a failed attempt to raise the requisite "strong inference" of negligence. Finally, and in any event, most of Plaintiff's § 14(a) claim is time-barred by the applicable statute of limitations.

For these reasons, as more fully explained below, Defendants respectfully request that the Court dismiss Plaintiff's Amended Complaint in its entirety.

---

[1] All references to "Ex. __" are to the exhibits attached to the Declaration of Bryan J. Ketroser, filed concurrently with Defendants' opening brief. All references to "Supp. Ex. __" are to the Supplemental Declaration of Bryan J. Ketroser, filed herewith. The contents of the exhibits appended to the Supplemental Declaration are judicially noticeable for the reasons set forth in the Request for Judicial Notice filed concurrently with Defendants' opening brief.

# ARGUMENT

## I. PLAINTIFF FAILS TO PLEAD A CLAIM FOR RELIEF UNDER SECTION 10(b)

Defendants' opening brief demonstrated that Plaintiff's § 10(b) claim must be dismissed for failure to adequately plead the elements of loss causation and scienter. Plaintiff's opposition brief does nothing more than repeat the conclusory allegations made in his Amended Complaint. Plaintiff simply ignores most of Defendants' arguments and case law, tacitly conceding the lack of any valid rebuttal. Plaintiff's § 10(b) claim must therefore be dismissed.

### A. Plaintiff Fails to Adequately Plead Loss Causation

The Supreme Court's opinion in *Dura* teaches that "to properly plead loss causation in a fraud claim, a plaintiff must allege that the price fell after the truth came to light about a misrepresentation." *Weiss v. Amkor Tech., Inc.*, 527 F. Supp. 2d 938, 945 (D. Ariz. 2007). Plaintiff acknowledges this standard (Opp. at 18), yet neither of the two events that Plaintiff identifies constitutes a corrective disclosure that caused Plaintiff's alleged losses.[2]

The first—a November 7, 2006 press release announcing the Company's independent investigation of its stock option grants—is not a corrective disclosure because it failed to "signal, much less state, that any prior option grants were incorrect . . . or that prior financial statements were incorrect in any way." *Weiss*, 527 F. Supp. 2d at 947. The second—a July 24, 2007 press release reducing the estimated amount of the impending restatement—is not a corrective disclosure because the only information concerning the options issue that it contained was plainly positive, and the loss causation requirement can only be satisfied by the disclosure of "*negative* 'truthful' information." *Oscar Private Equity Invs. v. Allegiance Telecom, Inc.*, 487

---

[2] Plaintiff's reliance on *Plumbers & Pipefitters Local 572 Pension Fund v. Cisco Sys., Inc.*, 411 F. Supp. 2d 1172 (N.D. Cal. 2005), *In re Immune Response Sec. Litig.*, 375 F. Supp. 2d 983 (S.D. Cal. 2005), and *In re Omnivision Techs., Inc.*, No. 04-2297, 2005 WL 1867717 (N.D. Cal. July 29, 2005) is misplaced. Opp. at 18 & n.14. All three cases found loss causation to be properly pleaded only after identifying a stock drop *following a corrective disclosure*. *See Plumbers & Pipefitters*, 411 F. Supp. 2d at 1177-78 (stock drop following disclosure of "a $275 million reserve for accounts overvalued or excessive inventories and uncollectible accounts receivables"); *Immune Response*, 375 F. Supp. 2d at 1025 (stock drop following disclosure of "disappointing study results and [business partner]'s decision to terminate funding" for allegedly-ineffective drug); *Omnivision*, 2005 WL 1867717, at *1 (stock drop following disclosure that company expected to revise financial results).

F.3d 261, 266 (5th Cir. 2007) (emphasis added) (citation omitted). Because Plaintiff has failed to plead loss causation, his § 10(b) claim must be dismissed. *See, e.g.*, *Dura Pharms., Inc. v. Broudo*, 544 U.S. 336, 348 (2005).

### 1. The November 7, 2006 Announcement of a Voluntary Review of Historical Equity Award Grant Practices Was Not a Corrective Disclosure

As explained in Defendants' opening brief, courts have repeatedly held that a stock drop following the mere announcement of an investigation (such as the November 7 announcement) does not satisfy the loss causation requirement set forth in *Dura*. MTD at 7 & n.3. Plaintiff disparages this proposition—and hence the holdings of four District Courts in the Ninth Circuit—as "ludicrous" (Opp. at 19), but fails to offer a single case in opposition or explain why these courts were mistaken. Indeed, Plaintiff makes only a half-hearted attempt to address one of Defendants' four cases. Plaintiff argues that *Weiss v. Amkor* is distinguishable because "Amkor's stock price went up, not down, after corrective disclosures were issued regarding options backdating." *Id.* at 20. Plaintiff appears to have read the wrong case. The allegations the *Weiss* court found insufficient involved an even greater drop in the stock price than Plaintiff here is alleging (17% versus 9%), following a similar announcement of an internal investigation into stock option practices. *Weiss*, 527 F. Supp. 2d at 945 ("[T]he Company's stock price *declined* 17% from $7.51 per share to $6.25 [sic] per share, wiping out $222 million in market capitalization.") (emphasis added).[3] *Weiss* is therefore on point, and dispositive.

### 2. The July 24, 2007 Announcement of a Reduced Restatement Does Not Support Loss Causation

Defendants' opening brief also demonstrated that the July 24, 2007 announcement cannot constitute a corrective disclosure that adversely affected the stock price because the only new

---

[3] Plaintiff also suggests that *Weiss* is distinguishable because the stock decline in that case can be explained by the simultaneous disclosure of additional negative information about the company's financial results. Opp. at 20 n.15. This factual distinction does not hold up since Plaintiff's Amended Complaint itself refers to a *Forbes.com* article which illustrates that, contemporaneously with UTSI's announcement, at least one financial analyst was downgrading the Company's stock because its "fundamentals . . . remain weak and he does not think UTStarcom will turn a profit any time soon." Ex. B.

1  information it contained concerning the options investigation was *positive*. MTD at 7-9.[4]

2  Plaintiff responds that it is "inconceivable that the need to restate $28 million can be considered

3  'good news.'" Opp. at 20. This, of course, is not true. Whether a piece of news is positive or

4  negative depends on prior information. Where a company has *already announced* an impending

5  compensation charge on two occasions, then proceeds, on the date in question, to *lower* the

6  charge's estimated magnitude, the news is positive.[5] Plaintiff's opposition brief completely

7  ignores the point that the $28 million restatement disclosed on July 24 was indiputably *good*

8  news in light of the Company's previous February 1 and May 16 estimates that the restatement

9  would be $50 million or $35 million, respectively, and therefore fails to show that the July 24

10 disclosure was a corrective disclosure that could have caused the stock price to drop.[6]

11       In sum, because neither the November 7, 2006 announcement nor the July 24, 2007

12 announcement constituted, in Plaintiff's words, "the disclosure of previously concealed negative

13 facts relat[ing] to the backdating scheme" (Opp. at 19), Plaintiff has failed to plead loss

14 causation. Accordingly, his § 10(b) claim must be dismissed. *Dura*, 544 U.S. at 348.

15       **B.       Plaintiff Fails to Adequately Plead A Strong Inference of Scienter**

16       In their opening brief, Defendants showed that the Amended Complaint fails to raise a

17 strong inference of scienter. MTD at 9-20. Plaintiff responds by emphasizing that his scienter

18 allegations must be considered "in their entirety." Opp. at 11. Yet quantity is no substitute for

19 quality; the problem in this case is that *none* of Plaintiff's allegations support the requisite strong

---

[4] While Plaintiff is correct that he need not show that the July 24 announcement was the "sole" reason for the stock drop (Opp. at 20-21), his failure to plausibly allege facts showing that it could have been even a contributing cause defeats his loss causation argument. Plaintiff's rebuttal would only make sense if the $28 million restatement was *worse* than the prior restatement estimates (which it was not) and therefore one of several pieces of news that could have caused the stock price to drop on that date. In fact, however, the *only* negative news contained in the July 24 announcement was completely unrelated to the options investigation. MTD at 8-9; Ex. D (announcing that the Company "continue[d] to see declines in the PAS business in China").

[5] As explained previously, mere repetition of the fact that a company needs to restate cannot constitute a corrective disclosure for the purposes of pleading loss causation. MTD at 8 n.6.

[6] *See, e.g.*, *Dura*, 544 U.S. at 342-43 ("When the purchaser subsequently resells such shares, even at a lower price, that lower price may reflect, not the earlier misrepresentation, but changed economic circumstances, changed investor expectations, new industry-specific or firm-specific facts, conditions, or other events[.]").

inference.[7] Plaintiff's allegations of a restatement and Sarbanes-Oxley certifications go to the existence of false statements, not scienter, and his boilerplate allegations regarding the Individual Defendants' positions and stock sales show nothing at all. The confidential witness allegations, meanwhile, must be rejected because they are insufficiently particular, and because the Amended Complaint fails to provide facts demonstrating the "witnesses" possess personal knowledge.

At the same time, several key facts weigh heavily *against* an inference of intent to defraud. These include: (i) the fact that more than 40% of the options found by the investigation to have been misdated were issued with exercise prices that were *too high*; (ii) the fact that, while the investigation was pending, the Individual Defendants signed agreements promising to forego any benefit in the event accounting error was found; and (iii) the finding by the Governance Committee that "none of the current or former employees or directors of the Company engaged in intentional wrongdoing" (Ex. E at 10). The Supreme Court has recognized that such countervailing facts must be considered in determining whether the Amended Complaint raises a strong inference of scienter. *See Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 127 S. Ct. 2499, 2509 (2007) ("[I]n determining whether the pleaded facts give rise to a 'strong' inference of scienter, the court must take into account plausible opposing inferences.").

### 1. The Restatement Does Not Establish Scienter

Courts have held that even a multi-year restatement due to the use of incorrect dates in granting stock options is not in itself enough to support a strong inference of intentional misconduct. MTD at 10-11. Unfazed by the law, Plaintiff declares that the restatement "contribute[s] mightily to a strong inference" of fraudulent intent because "options do not (indeed, cannot) backdate themselves." Opp. at 12-13 (emphasis omitted). In fact, the circumstances of the investigation and restatement strongly indicate the absence of scienter.

As Plaintiff notes, the investigation found that "[o]ut of the 17.9 million option grants that used the wrong date," only "10.3 million used exercise prices below UTStarcom's closing

---

[7] *See, e.g.*, *In re Career Educ. Corp. Sec. Litig.*, No. 03 C 8884, 2006 WL 999988, at *11 n.14 (N.D. Ill. Mar. 28, 2006) ("[T]he quality of the allegations, rather than the quantity, is what is unportant [sic] in pleading a claim of securities fraud.").

price on the date of the grant." Opp. at 7. In other words, 7.6 million—or *42.5%*—of the misdated options were *underwater* when issued. Ex. E at 10 ("Using the corrected measurement dates, 7.6 million stock options had exercise prices that *exceeded* the closing price of our Common Stock[.]") (emphasis added). ***The fact that nearly half of all misdated options were misdated to the detriment of their recipients suggests anything but fraudulent intent***. *See, e.g.*, *In re F5 Networks, Inc. Derivative Litig.*, No. C06-794, 2007 WL 2476278, at *11 (W.D. Wash. Aug. 6, 2007) ("If the directors were attempting to backdate their options as plaintiffs contend, it is extremely unlikely that the directors would have looked into the past and chosen a day on which the price closed higher than the day on which the grant was recorded[.]").

The Governance Committee's finding that ***"none of the current or former employees or directors of the Company engaged in intentional wrongdoing"*** (Ex. E at 10) is another fact that "give[s] rise to an inference of plausible non-fraudulent intent" (Opp. at 11). Indeed, courts from the Northern District of California have deemed such investigatory findings important.[8] Plaintiff essentially derides the reasoning of these precedents by implying—without any factual support—that the internal investigation at issue here was a sham. *See* Opp. at 12 ("It comes as no surprise that the Company's internal investigative committee did not admit that its own officers and directors had engaged in fraud."). Plaintiff's unsupported insinuations, however, do not rebut the case law Defendants cited in their opening brief.

Plaintiff also argues that the restatement is evidence of scienter because "it requires a conscious, intentional act to date such options on a day other than that in which they are actually being authorized." Opp. at 13 (*citing CNET*, 483 F. Supp. 2d at 956). Amazingly, as this very Court has noted, the *CNET* decision that Plaintiff cites for this proposition stands for the

---

[8] *See In re CNET Networks, Inc. S'holder Derivative Litig.*, 483 F. Supp. 2d 947, 963 (N.D. Cal. 2007) (holding, in view of special committee's conclusion "that there was no wrongdoing by any current or recently resigned directors or officers," that an inference of fraud "is improper absent other facts indicating fraud"); *In re PMC-Sierra, Inc. Derivative Litig.*, No. C 06-05330, 2007 WL 2427980, at *5 (N.D. Cal. Aug. 22, 2007) ("Thus, plaintiffs contend, PMC has effectively *admitted* backdating, and plaintiffs need not rely on mere inferences. The problem, as defendants point out, is that the internal investigation expressly concluded that there had been *no* intentional wrongdoing.").

Such findings are particularly significant in light of the fact that the investigation was conducted with the assistance of *independent* legal counsel and forensic accountants. AC ¶ 119.

1 *complete opposite of what Plaintiff asserts*. *See CNET*, 483 F. Supp. at 956 ("[D]etermining the correct measurement date depends on the facts. This dependence can admit the possibility of innocent error[.]"); *Nach v. Baldwin*, No. C 07-0740, 2008 WL 410261, at *4 n.5 (N.D. Cal. Feb. 12, 2008) (Illston, J.) ("There are several ways in which a company might have used an incorrect measurement date in the absence of wrongdoing[.]") (citing *CNET*, 483 F. Supp. 2d at 955-56).[9] Thus, as this Court has held, misdated grants can just as easily be the result of innocent error. Plaintiff cannot rely on the mere existence of these errors to support a theory of fraud.

Plaintiff's argument that the "magnitude, duration and materiality" of the accounting errors supports scienter is equally flawed. Opp. at 12-13. Plaintiff's sole caselaw support for this proposition—*In re Daou Systems, Inc. Securities Litigation*—is distinguishable because the plaintiffs in that case pleaded specific facts showing *why* the magnitude of the revenue restatement at issue evidenced scienter.[10] As the Northern District of California has held, "allegations of GAAP violations must be augmented by 'facts that shed light on the mental state' of defendants, rather than conclusory allegations that defendants must have known of the accounting failures due to the degree of departure from established accounting principles." *In re Cornerstone Propane Partners, L.P. Sec. Litig.*, 355 F. Supp. 2d 1069, 1091 (N.D. Cal. 2005) (citation omitted); *see also* MTD at 11 n.11. Plaintiff has failed to provide such facts.[11]

---

[9] *In re Adaptive Broadband Securities Litigation*, No. C 01-1092, 2002 WL 989478 (N.D. Cal. Apr. 2, 2002), *In re Cylink Securities Litigation*, 178 F. Supp. 2d 1077 (N.D. Cal. 2001), and *In re McKesson HBOC, Inc. Securities Litigation*, 126 F. Supp. 2d 1248 (N.D. Cal. 2000) (Opp. at 12 n.8) are all distinguishable on this point. All three cases involved particularized allegations of knowing participation in reckless accounting—something which, as explained in Section I.B.3, *infra*, is not present here—and none of them involved allegations of options backdating. *See Adaptive*, 2002 WL 989478, at *14 (fact that company twice restated its financials, when coupled with "strong evidence of deliberately reckless accounting," "shore[d] up and place[d] in context the allegations of fraud"); *Cylink*, 178 F. Supp. 2d at 1082 (alleging particularized facts regarding individual defendant's participation in revenue recognition transactions he knew constituted GAAP violations); *McKesson*, 126 F. Supp. 2d at 1273 ("According to the *Wall Street Journal* excerpts provided in the complaint, McKesson HBOC's investigators concluded that HBOC's executives intentionally overstated revenue.").

[10] For example, the *Daou* plaintiffs showed that the individual defendants in that case: personally determined when revenue would be recognized; manually adjusted revenue accounts; and presented themselves as knowledgeable about revenue recognition accounting. *See In re Daou Sys., Inc. Sec. Litig.*, 411 F.3d 1006, 1023 (9th Cir. 2005).

[11] Plaintiff also fails to explain how the "magnitude" of the accounting errors alleged would suggest scienter under any set of facts. Plaintiff acknowledges that the Company's $25.5 million
(continued...)

1    Finally, Plaintiff mistakenly asserts that his "statistical analysis" shows that grant dates
2 "were intentionally selected with the benefit of hindsight to enrich the grantees." Opp. at 13
3 (citing AC ¶ 63). Of the 197 grant dates falling within the period covered by the investigation
4 (AC ¶ 119), Plaintiff mentions only two in the cited paragraph: July 25, 2002 and May 11, 2005.
5 The date of the May 11, 2005 grant to Mr. Toy, however, was predetermined, as the grant was
6 made, pursuant to the 2001 Director Option Plan, on the fourth anniversary of Mr. Toy's joining
7 the Company (May 11, 2001).[12] Regarding the July 25, 2002 grant, Plaintiff's "statistical
8 analysis," which consists entirely of calculating the cumulative five-day returns before and after
9 the grant date, conveniently ignores the fact that while the Company's stock was $15.72 on July
10 25, 2002, it was $14.83 on August 5, and $13.98 by August 15. Supp. Ex. I. In any event, this
11 Court has rejected efforts to establish backdating through reference to such a small number of
12 option grants and mere invocation of words like "statistical analysis."[13]

### 2. Sarbanes-Oxley Certifications Do Not Establish Scienter

As explained in Defendants' opening brief, a Sarbanes-Oxley certification is no more indicative of scienter than is a restatement, since the law requires that all financial statements of public companies be certified. MTD at 12-13. Plaintiff relies on *In re Lattice Semiconductor Corp. Securities Litigation* for the proposition that a Sarbanes-Oxley certification can give rise to a strong inference of scienter. *In re Lattice Semiconductor Corp. Securities Litigation*, No. CV04-1255, 2006 WL 538756 (D. Or. Jan. 3, 2006); Opp. at 16. But *Lattice* has been repeatedly

---

(...continued from previous page)
restatement was spread out over six-and-a-half years (Opp. at 3)—an average of $3.9 million per year for a company that, for instance, reported a net income of more than $215 million in its 2003 Form 10-K (AC ¶ 84) and a net loss of more than $487 million in its 2005 Form 10-K (*id.* ¶ 104). *Compare Daou*, 411 F.3d at 1019 ("Had Daou reported revenue in line with the amount it was entitled to bill customers pursuant to its contracts . . . revenue for 3Q97 would have been only $5.9 million, *48% less than publicly reported*.") (emphasis added).

[12] Ex. F § 4(a)(iii) (providing, after vesting of initial grant, for "automatic and nondiscretionary" grant of 20,000 options on each subsequent "Anniversary Date"); Supp. Ex. H at 13.

[13] *See Nach*, 2008 WL 410261, at *5-7 (plaintiff's failure to identify more than five specific grants alleged to be backdated, or engage in any "meaningful analysis" of grant dates and prices, meant that it had not sufficiently established existence of fraudulent backdating).

distinguished by courts throughout this circuit, including by the Northern District of California.[14] As one court has remarked, the passage of Sarbanes-Oxley "does not transform the PSLRA's requirement of falsity-plus-scienter into a requirement of falsity-plus-a-Sarbanes-Oxley-certification." *In re Watchguard Sec. Litig.*, No. C05-678, 2006 WL 2038656, at *11 (W.D. Wash. Apr. 21, 2006).

### 3. Plaintiff Utterly Fails to Plead Facts Establishing the Individual Defendants' Involvement in the Stock Option Granting Process

Plaintiff has now confirmed that, as pointed out in Defendants' opening brief (MTD at 13-15), Plaintiff's allegations regarding the Individual Defendants' involvement in the stock option granting process consist solely of the assertion that "the Officer Defendants, Lu, Wu, Sophie and Barton . . . authorized and approved the backdated stock option grants," while "Defendant Toy . . . enabled the stock option backdating scheme to succeed." Opp. at 16 (*citing* AC ¶¶ 33-37). The Northern District of California has explicitly rejected allegations that defendants "authorized" or "approved" supposedly backdated grants as insufficiently particular.[15] Indeed, the only case cited by Plaintiff on the subject stands squarely for the proposition that Plaintiff's position-based allegations must be rejected.[16]

---

[14] *See, e.g.*, *In re InVision Techs., Inc. Sec. Litig.*, No. C04-03181, 2006 WL 538752, at *7 n.3 (N.D. Cal. Jan. 24, 2006); *Weiss*, 527 F. Supp. 2d at 950.

*Lattice* is distinguishable both because the company in that case had "admit[ted] that its [CFO] overrode the internal controls to make incorrect and misleading journal entries," and because the certifications at issue omitted a key paragraph contained in previous filings, suggesting that the certifiers were aware of the alleged problems. *Lattice*, 2006 WL 538756, at *17-18.

[15] *See In re VeriSign, Inc., Derivative Litig.*, 531 F. Supp. 2d 1173, 1192-93 (N.D. Cal. 2007) ("As for the stock option grants, plaintiffs make only the conclusory assertion that all the directors 'authorized, approved, [or] ratified' the backdating. . . . However, the CAC . . . provides no explanation as to . . . what form such authorization or approval or ratification supposedly took.") (first alteration in original) (citation omitted); *see also In re Hansen Natural Corp. Sec. Litig.*, 527 F. Supp. 2d 1142, 1157 (C.D. Cal. 2007) ("Plaintiff's failure to plead any facts related to the role or knowledge of any of the Individual Defendants . . . is fatal to Plaintiff's showing of scienter[.]").

[16] *See In re Vantive Corp. Sec. Litig.*, 283 F.3d 1079, 1087 (9th Cir. 2002) ("These allegations are insufficient in light of our decision in *Silicon Graphics*, 183 F.3d at 985."); *see also In re Autodesk, Inc. Sec. Litig.*, 132 F. Supp. 2d 833, 843-44 (N.D. Cal. 2000); *In re Read-Rite Corp. Sec. Litig.*, 115 F. Supp. 2d 1181, 1183 (N.D. Cal. 2000).

**4.     Plaintiff's Motive and Opportunity Allegations Are Deficient**

Plaintiff concedes (as he must) that trading by corporate insiders is only probative of scienter when it is "unusual" in amount or made at "suspicious times." MTD at 15-17; Opp. at 17. Plaintiff's only stock sale allegation, however, is that Defendants "wrongfully reaped proceeds of over $38.8 million from their stock sales during the Class Period." Opp. at 17. Absent are any details regarding: "(1) the amount and percentage of shares sold by insiders; (2) the timing of the sales; and (3) whether the sales were consistent with the insider's prior trading history." *In re Silicon Graphics Inc. Sec. Litig.*, 183 F.3d 970, 986 (9th Cir. 1999).[17] Nor does Plaintiff allege facts indicating which (if any) of the Defendants exercised backdated options: "An option is the right to purchase the underlying security, and there are no allegations that any named defendant exercised his Amkor options and sold the stock for gain." *Weiss*, 527 F. Supp. 2d at 951.[18] In fact, of the eight "Discretionary Director & Officer" grants that the Stock Option Review Team found were incorrectly dated, four grants—or one-half—were of *underwater options*. Supp. Ex. J at 8. Acting contrary to one's self-interest is inconsistent with an inference of intent to commit fraud. *See, e.g.*, *F5 Networks*, 2007 WL 2476278, at *11.

**5.     Plaintiff's Confidential Witness Allegations Fail to Establish Scienter**

Plaintiff states that, in relying on confidential witness statements to meet the Reform Act's heightened pleading standard, he "must meet certain requirements." Opp. at 14. Defendants agree. MTD at 17-20. "First, plaintiffs must describe each confidential witness with sufficient particularity to support the probability that a person in the position occupied by the source would possess the information alleged." Opp. at 14 (internal quotation marks and citation omitted). Next, the court must evaluate "the level of detail provided by the confidential sources,

---

[17] Plaintiff's "proceeds of over $38.8 million" allegation means even less in light of the facts that it includes five individuals and covers a nearly five-year period. *See, e.g.*, *Vantive*, 283 F.3d at 1092 (taking into account "unusually long class period" of sixty-three weeks in analyzing class period stock sales); *In re Splash Tech. Holdings, Inc. Sec. Litig.*, 160 F. Supp. 2d 1059, 1083 (N.D. Cal. 2001) (class period of approximately 90 weeks is a "'major mitigating factor'" in analyzing suspiciousness of stock sales) (citation omitted).

[18] Plaintiff admits that, as a result of the investigation, the Individual Defendants "elected to amend any of their previously granted stock options that might in the future be determined to be discounted stock options." Opp. at 8. Such a promise to forego any benefit in the event accounting error is found clearly *negates*, not supports, an inference of scienter.

1  the corroborative nature of the other facts alleged (including from other sources), the coherence
2  and plausibility of the allegations, the number of sources [and] the reliability of the sources[.]"
3  *Id.* (internal quotation marks and citation omitted).  Plaintiff fails to satisfy these requirements.

Plaintiff argues that the Amended Complaint "alleges sufficient information to support the probability that the respective witnesses possessed the information alleged" because, circularly, CW1 makes allegations regarding "the mechanics of stock option grant reports" and "where the Company maintained this information." Opp. at 14-15.  What the law requires, however, is that Plaintiff "describe each confidential witness," not just her allegations. *Id.* at 14. Plaintiff must, yet does not, plead details regarding "the nature of [CW1's] employment with the Company or the basis of [her] knowledge," such as "what did [her] position entail," "in which division of the Company did [she] work," and "to whom did [she] report." *In re Network Assocs., Inc. II Sec. Litig.*, No. C 00-CV-4849, 2003 WL 24051280, at *9 (N.D. Cal. Mar. 25, 2003).[19]  Indeed, the only facts alleged regarding the confidential witnesses themselves are their purported job titles and dates of employment. Opp. at 14. "Confidential witness accounts of this nature are insufficient to support a claim under the Reform Act." *Network Assocs.*, 2003 WL 24051280, at *9.

Nor do the confidential witness allegations provide the requisite "level of detail." Neither CW1 nor CW2 say anything of Messrs. Lu, Wu, or Toy, and, as Plaintiff notes in his opposition brief, the Amended Complaint merely states that CW1 saw Barton and Sophie "at different times, fabricating and altering documents for the purpose of backdating options." Opp. at 15. When? Where? What documents? How, precisely, were the documents "fabricat[ed]" or "alter[ed]"? "[A] plaintiff averring securities fraud claims must specify the who, what, when, where, and how: the first paragraph of any newspaper story." *In re Intelligroup Sec. Litig.*, 468 F. Supp. 2d 670, 676 (D.N.J. 2006) (internal quotation marks omitted). Plaintiff has not done so here.[20]

---

[19] *See also* MTD at 18 & n.23.

[20] CW1's similarly vague recollection of an "occasion [on which] she was directed to backdate employment paperwork and option grants to a new employee to a date three months prior to his actual employment date" (AC ¶ 60) is also belied by the restatement on which

(continued...)

For all of these reasons, Plaintiff has not come close to pleading a strong inference of scienter against the Individual Defendants. Accordingly, the § 10(b) claim must be dismissed.[21]

## II. PLAINTIFF'S SECTION 14(a) CLAIM IS TIME-BARRED AND FAILS TO SATISFY THE PLEADING REQUIREMENTS OF THE REFORM ACT

In their opening memorandum, Defendants showed that Plaintiff's Section 14(a) claim was time-barred with respect to proxy statements issued prior to September 4, 2004. *Id.* at 24-25. As to the remainder of the proxies, Defendant showed that Plaintiff fell well short of stating a claim under the Reform Act's stringent pleading requirements. *Id.* at 20-24. Plaintiff's opposition brief does nothing to rebut Defendants' arguments.

### A. Plaintiff Fails to Adequately Identify any False or Misleading Statements

Defendants have shown that the Amended Complaint "does not quote a single statement from any of the Company's proxies" that is alleged to have been misleading. *Id.* at 21. Plaintiff argues that "[t]his contention is utterly (and obviously) false," yet, remarkably, proceeds to quote *his own statement from the Amended Complaint* instead of any passage from any proxy. Opp. at 21-22. Plaintiff's failure to adequately identify "each statement alleged to have been misleading" is fatal to his § 14(a) claim. 15 U.S.C. § 78u-4(b)(1)(B).[22]

### B. Plaintiff Fails to Adequately Plead that the Alleged Misstatements Were an "Essential Link" in the Accomplishment of Any Proposed Transaction

Plaintiff admits that he is required to plead that the alleged misstatements or omissions in the proxies were "essential links in the accomplishment of the proposed transaction[s]." Opp. at 22 (internal quotation marks and citation omitted). However, Plaintiff has not shown a "causal

---

(...continued from previous page)
Plaintiff so heavily relies. As illustrated by a chart in the restatement, *none of the 48 New Hire Grants* tested by the Review Team were misdated. Supp. Ex. J at 8.

[21] Defendants have explained that a failure to plead facts demonstrating a strong inference of scienter as to any Individual Defendant is equally fatal to a claim against the Company. MTD at 20. Plaintiff appears to concede the point. Thus, Plaintiff's § 10(b) claim must be dismissed as to the Company as well.

[22] *See also Desaigoudar v. Meyercord*, 223 F.3d 1020, 1023 (9th Cir. 2000); *In re Textainer P'ship Sec. Litig.*, No. C-05-0969, 2007 WL 108320, at *3 & n.4 (N.D. Cal. Jan. 10, 2007); *In re Pac. Gateway Exchange, Inc. Sec. Litig.*, 169 F. Supp. 2d 1160, 1166-67 (N.D. Cal. 2001).

relationship between the violation [i.e., a misrepresentation] and the injury for which he seeks redress."[23] Plaintiff has failed to plead *any* injury resulting from *any* transaction approved as a result of the non-time-barred proxies.[24] Indeed, the only injury alleged in Count Three of Plaintiff's Amended Complaint is that Plaintiff, relying upon (unspecified) misrepresentations, "voted for the Individual Defendants as directors, which allowed the Individual Defendants to cash in their backdated options, to the detriment of the Company and its shareholders." AC ¶ 165. Defendants' opening brief showed that such an allegation is nonsensical. MTD at 23-24.

In response, Plaintiff conjures up two brand new allegations in his brief: first, that UTSI sought shareholder approval of (unspecified) stock option plans (Opp. at 22), and second, that the 2003, 2004 and 2006 proxies solicited votes for the election of Messrs. Lu, Toy, and Wu as directors (*id.* at 23 & n.18). Yet it is black letter law that a court, in ruling upon a 12(b)(6) motion to dismiss, may not consider allegations that are first raised in an opposition brief. *See, e.g.*, *Schneider v. Cal. Dep't of Corrs.*, 151 F.3d 1194, 1197 n.1 (9th Cir. 1998); *Broam v. Bogan*, 320 F.3d 1023, 1026 n.2 (9th Cir. 2003).

Even if these allegations had been pleaded in the Amended Complaint, however, Plaintiff's § 14(a) claim would still fail. As explained previously, claims based on the 2002 through 2004 proxies are time-barred.[25] The 2005 proxy solicited votes on three proposals: (1) to elect Larry Horner and Allen Lenzmeier to the Board; (2) to approve the 2005 Equity Incentive Plan; and (3) to approve PricewaterhouseCoopers ("PWC") as the Company's Independent Registered Accounting Firm. *See* Supp. Ex. K at 3-30. However, the proposal concerning the 2005 Equity Incentive Plan was withdrawn prior to shareholder vote,[26] and the Amended Complaint contains no allegation that PWC or Messrs. Horner or Lenzmeier caused Plaintiff injury. Thus, there is no essential link between the 2005 proxy and any injury to Plaintiff. In addition to soliciting the approval of PWC, the 2006 proxy solicited votes for Mr.

---

[23] *Mills v. Elec. Auto-Lite Co.*, 396 U.S. 375, 385 (1970).

[24] *See VeriSign*, 531 F. Supp. 2d at 1213 (dismissing § 14(a) claim where "plaintiffs fail to allege any injury suffered as a result of the allegedly misleading proxy statements").

[25] MTD at 24-25; *see also* Section II.D, *infra*.

[26] *See* Supp. Ex. L.

1  Lu's re-election to the Board and the approval of the 2006 Equity Incentive Plan. *See* Supp. Ex.

2  H at 7-43.  However, Plaintiff has not alleged any backdating after the date of the 2006

3  shareholder meeting: July 21, 2006.[27]  As such, Plaintiff has not alleged an injury arising from

4  these transactions, because he has not alleged that Mr. Lu was involved in the backdating of

5  options after being re-elected, or that any backdated options were granted pursuant to the 2006

6  Equity Incentive Plan.[28]

7        Because Plaintiff cannot show that he has suffered any injury as a result of the

8  shareholder votes pursuant to the 2005 or 2006 proxy statements, his § 14(a) claim must be

9  dismissed.  *See, e.g.*, *Desaigoudar*, 223 F.3d at 1022.[29]

10       **C.**      **Plaintiff Still Fails to Adequately Plead a Strong Inference of Negligence**

11       Plaintiff's sole response to Defendants' showing (MTD at 23-24) that the Amended

12 Complaint fails to raise a strong inference of negligence is to say that Plaintiff has established

13 scienter.  Opp. at 24.  While scienter would indeed satisfy his pleading burden, Plaintiff has

14 failed to allege the requisite particularized facts for such an inference.  *See* Section I.B, *supra*.

15       Plaintiff likely does not proffer a separate negligence argument because he is aware that

16 the Amended Complaint falls well short of this standard.  As Defendants' opening brief made

17 clear, Plaintiff has failed to allege any facts showing the specific roles of the Individual

18 Defendants in UTSI's option granting process, or the state of mind of *each* Individual Defendant.

---

[27] The Company's restatement affected fiscal years FY05 and earlier, as well as the first half of FY06, which ended June 30, 2006.  AC ¶ 122.

[28] *In re Zoran Corp. Derivative Litigation* is therefore inapposite, since plaintiffs in that case explicitly alleged that the directors, after they were re-elected and the new stock option plans were approved, proceeded to backdate additional options. *See In re Zoran Corp. Derivative Litig.*, 511 F. Supp. 2d 986, 1016 (N.D. Cal. 2007) ("With each election, the board could continue to grant backdated stock options[.]").

*Parsons v. Jefferson-Pilot Corp.*, 789 F. Supp. 697 (M.D.N.C. 1992) and *Fradkin v. Ernst*, 571 F. Supp. 829 (N.D. Ohio 1983) are similarly distinguishable, as both cases involved approval of compensation plans which enabled greater-than-explained payouts to company employees or directors. *See Parsons*, 789 F. Supp. at 700 (proxy "categorized the stock [to be issued] as being restricted stock, although the language of the amendment gave unbridled discretion to the board in deciding the terms and conditions of the stock"); *Fradkin*, 571 F. Supp. at 851 ("At no point in the proxy statement, however, is there any disclosure . . . that the value of the surrendered options and SARs would be of this magnitude.").

[29] Plaintiff's arguments about materiality miss the mark.  Materiality is not a substitute for pleading an essential link.  *See, e.g.*, *Desaigoudar*, 223 F.3d at 1022.

Plaintiff's failure to "plead particularized facts that give rise to a strong inference of negligence" is independently fatal to his § 14(a) claim. *VeriSign*, 531 F. Supp. 2d at 1211.

### D. The Statute of Limitations Bars Plaintiff's Claim as to All But the 2005 and 2006 Proxies

Defendants have demonstrated that any § 14(a) claim based on UTStarcom's 2002, 2003 or 2004 proxy is barred by the applicable statute of limitations. MTD at 24-25. In response, Plaintiff attempts to squeeze his § 14(a) claim under the umbrella of Sarbanes-Oxley § 804's longer statute of limitations by alleging that his claim sounds in fraud, rather than negligence. Opp. at 24. Numerous courts, including the Northern District of California, have explicitly rejected this argument. *See, e.g.*, *VeriSign*, 531 F. Supp. 2d at 1213 ("A Section 14(a) claim is not a claim that 'sounds in fraud' under the Sarbanes-Oxley Act of 2002, so its statute of limitations was not extended by 28 U.S.C. § 1658(b)(2).").[30] Accordingly, claims based on the Company's 2002 through 2004 proxies are time-barred.

## CONCLUSION

For the foregoing reasons, Defendants respectfully request that the Court dismiss the Amended Class Action Complaint.[31]

Dated: April 4, 2008

WILSON SONSINI GOODRICH & ROSATI
Professional Corporation

By: /s/Bahram Seyedin-Noor
　　　Bahram Seyedin-Noor

Attorneys for Defendants

---

[30] *See also In re Exxon Mobile Corp. Sec. Litig.*, 500 F.3d 189, 197 (3d Cir. 2007) (rejecting plaintiffs' argument that their "particular § 14(a) claim does sound in fraud and therefore does fall within the scope of § 1658(b)").

[31] Because Plaintiff has failed to adequately plead a primary violation of § 10(b) or § 14(a) on the part of any Defendant, his claim of secondary liability under § 20(a) must be dismissed as well. MTD at 25.

1      I, Bryan J. Ketroser, am the ECF User whose identification and password are being used to file the Reply in Support of Defendants' Motion to Dismiss Plaintiff's Amended Class Action Complaint. I hereby attest that Bahram Seyedin-Noor has concurred in this filing.

Dated: April 4, 2008                                   WILSON SONSINI GOODRICH & ROSATI
                                                                            Professional Corporation

By: /s/Bryan J. Ketroser
        Bryan J. Ketroser

Attorneys for Defendants