# Exhibit J



# UTSTARCOM INC (UTSI)

1275 HARBOR BAY PARKWAY
STE 100
ALAMEDA, CA 94502
510. 864.8800
http://www.utstar.com/

# 10–Q

**QUARTERLY REPORT PURSUANT TO SECTIONS 13 OR 15(D)**
**Filed on 10/10/2007 – Period: 09/30/2006**
File Number 000–29661



LIVEDGAR® Information Provided by Global Securities Information, Inc.
800.669.1154
www.gsionline.com

# UNITED STATES
# SECURITIES AND EXCHANGE COMMISSION
WASHINGTON, D.C. 20549

# FORM 10−Q

**(Mark One)**

☒ **QUARTERLY REPORT PURSUANT TO SECTION 13 OR 15(d) OF THE SECURITIES EXCHANGE ACT OF 1934**

For the quarterly period ended September 30, 2006

OR

☐ **TRANSITION REPORT PURSUANT TO SECTION 13 OR 15(d) OF THE SECURITIES EXCHANGE ACT OF 1934**

For the transition period from ____ to ____
COMMISSION FILE NUMBER 000−29661

# UTSTARCOM, INC.
(Exact name of registrant as specified in its charter)

| | |
|---|---|
| **DELAWARE** | **52−1782500** |
| (State of Incorporation) | (I.R.S. Employer Identification No.) |
| **1275 HARBOR BAY PARKWAY ALAMEDA, CALIFORNIA** | **94502** |
| (Address of principal executive offices) | (zip code) |

Registrant's telephone number, including area code: **(510) 864−8800**

Indicate by check mark whether the registrant (1) has filed all reports required to be filed by Section 13 or 15(d) of the Securities Exchange Act of 1934 during the preceding 12 months (or for such shorter period that the registrant was required to file such reports), and (2) has been subject to such filing requirements for the past 90 days.  Yes ☐ No ☒

Indicate by check mark whether the registrant is a large accelerated filer, an accelerated filer, or non−accelerated filer (as defined in Rule 12b−2 of the Exchange Act).

Large accelerated filer ☒  Accelerated filer ☐  Non−accelerated filer ☐

Indicate by check mark whether the registrant is a shell company (as defined in Rule 12b−2 of the Exchange Act) Yes ☐ No ☒

As of September 30, 2007 there were 121,294,645 shares of the registrant's common stock outstanding, par value $0.00125.

The findings of this review are summarized as follows:

| Grant Type | Number of grants | Grants tested | No change required | Measurement date changed | |
|---|---|---|---|---|---|
| | | | | additional compensation expense required | no additional compensation expense required(1) |
| Discretionary Director & Officer | 16 | 16 | 8 | 4 | 4 |
| Automatic Director | 5 | 5 | 5 | — | — |
| Broadbase | 8 | 8 | — | 6 | 2 |
| Acquisition | 10 | 10 | 10 | — | — |
| New Hire | 166 | 48 | 48 | — | — |
| Other Merit | 96 | 41 | 4 | 21 | 16 |
| Total | 301(2) | 128 | 75 | 31 | 22 |

(1) Under APB 25 there is no expense adjustment arising from using the corrected measurement date for these grants because the amount the employee would have to pay to exercise these stock option grants exceeded the quoted market price of our Common Stock at the corrected measurement date, and therefore, these stock option grants contained no intrinsic value at the corrected measurement date.

(2) The number of grants exceeds the number of grant dates because on certain grant dates more than one category of stock option grants were approved.

In late January 2007 the Governance Committee reported its interim findings concerning the use of incorrect measurement dates in our stock option accounting under APB 25 to our Board of Directors. On February 1, 2007, the Audit Committee of the Board of Directors then concluded, in consultation with and upon the recommendation of management, that we should correct for errors in previously reported stock–based compensation expense through restatement of our previously issued financial statements and that our previously issued financial statements for all periods should no longer be relied upon. We communicated this decision in a February 1, 2007 public announcement.

A non–cash compensation charge, to be recognized as an expense over a grantee's service period, arises under APB 25 if a stock option has intrinsic value at its measurement date. This intrinsic value is measured by the excess, if any, of the fair value at the date of grant of the underlying common stock over the stock option's exercise price. Our practice has been to grant stock options with exercise prices equal to the closing price of our Common Stock at each grant date, to use the grant date as the measurement date for stock–based compensation purposes, and as such previously we had determined the granted stock options had no intrinsic value at their grant dates and no compensation expense was recognized. However, APB 25 states the measurement date does not occur until all essential actions necessary to grant the option are completed, including the final determination of both the number of shares to be granted to each employee or director and the exercise price, and the option grant is approved by those with requisite authority. This is reinforced by the September 19, 2006 letter issued by the SEC's Chief Accountant which focuses on the need for the number of shares and exercise price of an award to an individual to be finalized to have a measurement date. This letter clarifies the SEC staff's view that if it is possible that those terms could change, a measurement date has not occurred, even if the award's terms are not actually changed.

Based on the available evidence, the review found that the number of shares an individual employee was entitled to receive and/or the exercise price was not determined with finality at the stated grant date on 53 tested grant dates, and we should have used a later date as the measurement date. The principal reasons for the stated grant date not qualifying as the measurement date under APB 25 include:

- certain listings of grantees, below officer level, were incomplete and added to or modified by stock option administration personnel after the grant was approved by the Compensation Committee;
- for certain grants where Compensation Committee approval was not considered perfunctory, the date a UWC document was sent to Compensation Committee members for approval was used as the stated grant date for some discretionary officer and director grants rather than the date the UWC was signed by all Compensation Committee members and therefore became effective;
- the Stock Option Review Team was unable to locate contemporaneous documentation of some director and officer, broadbase, new hire, and other merit grants.

During the review the Company also discovered a stock option grant to a former officer that was modified in 1998 in connection with his termination of employment. This change was never included in the Company's stock option grant records and the additional compensation expense resulting from the change in the option's terms (approximately $1.2 million) was not recorded previously. This discovery is consistent with the Stock Option Review Team's finding that in certain instances there was a lack of formal documentation in the stock option granting process and/or expected documentation is missing from the stock option administration files. In addition, the Stock Option Review Team found that, in many instances, there was a lack of self–authenticating evidence to corroborate that cash exercises were contemporaneous. As a result, the findings on the issue of backdating of cash exercises were inconclusive.