IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

PETER RUDOLPH, individually and on behalf of all others similarly situated,

    Plaintiff,

v.

UTSTARCOM, HONG LIANG LU, YING WU, MICHAEL SOPHIE, FRANCIS BARTON, AND THOMAS TOY,

    Defendants.

No. C 07-04578 SI

**ORDER GRANTING DEFENDANTS' MOTION TO DISMISS COMPLAINT**

Defendants have filed a motion to dismiss plaintiff's complaint. The motion is scheduled for hearing on April 18, 2008. Pursuant to Civil Local Rule 7-1(b), the Court finds this matter appropriate for resolution without oral argument, and hereby VACATES the hearing. Having considered the arguments of the parties and the papers submitted, and for good cause shown, the Court hereby GRANTS defendants' motion to dismiss.

**BACKGROUND**[1]

This is a securities class action against UTStarcom and certain of its officers and directors under Sections 10(b), 14(a), 20(a), Rule 10b-5, and Rule 14a-9 of the Securities Exchange Act of 1934 (the "Exchange Act"). The case is brought by lead plaintiff Peter Rudolph on behalf all purchasers of UTStarcom securities between September 4, 2002, and July 24, 2007 ("the class period").

---

[1] The following background facts are taken from the allegations of plaintiffs' complaint, which for purposes of this motion, must be taken as true.

UTStarcom is a publicly-traded company based out of Alameda, California, which "manufactures, integrates and supports IP-based, end-to-end networking and telecommunications solutions." In layperson's terms, UTStarcom sells broadband wireless and Internet television products. On November 7, 2006, the company issued a press release announcing that it had begun to review its prior practices concerning the granting of stock options. On February 1, 2007, defendants issued a second press release stating that this review was ongoing, but that the review had revealed that the company had used incorrect measurement dates for certain stock option grants. In another announcement on May 16, 2007, defendants stated that the use of improper measurement dates likely meant that the company failed to report roughly $35 million in non-cash compensation. In a press release dated July 24, 2007, defendants revised that amount to $28 million. Based on these disclosures, plaintiff alleges that defendants engaged in a fraudulent scheme of intentionally backdating stock options. Plaintiff alleges that by backdating stock options, defendants overstated the company's net income and earnings, thereby artificially inflating the stock price. Specifically, plaintiff alleges that 17.9 million stock options out of a total of 28.8 million stock options granted by defendants between 2000 and 2005 had incorrect measurement dates. Of these 17.9 million, 7.6 million had exercise prices that were higher than the prices on the actual grant date, while 10.3 million had exercise prices that were lower than the prices on the actual grant date. That is, 10.3 million of the backdated stock options were "in-the-money" options because they had intrinsic value on the day they were granted, while 7.9 million of the backdated options actually left the grantees with a loss on the day they were granted. Plaintiff further alleges that once the backdating scheme was revealed to the public through the company's restatements, the price of UTStarcom stock declined to the detriment of investors in the class. After defendants' November 7, 2006 announcement that it had commenced a voluntary review of its stock option practices, UTStarcom stock fell 9%, from $10.23 on November 7, 2006, to $9.32 on November 9, 2006. In addition, after defendants' July 24, 2007 announcement of the likely $28 million restatement (in addition to other negative news), UTStarcom stock fell 22%, from $4.73 on July 22, 2007, to $3.70 on July 25, 2007.

Plaintiff filed this lawsuit on September 4, 2007, and filed an amended complaint on January 25, 2008. Now before the Court is defendants' motion to dismiss the amended complaint in its entirety.

# LEGAL STANDARD

## I. Rule 12(b)(6)

Under Federal Rule of Civil Procedure 12(b)(6), a district court must dismiss a complaint if it fails to state a claim upon which relief can be granted. The question presented by a motion to dismiss is not whether the plaintiff will prevail in the action, but whether the plaintiff is entitled to offer evidence in support of the claim. *See Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974), *overruled on other grounds by Davis v. Scherer*, 468 U.S. 183 (1984).

In answering this question, the Court must assume that the plaintiff's allegations are true and must draw all reasonable inferences in the plaintiff's favor. *See Usher v. City of Los Angeles*, 828 F.2d 556, 561 (9th Cir. 1987). Even if the face of the pleadings suggests that the chance of recovery is remote, the Court must allow the plaintiff to develop the case at this stage of the proceedings. *See United States v. City of Redwood City*, 640 F.2d 963, 966 (9th Cir. 1981).

If the Court dismisses the complaint, it must then decide whether to grant leave to amend. The Ninth Circuit has "repeatedly held that a district court should grant leave to amend even if no request to amend the pleading was made, unless it determines that the pleading could not possibly be cured by the allegation of other facts." *Lopez v. Smith*, 203 F.3d 1122, 1130 (9th Cir. 2000) (citations and internal quotation marks omitted).

## II. Section 10(b) and Rule 10b-5

Section 10(b) of the Securities Exchange Act provides, in part, that it is unlawful "to use or employ in connection with the purchase or sale of any security registered on a national securities exchange or any security not so registered, any manipulative or deceptive device or contrivance in contravention of such rules and regulations as the [SEC] may prescribe." 15 U.S.C. § 78j(b). Rule 10b-5 makes it unlawful for any person to use interstate commerce:

(a) To employ any device, scheme, or artifice to defraud,

(b) To make any untrue statement of a material fact or to omit to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading, or

(c) To engage in any act, practice, or course of business which operates or would operate as a

3

fraud or deceit upon any person, in connection with the purchase or sale of any security. 17 C.F.R. § 240.10b-5.

In order to state a claim under section 10(b) and Rule 10b-5, the plaintiff must allege (1) a misrepresentation or omission (2) of material fact (3) made with scienter (4) on which the plaintiff justifiably relied (5) that proximately caused the alleged loss. *See Binder v. Gillespie*, 184 F.3d 1059, 1063 (9th Cir. 1999).

### III.     Heightened pleading standard for § 10(b) claims

A securities class action alleging violation of § 10(b) of the Exchange Act must satisfy the pleading requirements of Federal Rule of Civil Procedure 9(b) and the heightened pleading requirements of the Private Securities Litigation Reform Act ("PSLRA"). The Federal Rules of Civil Procedure require that "[i]n all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity." Fed. R. Civ. P. 9(b). Federal securities fraud claims, like common law fraud claims, are subject to the special pleading requirements of Rule 9(b). *Semegen v. Weidner*, 780 F.2d 727, 731 (9th Cir. 1985). To comply with Rule 9(b) in a securities action, a plaintiff must allege the time, place, and content of the alleged fraud, as well as the "circumstances indicating falseness" or "the manner in which [the] representations [or omissions at issue] were false and misleading." *In re GlenFed Sec. Litig.*, 42 F.3d 1541, 1544 (9th Cir. 1994) (en banc) (alterations in the original).

The PSLRA was enacted as an amendment to the Exchange Act. *See In re Silicon Graphics Inc. Sec. Litig.*, 183 F.3d 970, 973 n.2 (9th Cir. 1999). Under the PSLRA:

> In any private action arising under his chapter under which the plaintiff may recover money damages only on proof that the defendant acted with a particular state of mind, the complaint shall, with respect to each act or omission alleged to violate this chapter, state with particularity facts giving rise to a strong inference that the defendant acted with the required state of mind.

15 U.S.C. § 78u-4(b)(2). The required state of mind is "at a minimum, deliberate recklessness." *In re Silicon Graphics*, 183 F.3 at 983. Scienter may be pled and proven by reference to circumstantial evidence. *See In re Peoplesoft Sec. Litig.*, 2000 WL 1737936, *3 (N.D. Cal. May 25, 2000). However, when pleading on information and belief, a plaintiff must plead with "particularity" by "provid[ing] all facts forming the basis for [plaintiff's] belief in great detail." *In re Silicon Graphics*, 183 F.3d at 983;

4

*see also* 15 U.S.C. § 78u-4(b)(1). Therefore, the Reform Act has strengthened the pleading requirements of Rule 9(b).

## IV. Section 14(a) and Rule 14a-9

To establish a claim under § 14(a) of the Exchange Act, plaintiffs must allege that some part of a proxy statement "contain[s] any statement which, at the time and in the light of the circumstances under which it is made, is false or misleading with respect to any material fact, or which omits to state any material fact necessary in order to make the statements therein not misleading . . . ." 17 C.F.R. § 240.14a-9; *see also Desaigoudar v. Meyercord*, 223 F.3d 1020, 1022 (9th Cir. 2000). The requisite state of mind under this section is negligence. *See In re McKesson HBOC, Inc. Sec. Litig.*, 126 F. Supp. 2d 1248, 1263 (N.D. Cal. 2000); *Wilson v. Great Am. Indus., Inc.*, 855 F.2d 987, 995 (2d Cir. 1988); *Gerstle v. Gamble-Skogmo, Inc.*, 478 F.2d 1281-1301 (2d Cir. 1973).

## V. Request for judicial notice

Generally, when considering a motion to dismiss, a district court must consider only the facts stated in the plaintiffs' complaint, or in documents attached to the complaint as exhibits or incorporated into the complaint by reference. Under certain circumstances, the court may also consider matters that are appropriate subjects of judicial notice under Federal Rule of Evidence 201. *Kramer v. Time Warner*, 937 F.2d 767, 773 (2d Cir. 1991). While the general rule is that "[m]atters outside the pleadings are not to be considered by a court in ruling on a 12(b)(6) motion to dismiss," in a securities action a court may also consider documents that the defendant has attached to its motion to dismiss either as exhibits or accompanied by a request for judicial notice, *Weiner v. Klais and Co., Inc.*, 108 F.3d 86, 88 (6th Cir. 1997).

## DISCUSSION

## I. Motion to dismiss Section 10(b) claims

Defendants move to dismiss plaintiff's § 10(b) and Rule 10b-5 claim. Defendants do not take issue with plaintiff's allegations regarding certain elements of a § 10(b) claim, but focus on whether

5

plaintiff has failed to adequately plead loss causation and scienter. The Court finds that plaintiff has adequately plead loss causation but has not adequately plead scienter.

### A.  Loss causation

A plaintiff bringing a securities claim must show some causal connection between the alleged fraud and the securities transaction in question. *In re Daou Sys.*, Inc., 411 F.3d 1006, 1025 (9th Cir. 2005). "[T]o prove loss causation, the plaintiff must demonstrate a causal connection between the deceptive acts that form the basis for the claim of securities fraud and the injury suffered by the plaintiff." *Id.* (citing *Dura Pharm., Inc. v. Broudo*, 544 U.S. 336, 346 (2005)).

Plaintiff alleges that "two specific pronouncements from the Company," AC at ¶ 146, revealed the truth about defendants' fraudulent backdating practices and caused a decline in UTStarcom's stock prices. The first pronouncement relied upon by plaintiff is the November 7, 2006 press release announcing that the company had "commenced a voluntary review of its historical equity award grant practices." *Id.* at ¶ 147. Following this announcement, stock prices fell from $10.23 to $9.32. *Id.* Defendants argue that this press release cannot support the element of loss causation because an announcement of an internal investigation, without more, does not reveal to the market that prior statements made by the company were untrue. The press release specifically stated that "no conclusions have been reached about whether the Company will need to record any non-cash adjustments to its financial statements related to prior equity grants." Ketroser Decl. ex. A.[2] The Court finds that at that point in time, prior to any revelation by defendants of actual backdating, the "true nature of [the company's] financial condition had not yet been disclosed." *Daou Sys.*, 411 F.3d at 1027. The Court therefore agrees with the other courts that have reached this question that the announcement of an internal investigation cannot support an allegation of loss causation. *See*, *e.g.*, *In re Hansen Natural Corp. Sec. Litig.*, 527 F. Supp. 2d 1142, 1162 (C.D. Cal. 2007) (rejecting loss causation based on a similar announcement because "the November 6, 2006, press release simply stated that Hansen had formed a Special Committee to conduct an investigation into the same matters the SEC was

---

[2] The Court GRANTS defendants' request for judicial notice.

6

investigating"); *Weiss v. Amkor Tech., Inc.*, 527 F. Supp. 2d 938, 947 (D. Ariz. 2007); *see also In re Avista Corp. Sec. Litig.*, 415 F. Supp. 2d 1214, 1221 (E.D. Wash. 2005) ("[T]he announcement by a regulatory agency that it intends to investigate is insufficient, on its own, to plead loss causation.").

The second pronouncement upon which plaintiff relies is the July 24, 2007 press release that announced, among other things, "the preliminary results of its review of historical equity award practices, requiring the Company to restate approximately $28 million of non-cash compensation expenses over the years 2000 through 2006." AC at ¶ 148. Following this announcement, stock prices fell from $4.73 to $3.70. *Id.* Defendants argue that this disclosure cannot support the element of loss causation because (1) other information in the July 24 release could have caused stock prices to drop, and (2) in comparison to prior press releases regarding the ongoing stock option investigation, the news announced on July 24 was actually positive, not negative. As to defendants' first argument, the Ninth Circuit has made clear that "[a] plaintiff is not required to show 'that a misrepresentation was the *sole* reason for the investment's decline in value' in order to establish loss causation." *Daou Sys.*, 411 F.3d at 1025 (quoting *Robbins v. Koger Props., Inc.*, 116 F.3d 1441, 1447 n.5 (11th Cir. 1997)). Rather, the misrepresentation need only be one substantial cause of the stock's decline. *Id.*

As to defendants' second argument, they are correct that the company announced, prior to July 24, 2007, that previous financial statements should no longer be relied upon and that the company would need to restate additional non-cash compensation charges of approximately $50 million, on February 1, 2007, and then $35 million, on May 16, 2007. *See id.* at ¶¶ 16, 17, 115. In comparison to restatements of $50 million and $35 million, it could be argued that $28 million was actually good news, but the Court finds that plaintiff has adequately pled loss causation based on the July 24, 2007 disclosure because this disclosure was significantly more definite than the prior disclosures. The February 1, 2007 disclosure, for instance, stated that the "investigation is on-going," that "the Company is not yet able to determine with finality the amount of additional non-cash stock-based compensation charge to be recognized," and that the $50 million restatement was "based on preliminary information." *Id.* at ¶ 16. By contrast, the July 24, 2007 disclosure was cast in far more definitive terms. Although it did state that the results were preliminary and approximate, it did not state that the investigation was ongoing or that the Company was not able to make a final determination. *See* Ketroser Decl. at ex. D. The Court finds

this disclosure sufficient to satisfy the pleading requirements for loss causation. Accordingly, the Court GRANTS defendants' motion to dismiss as to the November 7, 2006 press release, and DENIES defendants' motion to dismiss as to the July 24, 2007 press release.

### B.  Scienter

"[T]he PSLRA requires that the Complaint 'state with particularity facts giving rise to a strong inference that the defendant acted with the required state of mind,' or scienter." *Nursing Home Pension Fund, Local 144 v. Oracle Corp.*, 380 F.3d 1226, 1230 (9th Cir. 2004) (quoting 15 U.S.C. § 78u-4(b)(2)). This inquiry "is whether all of the facts alleged, taken collectively, give rise to a strong inference of scienter, not whether any individual allegation, scrutinized in isolation, meets that standard." *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 127 S. Ct. 2499, 2509 (2007). Here, the required state of mind is at least "deliberate recklessness," meaning recklessness that "reflects some degree of intentional or conscious misconduct." *Nursing Home Pension Fund*, 380 F.3d at 1230 (internal quotation marks omitted). The PSLRA's heightened pleading standard requires the plaintiff to plead "in great detail, facts that constitute strong circumstantial evidence of deliberately reckless or conscious misconduct," *Silicon Graphics*, 183 F.3d at 974, such that the inference of scienter is "more than merely 'reasonable' or 'permissible' – it must be cogent and compelling, thus strong in light of other explanations," *Tellabs*, 127 S. Ct. at 2510.

"'[T]he mere publication of inaccurate accounting figures, or a failure to follow GAAP, without more, does not establish scienter.'" *DSAM Global Value Fund v. Altris Software, Inc.*, 288 F.3d 385, 390 (9th Cir. 2002) (quoting *In re Software Toolworks Inc.*, 50 F.3d 615, 627 (9th Cir. 1994)); *see also Hockey v. Medheker*, 30 F. Supp. 2d 1209, 1224 (N.D. Cal. 1998) ("Merely alleging that fraudulent accounting practices have occurred, without more, does not create a strong inference of scienter."). "Rather, to plead fraudulent intent based on GAAP violations, plaintiffs must allege facts showing that: (1) specific accounting decisions were improper; and (2) the defendants knew specific facts at the time that rendered their accounting determinations fraudulent." *Morgan v. AXT, Inc.*, 2005 WL 2347125, * 14 (N.D. Cal. Sept. 23, 2005) (citing *DSAM Global Value Fund*, 288 F.3d at 390-391). Similarly, the signing of quarterly certifications of financial statements mandated by the Sarbanes-Oxley Act does not,

8

without more, support an inference of scienter. *See In re Hypercom Corp. Sec. Litig.*, 2006 WL 1836181 *11 (D. Ariz. July 5, 2006) ("However, an incorrect Sarbanes-Oxley certification does not, by itself, create a strong inference of scienter."); *In re Invision Techs., Inc. Sec. Litig.*, 2006 WL 538752 *7 n.3 (N.D. Cal. Jan. 24, 2006); *In re Watchguard Sec. Litig.*, 2006 WL 2038656 *11 (W.D. Wash. April 21, 2006); *Morgan v. AXT, Inc.*, 2005 WL 2347125 *15 (N.D. Cal. Sept. 23, 2005). In addition, courts in this Circuit have held that general allegations of intent based upon generalized financial motives are insufficient to establish scienter. *See*, *e.g.*, *Kane v. Madge Networks N.V.*, 2000 WL 33208116, *11 (N.D. Cal. May 26, 2000) (holding that motive to avoid stock dilution is a motive for fraud, but would not create a "strong inference" of scienter); *In re PETsMART, Inc. Sec. Litig.*, 61 F. Supp. 2d 982, 999 (D. Ariz. 1999).

Here, plaintiff's scienter pleading is based on numerous factual allegations, many of which cannot support – either alone or taken collectively – an inference of scienter. For instance, plaintiff relies on the company's admission in its restatement that some options had been backdated, defendants' responsibility for approving stock option grants, defendants' certification of the company's financial reports, and defendants' receipt and exercise of backdated stock options. As shown in the cases cited above, none of these factual allegations is cogent and compelling, *see*, *e.g.*, *DSAM Global Value Fund*, 288 F.3d at 390-91, because each could equally support the inference that stock options had been backdated through innocent bookkeeping error, *see In re CNET Networks, Inc.*, 483 F. Supp. 2d 947, 955-56 (N.D. Cal. 2007); *Nach v. Baldwin*, 2008 WL 410261, *4, 7 (N.D. Cal. Feb. 12, 2008). This is particularly so where a full 7.6 million stock options – or 42% of all incorrectly-dated stock options – were backdated to dates that left the recipients in the red on the date they were granted. AC at ¶ 120. Thus, plaintiff must point to other facts which provide cogent and compelling evidence of deliberate recklessness or intentional misconduct, rather than innocent bookkeeping error. Plaintiff cannot make that showing based on a statistical analysis of the likelihood that UTStarcom's stock options were deliberately backdated because plaintiff points to only two or three specific grant dates that fell on days when stock prices were particularly low, *see id.* at ¶ 61, without providing any evidence of the total number of grant dates or other information to place these grant dates in context, *see In re Openwave Sys. Inc. Shareholder Derivative Litig.*, 503 F. Supp. 2d 1341, 1348, 1350-51 (N.D. Cal. 2007); *Nach*, 2008

WL 410261 at *5-6.

Instead, plaintiff relies on the observations of two confidential witnesses, who apparently can confirm that defendants actively and intentionally backdated stock option grants in order to provide additional compensation to senior executives. AC at ¶¶ 57-60, 62. The statements of these witnesses, in combination with plaintiff's other allegations, might be sufficient to survive defendants' motion to dismiss. The problem, as defendants point out, is that plaintiff has not provided sufficient information about these confidential witnesses. Courts in this District have rejected statements by confidential witnesses in which, as is the case here, only the witness' job title and period of employment was provided. *See*, *e.g.*, *In re Northpoint Comm Group, Inc. Sec. Litig.*, 184 F. Supp. 2d 991, 1001 (N.D. Cal. 2001) (finding that use of eight confidential witnesses could not overcome the PSLRA's particularity requirement where the complaint did not describe the witnesses' duties or how they learned the information in the complaint); *In re Network Assocs., Inc. Sec. Litig.*, 2003 WL 24051280, *9 (N.D. Cal. March 25, 2003). One example of a case in which plaintiffs provided sufficient information about each confidential witness is *In re Adaptive Broadband Sec. Litig.*, 2002 WL989478 (N.D. Cal. Apr. 2, 2002). In that case, the court found that plaintiffs provided sufficient detail where the complaint set forth information including the period during which the witness had been employed, a clearer explanation of the witness' job duties, and how the witness came to know the information he or she describes. Plaintiffs must reveal all facts about that witness that were material to the formation of their belief that the witness' statement is accurate. *See In re Secure Computing Corp. Sec. Litig.*, 120 F. Supp. 2d 810, 817 (N. D. Cal. 2000). At the very least, plaintiff must describe the witnesses' period of employment, what the witnesses' job duties were, their expertise, and how they had access to the information being provided.

In short, the Court agrees with defendants that plaintiff's complaint, as written, fails to adequately plead scienter. Plaintiff must either provide additional information about the confidential witnesses, or put forth other evidence demonstrating that defendants intentionally engaged in backdating or acted with deliberate recklessness. In so doing, plaintiff must plead facts showing that each individual defendant acted with scienter, not only the one or two defendants currently implicated by the confidential witnesses. *See Southland Sec. Corp. v. INSpire Ins. Solutions, Inc.*, 365 F.3d 353, 364-65

(5th Cir. 2004); *In re Silicon Storage Tech., Inc.*, 2006 WL 648683 *21-22 (N.D. Cal. March 10, 2006) ("Until such time as the Ninth Circuit does speak on this issue, this court interprets the above-cited provision of the PSLRA as requiring that plaintiffs plead facts showing scienter as to each defendant individually."). For these reasons, the Court GRANTS defendants' motion to dismiss plaintiff's first cause of action.

## II.    Motion to dismiss Section 14(a) claim

Defendants next argue that plaintiff's claim under Section 14(a) of the Exchange Act must be dismissed for multiple reasons. Section 14(a) and Rule 14a-9 "disallow the solicitation of a proxy by a statement that contains either (1) a false or misleading declaration of material fact, or (2) an omission of material fact that makes any portion of the statement misleading." *Desaigoudar*, 223 F.3d at 1022. In addition, a plaintiff bringing a claim under this section "must demonstrate that the misstatement or omission was made with the requisite level of culpability and that it was an essential link in the accomplishment of the proposed transaction." *Id.*

Defendants first argue that plaintiff fails to identify any false or misleading statements contained in defendants' proxies. The PSLRA requires that a securities fraud plaintiff must identify each misleading statement when seeking relief under § 14(a). *Id.* at 1023; 15 U.S.C. § 78u-4(b)(1). In response to defendants' motion, plaintiff points to sections of his complaint that state that "UTStarcom's annual Proxy Statements for fiscal years 2002 through 2006 contained false statements about the compensation of UTStarcom's officers," AC at ¶ 66, and that "Defendants negligently omitted the material facts about option grant backdating and negligently misrepresented the terms of the Individual Defendants' compensation and management integrity," *id.* at ¶ 164. Defendants are correct that plaintiff's complaint manifestly fails to identify what statements in the proxies are alleged to have been misleading. Merely stating that the proxies "contained false statements" obviously does not comply with the PSLRA. In addition, to the extent plaintiff also argues that defendants violated § 14(a) by omitted material facts, plaintiff must provide additional details about what facts were omitted and must identify what statements in the proxies were rendered misleading by virtue of defendants' material omission.

11

Second, defendants argue that plaintiff's complaint fails to satisfy the "essential link" element of a § 14(a) claim. Plaintiff must allege that defendants' misleading statements or omissions were an "essential link" in the accomplishment of the transaction proposed in the proxy statement. *Desaigoudar*, 223 F.3d at 1022. Plaintiff essentially concedes that the complaint, as written, does not allege the essential link element, and instead makes new arguments in his opposition brief regarding his injury and the essential link. The Court will not consider these new allegations, but will instead permit plaintiff to amend his complaint to include the necessary allegations. The Court does not reach any of defendants' other contentions regarding the essential link element.

Third, defendants argue that plaintiff's complaint fails to plead that defendants acted negligently. Plaintiff relies solely on his showing of defendants' scienter to plead that defendants acted negligently. *See* Plaintiff's Opposition at 24. As discussed above, the Court finds that plaintiff fails to adequately plead scienter. Accordingly, if plaintiff chooses to amend his complaint to plead scienter, the Court will consider whether plaintiff's new allegations adequately allege defendants' negligence.

Finally, defendants argue that plaintiff's § 14(a) claim is partially time-barred as it relates to proxy statements filed in 2003 and 2004. Plaintiff does not dispute the proxy dates on which defendants rely, but instead argues that defendants rely on the wrong statute of limitations. The statute of limitations for claims brought under § 14(a) "is one year from the discovery of the occurrences giving rise to the claim, but no later than three years from the date of the violation." *In re Verisign, Inc., Derivative Litig.*, 531 F. Supp. 2d 1173, 1212 (N.D. Cal. 2007); *see also Westinghouse Elec. Corp. by Levit v. Franklin*, 993 F.2d 349, 353 (3d Cir. 1993); *Stoll v. Ardizzone*, 2007 WL 2982250, *2 (S.D.N.Y. Oct. 9, 2007). On the other hand, pursuant to the Sarbanes-Oxley Act, the statute of limitations for a cause of action "that involves a claim of fraud, deceit, manipulation, or contrivance in contravention of a regulatory requirement concerning the securities laws" is two years after discovery or five years after the violation. 28 U.S.C. § 1658(b). Plaintiff argues that the Court should apply the longer statute of limitations for fraud claims. The Court disagrees. Plaintiff provides no citation for this proposition, and every court that has considered the issue, including courts in this district, has held that § 1658(b) does not apply to claims brought under § 14(a). *See*, *e.g., Verisign*, 531 F. Supp. 2d at 1212 ("A Section 14(a) claim is not a claim that 'sounds in fraud' under the Sarbanes-Oxley Act of 2002, so

its statute of limitations was not extended by 28 U.S.C. § 1658(b)(2)."). Indeed, the Third Circuit recently rejected plaintiff's argument because § 14(a) claims do not require proof of fraudulent intent. *In re Exxon Mobil Corp. Sec. Litig.*, 500 F.3d 189, 196-97 (3d Cir. 2007) ("[W]e conclude that Congress did not intend to include § 14(a) claims within the scope of § 1658(b), but rather intended that provision to apply to § 10(b) claims and other claims requiring proof of fraudulent intent."). The Third Circuit also explicitly rejected the argument, also made by plaintiff here, that even if § 1658(b) does not apply generally to § 14(a) claims, it might apply to particular § 14(a) claims that sound in fraud. *Id.* at 197-98. For these reasons, the Court holds that the applicable statute of limitations is three years. Plaintiff filed this complaint on September 4, 2007, making his § 14(a) claim time-barred as to proxy statements issued on April 2, 2003, August 22, 2003, and April 7, 2004. Should plaintiff wish to amend his complaint, he may move forward on his § 14(a) claim with regard to the later-issued proxies.

For these reasons, the Court GRANTS defendants' motion to dismiss the § 14(a) claim for failure to comply with the PSLRA.

### III.     Motion to dismiss Section 20(a) claim

Because plaintiff has not adequately alleged a primary violation of federal securities laws, the Court also GRANTS defendants' motion to dismiss plaintiff's claim for control person liability under § 20(a). *See Lipton v. Pathogenesis Corp.*, 284 F.3d 1027, 1035 n.15 (9th Cir. 2002) ("[T]o prevail on their claims for violations of § 20(a) and § 20A, plaintiffs must first allege a violation of § 10(b) or Rule 10b-5.").

### CONCLUSION

For all of the foregoing reasons, the Court hereby GRANTS defendants' motion to dismiss plaintiff's complaint [Docket No. 54]. <u>Should he wish to do so, plaintiff may file an amended complaint no later than May 16, 2008.</u>

**IT IS SO ORDERED.**

Dated: April 14, 2008

_____
SUSAN ILLSTON
United States District Judge

13