1  TERRY T. JOHNSON, State Bar No. 121569 (tjohnson@wsgr.com)
   BORIS FELDMAN, State Bar No. 128838 (boris.feldman@wsgr.com)
2  BAHRAM SEYEDIN-NOOR, State Bar No. 203244 (bnoor@wsgr.com)
   CHERYL W. FOUNG, State Bar No. 108868 (cfoung@wsgr.com)
3  BRYAN J. KETROSER, State Bar No 239105 (bketroser@wsgr.com)
   WILSON SONSINI GOODRICH & ROSATI
4  650 Page Mill Road
   Palo Alto, CA 94304-1050
5  Telephone: (650) 493-9300
   Facsimile: (650) 565-5100
6
   Attorneys for Defendants
7  UTSTARCOM, INC., HONG LIANG LU,
   YING WU, MICHAEL SOPHIE, THOMAS TOY,
8  and FRANCIS BARTON

9                    UNITED STATES DISTRICT COURT

10                  NORTHERN DISTRICT OF CALIFORNIA

11

12

13  PETER RUDOLPH, individually and on behalf   )   CASE NO.: 3:07-CV-04578-SI
    of all others similarly situated,            )
                                                  )   **DEFENDANTS' NOTICE OF**
14              Plaintiff,                         )   **MOTION AND MOTION TO**
                                                  )   **DISMISS PLAINTIFF'S SECOND**
15         v.                                     )   **AMENDED CLASS ACTION**
                                                  )   **COMPLAINT, AND**
16  UTSTARCOM, HONG LIANG LU, YING WU,           )   **MEMORANDUM OF POINTS AND**
    MICHAEL SOPHIE, THOMAS TOY, and              )   **AUTHORITIES IN SUPPORT**
17  FRANCIS BARTON,                              )   **THEREOF**
                                                  )
18              Defendants.                        )   Date:   August 1, 2008
                                                  )   Time:   9:00 a.m.
19                                                )
    _____)  Before: Hon. Susan Illston
20

21

22

23

24

25

26

27

28

# TABLE OF CONTENTS

**Page(s)**

NOTICE OF MOTION AND MOTION ..................................................................................vii

ISSUES TO BE DECIDED (Local Rule 7-4(a)(3))...................................................................vii

MEMORANDUM OF POINTS AND AUTHORITIES ...............................................................1

INTRODUCTION........................................................................................................................1

BACKGROUND FACTS .............................................................................................................2

     A.    The Company and the Individual Defendants..........................................................2

     B.    The Options Investigation ......................................................................................2

     C.    Procedural History..................................................................................................5

ARGUMENT ................................................................................................................................6

I.      TO SURVIVE DISMISSAL, THE SECOND AMENDED COMPLAINT MUST COMPLY WITH THE HEIGHTENED PLEADING REQUIREMENTS OF THE REFORM ACT .............................................................................................................6

II.     PLAINTIFF FAILS TO PLEAD A CLAIM UNDER SECTION 10(b) ...........................7

     A.    Plaintiff Fails to Adequately Plead Loss Causation as to the November 7, 2006 Announcement of a Voluntary Review of Historical Equity Award Grant Practices ......................................................................................................7

     B.    Plaintiff Fails to Adequately Plead Scienter ..........................................................8

           1.    Plaintiff Must Plead Particularized Facts Establishing a Strong Inference of Intent or Deliberate Recklessness ...........................................9

           2.    Plaintiff Utterly Fails to Plead Facts Establishing Each Individual Defendants' Involvement in the Stock Option Granting Process..............10

           3.    The Four Cherry-Picked, Pre-Class Period Grants Isolated By Plaintiff Do Not Establish Scienter ....................................................11

           4.    The Restatement Does Not Establish Scienter .........................................13

           5.    Sarbanes-Oxley Certifications Do Not Establish Scienter ......................15

           6.    Plaintiff's Motive and Opportunity Allegations Do Not Evidence Scienter ...................................................................................16

                a.    The Insider Trading Allegations Do Not Evidence Scienter.........16

                b.    The Option Exercise Allegations Do Not Evidence Scienter.......17

           7.    Plaintiff's Confidential Witness Allegations Do Not Evidence Scienter...................................................................................18

                    a.    Confidential Witness #1 ................................................... 18

                    b.    Confidential Witness #2 ................................................... 20

            8.    Because Plaintiff Fails to Adequately Plead Scienter as to Any
                  Individual Defendant, He Fails to Plead Scienter as to the Company ...... 21

III.    PLAINTIFF'S SECTION 14(a) CLAIM IS TIME-BARRED AND FAILS TO
        SATISFY THE PLEADING REQUIREMENTS OF THE REFORM ACT .................... 21

        A.    Plaintiff Fails to Adequately Plead that the Alleged Misstatements Were an
              "Essential Link" in the Accomplishment of Any Proposed Transaction .............. 22

        B.    Plaintiff Fails to Adequately Plead a Strong Inference of Negligence ................. 23

        C.    The Applicable Statute of Limitations Bars Plaintiff's Claim as to All But
              the 2005 and 2006 Proxies ..................................................................... 24

IV.    PLAINTIFF'S SECTION 20(a) CLAIM MUST BE DISMISSED FOR FAILURE
       TO PLEAD A PRIMARY VIOLATION ........................................................... 25

CONCLUSION .................................................................................................. 25

1

## TABLE OF AUTHORITIES

2

**Page(s)**

3

### CASES

4

*Beck ex rel. Equity Office Props. Trust v. Dobrowski*, No. 06 C 6411,
2007 WL 3407132 (N.D. Ill. Nov. 14, 2007)................................................................23

5

*Berger v. Ludwick*, No. C-97-0728, 2000 WL 1262646 (N.D. Cal. Aug. 17, 2000),
6   *aff'd*, 15 Fed. Appx. 528 (9th Cir. 2001)..................................................................19

7

*Bond Opportunity Fund v. Unilab Corp.*, No. 99 Civ. 11074, 2003 WL 21058251
(S.D.N.Y. May 9, 2003), *aff'd*, 87 Fed. Appx. 772 (2d Cir. 2004)...........................23, 24

8

*Commc'ns Workers of Am. Plan for Employees' Pension & Death Benefits v. CSK
9   Auto Corp.*, No. CV06-1503, 2007 WL 951968 (D. Ariz. Mar. 28, 2007).............15, 16

10

*DSAM Global Value Fund v. Altris Software, Inc.*, 288 F.3d 385 (9th Cir. 2002)...............9, 13

11

*Davis v. SPSS, Inc.*, 431 F. Supp. 2d 823 (N.D. Ill. 2006)...........................................20, 21

12

*Desaigoudar v. Meyercord*, 223 F.3d 1020 (9th Cir. 2000).........................................21, 22

13

*Dura Pharms, Inc. v. Broudo*, 544 U.S. 336 (2005).........................................................7

14

*Edward J. Goodman Life Income Trust v. Jabil Circuit, Inc.*, No. 8:06-cv-01716,
2008 WL 977357 (M.D. Fla. Apr. 9, 2008)..................................................................19

15

*Grace v. Rosenstock*, 228 F.3d 40 (2d Cir. 2000)..............................................................22

16

*In re Apple Computer, Inc., Sec. Litig.*, 243 F. Supp. 2d 1012 (N.D. Cal. 2002)...............21

17

*In re Ariba, Inc. Sec. Litig.*, No. C 03-00277, 2005 WL 608278
18   (N.D. Cal. Mar. 16, 2005)............................................................................................23

19

*In re Autodesk, Inc. Sec. Litig.*, 132 F. Supp. 2d 833 (N.D. Cal. 2000)...........................11

20

*In re Avista Corp. Sec. Litig.*, 415 F. Supp. 2d 1214 (E.D. Wash. 2005)..........................8

21

*In re Bally Total Fitness Sec. Litig.*, No. 04 C 3530, 2006 WL 3714708
(N.D. Ill. July 12, 2006)..............................................................................................13

22

*In re CNET Networks, Inc. S'holder Derivative Litig.*, 483 F. Supp. 2d 947
23   (N.D. Cal. 2007)..................................................................................................11, 14, 18

24

*In re Digital Island Sec. Litig.*, 223 F. Supp. 2d 546 (D. Del. 2002),
*aff'd*, 357 F.3d 322 (3d Cir. 2004)..............................................................................23

25

*In re Ditech Networks, Inc. Derivative Litig.*, No. C 06-5157, 2007 WL 2070300
26   (N.D. Cal. July 16, 2007)............................................................................................25

27

*In re F5 Networks, Inc. Derivative Litig.*, No. C06-794, 2007 WL 2476278
(W.D. Wash. Aug. 6, 2007)....................................................................................11, 12

28

*In re Guidant Corp. Sec. Litig.*, 536 F. Supp. 2d 913 (S.D. Ind. 2008).........................16

*In re Hansen Natural Corp. Sec. Litig.*, 527 F. Supp. 2d 1142 (C.D. Cal. 2007) ..................... 8, 11

*In re Hypercom Corp. Sec. Litig.*, No. CV-05-0455, 2006 WL 1836181
    (D. Ariz. July 5, 2006) ......................................................................................... 15, 16

*In re iBasis, Inc. Derivative Litig.*, 532 F. Supp. 2d 214 (D. Mass. 2007) ................................ 24

*In re InVision Techs., Inc. Sec. Litig.*, No. C04-03181, 2006 WL 538752
    (N.D. Cal. Jan. 24, 2006)................................................................................................. 15

*In re Infineon Techs. AG Sec. Litig.*, No. C 04-04156, 2006 WL 2925680
    (N.D. Cal. Sept. 11, 2006)............................................................................................... 21

*In re Intelligroup Sec. Litig.*, 527 F. Supp. 2d 262 (D.N.J. 2007)....................................... 19, 20

*In re Linear Tech. Corp. Derivative Litig.*, No. C-06-3290, 2006 WL 3533024
    (N.D. Cal. Dec. 7, 2006) ................................................................................................ 11

*In re McKesson HBOC, Inc. Sec. Litig.*, 126 F. Supp. 2d 1248 (N.D. Cal. 2000) .............. 6, 23, 24

*In re Netflix, Inc. Sec. Litig.*, No. C 04-2978, 2005 WL 1562858
    (N.D. Cal. June 28, 2005)............................................................................................... 16

*In re Northpoint Commc'ns Group, Inc. Sec. Litig.*, 184 F. Supp. 2d 991
    (N.D. Cal. 2001) ............................................................................................................ 20

*In re Openwave Sys. Inc. S'holder Derivative Litig.*, 503 F. Supp. 2d 1341
    (N.D. Cal. 2007) ............................................................................................................ 11

*In re Openwave Sys., Inc., S'holder Derivative Litig.*, No. C 06-03468,
    2008 WL 410259 (N.D. Cal. Feb. 12, 2008)............................................................... 13, 14

*In re PMC-Sierra, Inc. Derivative Litig.*, No. C 06-05330, 2007 WL 2427980
    (N.D. Cal. Aug. 22, 2007) ............................................................................................. 14, 15

*In re Read-Rite Corp. Sec. Litig.*, 335 F.3d 843 (9th Cir. 2003) .......................................... 9

*In re Siebel Sys., Inc. Sec. Litig.*, No. C 04-0983, 2005 WL 3555718
    (N.D. Cal. Dec. 28, 2005) ............................................................................................. 20

*In re Silicon Graphics Inc. Sec. Litig.*, 183 F.3d 970 (9th Cir. 1999)........................... 6, 9, 16, 17

*In re Silicon Storage Tech., Inc.*, No. C 05-0295, 2006 WL 648683
    (N.D. Cal. Mar. 10, 2006) .............................................................................................. 9

*In re Silicon Storage Tech., Inc., Sec. Litig.*, No. C-05-0295, 2007 WL 760535
    (N.D. Cal. Mar. 9, 2007) ............................................................................................... 20

*In re Sportsline.com Sec. Litig.*, 366 F. Supp. 2d 1159 (S.D. Fla. 2004)................................... 14

*In re Textainer P'ship Sec. Litig.*, No. C-05-0969, 2007 WL 108320
    (N.D. Cal. Jan. 10, 2007).............................................................................................. 25

*In re U.S. Aggregates, Inc. Sec. Litig.*, 235 F. Supp. 2d 1063 (N.D. Cal. 2002) ......................... 13

*In re Vantive Corp. Sec. Litig.*, 283 F.3d 1079 (9th Cir. 2002)................................... 6, 10, 17

1   *In re VeriSign, Inc., Derivative Litig.*, 531 F. Supp. 2d 1173 (N.D. Cal. 2007) ....................*passim*

2   *In re Watchguard Sec. Litig.*, No. C05-678J, 2006 WL 2038656
      (W.D. Wash. Apr. 21, 2006) ................................................................................ 10, 16

3

4   *Lipton v. Pathogenesis Corp.*, 284 F.3d 1027 (9th Cir. 2002) ...................................... 25

5   *Morgan v. AXT, Inc.*, No. C 04-4362, 2005 WL 2347125 (N.D. Cal. Sept. 23, 2005) ................ 15

6   *Nach v. Baldwin*, No. C 07-0740, 2008 WL 410261 (N.D. Cal. Feb. 12, 2008) .............. 11, 13, 14

7   *Nordstrom, Inc. v. Chubb & Son, Inc.*, 54 F.3d 1424 (9th Cir. 1995)................................... 21

8   *Ronconi v. Larkin*, 253 F.3d 423 (9th Cir. 2001) ...................................................... 17

9   *Southland Sec. Corp. v. INSpire Ins. Solutions, Inc.*, 365 F.3d 353 (5th Cir. 2004)...................... 9

10   *Stoll v. Ardizzone*, No. 07 Civ. 00608, 2007 WL 2982250 (S.D.N.Y. Oct. 9, 2007)................... 24

11   *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 127 S. Ct. 2499 (2007) ................................ 6, 9, 18

12   *Weiss v. Amkor Tech., Inc.*, 527 F. Supp. 2d 938 (D. Ariz. 2007) ................................ 8, 11, 14

13   *Zucco Partners, LLC v. Digimarc Corp.*, 445 F. Supp. 2d 1201 (D. Or. 2006) .......................... 15

**STATUTES**

15   15 U.S.C. § 78u-4(b)(1)(B) ........................................................................................ 6

16   15 U.S.C. § 7241(a)(2) ........................................................................................ 15

17   15 U.S.C. § 7241(a)(3) ........................................................................................ 15

18   17 C.F.R. § 240.10b5-1(c)(1)(i) ........................................................................ 17

1

## NOTICE OF MOTION AND MOTION

2       PLEASE TAKE NOTICE, that on August 1, 2008, at 9:00 a.m., before the Honorable

3   Susan Illston, United States District Court, San Francisco, California, Defendant UTStarcom,

4   Inc. ("UTSI" or the "Company") and Defendants Hong Liang Lu, Ying Wu, Michael Sophie,

5   Thomas Toy, and Francis Barton (the "Individual Defendants"), will, and hereby do, move the

6   Court pursuant to the Private Securities Litigation Reform Act of 1995 (the "Reform Act"), 15

7   U.S.C. § 78u-4 *et seq.*, and Rule 12(b)(6) of the Federal Rules of Civil Procedure, for an order

8   dismissing the Second Amended Class Action Complaint (the "Second Amended Complaint" or

9   "SAC").

10      This Motion is based on this Notice of Motion and Motion; the attached Memorandum of

11  Points and Authorities; the Request for Judicial Notice; the Declaration of Bryan J. Ketroser

12  together with accompanying exhibits; all pleadings and papers filed herein; oral argument of

13  counsel; and any other matter that may be submitted at the hearing.

14

## ISSUES TO BE DECIDED (LOCAL RULE 7-4(A)(3))

15      1.      Has Plaintiff stated with particularity all facts forming the basis of his allegations

16  as required by the Reform Act?

17      2.      Do Plaintiff's new scienter allegations cure the defects identified in this Court's

18  Order dismissing the Amended Complaint?

19      3.      Do Plaintiff's new loss causation allegations cure the defects identified in this

20  Court's Order dismissing the Amended Complaint in part as to the Company's November 7,

21  2006 announcement?

22      4.      Has Plaintiff alleged any new facts satisfying the requirement that a plaintiff

23  establish an "essential link" between an alleged injury and false or misleading statements in a

24  proxy statement?

25      5.      Has Plaintiff alleged with particularity facts giving rise to a strong inference that

26  the Defendants acted negligently?

27

28

1         6.     Has Plaintiff alleged any new facts suggesting that his § 14(a) claim is not, as this

2    Court found in its prior Order, time-barred as to proxy statements issued before September 4,

3    2004?

4         7.     Has Plaintiff pleaded a cause of action under § 20(a) where he has failed to allege

5    that any Defendant committed a primary violation under the Exchange Act?

1    <u>**MEMORANDUM OF POINTS AND AUTHORITIES**</u>

2    **INTRODUCTION**

3    Little has changed since this Court dismissed Plaintiff's Amended Complaint ("AC") for

4    failure to state a claim.  In his Second Amended Complaint, Plaintiff still asserts that

5    Defendants' restatement of their stock option expenses is an admission of securities fraud.

6    Plaintiff also still asserts that intent to defraud may be inferred merely from the Individual

7    Defendants' management positions and their Sarbanes-Oxley certifications.  These assertions are

8    just as inadequate now as they were in the prior complaint.  Plaintiff continues to ignore the

9    context that undermines any inference of fraud.  Notably, the restatement was itself the result of

10   an independent investigation that found that no Company officer or director engaged in

11   intentional wrongdoing.  In addition, nearly half of all option grants found by the Company to be

12   misdated were issued at prices *above* the Company's then-current stock price, the exact opposite

13   of what one would have expected if there had been an intent to defraud.  The fact that those

14   options were "underwater" when issued negates an inference of a fraudulent scheme.

15   The few additions Plaintiff has made in his Second Amended Complaint are a clear step

16   backward in his effort to plead facts supporting a "strong inference" of scienter.  What little new

17   detail Plaintiff has provided concerning his confidential witness allegations confirms that they

18   are, in the case of one witness, contradicted by the very documents upon which Plaintiff relies,

19   and in the case of the other witness, completely innocuous.  Plaintiff's list of supposed insider

20   trades, meanwhile, reveals that the vast majority of the Individual Defendants' class period sales

21   were pre-planned trades pursuant to Rule 10b5-1 trading plans, rather than trades resulting from

22   a fraudulent scheme.  Besides utterly failing to plead new facts raising the requisite strong

23   inference of scienter—a failure which necessitates dismissal of his entire § 10(b) claim—

24   Plaintiff bases his theory of "loss causation" on the same two Company announcements upon

25   which he relied in the prior complaint, despite the fact that this Court, in its prior Order,

26   explicitly found one of those announcements insufficient to support loss causation.

27   Even less has been changed with regard to Plaintiff's § 14(a) claim.  In fact, Count III of

28   the Second Amended Complaint is a word-for-word copy of Count III of the Amended

1   Complaint, meaning that Plaintiff's § 14(a) claim must, once again, be dismissed for failure to

2   adequately allege an essential link. Furthermore, in attempting to plead his proxy violation

3   claim, Plaintiff again relies entirely on the flawed scienter allegations from his § 10(b) claim

4   instead of putting forth separate allegations sufficient to establish the requisite strong inference

5   of negligence under § 14(a). Both of these failures provide independent grounds for dismissal of

6   the § 14(a) claim.

7         Since "control person" liability turns on the existence of a primary violation, Plaintiff's

8   inability to establish a § 10(b) or § 14(a) violation is fatal to his § 20(a) claim as well.

9         For all of these reasons, as more fully explained below, Defendants respectfully request

10   that the Court dismiss Plaintiff's Second Amended Complaint in its entirety.

11                          **BACKGROUND FACTS**

12      **A.**     **The Company and the Individual Defendants**

13         Headquartered in Alameda, California, UTStarcom, Inc. manufactures, integrates and

14   supports IP-based, end-to-end networking and telecommunications solutions. SAC ¶ 32. The

15   Company's stock trades on the NASDAQ under the symbol "UTSI." *Id.* The Individual

16   Defendants are current and/or former officers and/or directors of the Company. *Id.* ¶¶ 33-37.

17   Hong Liang Lu has served as President and CEO of the Company, as well as a director, since

18   June 1991, and served as the Company's Chairman from March 2003 through December 2006.

19   *Id.* ¶ 33. Ying Wu served as Executive VP and Vice Chairman of the Company from October

20   1995 through July 2007. *Id.* ¶ 34. Michael Sophie served as the Company's VP of Finance and

21   CFO, as well as a director, from August 1999 to August 2005. *Id.* ¶ 35. Francis Barton has

22   served as Executive VP and CFO of the Company since August 2005. *Id.* ¶ 36. Thomas Toy has

23   served as an independent director of the Company since 1995, and as Chairman of the Company

24   since January 2007. *Id.* ¶ 37.

25      **B.**     **The Options Investigation**

26         Like many other companies, UTSI periodically issues stock options to its officers,

27   directors, and non-officer employees. Stock options give the recipient the right to purchase a

28   share of a company's stock at a particular price—often referred to as the "exercise price" or

1  "strike price"—for a particular period of time. *Id.* ¶ 5. The exercise price typically is set at the

2  current market price at the time the option is granted. "Backdating" refers to the act of issuing

3  options that are dated as of an earlier date than the actual date the options were granted and using

4  the stock price on the earlier date as the exercise price of the options. *Id.* If the stock price on

5  the earlier date was lower than the stock price at the time the options are granted, the result is

6  options that are already "in the money" at the time they are issued. "Backdating" can result from

7  a deliberate decision to pick an earlier date in order to get a lower exercise price, but it also can

8  happen without any fraudulent intent to manipulate the grant price, such as when there are delays

9  in finalizing option paperwork, delays in documenting board decisions, or a lack of

10 understanding of the option grant process. "Fraudulent backdating" connotes intentional

11 misrepresentation of the actual grant date in order to give the grantee a lower exercise price, and

12 a failure to recognize the intrinsic value of the grant as compensation expense in a company's

13 financial statements. Thus, fraudulent backdating is intentionally wrongful accounting.

14      On November 7, 2006, the Company announced the commencement of a voluntary

15 review of its historical stock option grant practices. *Id.* ¶ 148. The ensuing review was

16 conducted under the leadership of the Board's Governance Committee, consisting solely of

17 outside directors, with the assistance of independent legal counsel, which in turn hired

18 independent forensic accountants. *Id.* ¶ 156. The Company's November 7, 2006 announcement

19 of the review noted that "no conclusions have been reached" about whether the Company would

20 have to restate any of its previous financials due to this issue. *Id.* ¶ 148. On November 8,

21 2006—the day after the internal review was announced—*Forbes.com* published an article which

22 referred extensively to a Bear Stearns analyst who was downgrading the Company's stock. *Id.* ¶

23 150; Ex. A.[1] Following the *Forbes.com* article, the Company's stock price dropped from $10.23

24 to $9.37. Ex. B.

25

26

27      [1] All references to "Ex. __" are to the exhibits attached to the Declaration of Bryan J.
28 Ketroser, filed herewith.

MOTION TO DISMISS SECOND AMENDED              -3-
COMPLAINT
CASE NO. 3:07-CV-04578-SI

1    On January 4, 2007, the Company announced that Messrs. Lu, Wu, Barton and Toy had

2  "elected to amend any of their previously granted stock options that might in the future be

3  determined to be discounted stock options under Section 409A of the Internal Revenue Code of

4  1986, as amended." AC ¶ 129(c); Ex. C.

5    On February 1, 2007, the Company announced that "the Governance Committee ha[d]

6  reached a determination that incorrect measurement dates for certain stock option grants were

7  used," and announced an estimated $50 million compensation charge "based on preliminary

8  information." SAC ¶ 152; Ex. D.  On May 16, 2007, the Company revised its estimate

9  downward to $35 million. AC ¶ 17; Ex. R.

10   On the morning of July 24, 2007, the Company announced the "preliminary results" of its

11 options investigation, estimating that the Company would need to record additional

12 compensation expenses of approximately $28 million. SAC ¶ 153; Ex. E.

13   On October 10, 2007, the Company filed its Form 10-Q for the quarter ending September

14 30, 2006, in which it restated financial results for fiscal years 2000 through 2005, as well as the

15 first two quarters of fiscal year 2006. SAC ¶ 155; Ex. F at 3, 11. The restatement revealed that,

16 of the 17.9 million stock options found to have incorrect measurement dates, *7.6 million—or

17 42%—"had exercise prices that exceeded the closing price of our Common Stock*" on the date

18 of the grant. SAC ¶ 157; Ex. F at 10 (emphasis added).  The Company noted that the

19 Governance Committee "*found no evidence of intent to manipulate the Company's operating

20 results or financial statements*." Ex. F at 10 (emphasis added).  The Company added: "The

21 Governance Committee's review also concluded that *none of the current or former employees

22 or directors of the Company engaged in intentional wrongdoing*." *Id*. (emphasis added).

23   On May 1, 2008, the Company and Messrs. Lu and Sophie settled charges with the

24 Securities and Exchange Commission ("SEC") related to, *inter alia*, the stock option issue.  SAC

25 ¶¶ 160-65; Ex. G.  As noted by Marc Fagel of the SEC, the government action included "no

26 fraud charges." Ex. H.

27

28

1     **C.    Procedural History**

2          More than a month before the Governance Committee issued the final results of its

3    investigation, on September 4, 2007, Peter Rudolph filed his Class Action Complaint alleging

4    violations of Sections 10(b), 14(a), and 20(a) of the Exchange Act and Rules 10b-5 and 14a-9

5    promulgated thereunder by the Securities and Exchange Commission ("SEC").  On September

6    20, 2007, lead plaintiffs in the action entitled *In re UTStarcom, Inc. Securities Litigation*, No. C-

7    04-4908 (N.D. Cal.) ("*In re UTStarcom*") filed with that court an Administrative Motion to

8    Consider Whether Cases Should Be Related Pursuant to Local Rules 3-12 and 7-11, requesting

9    that the *In re UTStarcom* court relate the instant action to *In re UTStarcom*.  On November 30,

10   2007, the motion was denied.  On December 14, 2007, this Court appointed James R.

11   Bartholomew Lead Plaintiff.  Lead Plaintiff filed his Amended Class Action Complaint

12   ("Amended Complaint" or "AC") on January 25, 2008.

13         On February 29, 2008, Defendants moved to dismiss the Amended Complaint.  On April

14   14, 2008, this Court granted Defendants' motion and dismissed the Amended Complaint in its

15   entirety.  The Court dismissed Plaintiff's § 10(b) claim on both loss causation and scienter

16   grounds.  First, it dismissed the § 10(b) claim in part, finding that the Company's November 7,

17   2006 announcement of the commencement of an internal investigation "cannot support an

18   allegation of loss causation" because the "true nature of [the company's] financial condition had

19   not yet been disclosed."  Order at 6 (alteration in original) (internal quotation marks and citation

20   omitted).[2]  Next, the Court dismissed the § 10(b) claim in its entirety for failure to adequately

21   plead scienter, finding that "plaintiff's scienter pleading is based on numerous factual

22   allegations, many of which cannot support – either alone or taken collectively – an inference of

23   scienter."  Order at 9.  The Court specifically noted that the confidential witness allegations put

24   forth by Plaintiff were insufficiently detailed.  *Id.* at 10.  The Court dismissed Plaintiff's § 14(a)

25   claim for several reasons, including a failure to adequately plead an "essential link," and,

26

27      _____
         [2] All references to "Order at __" are to this Court's April 14, 2008 Order Granting
28   Defendants' Motion to Dismiss Complaint.

because Plaintiff relied on his insufficient scienter allegations to plead negligence, a failure to plead facts giving rise to a strong inference of negligence. *Id.* at 12. The Court also dismissed the § 14(a) claim in part as time-barred. *Id.* at 12-13. Finally, the Court dismissed Plaintiff's § 20(a) claim in the absence of an adequately pleaded primary violation. *Id.* at 13.

Plaintiff filed his Second Amended Complaint on May 16, 2008.

## ARGUMENT

**I.    TO SURVIVE DISMISSAL, THE SECOND AMENDED COMPLAINT MUST COMPLY WITH THE HEIGHTENED PLEADING REQUIREMENTS OF THE REFORM ACT**

Congress enacted the Private Securities Litigation Reform Act of 1995 (the "Reform Act" or "PSLRA") "[a]s a check against abusive litigation by private parties." *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 127 S. Ct. 2499, 2504 (2007); *see also In re Vantive Corp. Sec. Litig.*, 283 F.3d 1079, 1084-85 (9th Cir. 2002) (Reform Act "significantly altered pleading requirements in private securities fraud litigation" in order to "eliminate abusive securities litigation" and "the practice of pleading 'fraud by hindsight'") (citations omitted). The Reform Act "has strengthened the pleading requirements of Rule 9(b)." Order at 5. Complaints must now "specify each statement alleged to have been misleading [and] the reason or reasons why the statement is misleading." 15 U.S.C. § 78u-4(b)(1)(B). "[W]hen pleading on information and belief, a plaintiff must plead with 'particularity' by 'provid[ing] all facts forming the basis for [plaintiff's] belief in great detail." Order at 4 (alterations in original) (quoting *In re Silicon Graphics, Inc. Sec. Litig.*, 183 F.3d 970, 983 (9th Cir. 1999) ("*SGI*")). "The required state of mind [under the Reform Act] is 'at a minimum, deliberate recklessness.'" *Id.* (quoting *SGI*, 183 F.3d at 983). Put another way, Plaintiff must plead "particularized" facts that raise a "strong inference" of scienter. *See, e.g., Vantive*, 283 F.3d at 1085. Section 14(a) claims, like § 10(b) claims, are subject to this heightened standard, because they too require the showing of a particular state of mind: negligence.[3]

---

[3] *See* Order at 5; *see also In re VeriSign, Inc., Derivative Litig.*, 531 F. Supp. 2d 1173, 1211 (N.D. Cal. 2007); *In re McKesson HBOC, Inc. Sec. Litig.*, 126 F. Supp. 2d 1248, 1267 (N.D. Cal. 2000).

1    II.    **PLAINTIFF FAILS TO PLEAD A CLAIM UNDER SECTION 10(b)**

2         A plaintiff asserting a § 10(b) violation must plead six elements: i) "a material

3    misrepresentation (or omission)"; ii) "scienter, i.e., a wrongful state of mind"; iii) "a connection

4    with the purchase or sale of a security"; iv) "reliance, often referred to in cases involving public

5    securities markets (fraud-on-the-market cases) as 'transactional causation'"; v) "economic loss";

6    and vi) "'loss causation,' i.e., a causal connection between the material misrepresentation and the

7    loss." *Dura Pharms, Inc. v. Broudo*, 544 U.S. 336, 341-42 (2005) (emphasis omitted).  As with

8    the previous iteration of his complaint, the § 10(b) claim in Plaintiff's Second Amended

9    Complaint must be dismissed in part for failure to adequately plead loss causation as to the

10   Company's November 7, 2006 announcement, as well as in its entirety for failure to plead

11   particularized facts raising a strong inference of scienter.

12        A.    **Plaintiff Fails to Adequately Plead Loss Causation as to the November 7,**
             **2006 Announcement of a Voluntary Review of Historical Equity Award**
13           **Grant Practices**

14        In dismissing the Amended Complaint, this Court explicitly ruled that "the announcement

15   of an internal investigation cannot support an allegation of loss causation."  Order at 6.  Plaintiff

16   nevertheless has repeated his loss causation allegations with respect to the November 7, 2006

17   announcement of the internal investigation, alleging that the announcement "informed the market

18   for the first time" of "the likelihood that the Company has been engaging in options backdating

19   and would be forced to restate its financial results to reduce earnings over an extended period of

20   time."  SAC ¶ 150.[4]  In continuing to assert this theory of loss causation, Plaintiff ignores the

21   crystal clear finding of this Court that "at that point in time, prior to any revelation by defendants

22   of actual backdating, the true nature of [the company's] financial condition had not yet been

23   disclosed."  Order at 6 (alteration in original) (internal quotation marks and citation omitted).

24

25        [4] Plaintiff himself offers a more likely explanation for the stock drop on November 8, 2006.
26   Plaintiff incorporates into his Second Amended Complaint a *Forbes.com* article published on
     that day in which it was reported that Bear Stearns analyst Evan Erlanson had concluded that
27   "[t]he company's fundamentals . . . remain weak and he does not think UTStarcom will turn a
     profit any time soon."  SAC ¶ 150; Ex. A.  The *Forbes.com* article further noted that Erlanson
28   had "downgraded the company's shares to 'underperform' from 'neutral.'"  *Id.*

This Court's ruling comports with caselaw from several other courts within this circuit. *See, e.g.,*
*Weiss v. Amkor Tech., Inc.*, 527 F. Supp. 2d 938, 947 (D. Ariz. 2007) ("[T]his press release does
not signal, much less state, that any prior option grants were incorrect . . . or that prior financial
statements were incorrect in any way.").[5]   Plaintiff's allegations regarding the November 7, 2006
announcement fail to plead loss causation under *Dura*, and must be dismissed.[6]

### B.   Plaintiff Fails to Adequately Plead Scienter

Plaintiff's failure to plead particularized facts giving rise to a strong inference of scienter
necessitates dismissal of his § 10(b) claim.  In dismissing the Amended Complaint, this Court
found that Plaintiff's allegations based on the restatement, the Individual Defendants' Sarbanes
Oxley certifications and positions at the Company, and the Individual Defendants' receipt and
exercise of allegedly backdated stock options are not "cogent and compelling," and thus "cannot
support – either alone or taken collectively – an inference of scienter." Order at 9.  The few
additions Plaintiff has made in his Second Amended Complaint do not warrant a different result,
and indeed, largely negate the requisite strong inference.

---

[5] *See also In re Hansen Natural Corp. Sec. Litig.*, 527 F. Supp. 2d 1142, 1162 (C.D. Cal.
2007) (rejecting loss causation based on similar announcement because that announcement
"simply stated that Hansen had formed a Special Committee to conduct an investigation into the
same matters the SEC was investigating"); *In re Avista Corp. Sec. Litig.*, 415 F. Supp. 2d 1214,
1221 (E.D. Wash. 2005) ("[T]he announcement by a regulatory agency that it intends to
investigate is insufficient, on its own, to plead loss causation.").

[6] In dismissing the Amended Complaint, this Court found that the July 24, 2007
announcement of a $28 million restatement could constitute a corrective disclosure despite
previous Company estimates of $50 million and $35 million, because the July 24 announcement
was "significantly more definite that the prior disclosures." Order at 7-8.  Defendants
respectfully submit that a finding that the July 24 announcement was *more definite* than the prior
announcements further supports the argument that the July 24 announcement cannot be a
corrective disclosure.

From the perspective of investors, uncertainty surrounding an estimated accounting charge
(here, the $35 million May 2006 estimate for the restatement) was cause for concern because it
entailed a possibility that the estimate would increase.  It follows, therefore, that the "more
definite" announcement on July 24 reduced the level of uncertainty surrounding the restatement
and as such was a *positive* development.  This, coupled with the fact that the estimate itself
actually dropped from $35 million to $28 million, means that the July 24 announcement
represented positive news relative to past announcements and therefore cannot support an
argument of loss causation.  Plaintiff's failure to plead loss causation is dispositive and requires
dismissal of the Second Amended Complaint in its entirety.

1.     **Plaintiff Must Plead Particularized Facts Establishing a Strong**
       **Inference of Intent or Deliberate Recklessness**

This Court, in dismissing Plaintiff's Amended Complaint, explained that the high bar set by the Reform Act "requires the plaintiff to plead 'in great detail, facts that constitute strong circumstantial evidence of deliberately reckless or conscious misconduct[.]'" Order at 8 (quoting *SGI*, 183 F.3d at 974). A plaintiff must raise an inference of scienter that is "'more than merely 'reasonable' or 'permissible' – it must be cogent and compelling, thus strong in light of other explanations.'" Order at 8 (quoting *Tellabs*, 127 S. Ct. at 2510). As the Ninth Circuit has explained, "deliberate recklessness" is a form of intentional conduct, not merely an extreme form of negligence. *See, e.g., SGI*, 183 F.3d at 976-77; *DSAM Global Value Fund v. Altris Software, Inc.*, 288 F.3d 385, 391 (9th Cir. 2002) (same); *see also* Order at 8 ("deliberate recklessness" is "recklessness that reflects some degree of intentional or conscious misconduct") (internal quotation marks and citation omitted). To satisfy this standard, a plaintiff must make "allegations of specific contemporaneous statements or conditions [known to the defendants] that demonstrate the intentional or the deliberately reckless false or misleading nature of the statements when made." *In re Read-Rite Corp. Sec. Litig.*, 335 F.3d 843, 846 (9th Cir. 2003) (internal quotation marks and citation omitted).

Further, a plaintiff cannot allege scienter against defendants as an undifferentiated group. Instead, a plaintiff must allege specific facts showing that *each* of the individuals against whom he asserts a claim either actually intended to deceive investors or was deliberately reckless in not knowing that investors would be deceived. *See, e.g., Southland Sec. Corp. v. INSpire Ins. Solutions, Inc.*, 365 F.3d 353, 364-65 (5th Cir. 2004) ("These PSLRA references to 'the defendant' may only reasonably be understood to mean 'each defendant' in multiple defendant cases, as it is inconceivable that Congress intended liability of any defendants to depend on whether they were all sued in a single action or were each sued alone in several separate actions."), *cited in* Order at 10-11.[7]

---

[7] *See also In re Silicon Storage Tech., Inc.*, No. C 05-0295, 2006 WL 648683, at *21-22 (N.D. Cal. Mar. 10, 2006) ("Until such time as the Ninth Circuit does speak on this issue, this (continued...)

1

2

### 2. Plaintiff Utterly Fails to Plead Facts Establishing Each Individual Defendants' Involvement in the Stock Option Granting Process

3    In dismissing the Amended Complaint, this Court explained that Plaintiff "must plead

4   facts showing that each individual defendant acted with scienter[.]" Order at 10.[8]  Plaintiff's

5   continued failure to plead *particularized* facts establishing a "strong inference" of scienter on the

6   part of each defendant is entirely consistent with the finding by the Board's independent

7   Governance Committee that "none of the current or former employees or directors of the

8   Company engaged in intentional wrongdoing." Ex. F at 10.

9    As before, instead of explaining what roles Messrs. Lu, Wu, Sophie, Toy and Barton

10  played in the Company's stock option granting process during the class period, Plaintiff simply

11  alleges that the Individual Defendants are current and/or former officers and/or directors of the

12  Company (SAC ¶¶ 33-37), and concludes: "Because of the Individual Defendants' positions

13  within the Company, they had access to adverse undisclosed material information about its

14  business, operations, financial statements and stock option grants." *Id.* ¶ 38.  Plaintiff also

15  throws in a few boilerplate suggestions that the Individual Defendants "approved," "directed

16  and/or participated in" the alleged backdating scheme, and that Mr. Toy "enabled the stock

17  option backdating scheme to succeed." *Id.* ¶¶ 33-37, 168.  Courts in this circuit have held, time

18  and again, that a plaintiff cannot plead scienter simply by alleging a defendant's position or

19  access to information.[9]  Plaintiff's failure to plead facts illuminating each of the Individual

20  Defendants' roles in the stock option granting process is, once more, fatal to his claim.

21

22    (...continued from previous page)
      court interprets the above-cited provision of the PSLRA as requiring that plaintiffs plead facts
23    showing scienter as to each defendant individually."), *quoted in* Order at 11.

24    [8] *See also Vantive*, 283 F.3d at 1090-91 (requiring plaintiff to plead "specific
      contemporaneous conditions known to the defendants that would strongly suggest that the
25    defendants understood" their statements to be false); *see also In re Watchguard Sec. Litig.*, No.
      C05-678J, 2006 WL 2038656, at *4 (W.D. Wash. Apr. 21, 2006) (requiring "allegations that link
26    a particular Defendant with particular knowledge").

27    [9] *See, e.g., VeriSign*, 531 F. Supp. 2d at 1206-07 ("These allegations do not satisfy the
      pleading requirements of the PSLRA because plaintiffs neither specify the roles that [the
28    defendants] played in the alleged backdating scheme or in the alleged scheme to issue false
      financial reports, nor allege facts giving rise to a strong inference of scienter as to *each*

(continued...)

MOTION TO DISMISS SECOND AMENDED                -10-
COMPLAINT
CASE NO. 3:07-CV-04578-SI

3.     **The Four Cherry-Picked, Pre-Class Period Grants Isolated By Plaintiff Do Not Establish Scienter**

As this Court stated in its previous Order, Plaintiff cannot establish scienter where he "points to only two or three specific grant dates that fell on days when stock prices were particularly low . . . without providing any evidence of the total number of grant dates or other information to place these grant dates in context." Order at 9.[10] "This is particularly so where a full 7.6 million stock options – or 42% of all incorrectly-dated stock options – were backdated to dates that left the recipients in the red on the date they were granted." Order at 9; *see also In re F5 Networks, Inc. Derivative Litig.*, No. C06-794, 2007 WL 2476278, at *11 (W.D. Wash. Aug. 6, 2007) (selection of date on which stock price was higher than on date grant was recorded negates inference of fraudulent backdating).

---

(...continued from previous page)

defendant."); *In re Autodesk, Inc. Sec. Litig.*, 132 F. Supp. 2d 833, 843-44 (N.D. Cal. 2000) ("[P]laintiffs must do more than allege that these key officers had the requisite knowledge by virtue of their 'hands on' positions, because that would eliminate the necessity for specifically pleading scienter, as any corporate officer could be said to possess the requisite knowledge by virtue of his or her position."); *Hansen Natural*, 527 F. Supp. 2d at 1157 ("Plaintiff's failure to plead any facts related to the role or knowledge of any of the Individual Defendants or any Individual Defendant's involvement in the alleged backdating scheme is fatal to Plaintiff's showing of scienter both with respect to the Individual Defendants and with respect to Hansen."); *Weiss*, 527 F. Supp. 2d at 952 (D. Ariz. Sept. 25, 2007) ("[T]he SAC does not allege that this high-level position had anything to do with stock option granting practices.").

[10] *See also Nach v. Baldwin*, No. C 07-0740, 2008 WL 410261, at *5 (N.D. Cal. Feb. 12, 2008) (Illston, J.) ("Plaintiff thus appears to focus on a subset of option grants, and he fails to explain why this subset is analytically important, and why he has not included data on *all* grants—assuming there were others—during the relevant period."); *In re Openwave Sys. Inc. S'holder Derivative Litig.*, 503 F. Supp. 2d 1341, 1348 (N.D. Cal. 2007) (Illston, J.) ("[P]laintiffs' Complaint here does not specify whether the 21 questionable option grants identified in the Complaint represent all of the option grants to directors and top officers during the years at issue, or whether they were only a small fraction of the total option grants."); *In re CNET Networks, Inc. S'holder Derivative Litig.*, 483 F. Supp. 2d 947, 958 (N.D. Cal. 2007) ("[P]laintiffs here rely on pointing out instances where options were granted at a periodic low point in stock price, followed by an increase. They do not plead any facts as to when any other options were granted, or under what circumstances they were granted."); *In re Linear Tech. Corp. Derivative Litig.*, No. C-06-3290, 2006 WL 3533024, at *3 (N.D. Cal. Dec. 7, 2006) ("With respect to the allegation of 'backdating,' the only factual allegation offered by plaintiffs is that on seven occasions over a period of seven years, stock options were dated 'just after a sharp drop in Linear's stock and 'just before a substantial rise'. . . . Because plaintiffs provide no facts as to how often and at what times the Committee Defendants have granted stock options in the past, no 'pattern,' let alone a 'striking' one, is apparent.").

1    Despite boldly alleging that "[a]ll of the options granted to executives . . . during the

2  years 2000 and 2002 were granted by the Compensation Committee at unusually favorable dates

3  . . . *every single one*" (SAC ¶ 86), Plaintiff's Second Amended Complaint once again presents a

4  classic case of cherry picking.  In attacking grants made on four dates between October 2000 and

5  July 2002, Plaintiff inexplicably ignores a number of other publicly-disclosed executive option

6  grants made by the Company during that time period.  For instance, on August 3, 2001, the

7  Company granted options to two executives at $20.75 per share—a price the Company's stock

8  would not reach again until nearly three months later, on October 24, 2001.  Ex. I at 9; Ex. B.

9  And on March 28, 2002, the Company granted options to an executive at $26.23 per share, which

10  price the Company's stock did not reach again until April 16, 2002.  Ex. J at 10; Ex. B.

11    Indeed, Plaintiff's decision to analyze only those option grants between October 2000

12  and July 2002 is itself conspicuous, given that the putative class period runs from September 4,

13  2002 through July 24, 2007, and given that Plaintiff has explicitly alleged that "some backdating

14  occurred after 2002."  SAC ¶ 170(f).  Again, the omitted grants tell the story.  For instance, on

15  January 20, 2004, the Company granted Messrs. Lu, Sophie, and Wu options at $37.46 per

16  share—a price the Company's stock has not reached since that time.  Ex. K at 14; Ex. B.  On

17  February 3, 2003, the Company granted Messrs. Lu, Sophie, and Wu options at $19.04 per share,

18  and, although the stock rose slightly to $19.14 the next day, the stock did not again reach $19.00

19  until March 3, 2003.  Ex. L at 14; Ex. B.  These facts are consistent with the Stock Option

20  Review Team's finding that, of the eight "Discretionary Director & Officer" grants that were

21  incorrectly dated, four grants—or *one-half*—were of *underwater options*.  Ex. F at 8.  Acting

22  contrary to one's self-interest is inconsistent with an inference of intent to commit fraud.  *See,

23  e.g.*, *F5 Networks*, 2007 WL 2476278, at *11 ("If the directors were attempting to backdate their

24  options as plaintiffs contend, it is extremely unlikely that the directors would have looked into

25  the past and chosen a day on which the price closed higher than the day on which the grant was

26  recorded[.]").

27    Even for the four grant dates that Plaintiff has chosen to focus on, Plaintiff presents

28  comparison dates in a manner that greatly exaggerates purported stock gains following the grant

MOTION TO DISMISS SECOND AMENDED          -12-
COMPLAINT
CASE NO. 3:07-CV-04578-SI

1    dates. Thus, Plaintiff compares: the stock price on October 18, 2000 to the stock price on

2    October 31, 2000 (13 days); the stock price on December 21, 2000 to the stock price on February

3    1, 2001 (42 days); the stock price on February 28, 2002 to the stock price on March 28, 2002 (28

4    days); and the stock price on July 25, 2002 to the stock price on July 31, 2002 (6 days). SAC ¶¶

5    73, 76, 79, 82. This Court, less than four months ago, expressly rejected a plaintiff's similar

6    attempts, noting that that plaintiff's "choice of comparison dates and prices is inconsistent and

7    therefore arbitrary." *Nach*, 2008 WL 410261, at *6.

8         In sum, Plaintiff's allegations do nothing to remedy the deficiencies this Court has

9    previously identified.

10              **4.    The Restatement Does Not Establish Scienter**

11        This Court has found that Plaintiff's allegations regarding "the company's admission in

12   its restatement" are not "cogent and compelling." Order at 9.[11]  Plaintiff has attempted to reform

13   his deficient allegations by placing additional emphasis on his assertions that the Company

14   violated its stock option plans and that APB 25—"the primary accounting rule at issue"—was

15   "simple and straightforward in its application." SAC ¶¶ 171-72. This attempt fails.

16        Plaintiff's allegations (*id.* ¶ 171) regarding violation of the Company's stock option plans

17   fail because, like his restatement allegations, they speak only to the existence of a misstatement,

18   not scienter. *See, e.g.*, *In re Bally Total Fitness Sec. Litig.*, No. 04 C 3530, 2006 WL 3714708, at

19   *10 (N.D. Ill. July 12, 2006) ("This allegation is similar to the allegations of GAAP violations in

20   that it only goes toward establishing that misstatements were made.").[12]  Plaintiff's assertion

21   (SAC ¶ 172) that the accounting rule at issue "was simple and straightforward in its application"

22   is similarly unavailing, because it misses the point; calculation of stock option compensation

23   ────────────

24   [11] *See also DSAM*, 288 F.3d at 390 ("[P]ublication of inaccurate accounting figures, or a
     failure to follow GAAP, without more, does not establish scienter.") (internal quotation marks
25   and citation omitted); *In re U.S. Aggregates, Inc. Sec. Litig.*, 235 F. Supp. 2d 1063, 1073 (N.D.
     Cal. 2002) ("[E]ven an obvious failure to follow GAAP does not give rise to an inference of
26   scienter.").

27   [12] *See also In re Openwave Sys., Inc., S'holder Derivative Litig.*, No. C 06-03468, 2008 WL
     410259, at *1, 7 (N.D. Cal. Feb. 12, 2008) (refusing to infer existence of fraudulent backdating
28   despite company's restatement and violation of its own stock option plans).

1    expense involves not only a "simple" mathematical equation, but also determinations as to the

2    appropriate input (i.e., the measurement date) for that equation. *See, e.g., Weiss*, 527 F. Supp. 2d

3    at 949 ("Furthermore, as pointed out by the Defendants, the accounting rules at issue,

4    specifically APB No. 25, are complex and require accounting expertise and judgment. . . . [T]he

5    misapplication of accounting rules to a particular company's stock option grants cannot be

6    construed as a glaring example of scienter because the measurement date criteria embodied in

7    APB No. 25 are far from obvious.") (citation omitted).[13]  Plaintiff's arguments must also be

8    weighed against the Governance Committee's conclusion (Ex. F at 10) that "none of the current

9    or former employees or directors of the Company engaged in intentional wrongdoing."[14]  Indeed,

10   the Governance Committee's conclusion is corroborated by the fact that there were "no fraud

11   charges" in the recently-settled action brought by the SEC against the Company and Messrs. Lu

12   and Sophie. Ex. H. The fact that the SEC, after a full investigation, chose not to file fraud

13   charges tends to negate any inference of fraud.

14        At bottom, all that Plaintiff has alleged is that the Company committed accounting error

15   in determining the appropriate measurement dates for some of the stock options it granted, an

16   allegation that "could equally support the inference that stock options had been backdated

17   through innocent bookkeeping error." Order at 9.[15]  Plaintiff has not carried his burden of

18

19        [13] *See also In re Sportsline.com Sec. Litig.*, 366 F. Supp. 2d 1159, 1168-69 (S.D. Fla. 2004)
     ("Plaintiffs argue that the improper accounting valuation of the stock-based compensation for
20   company employees is a glaring example of scienter because it is based on a simple calculation
     that leaves little, if any, room for interpretation. . . . Defendants respond that the nature of the
21   error made by SportsLine in applying GAAP is not based on a simple mathematical calculation,
     but rather that Defendants made an error in determining the measurement dates of employee
22   stock option grants. . . . Because the Court finds that interpretations of the measurement date
     criteria embodied in APB No. 25 are far from obvious, there is no need to address this aspect of
23   Plaintiffs' argument.").

24        [14] *See, e.g., CNET Networks*, 483 F. Supp. 2d at 963 (holding, in view of special committee's
     conclusion "that there was no wrongdoing by any current or recently resigned directors or
25   officers," that an inference of fraud "is improper absent other facts indicating fraud").

26        [15] *See also Nach*, 2008 WL 410261, at *7, 9 (noting the "clear difference between incorrectly
     applying a stock option measurement date and fraudulent backdating," and finding Court "cannot
27   infer that backdating actually occurred"); *Openwave Sys.*, 2008 WL 410259, at *7 (finding
     plaintiffs' allegations, which included a $182 million restatement covering fiscal years 2000
28   through 2005, "simply insufficient to allow a reasonable inference of backdating"); *In re PMC-
     Sierra, Inc. Derivative Litig.*, No. C 06-05330, 2007 WL 2427980, at *5 (N.D. Cal. Aug. 22,
                                                                                    (continued...)

MOTION TO DISMISS SECOND AMENDED                    -14-
COMPLAINT
CASE NO. 3:07-CV-04578-SI

1  pleading facts supporting a "strong inference" that the misdating of options occurred due to fraud

2  rather than mere mistakes or delays.

3       **5.      Sarbanes-Oxley Certifications Do Not Establish Scienter**

4       Notwithstanding this Court's clear ruling that "the signing of quarterly certifications of

5  financial statements mandated by the Sarbanes-Oxley Act does not, without more, support an

6  inference of scienter" (Order at 8-9), Plaintiff again attempts to establish the requisite strong

7  inference by pointing to SOX certifications.  SAC ¶¶ 169, 178-81.  As explained previously, the

8  Sarbanes-Oxley Act requires that all financial statements for any public company be certified.  If

9  the existence of a certification were enough to support an inference of scienter, then there always

10  would be an inference of scienter for every public company with respect to every certified

11  financial statement that was later restated—an absurd result that is not the law.  Rather, courts

12  routinely hold that such certifications, absent "facts concerning actual knowledge on the part of

13  the Individual Defendants," are insufficient to support an inference of scienter.[16]  This is because

14  a Sarbanes-Oxley certification is simply a statement that, "based on the officer's knowledge," the

15  certified financial information is accurate.  15 U.S.C. § 7241(a)(2)-(3).  As such, "where there is

16  no evidence that defendants knew of or recklessly disregarded inadequate internal controls" at

17  the time they signed the certification, courts find that scienter is not adequately pleaded.

18

---

19       (...continued from previous page)

20  2007) ("[T]he fact that PMC has admitted it erroneously recorded some option grant dates does not create an inference that the challenged options were intentionally and fraudulently

21  backdated.").

22  [16] *In re InVision Techs., Inc. Sec. Litig.*, No. C04-03181, 2006 WL 538752, at *7 n.3 (N.D. Cal. Jan. 24, 2006); *see also In re Hypercom Corp. Sec. Litig.*, No. CV-05-0455, 2006 WL

23  1836181, at *11 (D. Ariz. July 5, 2006) ("[A]n incorrect Sarbanes-Oxley certification does not, by itself, create a strong inference of scienter."); *Morgan v. AXT, Inc.*, No. C 04-4362, 2005 WL

24  2347125, at *15 (N.D. Cal. Sept. 23, 2005) ("Plaintiff also contends that the Sarbanes-Oxley certifications signed by Defendant Young and filed with the SEC were false when made.  Again,

25  the Court finds that Plaintiff has not alleged particularized facts to support his claim that Defendant Young's averments that he had examined the Company's internal disclosure controls

26  and believed they were adequate, were false."); *Zucco Partners, LLC v. Digimarc Corp.*, 445 F. Supp. 2d 1201, 1209 (D. Or. 2006) (certification, absent other specific facts, insufficient to plead

27  scienter); *Commc'ns Workers of Am. Plan for Employees' Pension & Death Benefits v. CSK Auto Corp.*, No. CV06-1503, 2007 WL 951968, at *8 (D. Ariz. Mar. 28, 2007) ("Sarbanes-Oxley

28  certifications, by themselves, do not support a strong inference of scienter.").

1     *Commc'ns Workers*, 2007 WL 951968, at *8.[17]  Sarbanes-Oxley "does not transform the

2     PSLRA's requirement of falsity-plus-scienter into a requirement of falsity-plus-a-Sarbanes-

3     Oxley-certification." *Watchguard*, 2006 WL 2038656, at *11.

4               **6.**    **Plaintiff's Motive and Opportunity Allegations Do Not Evidence**
                       **Scienter**

5

6          As this Court recognized in its prior Order, "courts in this Circuit have held that general

7     allegations of intent based upon generalized financial motives are insufficient to establish

8     scienter." Order at 9.  Such "motive and opportunity" allegations are insufficient because

9     plaintiffs proceeding under the PSLRA "must state specific facts indicating no less than a degree

10    of recklessness that strongly suggests actual intent." *SGI*, 183 F.3d at 979.

11         Plaintiff again relies on two types of motive and opportunity allegations—alleged insider

12    trading by Messrs. Lu, Sophie, Toy and Wu, and the exercise of allegedly backdated options by

13    Messrs. Sophie and Toy—this time supplementing his allegations with the dates and amounts of

14    certain class-period transactions. SAC ¶¶ 182-86.  This additional information, however, either

15    fails to contribute to a strong inference of scienter, or, in the case of the trading allegations,

16    explicitly cuts against such an inference.

17               **a.**    **The Insider Trading Allegations Do Not Evidence Scienter**

18         Plaintiff has finally provided, in his Second Amended Complaint, the list of specific

19    stock sales of which he complains. *Id.* ¶ 185.  It is little wonder why he chose not to do so until

20    now; each of the identified sales—except a single sale by Mr. Lu—were made pursuant to Rule

21    10b5-1 trading plans. Ex. M. Stock sales made pursuant to a qualified Rule 10b5-1 trading plan

22    do not support a strong inference of scienter because they are planned well in advance, negating

23    any inference that the trades were part of a fraudulent scheme to profit from high stock prices.[18]

24

---

25      [17] *See also Hypercom*, 2006 WL 1836181, at *11 ("Plaintiffs have failed to establish that [the
      certifying officer] knowingly or with deliberate recklessness misrepresented that Hypercom had

26    effective internal controls.").

27      [18] *See, e.g., In re Netflix, Inc. Sec. Litig.*, No. C 04-2978, 2005 WL 1562858, at *8 (N.D. Cal.
      June 28, 2005) (declining to infer scienter where insider trades "were pursuant to a Rule 10b-5(1)
28    trading plan"); *In re Guidant Corp. Sec. Litig.*, 536 F. Supp. 2d 913, 931 (S.D. Ind. 2008)
      (declining to infer scienter where some of the insider trades were "nondiscretionary sales made
                                                 (continued...)

1  The sole discretionary sale by Mr. Lu, which represented less than 4% of his stockholdings (Ex.

2  N), clearly does not give rise to the requisite strong inference. *See, e.g., Ronconi v. Larkin*, 253

3  F.3d 423, 435 (9th Cir. 2001) (suggesting that sales of 10% and 17% of an individual's holdings

4  were not suspicious); *SGI*, 183 F.3d at 986-87 (transactions of four of six corporate officers who

5  each sold less than 8% of their total holdings were not suspicious).

6        In any event, even if these stock sales had been discretionary, Plaintiff still fails to

7  provide the information required for Defendants and this Court to gauge the impact that they

8  should have on the scienter inquiry. "Insider stock sales are not inherently suspicious[.]"

9  *Vantive*, 283 F.3d at 1092. Accordingly, in analyzing allegations of insider stock sales, courts in

10  this circuit consider: "(1) the amount and percentage of shares sold by insiders; (2) the timing of

11  the sales; and (3) whether the sales were consistent with the insider's prior trading history." *SGI*,

12  183 F.3d at 986. What proportion of the Individual Defendants' total stock holdings did their

13  class period stock sales represent? What about their prior trading history?[19] Plaintiff still refuses

14  to provide such information, rendering his stock sale allegations empty.

15              **b.    The Option Exercise Allegations Do Not Evidence Scienter**

16        Plaintiff's other motive allegations consist of purported exercises of backdated options by

17  Messrs. Sophie and Toy. SAC ¶ 183. Plaintiff alleges that Messrs. Sophie and Toy exercised

18  approximately 50,000 backdated options between them, for a "profit" of less than $1 million.

19  *Id*.[20] In doing so, Plaintiff utterly ignores the fact that the Stock Option Review Team found that,

20

21  _____

              (...continued from previous page)
22  pursuant to 10b5-1 plans, and therefore do not give rise to a strong inference of scienter"); *cf.* 17
   C.F.R. § 240.10b5-1(c)(1)(i) (sale of securities pursuant to plan "is not 'on the basis of' material
23  nonpublic information").

24     [19] Indeed, Plaintiff alleges that "Individual Defendants Lu, Sophie, Toy and Wu also sold
   substantial amounts of their shareholdings before . . . the Class Period." SAC ¶ 185. Large pre-
25  class period sales directly negate any argument that large class period sales were "unusual,"
   because they show that the class period sales were "consistent with the insider's prior trading
26  history." *SGI*, 183 F.3d at 986.

27     [20] Plaintiff apparently calculates this "profit" figure by multiplying the number of options
   exercised by the difference between the options' exercise price and their price on the date of the
28  exercise. Thus, Plaintiff's idea of "profit" is actually just proceeds from the exercise and sale.
   Plaintiff does not allege when the supposedly backdated options were actually granted, making it
                                                                              (continued...)

1   of the eight "Discretionary Director & Officer" grants that were misdated, four—or half of the

2   misdated grants—had exercise prices that were *higher* than they should have been.  Ex. F at 8.

3   Plaintiff also disregards the fact that, while the investigation was pending, the Individual

4   Defendants who remained with the Company signed agreements promising to forego any benefit

5   in the event accounting error was found.  Ex. C; *see also CNET*, 483 F. Supp. 2d at 962-63

6   (refusing to infer fraud despite existence of restatement where defendants agreed to reprice

7   options).  Together, these facts clearly negate, not support, an inference of scienter.  *See Tellabs*,

8   127 S. Ct. at 2509 ("[I]n determining whether the pleaded facts give rise to a 'strong' inference

9   of scienter, the court must take into account plausible opposing inferences.").

10                  **7.    Plaintiff's Confidential Witness Allegations Do Not Evidence Scienter**

11          When dismissing the Amended Complaint, this Court ruled that "Plaintiffs must reveal

12   all facts about [each confidential] witness that were material to the formation of their belief that

13   the witness' statement is accurate."  Order at 10.  In response, Plaintiff has expanded his

14   discussion of CW #1's allegations only to reveal a core allegation—the supposed backdating of

15   Mr. Barton's new hire grant—that is directly contradicted by judicially noticeable facts

16   appearing in the very documents upon which Plaintiff relies.  In turn, CW #2's allegations, which

17   now span a total of two paragraphs instead of one, remain as vague and empty as they were in

18   the Amended Complaint.  And, despite this Court's mandate that Plaintiff "plead facts showing

19   that *each individual defendant* acted with scienter, not only the one or two defendants currently

20   implicated by the confidential witnesses," *Id.* (emphasis added), Plaintiff's confidential witness

21   allegations still do not even mention Messrs. Wu or Toy.

22                          **a.    Confidential Witness #1**

23          In his Amended Complaint, Plaintiff leveled the conclusory allegation that "Confidential

24   Witness #1 had first-hand knowledge and witnessed the fabrication of documents for the purpose

25   of backdating of options by Defendant Barton and Defendant Sophie."  AC ¶ 62.  Plaintiff still

26   _____

27          (...continued from previous page)
     impossible to calculate the amount that Plaintiff believes Messrs. Sophie and Toy gained above

28   and beyond what they would have made had the options been dated correctly.

MOTION TO DISMISS SECOND AMENDED                    -18-
COMPLAINT
CASE NO. 3:07-CV-04578-SI

alleges generally that CW #1 "personally witnessed former CFO Sophie engage in the practice of backdating executive stock options – particularly his own." SAC ¶ 193. As before, this allegation on its face lacks the requisite particularity to raise a strong inference of scienter on the part of Mr. Sophie or anyone else.[21] Plaintiff does not even specify which options Sophie allegedly backdated, much less what the financial impact was. *See, e.g., Edward J. Goodman Life Income Trust v. Jabil Circuit, Inc.*, No. 8:06-cv-01716, 2008 WL 977357, at *8 (M.D. Fla. Apr. 9, 2008) ("[T]he plaintiffs never allege that any specific grant of stock to any specific defendant was backdated.").

CW #1's allegation regarding Mr. Barton is not merely deficient in terms of particularity, but actually destroys the reliability of any information attributable to CW #1 because it is contradicted by documents referenced in Plaintiff's own complaint. Plaintiff alleges that CW #1 witnessed the backdating of Mr. Barton's paperwork so that Mr. Barton's "new hire" option grant could be dated as of June 2005, despite the fact that his employment did not begin until August 2005. SAC ¶¶ 190-91. Yet the Company's proxy statement filed on June 16, 2006— which Plaintiff references in his complaint—and a Form 3 filed on August 3, 2005 both show that Mr. Barton's options were in fact dated August 1, 2005 and that Mr. Barton's options were priced at $8.82 per share, which was the stock price on the August 1 grant date. Ex. O at 20; Ex. P. Mr. Barton's $8.82 option price was higher than any price the stock reached in June. Mr. Barton's options therefore could not have been granted and priced as of a June date, as alleged by CW # 1. Accordingly, we are left with an allegation based on information from a confidential

---

[21] *See, e.g., Berger v. Ludwick*, No. C-97-0728, 2000 WL 1262646, at *5 (N.D. Cal. Aug. 17, 2000) ("The TAC does not state who those employees were. . . . By whom were they instructed? On what specific occasions were they so instructed? What was said? When? Did each one receive the same instructions? Without those particulars, the TAC is still speculative as to the basis for the allegations[.]"), *aff'd*, 15 Fed. Appx. 528 (9th Cir. 2001) (unpublished); *In re Intelligroup Sec. Litig.*, 468 F. Supp. 2d 670, 676 (D.N.J. 2006) ("[A] plaintiff averring securities fraud claims must specify the who, what, when, where, and how: the first paragraph of any newspaper story.") (internal quotation marks and citation omitted).

witness that is negated by *documents referenced in Plaintiff's own complaint*.[22] Thus, CW #1's allegations do not raise a strong inference of scienter.[23]

### b.    Confidential Witness #2

Plaintiff repeats his allegation that backdating was "commonly discussed" (AC ¶ 57) within the Company, this time referring to the supposed rumor as "internal chatter" (SAC ¶ 195) that certain executives backdated their stock options. The law is clear that such "gossip and innuendo" allegations from a confidential witness are insufficient to support a claim of fraud. *In re Siebel Sys., Inc. Sec. Litig.*, No. C 04-0983, 2005 WL 3555718, at *8 (N.D. Cal. Dec. 28, 2005).[24]

The sole new substantive allegation leveled by CW #2 consists of innocuous hearsay about a meeting she did not even attend. Specifically, we are told that CW #2 was told by her supervisor of a January 2007 meeting at which "the executive's practice of backdating stock options was discussed." SAC ¶ 196. "[A]ny information witnesses received second- or third-hand is insufficient to establish its reliability." *Davis v. SPSS, Inc.*, 431 F. Supp. 2d 823, 831

---

[22] The Board's independent investigation found that *none of the 48 New Hire Grants* reviewed were misdated, further undermining the allegation that "new hire" paperwork was backdated. Ex. F at 8.

[23] CW #1's allegations are also contradictory. For instance, CW #1 states that the Company maintained its stock exercising reports in "an ADP HRIS system" "until approximately six months prior to [CW #1's] departure from the Company," which would be late 2006. SAC ¶ 192. Yet according to another allegation attributed to CW #1, the switch to an "Oracle based" system took place in "approximately *September 2005*," not in late 2006. *Id.* (emphasis added). This contradiction undermines the allegations attributed to CW #1. *See, e.g., In re Silicon Storage Tech., Inc., Sec. Litig.*, No. C-05-0295, 2007 WL 760535, at *26 (N.D. Cal. Mar. 9, 2007) ("[T]he allegations in the SAC regarding 'Hu's Excel' spreadsheet are contradictory, as it is not possible that Hu kept the spreadsheets 'secret' from employees, as plaintiffs claim, and that the spreadsheets and their contents were also 'talked about openly' throughout the sales and marketing departments, as plaintiffs also claim."); *In re Northpoint Commc'ns Group, Inc. Sec. Litig.*, 184 F. Supp. 2d 991, 1000 (N.D. Cal. 2001) (confidential witness allegations rejected because they are "vague, inconclusive, and occasionally contradictory").

[24] *See also Intelligroup*, 527 F. Supp. 2d at 360-61 ("[T]his allegation lacks any imprimatur of reliability, since UW-2 did not explain what statements or events made these conclusions 'common knowledge,' how such knowledge was disseminated and by whom, as well as the exact means through which UW-2 acquired such 'common knowledge.' In sum, the statement[s] made by UW-2 [is] nothing but rumor that cannot amount to either direct or supplemental evidence and, therefore, is of no value for the purposes of the Court's inquiry.").

1  (N.D. Ill. 2006).  In any event, the fact that certain individuals within the Company would be

2  discussing "backdating" in January 2007 is hardly scandalous, given the Company's public

3  announcement of the option investigation *two months earlier* on November 7, 2006.  *Id.* ¶ 148.

4      Even assuming the accuracy of CW #2's purported statements, such allegations fail to

5  contribute to a strong inference of scienter, let alone "provide a first hand account of backdating

6  occurring at the Company," as alleged by Plaintiff.  *Id.* ¶ 197.

7          **8.    Because Plaintiff Fails to Adequately Plead Scienter as to Any**
                    **Individual Defendant, He Fails to Plead Scienter as to the Company**
8

9      Plaintiff's failure to plead facts demonstrating a strong inference of scienter as to any

10  Individual Defendant is equally fatal to his claim against the Company.  A corporate defendant's

11  scienter must be shown, but cannot be predicated on the "collective scienter" of the corporation's

12  employees.  *See, e.g., Nordstrom, Inc. v. Chubb & Son, Inc.*, 54 F.3d 1424, 1435-36 (9th Cir.

13  1995).  Rather, a corporation's scienter is adequately pleaded only where an "individual

14  corporate officer making [a] statement ha[d] the requisite level of scienter . . . at the time that he

15  [made] the statement."  *In re Apple Computer, Inc., Sec. Litig.*, 243 F. Supp. 2d 1012, 1023

16  (N.D. Cal. 2002) (dismissing fraud claim against company).  Thus, because Plaintiff has failed to

17  establish a strong inference of scienter as to Messrs. Lu, Wu, Sophie, Toy or Barton, he has also

18  failed to establish such an inference against the Company.  *See, e.g., In re Infineon Techs. AG*

19  *Sec. Litig.*, No. C 04-04156, 2006 WL 2925680, at *2 (N.D. Cal. Sept. 11, 2006) (dismissing §

20  10(b) claims against corporate defendant for failure to allege scienter of officer defendants).

21  **III.    PLAINTIFF'S SECTION 14(a) CLAIM IS TIME-BARRED AND FAILS TO**
            **SATISFY THE PLEADING REQUIREMENTS OF THE REFORM ACT**
22

23      A plaintiff seeking to establish a § 14(a) violation must plead three elements:  i) the

24  solicitation of a proxy by a statement that contains either a false or misleading declaration of

25  material fact, or an omission of material fact that makes any portion of the statement misleading;

26  ii) that the misstatement or omission was made with the requisite level of culpability; and iii) that

27  the misstatement or omission was an "essential link" in the accomplishment of the proposed

28  transaction.  *Desaigoudar v. Meyercord*, 223 F.3d 1020, 1022 (9th Cir. 2000); *see also VeriSign*,

1    531 F. Supp. 2d at 1211 ("[P]laintiffs must plead particularized facts that give rise to a strong

2    inference of negligence.").

3         Plaintiff still fails to adequately plead two of these three essential elements. First,

4    Plaintiff fails to establish an "essential link" between any alleged misstatement or omission and

5    any injury to investors. Second, Plaintiff fails to plead facts raising a "strong inference of

6    negligence" on the part of the Defendants. Finally, and in any event, much of the § 14(a) claim

7    is barred by the applicable statute of limitations.

8         **A.    Plaintiff Fails to Adequately Plead that the Alleged Misstatements Were an**
         **"Essential Link" in the Accomplishment of Any Proposed Transaction**
9

10        Plaintiffs seeking to plead a § 14(a) violation must show that the alleged misstatement or

11   omission was an "essential link in the accomplishment of the proposed transaction" in the proxy

12   at issue. *Desaigoudar*, 223 F.3d at 1022.[25] This Court previously dismissed Plaintiff's § 14(a)

13   claim for failure to adequately plead the "essential link" element, and instructed Plaintiff to

14   "amend his complaint to include the necessary allegations." Order at 12. Rather than do so,

15   Plaintiff has elected to put forth in Count III of his Second Amended Complaint allegations that

16   are *identical* to those in Count III of the Amended Complaint. *Compare* SAC ¶¶ 217-25 *with*

17   AC ¶¶ 160-68. Not a single word has been changed.

18        Thus, Plaintiff still alleges that, in reliance on the supposedly misleading statements, he

19   "voted for the Individual Defendants as directors, which allowed the Individual Defendants to

20   cash in their backdated options, to the detriment of the Company and its shareholders." SAC ¶

21   222. As explained previously, Plaintiff's claim that the election of the directors allowed them to

22   "cash in," or exercise, "their backdated options" makes no sense. The directors neither sought

23   nor required permission from the shareholders to *exercise* the options that they had been granted

24   previously. Nor would a failure to obtain re-election have prevented them from exercising their

25

26   _____

27        [25] *See also Grace v. Rosenstock*, 228 F.3d 40, 47 (2d Cir. 2000) ("We have also noted that
     both loss causation and transaction causation must be proven in the context of a private action
28   under § 14(a) of the 1934 Act and SEC Rule 14a-9 promulgated thereunder.").

1   vested stock options.  Ex. Q § 8(b) (non-expired options granted under 2001 Director Stock

2   Option Plan may be exercised within three months following termination).

3          Accordingly, this Court should, once again, dismiss the § 14(a) claim in its entirety for

4   failure to adequately plead an "essential link."  *See, e.g., In re Ariba, Inc. Sec. Litig.*, No. C 03-

5   00277, 2005 WL 608278, at *9 (N.D. Cal. Mar. 16, 2005) ("Plaintiff has failed to allege that the

6   omission was an 'essential link' in the accomplishment of the transactions proposed by the 2002

7   proxy. . . .  Without such an allegation, Plaintiff has failed to state a viable claim pursuant to

8   Section 14(a) and Rule 14a-9.").[26]

9          **B.     Plaintiff Fails to Adequately Plead a Strong Inference of Negligence**

10         Once again, "Plaintiff relies solely on his showing of defendants' scienter to plead that

11   defendants acted negligently."  Order at 12.  Plaintiffs seeking to establish a § 14(a) violation

12   "must plead particularized facts that give rise to a strong inference of negligence."  *VeriSign*, 531

13   F. Supp. 2d at 1211.[27]

14         Because the Reform Act's heightened pleading standard applies to § 14(a) claims just as

15   it does to § 10(b) claims, Plaintiff's inability to plead particularized facts in connection with his

16   scienter allegations is equally fatal to his proxy statement claim.  Thus, for instance, Plaintiff's

17   failure to allege the specific roles of the Individual Defendants in the Company's stock option

18   granting process necessitates dismissal because:  "Plaintiffs may not impute knowledge to the

19   individual Defendants solely on the basis of the positions they held.  Moreover, where plaintiffs

20

21   [26] *See also In re Digital Island Sec. Litig.*, 223 F. Supp. 2d 546, 560 (D. Del. 2002) ("Clearly,
     the Proxy Statement was not an 'essential link' in effectuating the merger, and the plaintiffs'
22   Section 14(a) [claim] must fail as a matter of law."), *aff'd*, 357 F.3d 322 (3d Cir. 2004).

23   [27] *See also McKesson*, 126 F. Supp. 2d at 1267 ("The court accordingly holds that a Section
     14(a) plaintiff must plead with particularity facts that give rise to a strong inference of
24   negligence."); *Bond Opportunity Fund v. Unilab Corp.*, No. 99 Civ. 11074, 2003 WL 21058251,
     at *4 (S.D.N.Y. May 9, 2003) ("[U]nder the standards imposed by the PSLRA, Plaintiffs must
25   plead with particularity facts that give rise to a strong inference of negligence on the part of all
     Defendants."), *aff'd*, 87 Fed. Appx. 772 (2d Cir. 2004) (unpublished); *Beck ex rel. Equity Office
26   Props. Trust v. Dobrowski*, No. 06 C 6411, 2007 WL 3407132, at *4 (N.D. Ill. Nov. 14, 2007)
     ("Section (b)(2) applies to actions for money damages requiring proof of only 'a particular state
27   of mind.'  Since negligence is a state of mind, the language of Section (b)(2) by its terms
     encompasses negligence-based securities actions. . . .  In applying the PSLRA to this Section
28   14(a) action, the Court joins the majority of courts that have addressed the question.").

1   contend that the defendant had access to facts contrary to those stated in the proxy materials,

2   they must specifically identify the reports or statements containing this information. *Bond*

3   *Opportunity*, 2003 WL 21058251, at *4. And, CW #1's demonstrably inadequate allegations

4   concerning Mr. Barton aside, the confidential witness allegations provide "no *specific* facts that

5   would tend to show culpable conduct of any sort." *McKesson*, 126 F. Supp. 2d at 1267.

6          Plaintiff's inability to plead facts giving rise to a strong inference of negligence

7   constitutes an independent reason for dismissal of his entire § 14(a) claim.

8          **C.    The Applicable Statute of Limitations Bars Plaintiff's Claim as to All But the
              2005 and 2006 Proxies**

9

10         This Court has already ruled that Plaintiff's Section 14(a) claim is "time-barred as to

11  proxy statements issued on April 2, 2003, August 22, 2003, and April 7, 2004." Order at 13.

12  "[E]very court that has considered the issue, including courts in this district, has held that §

13  1658(b) does not apply to claims brought under § 14(a)." *Id.* at 12. Accordingly, in granting

14  leave to amend, this Court allowed Plaintiff to "move forward on his § 14(a) claim *with regard*

15  *to the later-issued proxies*." *Id.* at 13 (emphasis added).

16         Plaintiff's Second Amended Complaint appears to ignore this Court's Order, and

17  continues to allege that the 2003 and 2004 proxy statements give rise to Section 14(a) violations.

18  SAC ¶¶ 88-97. Plaintiff, however, provides no new facts that would suggest this Court's

19  previous decision was incorrect. "A claim pursuant to § 14(a) must be brought no later than

20  three years after each proxy was issued – regardless of when a plaintiff actually discovers the

21  harm suffered." *Stoll v. Ardizzone*, No. 07 Civ. 00608, 2007 WL 2982250, at *2 (S.D.N.Y. Oct.

22  9, 2007).[28] Plaintiff's Section 14(a) claim must be dismissed as to the time-barred proxy

23  statements.

24

25         [28] *See also VeriSign*, 531 F. Supp. 2d at 1212 ("The complaint in the present action was filed
       on July 5, 2006, which was more than three years after the proxy statements were filed. Thus,

26     the claim under § 14(a) and Rule 14a-9 is barred by § 14(a)'s three-year statute of repose."); *In
       re iBasis, Inc. Derivative Litig.*, 532 F. Supp. 2d 214, 220 (D. Mass. 2007) ("The courts have

27     recognized for Section 14(a) claims that related and similar causes of action under the Exchange
       Act have effectively supplied a limitations period of one year after the plaintiff discovers the

28     facts constituting the violation, and in no event more than three years after such violation.")
       (internal quotation marks and citations omitted).

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## IV.    PLAINTIFF'S SECTION 20(a) CLAIM MUST BE DISMISSED FOR FAILURE TO PLEAD A PRIMARY VIOLATION

"To state a claim under Section 20(a), a plaintiff must allege (1) a primary violation of federal securities laws; and (2) that the defendant exercised actual power or control over the primary violator." *In re Ditech Networks, Inc. Derivative Litig.*, No. C 06-5157, 2007 WL 2070300, at *9 (N.D. Cal. July 16, 2007). Thus, because Plaintiff has again failed to adequately plead a primary violation on the part of any Defendant, his claim of secondary liability must be dismissed as well. *See* Order at 13 ("Because plaintiff has not adequately alleged a primary violation of federal securities laws, the Court also GRANTS defendants' motion to dismiss plaintiff's claim for control person liability under § 20(a).").[29]

## CONCLUSION

For the foregoing reasons, Defendants respectfully request that the Court dismiss the Second Amended Class Action Complaint.

Dated: June 6, 2008

WILSON SONSINI GOODRICH & ROSATI
Professional Corporation


By: /s/ Bahram Seyedin-Noor
       Bahram Seyedin-Noor

Attorneys for Defendants

---

[29] *See, e.g., Lipton v. Pathogenesis Corp.*, 284 F.3d 1027, 1035 n.15 (9th Cir. 2002) ("[T]o prevail on their claims for violations of § 20(a) and § 20A, plaintiffs must first allege a violation of § 10(b) or Rule 10b-5."), *quoted in* Order at 13; *In re Textainer P'ship Sec. Litig.*, No. C-05-0969, 2007 WL 108320, at *11 (N.D. Cal. Jan. 10, 2007) (dismissing § 20(a) claim for failure to state a § 14(a) claim); *Ditech*, 2007 WL 2070300, at *9 (dismissing § 20(a) claim for failure to state a § 10(b) or § 14(a) claim).

MOTION TO DISMISS SECOND AMENDED          -25-
COMPLAINT
CASE NO. 3:07-CV-04578-SI

1    I, Bryan J. Ketroser, am the ECF User whose identification and password are being used

2  to file Defendants' Notice Of Motion And Motion To Dismiss Plaintiff's Second Amended Class

3  Action Complaint, And Memorandum Of Points And Authorities In Support Thereof.

4    I hereby attest that Bahram Seyedin-Noor has concurred in this filing.

5  Dated: June 6, 2008                                   WILSON SONSINI GOODRICH & ROSATI
                                                          Professional Corporation

6

7

8                                                         By: /s/ Bryan J. Ketroser
                                                              Bryan J. Ketroser

9                                                         Attorneys for Defendants

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28