TERRY T. JOHNSON, State Bar No. 121569 (tjohnson@wsgr.com)
BORIS FELDMAN, State Bar No. 128838 (boris.feldman@wsgr.com)
BAHRAM SEYEDIN-NOOR, State Bar No. 203224 (bnoor@wsgr.com)
CHERYL W. FOUNG, State Bar No. 108868 (cfoung@wsgr.com)
BRYAN J. KETROSER, State Bar No 239105 (bketroser@wsgr.com)
WILSON SONSINI GOODRICH & ROSATI
650 Page Mill Road
Palo Alto, CA 94304-1050
Telephone: (650) 493-9300
Facsimile: (650) 565-5100

Attorneys for Defendants
UTSTARCOM, INC., HONG LIANG LU,
YING WU, MICHAEL SOPHIE, THOMAS TOY,
and FRANCIS BARTON

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| PETER RUDOLPH, individually and on behalf of all others similarly situated,<br><br>　　　　Plaintiff,<br><br>　　v.<br><br>UTSTARCOM, INC., HONG LIANG LU, YING WU, MICHAEL SOPHIE, THOMAS TOY, and FRANCIS BARTON,<br><br>　　　　Defendants. | CASE NO.: C-07-4578 SI<br><br>**REPLY IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS PLAINTIFF'S SECOND AMENDED CLASS ACTION COMPLAINT**<br><br>Date:　August 22, 2008<br>Time:　9:00 a.m.<br><br>Before: Hon. Susan Illston |

**TABLE OF CONTENTS**

**Page**

INTRODUCTION ..................................................................................................................... 1

ARGUMENT ............................................................................................................................. 2

I. PLAINTIFF FAILS TO PLEAD A CLAIM FOR RELIEF UNDER SECTION 10(b) ........................................................................................................................... 2

    A. The November 7, 2006 Press Release Does Not Support Loss Causation ............. 2

    B. Plaintiff Fails to Plead Facts Supporting A Strong Inference of Scienter .............. 3

        1. Plaintiff Misapprehends the Applicable Pleading Standard ........................ 4

        2. The Restatement Does Not Support a Strong Inference of Scienter ........... 4

        3. Sarbanes-Oxley Certifications Do Not Show Scienter ............................... 6

        4. Plaintiff Utterly Fails to Plead Facts Showing the Individual Defendants' Involvement in the Stock Option Granting Process ............... 7

        5. Plaintiff's Motive And Opportunity Allegations Are Deficient.................. 8

        6. The Four Cherry-Picked Grants Do Not Show Scienter ............................. 9

        7. The Internal Investigation Results Negate Any Inference of Scienter ...... 10

        8. The SEC Settlement Negates Any Inference of Scienter .......................... 11

        9. Plaintiff's Confidential Witness Allegations Fail to Show Scienter ......... 12

II. PLAINTIFF FAILS TO PLEAD A CLAIM FOR RELIEF UNDER SECTION 14(a) ......................................................................................................................... 13

    A. Plaintiff's Claim is Time-Barred as to All But the 2005 And 2006 Proxies ......... 13

    B. Plaintiff Still Fails to Adequately Plead the Required "Essential Link" ............... 13

    C. Plaintiff Still Fails to Adequately Plead a Strong Inference of Negligence .......... 14

CONCLUSION ........................................................................................................................ 15

# TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*Batwin v. Occam Networks, Inc.*, No. CV 07-2750, 2008 WL 2676364
    (C.D. Cal. July 1, 2008) .................................................................................................... 7

*Broam v. Bogan*, 320 F.3d 1023 (9th Cir. 2003) ............................................................................ 11

*Davis v. SPSS, Inc.*, 431 F. Supp. 2d 823 (N.D. Ill. 2006) ............................................................. 13

*In re Adaptive Broadband Sec. Litig.*, No. C 01-1092, 2002 WL 989478
    (N.D. Cal. Apr. 2, 2002) ................................................................................................... 6

*In re Ariba, Inc. Sec. Litig.*, No. C 03-00277, 2005 WL 608278
    (N.D. Cal. Mar. 16, 2005) ............................................................................................... 14

*In re Avista Corp. Sec. Litig.*, 415 F. Supp. 2d 1214 (E.D. Wash. 2005) ...................................... 2

*In re CNET Networks, Inc.*, 483 F. Supp. 2d 947 (N.D. Cal. 2007) ......................................... 5, 10

*In re Cylink Sec. Litig.*, 178 F. Supp. 2d 1077 (N.D. Cal. 2001) .................................................... 6

*In re F5 Networks, Inc. Derivative Litig.*, No. C06-794, 2007 WL 2476278
    (W.D. Wash. Aug. 6, 2007) .............................................................................................. 5

*In re Hansen Natural Corp. Sec. Litig.*, 527 F. Supp. 2d 1142 (C.D. Cal. 2007) ..................... 2, 8

*In re InVision Techs., Inc. Sec. Litig.*, No. C04-03181, 2006 WL 538752
    (N.D. Cal. Jan. 24, 2006) .................................................................................................. 7

*In re Lattice Semiconductor Corp. Sec. Litig.*, No. CV04-1255, 2006 WL 538756
    (D. Or. Jan. 3, 2006) ..................................................................................................... 6, 7

*In re Linear Tech. Corp. Derivative Litig.*, No. C-06-3290, 2006 WL 3533024
    (N.D. Cal. Dec. 7, 2006) ................................................................................................. 10

*In re McKesson HBOC, Inc. Sec. Litig.*, 126 F. Supp. 2d 1248 (N.D. Cal. 2000) ......................... 6

*In re MIPS Techs., Inc. Derivative Litig.*, 542 F. Supp. 2d 968 (N.D. Cal. 2008) ......................... 8

*In re Netflix, Inc. Sec. Litig.*, No. C04-2978, 2005 WL 1562858
    (N.D. Cal. June 28, 2005) ................................................................................................. 9

*In re Openwave Sys. Inc. S'holder Derivative Litig.*, 503 F. Supp. 2d 1341
    (N.D. Cal. 2007) ........................................................................................................ 10, 15

*In re Siebel Sys., Inc. Sec. Litig.*, No. C 04-0983, 2005 WL 3555718
    (N.D. Cal. Dec. 28, 2005) ............................................................................................... 13

*In re Silicon Graphics Inc. Sec. Litig.*, 183 F.3d 970 (9th Cir. 1999) ............................................ 9

*In re SmarTalk Teleservices, Inc. Sec. Litig.*, 124 F. Supp. 2d 505 (S.D. Ohio 2000) ................ 15

*In re Sportsline.com Sec. Litig.*, 366 F. Supp. 2d 1159 (S.D. Fla. 2004) ......................................... 6

*In re VeriSign, Inc., Derivative Litig.*, 531 F. Supp. 2d 1173 (N.D. Cal. 2007) .................. 7, 8, 14, 15

*In re Zoran Corp. Derivative Litig.*, 511 F. Supp. 2d 986 (N.D. Cal. 2007) .............................. 7, 9

*Metzler Inv. GmbH v. Corinthian Colls., Inc.*, – F.3d –, 2008 WL 2853402
    (9th Cir. July 25, 2008) ........................................................................................................ 3, 4

*Nach v. Baldwin*, No. C 07-0740, 2008 WL 410261 (N.D. Cal. Feb. 12, 2008) ................ 5, 10, 15

*No. 84 Employer-Teamster Joint Council Pension Trust Fund v. Am. West Holding
    Corp.*, 320 F.3d 920 (9th Cir. 2003) ................................................................................... 12

*Pareto v. F.D.I.C.*, 139 F.3d 696 (9th Cir. 1998) ......................................................................... 11

*Richey v. U.S. I.R.S.*, 9 F.3d 1407 (9th Cir. 1993) ...................................................................... 15

*Ryan v. Gifford*, No. 2213-N, 2007 WL 416162 (Del. Ch. Feb. 6, 2007) ....................................... 8

*Schneider v. Cal. Dep't of Corrs.*, 151 F.3d 1194 (9th Cir. 1998) ................................................ 11

*Sprewell v. Golden State Warriors*, 266 F.3d 979 (9th Cir. 2001) ............................................... 11

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 127 S. Ct. 2499 (2007) ............................................ 4

*United States v. Reyes*, No. C 06-00556, 2007 WL 1574540 (N.D. Cal. May 30,
    2007) ................................................................................................................................. 6, 15

*Weiss v. Amkor Tech., Inc.*, 527 F. Supp. 2d 938 (D. Ariz. 2007) ......................................... 2, 6, 7

*Wietschner v. Monterey Pasta Co.*, 294 F. Supp. 2d 1102 (N.D. Cal. 2003) ................................. 9

**INTRODUCTION**

Defendants' opening brief ("MTD") explained why the § 10(b) and § 14(a) claims asserted in Plaintiff's Second Amended Class Action Complaint (the "Second Amended Complaint" or "SAC") each suffer from multiple fatal flaws.  Plaintiff's opposition brief ("Opp.") offers little response except to repeat arguments already rejected by this Court in its April 14, 2008 Order (the "Order") dismissing the Amended Class Action Complaint (the "Amended Complaint").  In several instances, Plaintiff backpedals from allegations made in the Second Amended Complaint in an effort to evade dispositive pleading defects Defendants identified in their opening brief.

As Defendants explained previously, Plaintiff's § 10(b) claim is deficient because Plaintiff fails to plead facts showing loss causation as to the November 7, 2006 press release, and fails to plead facts supporting a strong inference of scienter.  Regarding loss causation, Plaintiff continues to argue that the Company's initial announcement of an internal investigation constitutes a "corrective disclosure" giving rise to loss causation, despite the clear holdings of this Court and several other courts in this circuit to the contrary.  Regarding scienter, Plaintiff continues to rely on allegations this Court has found do not contribute to the scienter inquiry, as well as allegations whose falsity is demonstrated by the very documents on which Plaintiff relies.  Furthermore, Plaintiff still fails to explain several key facts which clearly *negate* an inference of fraudulent intent, such as the fact that nearly half of all options found by the Governance Committee to have been misdated were issued with exercise prices that were *too high*.

Plaintiff's § 14(a) claim is also insufficiently pleaded for at least three reasons.  First, as this Court already has ruled, much of Plaintiff's § 14(a) claim is barred by the applicable statute of limitations.  Second, Count III of the Second Amended Complaint is *identical* to Count III of the Amended Complaint, and as such, Plaintiff still fails to adequately plead the requisite "essential link."  Finally, Plaintiff continues to rely on his insufficiently particularized scienter allegations in a failed attempt to raise the requisite "strong inference" of negligence.

For these reasons, as more fully explained below, Defendants respectfully request that the Court dismiss Plaintiff's Second Amended Complaint in its entirety.

# ARGUMENT

## I. PLAINTIFF FAILS TO PLEAD A CLAIM FOR RELIEF UNDER SECTION 10(b)

Defendants' opening brief demonstrated that Plaintiff's § 10(b) claim must be dismissed in part for failure to plead facts showing loss causation as to the November 7, 2006 press release, and in its entirety for failure to adequately plead scienter. Plaintiff's opposition brief does little more than repeat the conclusory allegations made in the Second Amended Complaint, ignoring most of Defendants' arguments and seeking to avoid the rest by asserting new facts inconsistent with those pled in the complaint. Plaintiff's § 10(b) claim must therefore be dismissed.

### A. The November 7, 2006 Press Release Does Not Support Loss Causation

In its Order, this Court analyzed the Company's November 7, 2006 press release and found that "at that point in time, prior to any revelation by defendants of actual backdating, the true nature of [the Company's] financial condition had not yet been disclosed." Order at 6 (internal quotation marks and citation omitted). This Court's ruling is in accordance with decisions from several other courts in this circuit.[1] Ignoring the prior ruling, Plaintiff spends several pages rehashing the argument that a "partial corrective disclosure" is sufficient to show loss causation. Opp. at 19-22. Yet, Plaintiff is still unable to provide a single case from this circuit which holds that the mere disclosure of an internal investigation can support loss causation. As this Court previously pointed out, the November 7, 2006 press release simply was not a corrective disclosure, partial or otherwise, because it "[did] not reveal to the market that prior statements made by the company were untrue." Order at 6. Though Plaintiff alleges that

---

[1] *See, e.g.*, *In re Hansen Natural Corp. Sec. Litig.*, 527 F. Supp. 2d 1142, 1162 (C.D. Cal. 2007); *Weiss v. Amkor Tech., Inc.*, 527 F. Supp. 2d 938, 947 (D. Ariz. 2007); *In re Avista Corp. Sec. Litig.*, 415 F. Supp. 2d 1214, 1221 (E.D. Wash. 2005).

Plaintiff suggests that *Weiss* is distinguishable because the stock decline in that case can be explained by the simultaneous disclosure of additional negative information about the company's financial results. Opp. at 22. This factual distinction does not hold up since the Second Amended Complaint itself refers (SAC ¶ 150) to a *Forbes.com* article which illustrates that, contemporaneously with UTSI's announcement, at least one financial analyst was downgrading the Company's stock because its "fundamentals . . . remain weak and he does not think UTStarcom will turn a profit any time soon." Ex. A.

All references to "Ex. __" are to the exhibits attached to the Declaration of Bryan J. Ketroser, filed concurrently with Defendants' opening brief.

the announcement of the internal investigation informed the market of a "negative risk factor" (SAC ¶ 150), as the Ninth Circuit recently noted, "neither *Daou* nor *Dura* support the notion that loss causation is pled where a defendant's disclosure reveals a 'risk' or 'potential' for widespread fraudulent conduct." *Metzler Inv. GmbH v. Corinthian Colls., Inc.*, – F.3d –, 2008 WL 2853402, at *9 (9th Cir. July 25, 2008). Accordingly, Plaintiff fails to plead loss causation as to the November 7, 2006 announcement. Defendants' opening brief showed that Plaintiff also fails to plead loss causation as to the July 24 announcement.[2] Thus, the Second Amended Complaint should be dismissed in its entirety for failure to plead loss causation.

**B.     Plaintiff Fails to Plead Facts Supporting A Strong Inference of Scienter**

In their opening brief, Defendants showed that the Second Amended Complaint fails to plead facts supporting a strong inference of scienter. MTD at 7-21. Plaintiff responds by arguing that his allegations must be considered in their entirety. Opp. at 1, 6-7. But this Court already has rejected the vast majority of Plaintiff's allegations because, "either alone or taken collectively," they do not give rise to a strong inference of scienter. Order at 9. Indeed, several key facts in this case weigh heavily *against* an inference of intent to defraud. These include: (i) the fact that more than 40% of the misdated options had exercise prices that were *too high*; (ii) the fact that, while the investigation was pending, the Individual Defendants signed agreements promising to forego any benefit in the event accounting error was found; and (iii) the finding by the Governance Committee that "none of the current or former employees or directors of the Company engaged in intentional wrongdoing." Ex. C; Ex. F at 8, 10.

Plaintiff seeks to rewrite both history and his complaint through his opposition brief. For

---

[2] Plaintiff's opposition simply has *no response* to Defendants' arguments that the July 24 announcement failed to plead loss causation. MTD at 8 n.6. In its Order, this Court found that, although the Company's July 24, 2007 release contained a restatement estimate that was lower than prior estimates, it could still constitute a corrective disclosure because it was "significantly more definite than the prior disclosures." Order at 7-8.

However, as explained in Defendants' opening brief, uncertainty surrounding the estimated accounting charge was a negative factor for investors. It follows that the "more definite" announcement on July 24 mitigated that uncertainty and as such was a *positive* development. Coupled with the fact that the estimate itself actually dropped from $35 million to $28 million, this means that the July 24 announcement represented uniformly positive news relative to past announcements and therefore cannot support an argument of loss causation.

REPLY ISO MOT. TO DISMISS SECOND AMENDED
COMPLAINT
CASE NO. C-07-4578 SI

3

instance, faced with judicially noticeable documents disproving CW #1's allegations, Plaintiff now argues, contrary to the complaint, that CW #1 actually *prevented* the backdating that Plaintiff previously pled she witnessed. Similarly, recognizing that he has focused on a mere "subset" of four option grants despite alleging a seven-year backdating scheme, Plaintiff now asserts that the backdating actually stopped in 2002. And after relying heavily on the investigation's findings in his complaint, Plaintiff now argues – without *any* supporting allegations of fact – that the investigation was "seriously flawed" and "significantly underestimated" the required additional compensation expense. Opp. at 13. Plaintiff's last-minute attempts to amend are inappropriate and, even if accepted, would fail to establish the requisite strong inference of fraudulent intent.

### 1. Plaintiff Misapprehends the Applicable Pleading Standard

In his opposition brief, Plaintiff argues that, when pleading scienter, "[t]he basic purposes of the securities laws mandate that reasonable inferences suffice[.]" Opp. at 6. Plaintiff also suggests that this Court is required to adopt Plaintiff's desired inferences, and that "Defendants are not entitled to any inference to the contrary at the pleading stage." *Id.* at 19. All of these assertions are directly contradicted both by this Court's Order and by the Supreme Court's decision in *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 127 S. Ct. 2499 (2007).

As this Court explained in dismissing the Amended Complaint, the PSLRA requires Plaintiff to plead facts giving rise to an inference of scienter that is "*more* than merely 'reasonable' or 'permissible' – it must be cogent and compelling, thus strong in light of other explanations." Order at 8 (quoting *Tellabs*, 127 S. Ct. at 2510) (emphasis added). Accordingly, "in determining whether the pleaded facts give rise to a 'strong' inference of scienter, the court *must* take into account plausible opposing inferences." *Tellabs*, 127 S. Ct. at 2509 (emphasis added); *see also Metzler*, 2008 WL 2853402, at *7 ("[T]he court must consider *all* reasonable inferences to be drawn from the allegations, including inferences unfavorable to the plaintiffs.").

### 2. The Restatement Does Not Support a Strong Inference of Scienter

Courts have held that even a multi-year restatement due to the use of incorrect dates in granting stock options is not in itself enough to support a strong inference of *intentional*

1  misconduct. MTD at 13-15. Plaintiff attempts to rebut the mountain of case law Defendants cite

2  in their opening brief with a mere platitude: "books do not cook themselves." Opp. at 9 (internal

3  quotation marks and citation omitted). Plaintiff misses the point: the books are not "cooked" at

4  all where – as this Court pointed out – the Company's "admission in its restatement that some

5  options had been backdated . . . could equally support the inference that stock options had been

6  backdated through innocent bookkeeping error." Order at 9.[3] Seeking to persuade the Court to

7  reverse this well-reasoned decision, Plaintiff argues for the first time that those grants which

8  were *not* backdated suggest that the Individual Defendants acted with scienter.

9  Specifically, Plaintiff suggests the fact that many options were *not* backdated is

10  "extremely damning," because it shows that options were backdated "when it suited Defendants'

11  purposes." Opp. at 8-9. In making this argument, Plaintiff has pioneered a novel theory that

12  even a Company's *accurate* financials give rise to an inference of scienter. Plaintiff, of course,

13  does not cite a single case for this theory. Plaintiff's frivolous argument is an attempt to account

14  for the fact that, as this Court noted, "a full 7.6 million stock options – or 42% of all incorrectly-

15  dated stock options – were backdated to dates that left the *recipients in the red on the date they*

16  *were granted*." Order at 9 (emphasis added). Whose purposes were served by such grants?[4]

17  Plaintiff does not (and cannot) say. Rather, Plaintiff continues on to argue that scienter is

18  indicated by "[t]he fact that the backdating appears to have been curtailed after the passage of

19  Sarbanes-Oxley[.]" Opp. at 9. Yet this "curtailment" argument is directly contradicted by the

20  complaint, whose allegations point to more supposed backdating *after* the adoption of Sarbanes-

---

[3] Amazingly, Plaintiff again relies on the *CNET* case for the proposition that the mere fact of a GAAP violation in an option backdating case provides strong evidence of scienter. Opp. at 9. In fact, as this very Court has noted, the *CNET* decision actually *contradicts* Plaintiff's assertion. *See In re CNET Networks, Inc.*, 483 F. Supp. 2d 947, 956 (N.D. Cal. 2007) ("[D]etermining the correct measurement date depends on the facts. This dependence can admit the possibility of innocent error[.]"); *Nach v. Baldwin*, No. C 07-0740, 2008 WL 410261, at *4 n.5 (N.D. Cal. Feb. 12, 2008) (Illston, J.) ("There are several ways in which a company might have used an incorrect measurement date in the absence of wrongdoing[.]") (citing *CNET*, 483 F. Supp. 2d at 955-56).

[4] *See, e.g.*, *In re F5 Networks, Inc. Derivative Litig.*, No. C06-794, 2007 WL 2476278, at *11 (W.D. Wash. Aug. 6, 2007) ("If the directors were attempting to backdate their options as plaintiffs contend, it is extremely unlikely that the directors would have looked into the past and chosen a day on which the price closed higher than the day on which the grant was recorded[.]").

Oxley than before.[5]  Plaintiff's inconsistent allegations and arguments cannot be credited.

Plaintiff's tired argument that "[t]he Individual Defendants were well aware of the requirements of APB No. 25" is also futile.  Opp. at 9 n.7.  As courts have noted, while the *calculation* set forth in APB No. 25 may be easily explainable, determining the appropriate *input* (i.e., the measurement date) for that calculation is often quite difficult.[6]  Indeed, the sole case Plaintiff cites on the issue repeatedly acknowledges this very fact.  *See United States v. Reyes*, No. C 06-00556, 2007 WL 1574540, at *3 (N.D. Cal. May 30, 2007) ("[T]he precise timing of a grant is not always easy to discern. . . . [A]ccountants have often disagreed about the proper application of APB 25, and many companies apparently have applied the rule incorrectly.").

In short, the restatement does not support any inference of scienter, strong or otherwise.[7]

### 3.    Sarbanes-Oxley Certifications Do Not Show Scienter

As explained in Defendants' opening brief, a Sarbanes-Oxley certification is no more indicative of scienter than is a restatement, since the law requires that *all* financial statements of public companies be certified.  MTD at 15-16.  Plaintiff continues to rely on a single district court case from this circuit – *In re Lattice Semiconductor Corp. Sec. Litig.*, No. CV04-1255, 2006 WL 538756 (D. Or. Jan. 3, 2006) – for the proposition that a Sarbanes-Oxley certification can give rise to a strong inference of scienter.  Opp. at 14-15.  *Lattice* has been repeatedly

---

[5] Plaintiff alleges that "almost $13 million in additional stock-based compensation expenses were related to fiscal years 2003 through 2005."  SAC ¶ 170(f).  Thus, *more than half* of the $24.3 million in additional compensation expenses recorded by the Company related to options granted *after* Sarbanes-Oxley was passed.  Plaintiff even alleges that scienter is established by "[t]he fact that the options misconduct occurred both before and after this SOX provision[.]"  *Id.*

[6] *See, e.g.*, *Weiss*, 527 F. Supp. 2d at 949; *In re Sportsline.com Sec. Litig.*, 366 F. Supp. 2d 1159, 1168-69 (S.D. Fla. 2004).

[7] *In re Adaptive Broadband Sec. Litig.*, No. C 01-1092, 2002 WL 989478 (N.D. Cal. Apr. 2, 2002), *In re Cylink Sec. Litig.*, 178 F. Supp. 2d 1077 (N.D. Cal. 2001), and *In re McKesson HBOC, Inc. Sec. Litig.*, 126 F. Supp. 2d 1248 (N.D. Cal. 2000) (Opp. at 9 n.6) are all distinguishable.  All three cases involved particularized allegations of knowing participation in reckless accounting – something which, as explained in Section I.B.4, *infra*, is not present here – and none of them involved allegations of options backdating.  *See Adaptive*, 2002 WL 989478, at *14 (fact that company twice restated, coupled with "strong evidence of deliberately reckless accounting . . . shore[d] up and place[d] in context the allegations of fraud"); *Cylink*, 178 F. Supp. 2d at 1082 (alleging particularized facts regarding defendant's participation in revenue recognition transactions he knew constituted GAAP violations); *McKesson*, 126 F. Supp. 2d at 1273 ("According to the *Wall Street Journal* excerpts provided in the complaint, McKesson HBOC's investigators concluded that HBOC's executives intentionally overstated revenue.").

REPLY ISO MOT. TO DISMISS SECOND AMENDED COMPLAINT
CASE NO. C-07-4578 SI
6

distinguished by courts throughout this circuit, including the Northern District of California.[8]

### 4. Plaintiff Utterly Fails to Plead Facts Showing the Individual Defendants' Involvement in the Stock Option Granting Process

In their opening brief, Defendants noted that Plaintiff has failed to plead facts showing each Individual Defendant's involvement in the stock option granting process. MTD at 10. Plaintiff disagrees, arguing that he "state[s] clearly that each Individual Defendant played a role in the option granting process," and citing repeatedly to SAC ¶¶ 33-37. Opp. at 10-12. But those paragraphs contain mere conclusory allegations that the defendants were involved. That is not enough. The problem is that Plaintiff fails to allege *what role* each Individual Defendant allegedly had in the process and what actions each of them took.[9] The paragraphs cited by Plaintiff merely state that each of Messrs. Lu, Wu, Sophie and Barton, "[a]s an executive and a member of the Board of Directors, [ ] authorized and approved certain backdated stock option grants at issue in this case," and that Mr. Toy, "[a]s a member of the Audit and Compensation Committees, [ ] enabled the stock option backdating scheme to succeed." SAC ¶¶ 33-37.

Courts in this circuit have deemed such allegations insufficiently particularized. For example, the Northern District of California recently found that similar allegations failed to satisfy the PSLRA because "plaintiffs neither specify the roles that [the defendants] played in the alleged backdating scheme or in the alleged scheme to issue false financial reports, nor allege facts giving rise to a strong inference of scienter as to *each* defendant." *In re VeriSign, Inc.,*

---

[8] *See, e.g.*, *In re InVision Techs., Inc. Sec. Litig.*, No. C04-03181, 2006 WL 538752, at *7 n.3 (N.D. Cal. Jan. 24, 2006); *Weiss*, 527 F. Supp. 2d at 950. *Lattice* is distinguishable because the company in that case "admit[ted] that its [CFO] overrode the internal controls to make incorrect and misleading journal entries," and because the certifications at issue omitted a key paragraph contained in previous filings, suggesting that the certifiers were aware of the alleged problems. *Lattice*, 2006 WL 538756, at *17-18.

[9] *Batwin* and *Zoran* – relied on by Plaintiff – actually support Defendants' position. The *Batwin* court noted that a plaintiff cannot establish a strong inference of scienter merely by alleging an individual defendant's position in the company. *Batwin v. Occam Networks, Inc.*, No. CV 07-2750, 2008 WL 2676364, at *11 (C.D. Cal. July 1, 2008). Instead, a plaintiff must give a "more specific account of top executives' involvement in the details of the company." *Id*. The *Zoran* court reached a similar conclusion. *See In re Zoran Corp. Derivative Litig.*, 511 F. Supp. 2d 986, 1013 (N.D. Cal. 2007) (allegations that executives were "involved" in granting backdated options, or knew of the alleged scheme because of their positions, are insufficient).

*Derivative Litig.*, 531 F. Supp. 2d 1173, 1206-07 (N.D. Cal. 2007).[10] Here, Plaintiff not only fails to state the role of each Individual Defendant in the grant process, he also declines to state which Individual Defendant supposedly "authorized" or "approved" which backdated grants.[11] Indeed, Plaintiff alleges that the four cherry-picked grants to executives on which he focuses were made by the Compensation Committee, not the Board of Directors.[12] Yet Mr. Toy – the only Individual Defendant to have served on the Company's Compensation Committee – is *not* alleged to have "authorized" or "approved" any backdated options. SAC ¶ 37.[13]

### 5. Plaintiff's Motive And Opportunity Allegations Are Deficient

Plaintiff's opposition brief continues to focus on "motive and opportunity" allegations, despite the fact that "courts in this Circuit have held that general allegations of intent based upon generalized financial motives are insufficient to establish scienter." Order at 9. As explained previously (MTD at 16-18), Plaintiff's allegations are fatally flawed.

Plaintiff does not dispute that trading by corporate insiders is probative of scienter only when it is "unusual" in amount or made at "suspicious times." *Id*. at 16-17. Yet Plaintiff fails to provide the necessary details for analyzing the Individual Defendants' trades, such as the "percentage of shares sold by insiders" and "whether the sales were consistent with the insider's

---

[10] *See also Hansen Natural*, 527 F. Supp. 2d at 1157 ("Plaintiff's failure to plead any facts related to the role or knowledge of any of the Individual Defendants . . . is fatal to Plaintiff's showing of scienter[.]"); *In re MIPS Techs., Inc. Derivative Litig.*, 542 F. Supp. 2d 968, 979 (N.D. Cal. 2008) ("Coleman's mere service on the options granting committees is insufficient. Carco does not allege any facts to suggest that Coleman knowingly approved or granted backdated stock options.").

[11] Accordingly, *Ryan v. Gifford* is distinguishable, as the plaintiff in that case specifically identified the directors who approved each of the nine supposedly-backdated grants at issue. *See Ryan v. Gifford*, No. 2213-N, 2007 WL 416162, at *8 (Del. Ch. Feb. 6, 2007).

[12] SAC ¶ 86 ("All of the options granted to executives . . . during the years 2000 and 2002 were granted by the Compensation Committee[.]").

[13] Mr. Toy's committee membership is insufficient to establish scienter. *See, e.g.*, *VeriSign*, 531 F. Supp. 2d at 1194 ("Mere membership on a committee or board, without specific allegations as to defendants' roles and conduct, is insufficient to support a finding that the directors were conflicted.") (internal quotation marks and citation omitted). Allegations that members of the Compensation Committee "were responsible for administering the Company's stock option plans" (SAC ¶ 42) are similarly unavailing. *See, e.g.*, *MIPS*, 542 F. Supp. 2d at 977 ("[A]n allegation that a committee 'administered' an options plan does not suggest in any way that the Compensation Committee was involved in or had knowledge of any backdating.") (internal quotation marks and citation omitted).

1  prior trading history."[14]  *SGI*, 183 F.3d at 986.[15]  Instead, in response to Defendants' clear case

2  law illustrating the import of 10b5-1 trading plans in assessing the suspiciousness of insider

3  trades, Plaintiff attempts to shift his pleading burden to Defendants, arguing that "Defendants'

4  claim lacks sufficient detail to ascertain whether the insider sufficiently complied with the plan

5  and whether the trades described in the complaint were covered by a then-existing plan."  Opp. at

6  16.  However, neither the *Netflix* opinion cited by Defendants nor the *Wietschner* opinion cited

7  by Plaintiff turned on whether the 10b5-1 trading plans at issue had been publicly disclosed, or in

8  fact, even *mentioned* whether the plans had been disclosed.[16]

9       Plaintiff's allegation that two Individual Defendants exercised backdated options is

10  similarly unavailing.  This allegation fails to address the fact that, of the eight "Discretionary

11  Director & Officer" grants that were misdated, four – or one half of the misdated grants – had

12  exercise prices that were *higher* than they should have been, thereby *harming* the directors and

13  officers who received them.  Ex. F at 8.  Furthermore, the Individual Defendants who remained

14  with the Company agreed to reprice their options, to their detriment, without remuneration when

15  under no obligation to do so.  Ex. C.  Such an action tends to negate an inference of scienter.[17]

16                **6.**     **The Four Cherry-Picked Grants Do Not Show Scienter**

17       As this Court held, Plaintiff cannot show a strong inference of scienter where he "points

18  to only two or three specific grant dates that fell on days when stock prices were particularly low,

19  without providing any evidence of the total number of grant dates or other information to place

---

[14] Indeed, Plaintiff alleges that "Individual Defendants Lu, Sophie, Toy and Wu also sold substantial amounts of their shareholding before . . . the Class Period."  SAC ¶ 185.  Large pre-class period sales directly negate any argument that large class period sales were "unusual," because they show that the class period sales were "consistent with the insider's prior trading history."  *In re Silicon Graphics Inc. Sec. Litig.*, 183 F.3d 970, 986 (9th Cir. 1999) ("*SGI*").

[15] Plaintiff's suggestion in his brief (Opp. at 16-17) that "all sales" were made at the "class period high" is contradicted by his complaint.  More than half of the trades in Plaintiff's chart in the SAC were at least $5.00 off of the stock's peak, while more than a quarter of the trades were at least $10.00 off of this peak.  SAC ¶ 185.

[16] *See In re Netflix, Inc. Sec. Litig.*, No. C04-2978, 2005 WL 1562858, at *8 (N.D. Cal. June 28, 2005); *Wietschner v. Monterey Pasta Co.*, 294 F. Supp. 2d 1102, 1117 (N.D. Cal. 2003).

[17] *Cf. Zoran*, 511 F. Supp. 2d at 1003 ("Thus, a decision now to correct the grant dates would have a detrimental impact on the directors by removing the financial benefit of the backdating.").

these grant dates in context." Order at 9 (citation omitted).[18] Yet Plaintiff acknowledges doing precisely that: "Plaintiff has focused on a *subset* of option grants to the Individual Defendants made pursuant to discretionary option plans of the Company." Opp. at 12 (emphasis added).

Contrary to Plaintiff's stated goal to have the Court consider the allegations in "their entirety," Plaintiff in his opposition desperately seeks to have the Court *ignore* the "entirety" of his complaint in regards to the alleged pattern of backdating, for obvious reasons. Whereas the Second Amended Complaint alleges that the restatement was "a tacit admission that some backdating occurred *after* 2002" (SAC ¶ 170(f)), Plaintiff now wants to ignore these grants and focus on a cherry-picked "subset." Opp. at 12. Whereas Plaintiff's complaint emphasizes the existence of supposedly backdated grants after the passage of Sarbanex-Oxley as part of his scienter theory – "The fact that the options misconduct occurred both *before and after* this SOX provision was enacted suggests a knowing violation of securities laws or at least severe recklessness" (SAC ¶ 170(f) (emphasis added)) – Plaintiff's opposition turns course to argue the "pattern [of backdating] abruptly *ends* immediately after the passage of Sarbanes-Oxley." Opp. at 12 (emphasis added).[19] It is not suprising that Plaintiff has reversed course, since the allegations of fraud are not supported by any pleaded facts in the first place. And that too is not suprising, since the Governance Committee's investigation concluded that half of the misdated "Discretionary Director & Officer" grants were of underwater options. Ex. F at 8.[20]

### 7.    The Internal Investigation Results Negate Any Inference of Scienter

After repeatedly citing to the Company's restatement as the source of his allegations, Plaintiff now argues that the investigation conducted by the Governance Committee was

---

[18] *See also Nach*, 2008 WL 410261, at *5; *In re Openwave Sys. Inc. S'holder Derivative Litig.*, 503 F. Supp. 2d 1341, 1348 (N.D. Cal. 2007) (Illston, J.); *CNET*, 483 F. Supp. 2d at 958; *In re Linear Tech. Corp. Derivative Litig.*, No. C-06-3290, 2006 WL 3533024, at *3 (N.D. Cal. Dec. 7, 2006).

[19] *See also id.* at 14 ("[A] strong inference exists that a majority, *if not all* of the grants requiring additional compensation expenses took place before the passage of Sarbanes-Oxley[.]") (emphasis added).

[20] Plaintiff also declines to offer an explanation for his choice of comparison dates for the four option grants he focuses on, which range from 6 days to 42 days from the grant dates. *See, e.g.*, *Nach*, 2008 WL 410261, at *6 (finding plaintiff's "choice of comparison dates and prices is inconsistent and therefore arbitrary").

"seriously flawed" and "appears likely to have significantly underestimated the loss caused by the options backdating scheme." Opp. at 13. Plaintiff cannot have it both ways.

To begin with, it is clear that a court, in deciding a Rule 12(b)(6) motion to dismiss, may not consider allegations first raised in an opposition brief. *See, e.g.*, *Schneider v. Cal. Dep't of Corrs.*, 151 F.3d 1194, 1197 n.1 (9th Cir. 1998).[21] The Second Amended Complaint does not suggest that the internal investigation was anything but complete and above-board, and relies heavily on the restatement that resulted from the investigation, quoting from it extensively. SAC ¶¶ 155-59. The allegation in Plaintiff's opposition that the investigation was "seriously flawed" is thus an improper attempt to amend the pleadings in the course of a Rule 12(b)(6) motion.

In any event, Plaintiff inexplicably ignores the fact that the review "specifically examined the appropriateness of the stated grant date for approximately 90% of the stock options granted." *Id*. ¶ 156; Ex. F at 7. The suggestion that Defendants would test 90% of all options granted by the Company for more than six years, including all of the option grants to management and the Board, and announce that 17.9 million options were misdated (though 7.6 million were misdated to the *detriment* of their recipients), yet still be "afraid of what they would find" (Opp. at 13) by testing the final 10%, defies logic.[22] Indeed, Plaintiff's new allegations of continued cover-up are contradicted by his own allegations that the public learned the "full truth" on July 24, 2007.[23]

### 8. The SEC Settlement Negates Any Inference of Scienter

As explained in Defendants' opening brief, the SEC settlement negates an inference of scienter because the SEC concluded there was no fraud. Plaintiff's bald assertion to the contrary is without merit. His own complaint states that the SEC merely alleged the Company "failed to properly account for certain stock option grants" and "failed to establish and implement adequate internal controls." SAC ¶¶ 160-61. Marc Fagel, then co-acting regional director in the SEC's

---

[21] *See also Broam v. Bogan*, 320 F.3d 1023, 1026 n.2 (9th Cir. 2003).

[22] Even the caselaw cited by Plaintiff recognizes that a court need not accept "unreasonable" or "unwarranted" inferences. *See Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001); *Pareto v. F.D.I.C.*, 139 F.3d 696, 699 (9th Cir. 1998).

[23] Opp. at 2-3 (alleging stock drop "on July 24, 2007, after the Company finally disclosed the full truth about its manipulation of stock options"); SAC ¶¶ 200-02 (investors "became aware of the true facts" when "the truth was ultimately revealed to the market" by July 24, 2007).

1 San Francisco office, publicly acknowledged that the government action included "no fraud
2 charges." Ex. H.  The fact that the SEC, after a thorough investigation, decided not to bring
3 fraud charges negates any inference of scienter.[24]

### 9. Plaintiff's Confidential Witness Allegations Fail to Show Scienter

Acknowledging that public documents directly contradict CW #1's allegations, Plaintiff in his opposition *admits* that those allegations are *completely false*.  Plaintiff's efforts to concoct a new work of fiction in his opposition brief must be rejected, as must be the allegations attributed to CW #2, which Plaintiff still fails to link to any Individual Defendant's state of mind.

The Second Amended Complaint alleges that CW #1 "personally witnessed the Company's CFO Barton backdating his stock options," and that "CW #1 handled the paperwork associated with Barton's options being backdated to approximately June 2005[.]"  SAC ¶ 190.[25] Faced with a pair of public documents (Ex. O at 20; Ex. P) which show the grant to Mr. Barton to be properly dated, Plaintiff simply makes up a different story:  "[I]t appears that the concerns raised by CW #1 within the Company successfully convinced Defendants not to backdate those options."  Opp. at 4.  This is astonishing, given the allegations that CW #1 was "responsible for processing the paperwork associated with senior executive stock sales" and was "quite familiar with the paper trail for backdated options."  SAC ¶¶ 188-91.  Combined with the fact that the allegations attributed to CW #1 are not even internally consistent (MTD at 20 n.23),[26] Plaintiff's latest admission renders such allegations utterly worthless.

---

[24] The sole case cited by Plaintiff on this topic – *No. 84 Employer-Teamster Joint Council Pension Trust Fund v. America West Holding Corp.* – is not to the contrary.  There, plaintiffs attempted to show that the individual defendants were aware of America West's ongoing maintenance problems by pointing to, *inter alia*, a settlement with the FAA reached weeks before the airline publicly admitted the need for remedial measures.  320 F.3d 920, 928-29, 941-42 (9th Cir. 2003).  In the instant case, however, the SEC settlement occurred more than a year *after* the Company announced the need to restate.  SAC ¶ 152; Ex. D.

[25] Notwithstanding a general allegation that she "personally witnessed former CFO Sophie engage in the practice of backdating executive stock options" (SAC ¶ 193), the grant to Mr. Barton represents the sole *specific* example of backdating alleged by CW #1.

[26] Plaintiff's opposition brief introduces yet another contradiction:  Plaintiff claims that Ms. Fan, to whom CW #1 supposedly "expressed her concerns" in August 2005, was CW #1's supervisor (Opp. at 18; SAC ¶ 191), but the complaint alleges that CW #1's supervisor was Ed Hudson until September 2005, and Waing Cheung thereafter (SAC ¶¶ 187, 189).

REPLY ISO MOT. TO DISMISS SECOND AMENDED COMPLAINT
CASE NO. C-07-4578 SI             12

As explained previously (MTD at 20-21), the allegations attributed to CW #2 consist solely of gossip and innuendo on the one hand, and innocuous hearsay about a meeting she did not even attend on the other hand, neither of which can support a strong inference of scienter.[27] Plaintiff's opposition brief does not suggest how such allegations "provide a first hand account of backdating occurring at the Company" (SAC ¶ 197), instead merely arguing that Plaintiff has provided adequate description of the dates of employment and job duties of the "witness." Opp. at 19. As such, like the allegations attributed to CW #1, the allegations attributed to CW #2 fail even to contribute to an inference of scienter.

## II.     PLAINTIFF FAILS TO PLEAD A CLAIM FOR RELIEF UNDER SECTION 14(a)

In their opening memorandum, Defendants showed that Plaintiff's Section 14(a) claim is time-barred with respect to most of the proxy statements issued during the purported class period, and that Plaintiff falls well short of stating a claim under the Reform Act as to the remaining proxy statements. MTD at 21-24. Plaintiff now admits the statute of limitations bar, and fails to rebut Defendants' arguments with respect to the requisite "essential link" and "strong inference of negligence" elements.

### A.     Plaintiff's Claim is Time-Barred as to All But the 2005 And 2006 Proxies

Plaintiff has now "concede[d]" that, "pursuant to the Court's order . . . the § 14(a) claims are time barred with respect to the 2003 and 2004 proxy statements." Opp. at 22 n.13. As such, Plaintiff's § 14(a) claim is "limit[ed] . . . to the 2005 and 2006 proxy statement[s]." *Id*.

### B.     Plaintiff Still Fails to Adequately Plead the Required "Essential Link"

In dismissing the Amended Complaint, this Court noted that Plaintiff "essentially concede[d] that the complaint, as written, does not allege the essential link element," and "permit[ed] plaintiff to amend his complaint to include the necessary allegations." Order at 12. Nevertheless, Plaintiff has elected not to amend his "essential link" allegations. Plaintiff did not change a *single word* in Count III of his Second Amended Complaint, and his opposition brief offers no explanation for this failure. Instead, Plaintiff confirms that his "essential link"

---

[27] *See, e.g.*, *In re Siebel Sys., Inc. Sec. Litig.*, No. C 04-0983, 2005 WL 3555718, at *8 (N.D. Cal. Dec. 28, 2005); *Davis v. SPSS, Inc.*, 431 F. Supp. 2d 823, 831 (N.D. Ill. 2006).

allegations consist solely of the assertion that the Individual Defendants "used the proxy solicitations to maintain their positions on the Board of Directors," without which they would not have had "the means to grant backdated stock options and benefit from them." Opp. at 23.

Plaintiff's old claim that the 2005 and 2006 proxy statements allowed the Individual Defendants to "cash in," or exercise, "their backdated options" (SAC ¶ 222) still makes no sense. The Individual Defendants did not need, and did not seek, permission from shareholders to *exercise* the options that they had been granted previously. Nor would a failure to obtain re-election have prevented those Individual Defendants who were directors from exercising their vested stock options. Ex. Q § 8(b). Plaintiff's claim concerning harm stemming from re-election of the Individual Defendants to the Board fares no better. The 2005 proxy statement did not solicit votes for the re-election of any Individual Defendant. Ex. K at 3-6. And while the 2006 proxy statement did solicit votes for the re-election of Mr. Lu (Ex. O at 7-9), Plaintiff has not alleged any backdating after the date of the 2006 shareholder meeting: July 21, 2006.

Accordingly, this Court should, once again, dismiss the Section 14(a) claim in its entirety for failure to adequately plead an "essential link."[28]

### C. Plaintiff Still Fails to Adequately Plead a Strong Inference of Negligence

As Defendants explained in their opening brief (MTD at 23-24), Plaintiff still fails to plead the requisite "particularized facts that give rise to a strong inference of negligence." *VeriSign*, 531 F. Supp. 2d at 1211. Plaintiff's primary response is to argue that he has pled scienter, and that "[t]his higher standard covers negligence." Opp. at 24. As detailed in Section I.B, *supra*, this contention fails.

Plaintiff further argues that a strong inference of negligence may be drawn from the complaint because "each of the Individual Defendants had duties to ensure that the granting of stock options and the accounting practices of the Company complied with UTStarcom's stock option plans and other governing regulations." Opp. at 24. The mere existence of accounting

---

[28] *See, e.g.*, *In re Ariba, Inc. Sec. Litig.*, No. C 03-00277, 2005 WL 608278, at *9 (N.D. Cal. Mar. 16, 2005) (dismissing § 14(a) claim upon finding failure to plead essential link).

error, however, does not necessarily mean that a defendant acted negligently.[29] This is particularly true for cases involving allegations of misdated options. As Plaintiff's own case law illustrates: "[M]any companies apparently have applied [APB No. 25] incorrectly."[30] Indeed, this very Court has recently addressed at least two other cases involving option misdating where the allegations did not sufficiently plead fraud.[31] Because negligence is defined with respect to the *ordinary* care of a *reasonable* person,[32] and because corporate restatements due to non-fraudulent option misdating have become so frequent in recent years, Plaintiff must do more than simply allege the misdating of options in order to adequately plead the requisite "strong inference of negligence." Plaintiff's failure to do so provides an independent reason for dismissal of his Section 14(a) claim.

## CONCLUSION

For the foregoing reasons, Defendants respectfully request that the Court dismiss the Second Amended Class Action Complaint.[33]

Dated: August 8, 2008                    WILSON SONSINI GOODRICH & ROSATI
                                         Professional Corporation


                                         By: /s/ Bahram Seyedin-Noor
                                             Bahram Seyedin-Noor

                                         Attorneys for Defendants

---

[29] *See, e.g.*, *VeriSign*, 531 F. Supp. 2d at 1205, 1213 (failure to plead particularized facts giving rise to strong inference of negligence despite company's announcement of "anticipated restatement of its financial statements to account for backdated options"); *In re SmarTalk Teleservices, Inc. Sec. Litig.*, 124 F. Supp. 2d 505, 516 n.4 (S.D. Ohio 2000) (declining to hold that "all violations of GAAP and/or GAAS are always sufficient to show negligence").

[30] *Reyes*, 2007 WL 1574540, at *3.

[31] *See Nach*, 2008 WL 410261; *Openwave*, 2008 WL 410259.

[32] *See, e.g.*, *Richey v. U.S. I.R.S.*, 9 F.3d 1407, 1414 n.6 (9th Cir. 1993) (noting that the "general legal concept of negligence" is "the failure to act with the ordinary care and prudence of a reasonable person").

[33] Because Plaintiff has failed to adequately plead a primary violation of § 10(b) or § 14(a) on the part of any Defendant, his claim of secondary liability under § 20(a) must be dismissed as well. MTD at 25.

I, Bryan J. Ketroser, am the ECF User whose identification and password are being used to file the Reply in Support of Defendants' Motion to Dismiss Plaintiff's Second Amended Class Action Complaint. I hereby attest that Bahram Seyedin-Noor has concurred in this filing.

Dated: August 8, 2008                                                WILSON SONSINI GOODRICH & ROSATI
                                                                                         Professional Corporation


                                                                                  By: /s/ Bryan J. Ketroser
                                                                                           Bryan J. Ketroser

                                                                                  Attorneys for Defendants