**United States District Court**
For the Northern District of California

1

2

3

4

5          IN THE UNITED STATES DISTRICT COURT

6          FOR THE NORTHERN DISTRICT OF CALIFORNIA

7

8   PETER RUDOLPH, individually and on behalf          No. C 07-04578 SI
    of all others similarly situated,
9                                                      **ORDER GRANTING IN PART AND**
                 Plaintiff,                            **DENYING IN PART DEFENDANTS'**
10                                                     **MOTION TO DISMISS COMPLAINT**
         v.
11
    UTSTARCOM, HONG LIANG LU, YING WU,
12  MICHAEL SOPHIE, FRANCIS BARTON,
    AND THOMAS TOY,
13
                 Defendants.
14  _____/

15
         Defendants have filed a motion to dismiss plaintiff's second amended complaint.  The motion
16
    is scheduled for hearing on August 22, 2008.  Pursuant to Civil Local Rule 7-1(b), the Court finds this
17
    matter appropriate for resolution without oral argument, and hereby VACATES the hearing.  Having
18
    considered the arguments of the parties and the papers submitted, and for good cause shown, the Court
19
    hereby GRANTS IN PART and DENIES IN PART defendants' motion to dismiss.
20

21
                                            **BACKGROUND**
22
         This is a securities class action against UTStarcom and certain of its officers and directors under
23
    Sections 10(b), 14(a), 20(a), Rule 10b-5, and Rule 14a-9 of the Securities Exchange Act of 1934 (the
24
    "Exchange Act").  The case is brought by lead plaintiff Peter Rudolph on behalf all purchasers of
25
    UTStarcom securities between September 4, 2002, and July 24, 2007 ("the class period"). Plaintiff filed
26
    this lawsuit on September 4, 2007, and filed an amended complaint on January 25, 2008.  On April 14,
27
    2008, the Court granted defendants' motion to dismiss the complaint with leave to amend.  Plaintiff filed
28

1  a second amended complaint on May 16, 2008.  Now before the Court is defendants' motion to dismiss

2  the second amended complaint in its entirety.[1]

3

4  **LEGAL STANDARD**

5  **I.     Rule 12(b)(6)**

6          Under Federal Rule of Civil Procedure 12(b)(6), a district court must dismiss a complaint if it

7  fails to state a claim upon which relief can be granted.  The question presented by a motion to dismiss

8  is not whether the plaintiff will prevail in the action, but whether the plaintiff is entitled to offer

9  evidence in support of the claim. *See Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974), *overruled on other*

10 *grounds by Davis v. Scherer*, 468 U.S. 183 (1984).

11         In answering this question, the Court must assume that the plaintiff's allegations are true and

12 must draw all reasonable inferences in the plaintiff's favor.  *See Usher v. City of Los Angeles*, 828 F.2d

13 556, 561 (9th Cir. 1987).  Even if the face of the pleadings suggests that the chance of recovery is

14 remote, the Court must allow the plaintiff to develop the case at this stage of the proceedings.  *See*

15 *United States v. City of Redwood City*, 640 F.2d 963, 966 (9th Cir. 1981).

16         If the Court dismisses the complaint, it must then decide whether to grant leave to amend.  The

17 Ninth Circuit has "repeatedly held that a district court should grant leave to amend even if no request

18 to amend the pleading was made, unless it determines that the pleading could not possibly be cured by

19 the allegation of other facts." *Lopez v. Smith*, 203 F.3d 1122, 1130 (9th Cir. 2000) (citations and internal

20 quotation marks omitted).

21

22 **II.    Section 10(b) and Rule 10b-5**

23         Section 10(b) of the Securities Exchange Act provides, in part, that it is unlawful "to use or

24 employ in connection with the purchase or sale of any security registered on a national securities

25 exchange or any security not so registered, any manipulative or deceptive device or contrivance in

26

27         [1] The facts of this case are described in greater detail in the Court's April 14, 2008 Order.

28                                                  2

*United States District Court*
*For the Northern District of California*

**United States District Court**
For the Northern District of California

1  contravention of such rules and regulations as the [SEC] may prescribe." 15 U.S.C. § 78j(b). Rule 10b-

2  5 makes it unlawful for any person to use interstate commerce:

3  (a) To employ any device, scheme, or artifice to defraud,

4  (b) To make any untrue statement of a material fact or to omit to state a material fact necessary
    in order to make the statements made, in the light of the circumstances under which they were
5  made, not misleading, or

6  (c) To engage in any act, practice, or course of business which operates or would operate as a
    fraud or deceit upon any person, in connection with the purchase or sale of any security.
7
   17 C.F.R. § 240.10b-5.
8
9      In order to state a claim under section 10(b) and Rule 10b-5, the plaintiff must allege (1) a

10  misrepresentation or omission (2) of material fact (3) made with scienter (4) on which the plaintiff

11  justifiably relied (5) that proximately caused the alleged loss. *See Binder v. Gillespie*, 184 F.3d 1059,

12  1063 (9th Cir. 1999).

13
    **III.    Heightened pleading standard for § 10(b) claims**
14
15      A securities class action alleging violation of § 10(b) of the Exchange Act must satisfy the

16  pleading requirements of Federal Rule of Civil Procedure 9(b) and the heightened pleading requirements

17  of the Private Securities Litigation Reform Act ("PSLRA"). The Federal Rules of Civil Procedure

18  require that "[i]n all averments of fraud or mistake, the circumstances constituting fraud or mistake shall

19  be stated with particularity." Fed. R. Civ. P. 9(b). Federal securities fraud claims, like common law

20  fraud claims, are subject to the special pleading requirements of Rule 9(b). *Semegen v. Weidner*, 780

21  F.2d 727, 731 (9th Cir. 1985). To comply with Rule 9(b) in a securities action, a plaintiff must allege

22  the time, place, and content of the alleged fraud, as well as the "circumstances indicating falseness" or

23  "the manner in which [the] representations [or omissions at issue] were false and misleading." *In re

24  GlenFed Sec. Litig.*, 42 F.3d 1541, 1544 (9th Cir. 1994) (en banc) (alterations in the original).

25      The PSLRA was enacted as an amendment to the Exchange Act. *See In re Silicon Graphics Inc.

26  Sec. Litig.*, 183 F.3d 970, 973 n.2 (9th Cir. 1999). Under the PSLRA:

27      In any private action arising under his chapter under which the plaintiff may recover money

28                                        3

**United States District Court**
For the Northern District of California

1  damages only on proof that the defendant acted with a particular state of mind, the complaint
2  shall, with respect to each act or omission alleged to violate this chapter, state with particularity
facts giving rise to a strong inference that the defendant acted with the required state of mind.

3  15 U.S.C. § 78u-4(b)(2).  The required state of mind is "at a minimum, deliberate recklessness." *In re*

4  *Silicon Graphics*, 183 F.3 at 983.  Scienter may be pled and proven by reference to circumstantial

5  evidence. *See In re Peoplesoft Sec. Litig.*, 2000 WL 1737936, *3 (N.D. Cal. May 25, 2000).  However,

6  when pleading on information and belief, a plaintiff must plead with "particularity" by "provid[ing] all

7  facts forming the basis for [plaintiff's] belief in great detail." *In re Silicon Graphics*, 183 F.3d at 983;

8  *see also* 15 U.S.C. § 78u-4(b)(1).    Therefore, the Reform Act has strengthened the pleading

9  requirements of Rule 9(b).

10

11  **IV.    Section 14(a) and Rule 14a-9**

12  To establish a claim under § 14(a) of the Exchange Act, plaintiffs must allege that some part of

13  a proxy statement "contain[s] any statement which, at the time and in the light of the circumstances

14  under which it is made, is false or misleading with respect to any material fact, or which omits to state

15  any material fact necessary in order to make the statements therein not misleading . . . ."  17 C.F.R. §

16  240.14a-9; *see also Desaigoudar v. Meyercord*, 223 F.3d 1020, 1022 (9th Cir. 2000).  The requisite state

17  of mind under this section is negligence. *See In re McKesson HBOC, Inc. Sec. Litig.*, 126 F. Supp. 2d

18  1248, 1263 (N.D. Cal. 2000); *Wilson v. Great Am. Indus., Inc.*, 855 F.2d 987, 995 (2d Cir. 1988);

19  *Gerstle v. Gamble-Skogmo, Inc.*, 478 F.2d 1281-1301 (2d Cir. 1973).

20

21  **V.    Request for judicial notice**

22  Generally, when considering a motion to dismiss, a district court must consider only the facts

23  stated in the plaintiffs' complaint, or in documents attached to the complaint as exhibits or incorporated

24  into the complaint by reference.  Under certain circumstances, the court may also consider matters that

25  are appropriate subjects of judicial notice under Federal Rule of Evidence 201. *Kramer v. Time Warner*,

26  937 F.2d 767, 773 (2d Cir. 1991).  While the general rule is that "[m]atters outside the pleadings are not

27

28  4

1   to be considered by a court in ruling on a 12(b)(6) motion to dismiss," *Weiner v. Klais and Co., Inc.*,

2   108 F.3d 86, 88 (6th Cir. 1997), in a securities action a court may also consider certain documents that

3   the defendant has attached to its motion to dismiss either as exhibits or accompanied by a request for

4   judicial notice, *Glenbrook Capital Ltd. P'ship v. Kuo*, 525 F. Supp. 2d 1130, 1137 (N.D. Cal. 2007).

**DISCUSSION**

**I.      Motion to dismiss Section 10(b) claims**

Defendants move to dismiss plaintiff's § 10(b) and Rule 10b-5 claim.  Defendants do not take issue with plaintiff's allegations regarding certain elements of a § 10(b) claim, but once again focus on whether plaintiff has failed to adequately plead loss causation and scienter.  The Court finds that plaintiff's second amended complaint adequately pleads loss causation and scienter.[2]

**A.      Loss causation**

The Court previously ruled that the November 7, 2006 press release could not support an allegation of loss causation, but that the July 24, 2007 disclosure was sufficient to satisfy the pleading requirements for loss causation.  *See* April 14, 2008 Order at 6-8.  Both parties now argue that the Court should reconsider these prior decisions.  Plaintiff asks the Court to rule that the November 7, 2006 press release was a disclosure sufficient to show loss causation, while defendants ask the Court to rule that the July 24, 2007 announcement was not a corrective disclosure.  The Court does not believe its prior decision was incorrect with regard to the July 24, 2007 disclosure, and declines to revisit it.  However, an intervening decision by the Ninth Circuit has lead the Court to believe that its prior decision with regard to the November 7, 2006 press release was incorrect.

The April 14, 2008 Order held that the November 7, 2006 press release could not support an allegation of loss causation because the press release announced an internal investigation into stock option grant practices but did not reveal that UTStarcom's prior financial statements would actually

_____

[2] The Court GRANTS defendants' request for judicial notice, which plaintiff does not oppose.

United States District Court
For the Northern District of California

1   need to be restated.  The Court relied in part on decisions by other district courts holding that the mere

2   announcement of an investigation is not sufficient to plead loss causation, and also relied on language

3   in the case of *In re Daou Systems, Inc.*, 411 F.3d 1006 (9th Cir. 2005), in which the Ninth Circuit

4   refused to find loss causation pled for a period of time in which "the true nature of Daou's financial

5   condition had not yet been disclosed," *id.* at 1027.  More recently, the Ninth Circuit has clarified that

6   in order to satisfy the requirement of *Dura Pharmaceuticals, Inc. v. Broudo*, 544 U.S. 336 (2005), that

7   a plaintiff allege "what the relevant economic loss might be" and "what the causal connection might be"

8   between the alleged fraud and the losses suffered, *id.* at 347, the plaintiff must only allege "facts that,

9   if taken as true, plausibly establish loss causation," *In re Gilead Sciences Sec. Litig.*, No. 06-16185, slip

10  op. at 10336 (9th Cir. Aug. 11, 2008).  In so holding, the Ninth Circuit cited with approval decisions by

11  other circuits suggesting that loss causation is a fact-intensive inquiry better suited for determination

12  at trial than at the pleading stage.  *See McCabe v. Ernst & Young, LLP*, 494 F.3d 418, 427 n.4 (3rd Cir.

13  2007); *Emergent Capital Inv. Mgmt., LLC v. Stonepath Group, Inc.*, 343 F.3d 189, 197 (2d Cir. 2003).

14

15      Pursuant to the Ninth Circuit's recent clarification regarding allegations of loss causation, the

16  Court now finds that the November 7, 2006 press release could plausibly establish loss causation.  While

17  it is true that the press release did not definitively state that backdating had occurred or that UTStarcom

18  would adjust its prior financial statements as they related to equity grants, the press release did, for the

19  first time, put the market on notice that such disclosures might be forthcoming.  Moreover, plaintiff

20  alleges that the market reacted, at least in part, to this news, as UTStarcom's share price dropped 9%,

21  from a closing price of $10.23 on November 7 to a closing price of $9.32 on November 9.  SAC at ¶

22  149.  Thus, plaintiff's allegations distinguish this case from the situation in *Daou Systems*, in which the

23  complaint had not alleged "any revelation of Daou's true financial health prior to August 1998." *Daou*

24  *Sys.*, 411 F.3d at 1026-27.  Accordingly, defendants' motion to dismiss for failure to plead loss

25  causation is DENIED.

26

27

28                                                      6

**United States District Court**
For the Northern District of California

1

2          **B.     Scienter**

3          "[T]he PSLRA requires that the Complaint 'state with particularity facts giving rise to a strong

4    inference that the defendant acted with the required state of mind,' or scienter." *Nursing Home Pension*

5    *Fund, Local 144 v. Oracle Corp.*, 380 F.3d 1226, 1230 (9th Cir. 2004) (quoting 15 U.S.C. § 78u-

6    4(b)(2)).  This inquiry "is whether all of the facts alleged, taken collectively, give rise to a strong

7    inference of scienter, not whether any individual allegation, scrutinized in isolation, meets that

8    standard." *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 127 S. Ct.  2499, 2509 (2007).  Here, the

9    required state of mind is at least "deliberate recklessness," meaning recklessness that "reflects some

10   degree of intentional or conscious misconduct."  *Nursing Home Pension Fund*, 380 F.3d at 1230

11   (internal quotation marks omitted).  The PSLRA's heightened pleading standard requires the plaintiff

12   to plead "in great detail, facts that constitute strong circumstantial evidence of deliberately reckless or

13   conscious misconduct," *Silicon Graphics*, 183 F.3d at 974, such that the inference of scienter is "more

14   than merely 'reasonable' or 'permissible' – it must be cogent and compelling, thus strong in light of

15   other explanations," *Tellabs*, 127 S. Ct. at 2510.

16         "'[T]he mere publication of inaccurate accounting figures, or a failure to follow GAAP, without

17   more, does not establish scienter.'"  *DSAM Global Value Fund v. Altris Software, Inc.*, 288 F.3d 385,

18   390 (9th Cir. 2002) (quoting *In re Software Toolworks Inc.*, 50 F.3d 615, 627 (9th Cir. 1994)); *see also*

19   *Hockey v. Medheker*, 30 F. Supp. 2d 1209, 1224 (N.D. Cal. 1998) ("Merely alleging that fraudulent

20   accounting practices have occurred, without more, does not create a strong inference of scienter.").

21   "Rather, to plead fraudulent intent based on GAAP violations, plaintiffs must allege facts showing that:

22   (1) specific accounting decisions were improper; and (2) the defendants knew specific facts at the time

23   that rendered their accounting determinations fraudulent."  *Morgan v. AXT, Inc.*, 2005 WL 2347125,

24   * 14 (N.D. Cal. Sept. 23, 2005) (citing *DSAM Global Value Fund*, 288 F.3d at 390-391).  Similarly, the

25   signing of quarterly certifications of financial statements mandated by the Sarbanes-Oxley Act does not,

26   without more, support an inference of scienter.  *See In re Hypercom Corp. Sec. Litig.*, 2006 WL

27

28                                                    7

**United States District Court**
For the Northern District of California

1 1836181 *11 (D. Ariz. July 5, 2006) ("However, an incorrect Sarbanes-Oxley certification does not, by

2 itself, create a strong inference of scienter."); *In re Invision Techs., Inc. Sec. Litig.*, 2006 WL 538752

3 *7 n.3 (N.D. Cal. Jan. 24, 2006); *In re Watchguard Sec. Litig.*, 2006 WL 2038656 *11 (W.D. Wash.

4 April 21, 2006); *Morgan v. AXT, Inc.*, 2005 WL 2347125 *15 (N.D. Cal. Sept. 23, 2005).  In addition,

5 courts in this Circuit have held that general allegations of intent based upon generalized financial

6 motives are insufficient to establish scienter.  *See*, *e.g.*, *Kane v. Madge Networks N.V.*, 2000 WL

7 33208116, *11  (N.D. Cal. May 26, 2000) (holding that motive to avoid stock dilution is a motive for

8 fraud, but would not create a "strong inference" of scienter); *In re PETsMART, Inc. Sec. Litig.*, 61 F.

9 Supp. 2d 982, 999 (D. Ariz. 1999).

10 The Court previously held that plaintiff's complaint did not support a strong inference of scienter

11 because it relied on numerous factual allegations that could equally support the inference that stock

12 options had been backdated through innocent bookkeeping error.  *See* April 14, 2008 Order at 9; *see*

13 *also In re CNET Networks, Inc.*, 483 F. Supp. 2d 947, 955-56 (N.D. Cal. 2007); *Nach v. Baldwin*, 2008

14 WL 410261, *4, 7 (N.D. Cal. Feb. 12, 2008).  The Court also noted that the statements of plaintiff's two

15 confidential witnesses, "in combination with plaintiff's other allegations, might be sufficient to survive

16 defendants' motion to dismiss," but held that plaintiff had failed to provide sufficient information about

17 these witnesses.  April 14, 2008 Order at 10.  After amending his complaint, plaintiff now argues that

18 he has adequately alleged scienter.  Plaintiff continues to rely on allegations that, considered

19 individually, are insufficient to demonstrate scienter, and the Court finds it unnecessary to revisit its

20 previous discussion with regard to these allegations.  The amended complaint, however, also includes

21 additional allegations that merit serious consideration.

22 First, the new complaint remedies the deficiencies noted in the Court's prior order with regard

23 to the confidential witnesses by describing their job duties and other information in greater detail. The

24 Court therefore will consider the statements by Confidential Witness No. 1, who alleges that she was

25 responsible for processing the paperwork associated with stock sales and stock offerings, that she

26 personally witnessed defendant Barton backdating his options to a date prior to his actual start date with

27

28

**United States District Court**
For the Northern District of California

8

1   UTStarcom, that defendant Lu approved the backdating of Barton's options, and that she "personally

2   witnessed [defendant] Sophie engage in the practice of backdating executive stock options – particularly

3   his own." SAC at ¶¶ 188, 190, 193.  Although the Court agrees with defendants that there is a possible

4   inconsistency in the allegations of Confidential Witness No. 1, who states that she was involved in

5   backdating Barton's stock options to June 2005 even though the parties do not dispute that those options

6   were actually dated August 1, 2005, the Court finds that the fact they were not, in the end, actually

7   backdated does not necessarily mean the statements of the confidential witness are inaccurate.  Higher-

8   level employees may well have decided not to backdate Barton's stock options.  That said, the Court

9   agrees with defendants that the statements of Confidential Witness No. 2 do not support an inference

10  of backdating because she merely alleges that she heard rumors about backdating and that she was told

11  by a supervisor that backdating was discussed at a meeting in January 2007, after the company had

12  already launched an investigation into backdating. *See* SAC at ¶¶ 195-96.

13          Second, the new complaint alleges that each stock option granted to defendants Lu, Wu, and

14  Sophie between October 2000 and July 2002 was dated on the lowest closing price of the month and the

15  lowest closing price for the year to date. *See* SAC at ¶¶ 71-82.  The complaint also alleges that this

16  pattern of extremely favorable grant dates to high-level executives essentially stopped after the new

17  requirements of the Sarbanes-Oxley Act went into effect in August 2002. *Id.* at ¶ 86.  Defendants point

18  to a few other options granted to other, non-defendant executives that were not dated on extremely

19  favorable days, but plaintiff's allegation is targeted at the higher-level executives, and the Court finds

20  that plaintiff has alleged a pattern of suspicious grant dates that could give rise to an inference of

21  scienter.

22          The Court now finds that the observations of Confidential Witness No. 1 and the pattern of

23  grants made to the highest-level executives between 2000 and 2002, in combination with all of

24  plaintiff's other allegations discussed in the prior order, are sufficient to demonstrate a strong inference

25  of scienter. *Tellabs*, 127 S. Ct. at 2509 (courts must examine "whether all of the facts alleged, taken

26  collectively, give rise to a strong inference of scienter, not whether any individual allegation, scrutinized

27

28                                              9

United States District Court
For the Northern District of California

United States District Court
For the Northern District of California

1    in isolation, meets that standard"). In making this determination, the Court has considered the fact that

2    42% of the incorrectly-dated stock options were "under water" on the date they were granted, as well

3    as other facts supporting an inference of innocent error, but finds that "a reasonable person would deem

4    the inference of scienter cogent and at least as compelling as any opposing inference one could draw

5    from the facts alleged." *Id.* at 2510. The Court also finds that plaintiff's allegations – particularly

6    allegations with regard to the confidential witness and grants made prior to the passage of Sarbanes-

7    Oxley – are sufficient to support an inference that defendants Lu, Wu, Sophie, and Barton acted with

8    scienter, but do not support an inference of scienter with regard to defendant Toy. *See Southland Sec.*

9    *Corp. v. INSpire Ins. Solutions, Inc.*, 365 F.3d 353, 364-65 (5th Cir. 2004); *In re Silicon Storage Tech.,*

10   *Inc.*, 2006 WL 648683 *21-22 (N.D. Cal. March 10, 2006). The Court therefore DENIES defendants'

11   motion to dismiss for failure to plead scienter as to all defendants other than Toy. Leave to amend will

12   not be permitted.

13

14   **II.    Motion to dismiss Section 14(a) claim**

15          Defendants next argue that plaintiff's claim under § 14(a) of the Exchange Act must be

16   dismissed for multiple reasons. Section 14(a) and Rule 14a-9 "disallow the solicitation of a proxy by

17   a statement that contains either (1) a false or misleading declaration of material fact, or (2) an omission

18   of material fact that makes any portion of the statement misleading." *Desaigoudar*, 223 F.3d at 1022.

19   In addition, a plaintiff bringing a claim under this section "must demonstrate that the misstatement or

20   omission was made with the requisite level of culpability and that it was an essential link in the

21   accomplishment of the proposed transaction." *Id.*

22          The Court previously ruled that plaintiff had failed to allege that defendants' misleading

23   statements or omissions were an "'essential link' in the accomplishment of the transaction proposed in

24   the proxy statement." April 14, 2008 Order at 12. Plaintiff has failed to amend his complaint to make

25   these allegations, and in any case the Court agrees with defendants that plaintiff's explanations as to

26   how the proxy statements permitted defendants to cash in their backdated stock options does not make

27

28                                                    10

1  sense.  The Court therefore GRANTS defendants' motion to dismiss the § 14(a) claim, without leave

2  to amend.

3

4  **III.    Motion to dismiss Section 20(a) claim**

5          As discussed above, plaintiff has adequately alleged a primary violation of federal securities

6  laws.  Defendants do not dispute that plaintiff also has alleged that defendants were control persons.

7  The Court therefore DENIES defendants' motion to dismiss plaintiff's claim for control person liability

8  under § 20(a).

9

10                                          **CONCLUSION**

11          For all of the foregoing reasons, the Court hereby GRANTS IN PART and DENIES IN PART

12  defendants' motion to dismiss plaintiff's complaint [Docket No. 77].

13

14          **IT IS SO ORDERED.**

15
                                                    _____
16  Dated: August 21, 2008
                                                    SUSAN ILLSTON
17                                                  United States District Judge

18

19

20

21

22

23

24

25

26

27

28                                              11

**United States District Court**
For the Northern District of California