Mark Punzalan (State Bar No. 247599)
mpunzalan@finkelsteinthompson.com
FINKELSTEIN THOMPSON LLP
100 Bush Street, Suite 1450
San Francisco, California 94104
Telephone:  (415) 398-8700
Facsimile:  (415) 398-8704

[Additional Counsel Listed on Signature Page]

Counsel for Lead Plaintiff James R. Bartholomew

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### SAN FRANCISCO DIVISION

| | |
|---|---|
| PETER RUDOLPH, individually and on behalf of all others similarly situated,<br><br>        Plaintiff,<br><br>    vs.<br><br>UTSTARCOM, HONG LIANG LU, YING WU, MICHAEL SOPHIE, FRANCIS BARTON, AND THOMAS TOY,<br><br>        Defendants. | Case No. 3:07-CV-04578-SI<br><br>**NOTICE OF MOTION AND MOTION OF LEAD PLAINTIFF FOR AN ORDER GRANTING FINAL APPROVAL OF CLASS ACTION SETTLEMENT; NOTICE AND PLAN OF ALLOCATION; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**<br><br>**Date**:    September 18, 2009<br>**Time**:    9:00 a.m.<br>**Place**:   Courtroom 8<br>**Judge**:  Hon. Susan J. Illston |

# TABLE OF CONTENTS

Page

NOTICE OF MOTION AND MOTION OF LEAD PLAINTIFF FOR AN ORDER
GRANTING FINAL APPROVAL OF CLASS ACTION SETTLEMENT ............................ 1

STATEMENT OF ISSUES TO BE DECIDED ......................................................... 1

MEMORANDUM OF POINTS AND AUTHORITIES ........................................................ 2

I.    INTRODUCTION ................................................................... 2

II.   SUMMARY OF CLAIMS AND PROCEDURAL HISTORY ...................................... 4

  A.   Summary of Claims ....................................................... 4

  B.   Procedural History ........................................................ 4

III.  FINAL APPROVAL OF THE SETTLEMENT SHOULD BE GRANTED ................... 6

  A.   This Settlement Meets the Standards for Judicial Approval of Class Action
       Settlements ........................................................................ 6

    1.   The Stage of Proceedings Weighs in Favor of Settlement .................... 8

    2.   The Risks of Continued Litigation Weigh Heavily in Favor of      Settlement ...... 9

      a.   Risks of Proving Scienter .......................................... 10

      b.   Risks of Proving Loss Causation .................................... 11

  D.   The Value of An Immediate Recovery Outweighs the Mere Possibility of   Future
       Relief ............................................................................. 11

  E.   The Recommendation of Experienced Counsel Favors Settlement ...................... 12

  F.   Reaction of the Class Supports Approval of the Settlement ...................... 13

IV.   THE NOTICE PROGRAM SATISFIED DUE PROCESS AND COMPLIED  WITH
      FED. R. CIV. P. 23(E) ............................................................ 14

  A.   The Dissemination Plan Satisfies Due Process ...................................... 14

  B.   The Contents of the Notice Satisfy Due Process .................................... 14

V.    THE PROPOSED PLAN OF ALLOCATION IS FAIR, REASONABLE AND
      ADEQUATE AND SHOULD BE APPROVED ........................................... 15

VI.   CONCLUSION .................................................................. 16

i

1

## <u>TABLE OF AUTHORITIES</u>

2

Cases                                                                                          Pages

3

*Boyd v. Bechtel Corp.*,
4       485 F. Supp. 610 (N.D. Cal. 1979)........................................................7, 8

5       *Churchill Village, L.L.C. v. General Electrics*,
        361 F.3d 566 (9th Cir. 2004) .............................................................14
6

7       *Eisen v. Carlisle & Jacquelin*,
        417 U.S. 156 (1974) .........................................................................14

8       *Ellis v. Naval Air Rework Facility*,
        87 F.R.D. 15 (N.D. Cal. 1980) ............................................................8
9

10      *Franks v. Kroger Co.*,
        649 F.2d 1216 (6th Cir. 1981) ...........................................................14

11      *Hughes v. Microsoft Corp.*,
        C98-1646C, 2001 WL 34089697 (W.D. Wash. Mar. 26, 2001) ...........................7
12

13      *In re Cardizem CD Antitrust Litig.*,
        218 F.R.D. 508 (E.D. Mich. 2003) ........................................................8

14      *In re Gulf Oil/Cities Serv. Tender Offer Litig.*,
        142 F.R.D. 588 (S.D.N.Y. 1992) ..........................................................16
15

16      *In re Indep. Energy Holdings PLC*,
        00 Civ. 6689 (SAS), 2003 WL 22244676 (S.D.N.Y. Sept. 29, 2003) .................8

17      *In re Mego Fin. Corp. Sec. Litig.*,
18      213 F.3d 454 (9th Cir. 2000) ........................................................8, 9, 12

19      *In re Mfrs. Life Ins. Co. Premium Litig.*,
        MDL 1109, 1998 WL 1993385 (S.D. Cal. Dec. 21, 1998) ...............................9
20

21      *In re NASDAQ Market-Makers Antitrust Litig.*,
        94 Civ. 3996 (RWS), 2000 WL 37992 (S.D.N.Y. Jan. 18, 2000)......................16

22      *In re Omnivision Techs., Inc.*,
23      559 F. Supp. 2d 1036 (N.D. Cal. 2008)...........................................9, 15

24      *In re Oracle Sec. Litig.*,
        No. C-90-0931 VRW, 1994 WL 502054 (N.D. Cal. Jun. 18, 1994)..............15, 16

25      *In re Pac. Enters. Sec. Litig.*,
26      47 F.3d 373 (9th Cir. 1995) ........................................................7, 12

27

28

*Marshall v. Holiday Magic*,
   550 F.2d 1173 (9th Cir. 1977) ..................................................................................... 15

*McPhail v. First Command Fin. Planning, Inc.*,
   No. 05-171-IEG, 2009 WL 839841 (S.D. Cal. Mar. 30, 2009) ...................................... 7

*Mendoza v. Tucson School Dist. No. 1*,
   623 F.2d 1338 (9th Cir. 1980), cert. denied, 450 U.S. 912 (1981) ............................... 14

*Molski v. Gleich*,
   318 F.3d 937 (9th Cir. 2003) ........................................................................................ 7

*Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc.*,
   221 F.R.D. 523 (C.D. Cal. 2004) ........................................................................ 9, 12, 13

*Nobles v. MBNA Corp.*,
   No. C-06-3723 CRB, 2009 WL 1854965 (N.D. Cal. June 29, 2009) ........................ 9, 10

*Officers for Justice v. Civil Serv. Comm'n of City and County of San Francisco*,
   688 F.2d 615 (9th Cir. 1982) .......................................................................... 6, 7, 13, 15

*Staton v. Boeing Co.*,
   327 F.3d 938 (9th Cir. 2003) ........................................................................................ 7

*Torrisi v. Tucson Elec. Power Co.*,
   8 F.3d 1370 (9th Cir. 1993) ............................................................................... 7, 14, 16

*Util. Reform Project v. Bonneville Power Admin.*,
   869 F.2d 437 (9th Cir. 1989) ........................................................................................ 6

*Van Bronkhorst v. Safeco Corp.*,
   529 F.2d 943 (9th Cir. 1976) ........................................................................................ 6

*Weinberger v. Kendrick*,
   698 F.2d 61 (2d Cir. 1982) .......................................................................................... 14


**Statutes and Other Authorities**

Fed. R. Civ. P. 23 .............................................................................................. 1, 6, 8, 13

Newberg on Class Actions § 11.53 ................................................................................. 14

**NOTICE OF MOTION AND MOTION OF LEAD PLAINTIFF FOR AN ORDER**
**<u>GRANTING FINAL APPROVAL OF CLASS ACTION SETTLEMENT</u>**

**TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD**

**PLEASE TAKE NOTICE** that, pursuant to an Order of the Court filed May 29, 2009 ("Notice Order"), on September 18, 2009, at 9:00 a.m., or as soon thereafter as counsel may be heard, at the United States Courthouse, Courtroom 8, 450 Golden Gate Avenue, San Francisco, California 94102, before the Honorable Susan J. Illston, United States District Court Judge, Lead Plaintiff James R. Bartholomew ("Lead Plaintiff") will move for entry of Final Judgment approving: (1) the Settlement of this action and dismissing it with prejudice; (2) the Plan of Allocation; and (3) the form and manner of the Class Notice provided to the Settlement Class.  Lead Plaintiff's motion is based on the following Memorandum of Points and Authorities; the Declaration of Donald J. Enright in Support of Lead Plaintiff's Application for Final Approval of Class Action Settlement and Award of Attorneys' Fees and Reimbursement of Expenses ("Enright Declaration" or "Enright Decl.") and exhibits thereto, including the Declaration of Michael Rosenbaum, of Berdon Claims Administration ("Berdon") Regarding Dissemination of the Notice to the Class ("Rosenbaum Declaration"); all other pleadings and matters of record; and such additional evidence or argument as may be presented at the hearing.

<b>STATEMENT OF ISSUES TO BE DECIDED</b>

1.     Whether the Settlement is fair, reasonable and adequate.

2.     Whether the Notice of the Settlement complied with Fed. R. Civ. P. 23 and due process.

3.     Whether the Plan of Allocation should be approved as fair and reasonable.

//

//

//

## MEMORANDUM OF POINTS AND AUTHORITIES

**I.     INTRODUCTION**

Pursuant to Rule 23(e) of the Federal Rules of Civil Procedure, Lead Plaintiff James R. Bartholomew ("Lead Plaintiff" or "Plaintiff") respectfully requests that this Court grant final approval of the proposed settlement (the "Settlement") reached in this action ("Action") between Lead Plaintiff, on behalf of the Class, and Defendants UTStarcom, Inc. ("UTStarcom," "UTSI," or "the Company"), Hong Liang Lu, Ying Wu, Michael Sophie and Francis Barton (collectively "Defendants").

After extensive settlement negotiations, Lead Plaintiff and Defendants entered into a Stipulation[1] setting forth the terms of the Settlement of the claims asserted in the Action. Under the terms of the Settlement, a settlement fund was created for the benefit of the Class which consisted of $9.5 million in cash (the "Settlement Fund").  Pursuant to Section 2.1 of the Stipulation, the Settlement Fund has been delivered to the Escrow Agent.

On May 29, 2009, the Court signed an "Order Granting Preliminary Approval of Settlement and Directing Dissemination of Notice to Class."  The Court set a hearing date for final approval on September 18, 2009.  Pursuant to the Notice Order, beginning on July 10, 2009, approximately 231,186 notices were mailed to potential Class Members and shareholders of record.[2]  On July 17, 2009, the approved Summary Notice was published in the national edition of Investor's Business Daily and online on PRNewswire.[3]

As discussed more fully below, this Settlement, which provides for a meaningful recovery in the face of extraordinary risks of litigation, is fair, reasonable, adequate, and

---

[1]     The term "Stipulation" refers to the Stipulation of Settlement which was singed by all parties and filed with the Court on or about May 14, 2009.  All terms used herein shall have the same meanings as set forth in the Stipulation.

[2]     *See* Declaration of Michael Rosenbaum RE: Mailing of Notice, Publication of Summary Notice and Requests for Exclusion Received (the "Rosenbaum Decl."), filed concurrently herewith, Exh. 1.

1   meets all of the relevant criteria for approval.  Moreover, the fairness and adequacy of the

2   Settlement is evidenced by the fact that in response to a nationally published summary notice,

3   and the notices mailed directly to potential members of the Class and shareholders of record,

4   which advised these Class Members and shareholders of record of the Settlement and of their

5   right to object to the Settlement and/or Plaintiff's counsel's fee request, only one objection

6   has been received by Plaintiff's counsel, and this objection was merely directed to the Plan of

7   Allocation.[4]  Having only one objection to the Settlement is very significant since the Class

8   Members and shareholders of record likely include thousands of individuals and sophisticated

9   financial institutions which have counsel available to advise, represent and assist them in

10  expressing opposition to the request made herein if they so choose.  Accordingly, Lead

11  Plaintiff respectfully submits that the Settlement should be approved by this Court.

12  *//*

13

14  [3]      *See id.*

15  [4]      The objection of Mr. Raymond L. Parker, received by counsel on August 7, 2009 and

16  attached to the Enright Decl. as Exhibit 12, is directed at the Plan of Allocation to the extent
    that purchasers of UTSI shares who sold the shares prior to the first corrective disclosures are

17  not entitled to any recovery.  This element of the Plan of Allocation – the exclusion of claims
    for "in and out" share purchasers who sold their shares prior to any corrective disclosure – is

18  founded on the clear principle that anyone who sold their shares prior to a corrective
    disclosure cannot have suffered any damages attributable to Defendants' actions as alleged in

19  this action.  *See In re Daou Sys., Inc.*, 411 F.3d 1006, 1025 (9th Cir. 2005)(holding that to
    prove damage, a plaintiff must "demonstrate a causal connection between the deceptive acts

20  that form the basis for the claim of securities fraud and the injury suffered by the plaintiff);
    *see also Dura Pharm., Inc. v. Broudo*, 544 U.S. 336, 346 (2005).

21

22          Indeed if the class definition is strictly construed, Mr. Parker is not even a class
    member because he sold his shares prior to the first corrective disclosure on November 7,

23  2006.  Because he liquidated his position in the stock prior to any corrective disclosure, Mr.
    Parker cannot possibly have been damaged by Defendants' conduct as alleged here.  Thus,

24  having suffered no cognizable damages, Mr. Parker falls outside of the class definition, which
    includes persons who purchased during the Class Period and "were damaged thereby."

25

26          The deadline for objections to be filed and requests for exclusion to be postmarked is
    August 21, 2009.  Should counsel receive additional objections prior to or on this deadline,

27  counsel will apprise the Court of such objections.

28

3

MOTION ISO FINAL APPROVAL
Case No. 3:07-CV-04578-SI

## II.      SUMMARY OF CLAIMS AND PROCEDURAL HISTORY

UTStarcom is a publicly traded company that manufactures, integrates and supports IP-based, end-to-end networking and telecommunications solutions.  The Company sells converged broadband wireless and wireline products, an integrated IPTV solution, and a comprehensive line of handset and customer premise equipment to operators in both emerging and established telecommunications markets worldwide.  UTStarcom common stock trades on NASDAQ under the symbol "UTSI."

### A.      Summary of Claims

Lead Plaintiff brings this action on behalf of all persons who bought UTSI securities between September 4, 2002 and July 24, 2007 (the "Class Period").  Lead Plaintiff's Second Amended Complaint ("SAC") alleges that in an effort to wrongfully increase the remuneration of the officers, directors and employees of UTSI, and inflate the Company's net income by underreporting compensation expenses, the Individual Defendants intentionally manipulated stock option grants by falsely "backdating" the grants so that the options were always "in the money."  When the Company first disclosed that it was conducting an internal investigation of its stock option grant practices on November 7, 2006, and had reached no conclusion as to whether prior financial statements would have to be adjusted, the stock closed down nearly 10% or 91 cents a share.  On July 24, 2007, the Company announced that as a result of the investigation the Company's prior financial statements could no longer be relied upon and that results for the years 2000 through 2006 would be restated in the approximate amount of $24.3 million.  The Company's stock declined by $1.03 per share – a decline of 22%.  Lead Plaintiff alleges that these two stock price drops resulted in damages to him and other shareholders.

//

//

**B.   Procedural History**

On September 4, 2007, Plaintiff Peter Rudolph, represented by Finkelstein Thompson LLP, filed the original complaint against Defendant UTSI and Individual Defendants Hong Liang Lu, Michael Sophie, Francis Barton and Thomas Toy.  James R. Bartholomew, also represented by Finkelstein Thompson LLP, filed a motion on November 5, 2007 for appointment as Lead Plaintiff and for his counsel's appointment as Lead Counsel.  On December 18, 2007, the Court granted Bartholomew's motion.

Lead Plaintiff filed his First Amended Complaint on January 25, 2008 against Defendant UTSI and Individual Defendants Hong Liang Lu, Ying Wu, Michael Sophie, Francis Barton and Thomas Toy.  Defendants filed a motion to dismiss, which the Court granted without prejudice.  Lead Plaintiff filed the SAC on May 16, 2008 and Defendants moved to dismiss.  The Court granted in part and denied in part Defendants' motion.  The Court granted the motion with prejudice as to Individual Defendant Thomas Toy.  The remaining Individual Defendants, except for Individual Defendant Ying Wu, filed an answer on November 17, 2008.  Individual Defendant Ying Wu filed another motion to dismiss the SAC, which Lead Plaintiff opposed and which the Court denied on February 2, 2009.  Individual Defendant Ying Wu filed an answer to the SAC on February 17, 2009.

On March 13, 2009, Lead Plaintiff filed his motion for class certification.  Defendants filed an opposition brief to the motion, and Lead Plaintiff subsequently filed a reply brief in support thereof.  On March 30, 2009, the parties participated in a mediation before the Honorable Layn R. Phillips that resulted in the Settlement now before the Court for final approval.  As described in Lead Plaintiff's previous submissions in support of preliminary approval, Dkt. Nos. 116-19, the negotiations between Lead Plaintiff, through Lead Counsel, and counsel for Defendants and their insurance carriers, were arduous and contentious, extending over a period of nearly two weeks.

Lead Counsel consulted with Lead Plaintiff Bartholomew prior to and during the mediation proceedings with respect to all major litigation decisions, including the negotiations

1   conducted by counsel that led to the proposed Settlement.  Ultimately, Lead Plaintiff

2   Bartholomew authorized the terms of settlement.  The parties reached an agreement in

3   principle to settle the class action for $9,500,000.

4           On April 13, 2009, the parties notified the Court that they had reached a settlement via

5   a stipulation staying the motion for class certification and setting a hearing for preliminary

6   approval, which the Court granted.  The parties set forth the salient terms of the Settlement in

7   a Memorandum of Understanding dated April 27, 2009.  Subsequent negotiations ensued over

8   the next several weeks, which resulted in the Stipulation of Settlement executed on May 14,

9   2009.

10          The Court held a hearing on preliminary approval on May 29, 2009.  On this date, the

11  Court preliminarily approved the settlement, certified a settlement class and authorized

12  sending notice of the settlement to the Class.  Dkt. No. 120.  The Notice was initially mailed

13  to the Class beginning on July 10, 2009, and was published in *Investor's Business Daily* and

14  online at *PRNewswire* on July 17, 2009.  Ex. 1, Rosenbaum Decl. ¶¶ 3-8.  Additional mailings

15  followed as broker-dealers and other nominees responded to the Notice.  In total, Notice was

16  mailed to 231,186 putative Class members, broker-dealers, and nominees.  Id. ¶ 6.  The

17  Notice advised Class members that the deadline for objections to the Settlement is August 21,

18  2009.  As of the date of filing of this Motion, there has been only one objection to the

19  Settlement, the Plan of Allocation, or the Notice.

20  **III.     FINAL APPROVAL OF THE SETTLEMENT SHOULD BE GRANTED**

21          **A.     This Settlement Meets the Standards for Judicial Approval of Class
                     Action Settlements**

22

23          It is well established in the Ninth Circuit that "voluntary conciliation and settlement

24  are the preferred means of dispute resolution."  *Officers for Justice v. Civil Serv. Comm'n of

25  City and County of San Francisco*, 688 F.2d 615, 625 (9th Cir. 1982).  Class action suits

26  readily lend themselves to compromise because of the difficulties of proof, the uncertainties

27  of the outcome and the typical length of the litigation.  An "overriding public interest" exists

28

in settling litigation, and this is "particularly true in class action suits." *Van Bronkhorst v. Safeco Corp.*, 529 F.2d 943, 950 (9th Cir. 1976); *see also Util. Reform Project v. Bonneville Power Admin.*, 869 F.2d 437, 443 (9th Cir. 1989).

In approving a proposed class action settlement under Fed. R. Civ. P. 23(e), the Court must find that the proposed settlement is "fair, reasonable, and adequate." To make this determination, the Ninth Circuit instructs the lower courts to consider several factors:

> the strength of plaintiffs' case; the risk, expense, complexity, and likely duration of further litigation; the risk of maintaining class action status throughout the trial; the amount offered in settlement; the extent of discovery completed, and the stage of the proceedings; the experience and views of counsel; the presence of a governmental participant; and the reaction of the class members to the proposed settlement.

*Officers for Justice*, 688 F.2d at 625. *Accord Staton v. Boeing Co.*, 327 F.3d 938, 959 (9th Cir. 2003); *Molski v. Gleich*, 318 F.3d 937, 953 (9th Cir. 2003); *Torrisi v. Tucson Elec. Power Co.*, 8 F.3d 1370, 1375 (9th Cir. 1993).

The determination of fairness falls within the "sound discretion" of the District Court. *Torrisi*, 8 F.3d at 1375-76. However, courts recognize that a strong initial presumption of fairness applies where, as here, the settlement is reached by experienced counsel after arm's-length negotiations. *See McPhail v. First Command Fin. Planning, Inc.*, No. 05-171-IEG, 2009 WL 839841, at *3 (S.D. Cal. Mar. 30, 2009); *Hughes v. Microsoft Corp.*, C98-1646C, 2001 WL 34089697, at *7 (W.D. Wash. Mar. 26, 2001); *see also Boyd v. Bechtel Corp.*, 485 F. Supp. 610, 622 (N.D. Cal. 1979) (finding that "[t]he recommendations of plaintiffs' counsel should be given a presumption of reasonableness").

The Ninth Circuit has placed limits on the inquiry to be made by the Court in considering a settlement. The Court in Officers held:

> [F]airness hearing is not to be turned into a trial or rehearsal for trial on the merits. Neither the trial court nor this court is to reach any ultimate conclusions on the contested issues of fact and law which underlie the merits of the dispute, for it is the very uncertainty of outcome in litigation and avoidance of wasteful and expensive litigation that induce consensual settlements. The proposed settlement is not to be judged against a hypothetical or speculative measure of what might have been achieved by the negotiators.

688 F.2d at 625 (emphasis in original).

Here, it is the considered judgment of Lead Counsel that this Settlement provides for a fair, reasonable and adequate resolution of the litigation and thus, should be entitled to a presumption of reasonableness. *See Hughes*, 2001 WL 34089697, at *7; 5-23 MANUAL FOR COMPLEX LITIGATION (FOURTH) § 23.164 (2008). This presumption of reasonableness is further strengthened because the arm's-length negotiating process involved a mediator experienced in these types of cases. *In re Pac. Enters. Sec. Litig.*, 47 F.3d 373, 378 (9th Cir. 1995) (finding mediator's involvement supports settlement approval); *see also In re Cardizem CD Antitrust Litig.*, 218 F.R.D. 508, 530 (E.D. Mich. 2003) (stating that involvement of mediator or other third parties in settlement discussions is "further evidence of the arm's length . . . nature" of the settlement); *In re Indep. Energy Holdings PLC*, 00 Civ. 6689 (SAS), 2003 WL 22244676, at *4 (S.D.N.Y. Sept. 29, 2003) (holding that "the fact that the Settlement was reached after exhaustive arm's-length negotiations, with the assistance of a private mediator experienced in complex litigation, is further proof that it is fair and reasonable").

Thus, Plaintiff requests that the Court find that the Settlement is "fair, reasonable, and adequate," as required by Fed. R. Civ. P. 23(e). As demonstrated below, consideration of several factors asserted by the Ninth Circuit weighs in favor of settlement in this case.

### 1.    The Stage of Proceedings Weighs in Favor of Settlement

Courts consider the stage of the proceedings and the amount of information available to the parties to assess the strength and weaknesses of their case in determining the fairness, reasonableness and adequacy of a settlement. *See In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 459 (9th Cir. 2000); *Ellis v. Naval Air Rework Facility*, 87 F.R.D. 15, 18 (N.D. Cal. 1980); *Boyd*, 485 F. Supp. at 616-17. Here, the parties have engaged in sufficient pre-trial proceedings and discovery to determine that this Settlement is in the best interest of the Class.

The papers in support of preliminary approval detail Plaintiff's extensive and thorough

investigation undertaken into the facts and law in deciding to settle the class claims.[5]  As a result, Lead Counsel had a comprehensive and informed understanding of the strengths and weaknesses of the case and had sufficient information to make an assessment of the fairness of the Settlement before entering into it and presenting it to the Court.  *See Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523, 528 (C.D. Cal. 2004) (finding that "[a] settlement following sufficient discovery and genuine arms-length negotiation is presumed fair").

### 2.       The Risks of Continued Litigation Weigh Heavily in Favor of Settlement

This Settlement is also appropriate given the "inherent difficulty of prevailing in class action litigation."  *Nobles v. MBNA Corp.*, No. C-06-3723 CRB, 2009 WL 1854965, at *2 (N.D. Cal. June 29, 2009).  To determine whether the proposed Settlement is fair, reasonable and adequate, the Court must balance the continuing risks of litigation against the benefits afforded to Class Members and the immediacy and certainty of a substantial recovery.  *Mego Fin.*, 213 F.3d at 458; *In re Omnivision Techs., Inc.*, 559 F. Supp. 2d 1036, 1046 (N.D. Cal. 2008).

Although Lead Counsel believes that the case is meritorious, the risks discussed below render the outcome of lengthy litigation and trial extremely uncertain.  *See In re Mfrs. Life Ins. Co. Premium Litig.*, MDL 1109, 1998 WL 1993385, at *5 (S.D. Cal. Dec. 21, 1998) (stating that "even if it is assumed that a successful outcome for plaintiffs at summary judgment or at trial would yield a greater recovery than the Settlement – which is not at all

---

[5]       Lead Counsel conducted an extensive investigation and analysis of the factual and legal issues involved in this litigation both before and after the filing of the SAC.  This investigation and analysis included: (1) a thorough examination of Defendants' public filings, press releases, public statements, marketing materials and website; (2) interviews of former Company employees regarding the Company's stock option granting practices; and (3) review of all papers filed by the Securities Exchange Commission as a result of their investigation. Lead Counsel also conducted formal discovery, which included:  (1) reviewing thousands of documents produced by the Company to the SEC for purposes of their investigation; (2) serving interrogatories on the Company and the Individual Defendants; and (3) reviewing all deposition testimony taken during the course of the SEC investigation.  Dkt No. 116 at 4.

1  apparent – there is easily enough uncertainty in the mix to support settling the dispute rather

2  than risking no recovery in future proceedings").  Therefore, careful consideration of the

3  litigation risks supports approval of the Settlement as fair, adequate and reasonable.  *See*

4  *Nobles*, 2009 WL 1854965, at *2 (deferring to the "reasoned judgment" of class counsel" in

5  opting to settle, although the class might have achieved greater recovery in taking the case to

6  trial).

7          In this case, the value of Settlement far outweighed the risks of continuing to litigate.

8  Throughout this litigation, Defendants presented strong arguments questioning Plaintiff's

9  ability to prove scienter and loss causation at trial, even if the claims should survive a motion

10  for summary judgment.  These legitimate risks, as detailed below, factored heavily into Lead

11  Counsel's determination that this Settlement would provide the most favorable relief to Lead

12  Plaintiff and the Class.

13                          **a.        Risks of Proving Scienter**

14          Although Plaintiff's claims have survived a motion to dismiss, "success is not

15  guaranteed" at trial.  *Nobles*, 2009 WL 1854965, at *2.  While Lead Plaintiff believes that his

16  claims have significant merit, there would be numerous risks associated with continuing this

17  litigation which, on balance, weigh in favor of settlement.  First, Lead Plaintiff faced

18  substantial risks in proving scienter.  Defendants have repeatedly posed the argument that

19  Lead Plaintiff cannot prove scienter in light of the fact that both the Company's independent

20  internal investigation and the SEC's investigation did not find any intentional wrongdoing.

21  Defendants have also argued that, since some of the options were misdated to the detriment of

22  the recipients, a finding of intentional backdating is not possible.  Although Plaintiff believes

23  he has strong counter-arguments to these points, there is certainly substantial risk associated

24  with this element of his claims.  Of course, if Plaintiff were ultimately unable to prove

25  Defendants' scienter, Plaintiff's case would yield no recovery for the Class.

26  //

27  //

28
                                          10

**b.      Risks of Proving Loss Causation**

With regard to loss causation, Defendants have contended that Plaintiff cannot establish a causal connection between the alleged misrepresentations and any loss suffered by the Class for two reasons.  First, the initial announcement or "corrective disclosure" by the Company stated that an internal investigation into the Company's historical option pricing had been commenced.  Although the Company's stock price dropped after this announcement, Defendants have argued that this was not a corrective disclosure as it failed to announce any findings or conclusions with regard to the internal investigation.

Second, the announcement or "corrective disclosure" occurring on July 24, 2007 set forth the final amount of the restatement resulting from the internal investigation into the historical option grants.  This final amount, however, was less than a previous forecast disclosed earlier in the year.  Thus, Defendants have argued that this announcement contained "good news" as it reduced the estimated amount of the restatement and could not be considered a corrective disclosure for purposes of asserting loss causation.  Further, in their Motion to Dismiss Plaintiff's Amended Complaint, Dkt. Nos. 54-57, Defendants argued that the loss following the July 24, 2007 announcement resulted from the Company's announcement that PAS business in China was declining.  This issue would be contested at summary judgment, and no doubt, battled by experts.  Thus, issues related to the element of loss causation posed serious risks to Plaintiff's ability to recover on behalf of himself and the Class.

**D.      The Value of An Immediate Recovery Outweighs the Mere Possibility of Future Relief**

The Settlement value substantially outweighs the mere possibility of potentially larger future relief, particularly when weighed against the possibility of a smaller recovery or no recovery at all.  The proposed Settlement, while substantial, does not provide Plaintiff and the Class with the full measure of relief they would have sought at trial.  On the other hand, the

1  Settlement provides Plaintiff and the Class with far more than Defendants would have been

2  willing to offer absent the vigorous prosecution of Plaintiff's claims to date.

3       Given the obstacles and uncertainties in this complex litigation, the Settlement of

4  $9,500,000 is a favorable result for the Class.  It achieves a significant monetary recovery on

5  behalf of the Class and is unquestionably superior to another possibility which unmistakably

6  existed as a result of the exigencies of this litigation – little or no recovery at all for the Class.

7       The benefits to the Class of the present Settlement become more apparent when one

8  considers the costs of continued and possibly protracted litigation.  *See Mego Fin.*, 213 F.3d at

9  458 (considering the "expense and possible duration of the litigation" in evaluating the

10  reasonableness of a settlement).   The additional and substantial expenses which would be

11  incurred if this case were litigated further would be likely to reduce the net recovery to the

12  Class.  These expenses would include extensive expert fees, substantial discovery expenses

13  and a considerable investment in trial preparation.  These various costs and fees would not

14  only drain the remaining funds available for recovery from Defendants' insurance, but would

15  also increase the amount that Plaintiff's counsel would seek in remuneration of litigation

16  expenses.  Moreover, delay, not just at the trial stage, but through post-trial motions and the

17  appellate process, could cause Settlement Class Members to wait years for recovery, should

18  there be any, further reducing its value.

19       In sum, Plaintiff believes that the Settlement is well within a range of reasonableness

20  that can and should be approved.  The Settlement represents a significant portion of any

21  recovery likely to be obtained from Defendants even if Plaintiff won a trial verdict, and was

22  agreed upon only after considerable and contentious negotiations.  And, of course, this

23  Settlement is vastly superior to the potential outcome of no recovery at all.  As such, the

24  Settlement should be approved.

25      **E.**     **The Recommendation of Experienced Counsel Favors Settlement**

26       In assessing the adequacy of the terms of the Settlement, the trial court is entitled to

27  and should rely upon the judgment of experienced counsel for the parties.  *See DIRECTV*, 221

28

1  F.R.D. at 528 (stating that "great weight is accorded to the recommendation of counsel, who

2  are most closely acquainted with the facts of the underlying litigation") (internal quotations

3  and citations omitted).  The basis for such reliance is that "[p]arties represented by competent

4  counsel are better positioned than courts to produce a settlement that fairly reflects each

5  party's expected outcome in the litigation." *In re Pacific Enters. Sec. Litig.*, 47 F.3d at 378.

6  Indeed, when evaluating the proposed settlement, the trial judge, absent fraud, collusion, or

7  the like, should be hesitant to substitute its own judgment for that of counsel.  *See DIRECTV*,

8  221 F.R.D. at 528.

9        After thorough consideration, Plaintiff's counsel concluded that the Settlement terms

10  are fair, adequate, reasonable and in the best interests of the Class as a whole, and recommend

11  that it be granted final approval.  *See* Enright Decl. at ¶ 32.  The Settlement provides an

12  immediate and substantial cash benefit to the Class.  Moreover, the Settlement avoids the

13  risks of a trial relating to, among other things, scienter, loss causation and the quantum and

14  calculation of actual damages.  Based upon their diligent investigation of the facts and law

15  applicable to this litigation, their evaluation of the case, and their extensive experience in the

16  prosecution of class actions, Plaintiff's counsel believe that the Settlement is a fair, adequate

17  and reasonable resolution of the claims alleged in this action.  Further Plaintiff's Counsel

18  believe that the Settlement is preferable to continued litigation and the costs and uncertainties

19  associated therewith.  Accordingly, this factor weighs in favor of approval of the Settlement.

20        **F.      Reaction of the Class Supports Approval of the Settlement**

21        The last criterion for final approval is the reaction of the Class.  *See Officers for*

22  *Justice*, 688 F.2d at 625.  At this time, only one objection has been received by Plaintiff's

23  Counsel.  The time to object to the Settlement or to exclude oneself from the Settlement

24  expires on August 21, 2009.  Plaintiff will apprise the Court of any additional objections or

25  exclusions, should any exist, after the August 21, 2009 deadline.

26  //

27

28

**IV.     THE NOTICE PROGRAM SATISFIED DUE PROCESS AND COMPLIED WITH FED. R. CIV. P. 23(e)**

Due process requires that the class members be given notice of a proposed settlement and their right to be heard at the fairness hearing.  There are no rigid rules to determine whether a settlement notice to the class satisfies constitutional or Rule 23(e) requirements. Rather, to satisfy due process and comply with Fed. R. Civ. P. 23(e), the settlement notice merely must "fairly apprise prospective members of the class of the terms of the proposed settlement and of the options that are open to them in connection with the proceedings." *Weinberger v. Kendrick*, 698 F.2d 61, 70 (2d Cir. 1982) (internal quotation marks and brackets omitted).  Notice is "adequate if it may be understood by the average class member." 4 ALBA CONTE & HERBERT NEWBERG, NEWBERG ON CLASS ACTIONS § 11.53 at 167.

**A.     The Dissemination Plan Satisfies Due Process**

There is no statutory or due process requirement that all class members receive actual notice by mail or other means.  Rather, "individual notices must be provided to those Class Members who are identifiable through reasonable effort."  *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 175-76 (1974).  Rule 23(e) gives the Court "virtually complete" discretion as to the manner of service of settlement notice.  *See Franks v. Kroger Co.*, 649 F.2d 1216, 1222-23 (6th Cir. 1981).  Here the notice was disseminated via individual mailing of over 200,000 printed notices and two forms of publication.  This notice easily satisfies the due process requirement.

**B.     The Contents of the Notice Satisfy Due Process**

This circuit requires a very general description of the proposed settlement in a notice. *See Churchill Village, L.L.C. v. General Electrics*, 361 F.3d 566, 575 (9th Cir. 2004); *Torrisi*,, 8 F.3d at 1374; *Mendoza v. Tucson School Dist. No. 1*, 623 F.2d 1338, 1351 (9th Cir. 1980), cert. denied, 450 U.S. 912 (1981).

Proper notice should provide: (1) the material terms of the proposed settlement; (2) disclosure of any special benefit to the class representatives; (3) disclosure of the attorneys' fees provisions; (4) the time and place of the final approval hearing and the method for

14

MOTION ISO FINAL APPROVAL
Case No. 3:07-CV-04578-SI

1    objecting to the settlement; (5) and explanation regarding the procedures for allocating and

2    distributing the settlement funds; and (6) the address and phone number of class counsel and

3    the procedures for making inquiries.  *See Marshall v. Holiday Magic*, 550 F.2d 1173, 1178

4    (9th Cir. 1977).

5         Here, the Court-approved Notice provided all of the required information: a

6    description of the monetary relief and the Plan of Allocation; Plaintiff's counsel's intent to

7    apply for a Fee Award in an amount not to exceed thirty –three and one third percent (33

8    1/3%) of the Gross Settlement Fund and for reimbursement of expenses; and the contact

9    information for Plaintiff's counsel, including how to make inquiries.  The Notice also

10   included the date, time, and place of the fairness hearing, described how to object, and

11   informed Class Members that any objection must be filed with the Court and delivered to

12   Plaintiff's counsel and counsel for Defendants no later than August 21, 2009.  Furthermore,

13   the Court-approved notice adequately informed Class Members of the impact of the

14   Settlement, including release of claims against Defendants for any Class Members who do not

15   opt out.

16        In sum, broad dissemination of the Court-approved notice satisfied every conceivable

17   requirement of due process.  Accordingly, the settlement should be granted final approval.

18   **V.    THE PROPOSED PLAN OF ALLOCATION IS FAIR, REASONABLE AND
          ADEQUATE AND SHOULD BE APPROVED**
19

20        Lead Plaintiff also requests that the Court approve the Plan of Allocation as "fair,

21   reasonable, and adequate."  *Officers for Justice*, 688 F.2d at 625 (citations omitted).  A "plan

22   of allocation of settlement proceeds in a class action . . . is governed by the same standards of

23   review applicable to approval of the settlement as a whole: the plan must be fair, reasonable

24   and adequate."  *In re Omnivision Tech, Inc.*, 559 F. Supp. 2d at 1045 (internal quotations

25   omitted, emphasis added); *see also In re Oracle Sec. Litig.*, No. C-90-0931 VRW, 1994 WL

26   502054, at *1 (N.D. Cal. Jun. 18, 1994).

27

28
                                      15

In making this determination, courts have given great weight in determining the fairness, reasonableness and adequacy of a proposed plan of allocation to the opinion of class counsel. *See In re NASDAQ Market-Makers Antitrust Litig.*, 94 Civ. 3996 (RWS), 2000 WL 37992, at *2 (S.D.N.Y. Jan. 18, 2000) (stating that "[a]n allocation formula need only have a reasonable, rational basis, particularly if recommended by 'experienced and competent' Class Counsel") (quoting *White v. NFL*, 822 F. Supp. 1389, 1420 (D. Minn. 1993)) (the court "affords considerable weight to the opinion of experienced and competent counsel that is based on their informed understanding of the legal and factual issues involved" in approving distribution of different categories of claims reflecting differences in damages).

Here, it is reasonable to allocate the settlement funds to class members based on the extent of their injuries resulting from the claims alleged in this action. *See Oracle*, 1994 WL 502054, at *1 (citing In re Gulf Oil/Cities Serv. Tender Offer Litig., 142 F.R.D. 588, 596 (S.D.N.Y. 1992)); *see also Torrisi*, 8 F.3d at 1375-76. As such, the Plan of Allocation should be approved.

## VI.    CONCLUSION

This Settlement is eminently fair in the view of skilled counsel. Further, the complexity of the facts at issue, the substantial expenses if this litigation were to continue to trial, and the risks attendant to prevailing on a motion to dismiss, summary judgment, trial and subsequent appeals, weigh in favor of accepting an $9.5 million recovery now. It presents an immediate and sizable benefit to Class Members and Lead Plaintiff. Accordingly, Lead Plaintiff respectfully requests this Court to approve the Settlement, the Notice, and the Plan of Allocation as fair, reasonable and adequate.

Dated:  August 7, 2009                           Respectfully submitted,

                                                 FINKELSTEIN THOMPSON LLP

                                        By: /s/ Mark Punzalan
                                             Mark Punzalan

1

2          100 Bush Street, Suite 1450
           San Francisco, California 94104
3          Telephone: 415.398.8700
           Facsimile: 415.398.8704
4
                   - and -
5
6          Douglas G. Thompson
           Donald J. Enright
7          Elizabeth K. Tripodi
           1050 30th Street, NW
8          Washington, D.C. 20007
           Telephone: 202.337.8000
9          Facsimile: 202.337.8090

10         Counsel for Lead Plaintiff James Bartholomew

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28
           MOTION ISO FINAL APPROVAL
           Case No. 3:07-CV-04578-SI